## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROL A. LEWIS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Case No. 18-cv-2929 (RBW) |
| ALEX M. AZAR II, in his official | ) |
| capacity as Secretary of Health and | ) **JOINT STATEMENT** |
| Human Services, | ) **REGARDING DISCOVERY** |
| | ) **DISPUTE** |
| Defendant. | ) |
| _____ | ) |

Pursuant to this Court's Order of September 3, 2019, the parties file this joint statement regarding their discovery disputes in advance of the conference currently set for September 13, 2019.

## I.    Introduction

**Plaintiffs' Statement:**

A summary of relevant dates may assist the Court.

| Date | Activity |
|---|---|
| December 13, 2018 | Complaint filed. |
| May 20, 2019 | Plaintiffs serve First Set of Requests for Production (Nos. 1-8). |
| May 30, 2019 | The Secretary files a partial motion to dismiss. |
| June 14, 2019 | The Court holds a Scheduling Conference and issues an Order providing "class certification and merits discovery" to commence on June 24, 2019 and close on October 18, 2019.  *See* Dkt. #28 at 1. |
| June 18, 2019 | Plaintiffs provide the Secretary with a copy of the Northern District of California Model Protective Order. |
| July 1, 2019 | Plaintiffs serve Requests for Admission (Nos. 1-15), Interrogatories (Nos. 1-4), and Second Set of Requests for Production (Nos. 9-10). |
| July 24, 2019 | The Secretary serves responses to First Set of Requests for Production and a meet and confer is held. |
| August 1, 2019 | The Secretary serves responses to the Second Set of Production, Requests for Admission, and Interrogatories. |
| August 6, 2019 | A meet and confer regarding all the discovery responses is held. During the meet and confer, the Secretary agrees to propose revisions to the Protective Order by August 9 and to provide one |

| | |
|---|---|
| | years' worth of data on initial denials by August 20.  The Secretary later agrees to produce claims data covering the full class period. |
| August 9, 2019 | The Secretary does not propose revisions to the Protective Order. |
| August 20, 2019 | The Secretary does not produce data on initial denials. |
| August 29, 2019 | The parties call the Court to arrange a discovery conference which is scheduled for September 3, 2019. |
| September 3, 2019 | The Secretary serves revised responses to the requests for production, admission, and interrogatories.  The discovery conference is rescheduled for September 13, 2019. |
| October 18, 2019 | Class certification and merits discovery are set to close. |

The overarching issue is that there has been a near total failure of discovery so far in this case.  By the time of the discovery conference on September 13, it will have been nearly 120 days since Plaintiffs served their First Set of Requests for Production and not a single document has been produced.  In addition to the sheer failure to provide discovery, Plaintiffs are concerned that there is a pattern of delay and failure to abide by agreements.  In fact, even this discovery conference has been delayed by several weeks because the Secretary indicated it would provide discovery and it then failed to perform that agreement and reneged on its commitment to do so.

**The Secretary's Statement:**

This is a fairly simple case.  Plaintiffs contend that all continuous glucose monitors are durable medical equipment within the meaning of the Medicare statute and applicable regulations.  They seek to certify a class of individuals who had coverage for continuous glucose monitors denied.  Finally, they assert that Medicare beneficiaries were deceived as to the reason for the denial of their claims, and that this alleged deception should excuse those beneficiaries from exhausting their administrative remedies.

Plaintiffs have propounded ten (10) requests for production, fifteen (15) requests for admissions, and four (4) interrogatories.  The Secretary has responded to each of these discovery requests, and stands ready to make a substantial production of responsive records as soon as a

protective order is entered.  To prepare this production, the Secretary has worked closely and diligently with many contractors and agency components to design searches that have retrieved and will present records in a useful, non-burdensome form.  (Because these records contain medical information about Medicare beneficiaries that is covered by the Privacy Act, a protective order is required.)  The Secretary has made every effort to coordinate with Plaintiffs' counsel in preparing this production.  In response, the Secretary has been met with constant, meritless accusations of bad faith and intentional delay, from the very beginning of the case to this present filing.

In the Secretary's view, three matters require the Court's attention at this time.  First, a protective order must be entered so that beneficiary records covered by the Privacy Act can be produced.  Second, after appropriate briefing this Court should address the issue of whether the named plaintiffs, both of whom exhausted their administrative remedies, can represent a sub-class of individuals who did not exhaust and now seek to be excused from doing so.  The propriety of several burdensome requests for production turns on the answer to this question.  And third, this Court should grant a brief extension of the discovery schedule so that the Secretary can make an orderly production and Plaintiffs can propound additional discovery requests if they wish.

## II.    Areas of Disagreement

### a.    Protective Order

**<u>Plaintiffs' Position:</u>**

Since the first communication with the Secretary's counsel on April 22, 2019, Plaintiffs have addressed the topic of the need for a Protective Order.  Plaintiffs have repeatedly stated that they are amenable to any reasonable Order for the explicit reason that they did not want the

absence of a Protective Order to be used as an excuse to delay production.  Plaintiffs raised the

need for a Protective Order in the Joint Report pursuant to Civil Local Rule 16.3 on June 12 and

at the Scheduling Conference.  *See* Dkt. #25 at 8.  Thereafter, Plaintiffs sent the Secretary the

Northern District of California Model Protective Order on June 18, 2019.  The Secretary agreed

to propose any revisions by August 9, 2019 but that date came and went with no proposed

revisions from the Secretary.  Through August 20, 2019 (*i.e.*, 120 days after Plaintiffs first raised

it and 63 days after Plaintiffs sent the Model Order), the Secretary had made no counter-

proposal.

Plaintiffs propose the Northern District of California Model Protective Order modified

only to make clear that anything that does not reveal a beneficiary's name, address, HICN (*e.g.*,

excerpts and compilations) is not confidential.  *See* Exhibit A.  Plaintiffs understand that the

Secretary opposes on the grounds that, somehow, personal information might still be derived but

as of the end of the day on September 9 has provided no explanation of how that could possibly

occur.  Further, the Secretary's stated intention to designate everything confidential would result

in more information being concealed from the public than would be available in response to a

simple FOIA request.  Addressing excerpts and compilations that do not reveal beneficiary's

names, address, or HICNs now will avoid future disputes and unnecessary filings under seal.

The Protective Order proposed by Plaintiffs should be adopted.

**<u>The Secretary's Position:</u>**

Because Plaintiffs have propounded requests for the private medical information of

Medicare beneficiaries, a Privacy Act protective order is required.  Plaintiffs have instead

proposed the model protective order from the Northern District of California, which does not

address the Privacy Act concerns presented here, and would inappropriately incorporate many of that district's local rules.

The Secretary's proposal is modeled on the order entered in *M.W. v. U.S. Dep't of Army*, No. 5:16-cv-4051 (N.D. Cal.), *see* Dkt. Nos. 58 & 60, which the Secretary selected in an effort to reach accomodation with Plaintiffs.  Section 8.2 of the Secretary's proposed order is especially critical, as it "provides a basis for release of the requested records, documents, and other information pursuant to the Privacy Act" and "insulates Defendants from potential liability under the Privacy Act for improper disclosure."  Other significant items include the definition of the terms "Individually Identifiable Health Information," "Personally Identifiable Information," and "Protected Health Information."  Although Plaintiffs did not object to Section 8.2 or any of these definitions in the parties' discussions of a protective order, Plaintiffs now seek the entry of an order omitting them.

In the parties' conversations, Plaintiffs objected to only three elements of the Secretary's proposal.  Plaintiffs objected to Section 5, which adverts to independent legal obligations regarding "the privacy of personal and health information," and provides that the parties "agree to take all measures necessary to comply with the requirements of . . . any . . . applicable laws" governing the handling of this information.  Plaintiffs also objected to the phrase in Section 6.1 which provides that "all [Protected Health Information] and [Personally Identifiable Information] may be appropriately designated as 'CONFIDENTIAL.'"  The grounds for Plaintiffs' objection were not clear.  The Secretary seeks the inclusion of these provisions to insure that Plaintiffs are aware of and intend to comply with their legal obligations regarding personal and health information, and to make clear that all such information is appropriately designated as confidential.

Plaintiffs also objected to Section 3, which describes the scope of the protective order. Plaintiffs seek to add language providing that "any copies, excerpts, summaries, or compilations of Protected Material that do not reveal a beneficiary's name, address, or HICN [a unique numerical identifier] are not CONFIDENTIAL."  As the Secretary explained in an email dated August 28, "Protected Material (especially Appeals Council or ALJ decisions) may contain enough specific information about a beneficiary to effectively identify him without the use of his name or HICN."  Plaintiffs' proposed language would allow them to publicly use any such identifying information without redaction.  The Secretary instead proposes that the protective order define "group-level statistics derived from Protected Material (e.g., X% of initial denials were submitted for redetermination, or Y decisions were made on a particular legal basis)" as unprotected, and leave the remainder of the scope provision as it exists in the N.D. Cal. model order.  The Secretary has also offered to stipulate to the appropriateness of the release of any particular excerpt or summary of protected information that Plaintiffs may wish to use.  It should be easy to agree that concrete examples do not contain protected material.

The Secretary respectfully asks this Court to enter his proposed protective order, which is attached as Exhibit B.

### b.  Scope of Discovery

**<u>The Secretary's Position:</u>**

The named plaintiffs and putative class representatives, Carol Lewis and Douglas Sargent, each exhausted their administrative remedies before seeking judicial review.  But they would represent a sub-class of individuals who did not exhaust and now seek to be excused from doing so, on the theory that the letters denying their Medicare claims contained deceptive language that induced them to abandon their appeal rights.  Whatever the merits of that theory,

neither Ms. Lewis nor Mr. Sargent can represent that sub-class of individuals, because their claims or defenses are not "typical of the claims or defenses of the class," as Rule 23(a)(3) requires. Ms. Lewis and Mr. Sargent plainly understood their appeal rights, and exercised them; they cannot stand for individuals who claim to have misunderstood theirs.

Ordinarily, issues about the scope of the potential class could wait for the close of discovery and the filing of papers on class certification. In this case, however, as the parties discussed at the scheduling conference with the Court, the scope of discovery substantially depends upon the contours of the potential class. Plaintiffs are seeking to take discovery of claim denials dating back six years from the filing of the complaint—the overwhelming majority of which became final years ago, unless the beneficiaries' time to appeal was tolled by the Secretary's supposed deception. Despite his objections, the Secretary has agreed to produce this information.

But plaintiffs are also seeking burdensome discovery related to the Secretary's alleged policy of issuing deceptive letters denying Medicare claims. These requests are only valid if the sub-class of individuals who did not exhaust can be represented by named plaintiffs who did. The Secretary respectfully requests the Court's leave to file a motion addressing this issue no later than September 20, 2019.

Plaintiffs' suggestion that the Secretary should be somehow estopped from making this argument is entirely meritless. Throughout the parties' discussions of Plaintiffs' discovery requests, the Secretary has made it clear that he intended to file a motion raising this issue "at the point where our disagreement about the scope of the potential class was impeding discovery," as he put it in an email dated August 2. The Secretary has always understood that bringing this issue to the Court's attention would be likely to result in every outstanding discovery issue also

coming to the Court's attention, and he has therefore worked with Plaintiffs to narrow the scope of those disputes before asking the Court for an opportunity to brief this issue.  The Court should reject Plaintiffs' suggestion that those good faith discussions somehow forfeited the Secretary's opportunity to raise this threshold issue.

Finally, Plaintiffs suggest that the Secretary has reneged on an agreement to produce documents for the entire, nearly seven-year period for which Plaintiffs are seeking them.  That is simply not so.  It is true that the Secretary agreed to provide a draft protective order to Plaintiffs by August 9, when undersigned counsel was leaving on a week's vacation, and did not do so until August 20, the day after undersigned counsel returned.  As undersigned counsel explained, it took "a great deal of work to understand the various databases [being queried] in response to [the] RFPs, and to design sensible queries that will produce the information" needed.  Ex. D at 3. Undersigned counsel "prioritized the completion of that work, so that the searches could proceed while [he] was away," and addressed the issue of the protective order promptly upon his return. *Id.*  The Secretary has been frankly surprised that the parties have been unable to reach agreement on a protective order, but their inability to do so has prevented the production of responsive documents.  As discussed elsewhere, the Secretary stands ready to make responsive productions upon the entry of a protective order in this case.

To be clear, and as discussed at greater length below, the Secretary has agreed to produce responsive documents from the entire period for which they are sought, pursuant to an appropriate protective order.  But he has objected to, and respectfully requests an opportunity to present briefing on, discovery requests whose only relevance goes to the question of whether exhaustion of administrative remedies should be excused for some sub-class of individuals.  No

factual background is required to answer that question, and the validity of several discovery

requests depends upon it.

### **Plaintiffs' Position:**

Respectfully, Plaintiffs are dumbfounded that this issue is disputed some 90 days after it

was first raised at the Scheduling Conference.  By the time of the Scheduling Conference,

Plaintiffs had already served Requests for Production seeking information covering the entire

class period.  The issue was raised at the conference and the Court ordered discovery to proceed.

There, the following statements were made:

> THE COURT:  …. And if during that process the government believes that the request for discovery that's being made is in fact encompassing more than what would need to be provided if the government's position is correct, then obviously the government can let me know that they believe that's the case. And I can set a briefing schedule or a hearing or whatever on this narrow issue of whether these individuals who did not exhaust whether they can nonetheless be a part of a class with these two individuals who did exhaust.

> MR. PISTORINO: If I may just factually so the Court knows. I believe Mr. Bickford's raising that because I know we have already served request for production seeking that exact information, so I think the responses to them are due in like two weeks so it's, will be a very timely issue.

Transcript at 26-27.  Thereafter, Plaintiffs served additional discovery seeking information

covering the entire class period.  After the meet and confer on August 6, 2019, the Secretary

agreed to produce information covering the entire class period and, based on that representation,

Plaintiffs did not immediately seek to schedule a conference with the Court.  *See* Exhibits C and

D.  Several weeks later, the Secretary reneged on his agreement and now seeks to preclude the

discovery the Secretary agreed to.  In the Plaintiffs view, the Secretary should be estopped from

making that argument.  Having agreed to production and having obtained the benefit of a multi-

week delay as a result thereof, the Secretary should be estopped from reneging on the agreement

and should be ordered to produce.  Once the production is completed, whatever motion practice is necessary can be undertaken with a solid factual background.

More generally, the information sought relates to three issues: 1) whether Ms. Lewis and Mr. Sargent are proper class representatives; 2) whether the exhaustion/60-day limitations should be applied; and 3) what the claims of the class are.  Whenever the Court addresses those issues, the Court will need to have a solid factual background on which to base its decision(s).  That can only come with discovery.  Thus, rather than the piecemeal approach offered by the Secretary, as Plaintiffs indicated at the Scheduling Conference, and as the Court ruled, discovery should proceed.

Further, it is difficult to understand why, if the Secretary objected to/thought the discovery was so burdensome, the Secretary did not move on the issue immediately after the Scheduling Conference given that Requests for Production seeking the objected to information were already pending.  At a minimum, the fact that this issue is being raised at this time *after an agreement to produce*, does not appear diligent.  The discovery should be ordered to proceed exactly as indicated at the Scheduling Conference without further delay.

### c.  Production Orders

**Plaintiffs' Position:**

As noted above, in the wake of the Secretary's response/objections to Plaintiffs' discovery requests, the parties held a series of meet and confers.  During the meet and confer held on August 6, 2019, the Secretary agreed to: 1) propose any revisions to the Model Protective Order by August 9, 2019; and 2) produce one year's worth of initial claim denial data by August 20, 2019.  However, because the Secretary was objecting to production of claim denial data covering the entire class pre-suit period (December 13, 2012-December 12, 2018),

Plaintiffs indicated their intention to proceed with a call to the Court's clerk to arrange a discovery conference either the next day or later that week.  Later, on the evening of August 6, 2019, the Secretary indicated that he was withdrawing his objection to producing – and would produce - materials covering the entire pre-suit class-period.  In light of that agreement and the agreements earlier in the day, Plaintiffs agreed to delay contacting the Court.  However, over the next several weeks the Secretary either failed to perform the agreements or reneged on the agreements.  *See* Exhibits C and D.

The Secretary does not dispute the fact that he agreed to take certain steps by certain dates and did not do so.  Further, the Secretary does not dispute the fact that he agreed to produce materials covering the entire class period but is now objecting to the same.

Accordingly, Plaintiffs believe that Orders requiring production/responses by dates certain are needed.

### **The Secretary's Position:**

Notwithstanding his objections to the relevance of documents dating back to December 2012, the Secretary has agreed to produce the records at issue in requests for production, 1, 2, and 4 through 7, pursuant to an appropriate protective order.

As explained below, the Secretary opposes Plaintiffs' proposals that responsive production be completed by September 20, 2019, and that future requests from Plaintiffs be responded to within 10 days of service.  The requests in this case require significant technical analysis and cannot be answered on this accelerated timeline.  Although the Secretary is prepared to make a significant production as soon as a protective order enters, issues such as how to reliably search for initial denials that were filed with a miscellaneous billing code (rather than a code specific to CGMs) are still being discussed.  *See, e.g.*, Ex. C at 2; Ex. D at 2–3.  The entry

of Plaintiffs' suggested deadlines would be likely to multiply the difficulties in this case, rather than resolving them.

The Secretary has addressed Plaintiffs' other contentions in the response immediately above, *see* Sec. II.b, and will not repeat them here.  But to be clear, and as discussed at greater length below, the Secretary has agreed to produce responsive documents from the entire putative class period, pursuant to an appropriate protective order, and is not raising any objection on that basis.

### d.  Requests for Production

**Plaintiffs' Position:**

In response to two sets of Requests for Production (the first served nearly 120 days ago), the Secretary has produced ZERO documents.  The Secretary has offered a series of objections based on "deliberative process privilege"/privacy but has served no log of any kind despite the agreed requirements set forth in the Joint Report pursuant to Civil Local Rule 16.3.  *See* Dkt. #25 at 7.  As the party asserting privilege, the Secretary bears the burden of establishing its claims.  The Secretary has made no effort to do so and, in any event, could not do so when the requests ask for information about a policy that was adopted.  *See, e.g., U.S. Dept. of Treasury v. Pension Benefit Guaranty Corp.*, 222 F.Supp.3d 38 (D.D.C. 2016 (Sullivan, J.); *U.S. v. Philip Morris USA, Inc.*, 218 F.R.D. 312 (D.D.C. 2003) (Kessler, J.).

The Secretary's objections based on the Privacy Act of 1974 are without merit.  Sec. 552(a)(11) of the Privacy Act of 1974 provides an exception for material produced according to a court order.  In *Laxalt v. McClatchy*, 809 F.2d 885 (D.C. Cir. 1987), the court held that with regards to information allegedly subject to the Privacy Act "the standards set forth in the FRCP must be followed with respect to discovery in District Court."  *Id*. at 889.  Thus, a simple

objection that materials may be subject to the Privacy Act is woefully insufficient to meet the Secretary's burden.

The Secretary's current objection to production of materials covering the entire pre-filing class period smacks of a pattern of delay.  First, though the Secretary raised this issue in June at the Scheduling Conference, the Secretary has not pursued the issued until now, nearly three months later.  Second, on August 6, 2019, with Plaintiffs indicating they intended to arrange a discovery conference, the Secretary agreed to produce these materials.  As a result, a further month delay was obtained during which time Plaintiffs understood the issue to have been resolved from a discovery perspective.  Finally, of course, the Secretary is simply wrong on the underlying issue.

All of the Secretary's objections should be overruled as waived, failed to be substantiated, or without basis and all the responsive documents (including those reflecting Part C) denials produced without further delay.

**The Secretary's Position:**

Plaintiffs have propounded ten (10) requests for production.  The first and second (and portions of the ninth and tenth) seek information about initial denials of Medicare coverage, which the Secretary has agreed to produce pursuant to protective order.  The fourth, fifth, sixth, and seventh seek information about decisions at the various levels of administrative appeals, which the Secretary has also agreed to produce pursuant to protective order.  The eighth seeks information about suits filed in district court, which the Secretary has objected to because the requested material is a matter of public record, which Plaintiffs can obtain just as easily as the Secretary.  Plaintiffs have never challenged this objection in conversations with Defendant's counsel.

The remaining requests for production (the third, and portions of the ninth and tenth) seek information in support of arguments that individuals who failed to exhaust should be excused from doing so.  The third request for production seeks documents relating to the inclusion of the phrase "statutorily excluded" on certain denial letters, while the ninth and tenth seek policy documents and other materials relating to all substantive grounds for the denial of continuous glucose monitor claims.  As the Secretary has explained to Plaintiffs, there are many such grounds, most of which are completely irrelevant to this case (including "Payment cannot be made for equipment that's the same or similar to equipment already being used" and "The provider of this service is not eligible to receive Medicare payments").

The Secretary respectfully requests the Court's leave to file, no later than September 20, 2019, a motion addressing the question of whether the sub-class of individuals who did not exhaust their administrative remedies can be represented by named plaintiffs who did.  If that motion is denied, the Secretary will produce documents in response to Plaintiffs' third request for production, as well as the disputed portions of the ninth and tenth, and will withhold and log any deliberative material (such as meeting notes, which are expressly sought) at that time.

e. **Requests for Admission**

**<u>Plaintiffs' Position:</u>**

Originally, Defendants refused to provide admissions or denials for a significant number of the requests.  After the party's called to arrange a discovery conference on August 29, 2019, the Secretary served amended responses that resolved some of the issues.  Currently, the Secretary has failed to either answer or deny Request Nos. 10 and 11.

Request No. 10 asks the Secretary to admit that there is no "statute" excluding Medicare coverage of CGMs.  This goes to the issue of whether the Secretary's denials (and the

explanations therefor) have any basis.  Rather than admit or deny, the Secretary presents

argument.  Of course, contention discovery is appropriate and Plaintiffs will provide cases if the

Court would like to see them.

Request No. 11 asks the Secretary to admit that since January 12, 2017, ALJs have not

had discretion to order coverage of CGM claims not complying with CMS 1682-R.  This goes to

the issue of whether appeals of the Secretary's denials after January 12, 2017 were futile.  Again,

rather than admit or deny, the Secretary presents argument.

The Court should either deem these requests admitted or order admissions or denials

without further delay.

**The Secretary's Position:**

As Plaintiffs note, the Secretary has repeatedly attempted to narrow or eliminate

discovery disputes in this case, and continues to do so.

The Secretary's responses to Requests for Admission 10 and 11, the only requests at

issue here, are both proper.  The tenth request seeks admission that "[t]here is no STATUTE

excluding Medicare coverage of CGMs on the grounds that they are not 'primarily and

customarily used to serve a medical purpose.[']"  The Secretary validly objected that this request

calls for legal conclusions: that is, it does not concern "facts, the application of law to fact, or

opinions about either."  Fed. R. Civ. P. 36(a)(1)(A).  Despite that valid objection, the Secretary

responded that "The statutory definition of durable medical equipment, 42 U.S.C. § 1395x(n),

does not specifically address CGMs, nor include the phrase 'primarily and customarily used to

serve a medical purpose.'"  This response, though unnecessary in light of the Secretary's valid

objection, is more than sufficient.

The eleventh request seeks admission that "Since January 12, 2017, ALJs have not had discretion to order coverage of CGM claims not complying with CMS 1682-R." Again, the Secretary objected because whether "ALJs have . . . discretion" to resolve appeals in favor of beneficiaries is a purely legal question outside the scope of Rule 36(a)(1)(A). That objection is valid. Moreover, this issue is only relevant if the named plaintiffs can represent the sub-class of individuals who did not exhaust their administrative remedies, as it goes to the question of whether such exhaustion should be required. The Secretary respectfully requests the Court's leave to file, no later than September 20, 2019, a motion addressing the question of whether the sub-class of individuals who did not exhaust their administrative remedies can be represented by named plaintiffs who did.

###### f.   Interrogatories

**Plaintiffs' Position:**

Two of the four interrogatories, each tied to the Requests for Admission, are at issue.

In the event that the Secretary did not admit Request for Admission No. 1 (that substantially all the initial denials listed "statutorily excluded" as the explanation), Interrogatory No. 1 asked the Secretary to provide data for each such explanation actually used.

In response, the Secretary objected to providing data covering the entire class period on the grounds of burdensomeness – *i.e.*, the Secretary feels that his arguments regarding exhaustion will be victorious and, therefore, evidence which might be used to resist the Secretary is burdensome to produce. The Secretary also objected directing the Plaintiffs to gather the same information from the documents the Secretary has failed/refused to produce.

Interrogatory No. 2 was tied to Request for Admission No. 3 and sought the same kind of information if the reason for the Secretary's denial of coverage (rather than the explanation) was

anything other than "not primarily and customarily used to served a medical purpose." The Secretary's objections and failure to answer were founded on the same grounds.

The Secretary should be ordered to answer the interrogatories. With regard to burdensomeness, clearly, the assumption that the Secretary's position will be victorious is not a good faith basis to refuse production. Further, the Secretary has unreasonably delayed for months before asserting this claim and it contradicts the Secretary's agreement to produce the materials. With regard to the Secretary's direction to Plaintiffs to look to the documents not produced, that is plainly illogical. To the extent that the Secretary intended to invoke FED.R.CIV.P. 33(d), the Secretary's answer fails to comply with any of the requirements of the Rule because no specific documents are identified.

The Secretary should be ordered to provide answers to the interrogatories.

**The Secretary's Position:**

Of the four interrogatories served by Plaintiffs, only two are at issue here. Both seek information about the many reasons given for denials of CGM claims, which would be burdensome to compile and will be contained within the documents produced in response to Plaintiffs' requests for production, after a protective order is entered. As the Secretary put it in his discovery responses, these interrogatories are "entirely duplicative of Request for Production No. 1," in response to which the Secretary "will produce a table summarizing the requested records pursuant to an appropriate protective order"; from that table, Plaintiffs "can determine the answers to this interrogatory as readily as" the Secretary can. There is nothing illogical or contrary to Rule 33(d) about directing Plaintiffs, for an answer to these interrogatories, to the records that will be produced in response to their requests for production.

- 17 -

The Secretary's position here does not depend in any way on the question regarding the exhaustion of administrative remedies: it is simply that the records produced will provide Plaintiffs with all of the information sought by these interrogatories, as the Secretary has maintained from the first.

### g.  The Discovery Period

**Plaintiffs' Position:**

Currently, the discovery period is set to close on October 18, 2019.  Having seen no documents of any kind, Plaintiffs want the opportunity to have another round of written discovery once they see documents and a Protective Order is entered.  Plaintiffs believe the original deadline can still be met if the Secretary is ordered to complete responsive production by September 20, 2019 and is further ordered to respond to future requests from Plaintiffs with 10 days of service.  Such an approach would allow the schedule to be kept and avoid rewarding the Secretary for a pattern of delay by granting more time for more delay.  One aspect of the delay is that, on information and belief, since this case was filed, between 36,000 and 54,000 claims for CGM coverage have been denied on the grounds that a CGM is "not primarily and customarily used to serve a medical purpose."

Alternatively, if the period is extended to give the Secretary more time to comply, then the Court should also set a simultaneous schedule for summary judgment briefing on the underlying merits.  That would allow the case to move forward and not be delayed by the Secretary's failure to provide discovery.  Regardless of whether there are tens of thousands of class members or none, the substantive issue presented by Ms. Lewis' claim of whether a CGM is durable medical equipment will not be affected or avoided.

**The Secretary's Position:**

The Secretary supports a reasonable extension of the discovery period, so that production can proceed in an orderly fashion and Plaintiffs can propound additional discovery requests if they see fit.  The Secretary suggests that discovery close on December 13.

The Secretary opposes Plaintiffs' proposals that responsive production be completed by September 20, 2019, and that future requests from Plaintiffs be responded to within 10 days of service.  The requests in this case require significant technical analysis and cannot be answered on this accelerated timeline.  Although the Secretary is prepared to make a significant production as soon as a protective order enters, issues such as how to reliably search for initial denials that were filed with a miscellaneous billing code (rather than a code specific to CGMs) are still being discussed.  *See, e.g.*, Ex. C at 2; Ex. D at 2–3.  The entry of Plaintiffs' suggested deadlines would be likely to multiply the difficulties in this case, rather than resolving them.

Finally, the Secretary opposes Plaintiffs' proposal that summary judgment briefing should occur concurrently with either discovery or class certification briefing.  Summary judgment should follow class certification because, if a class is certified, the Court will "define the class and the class claims, issues, or defenses" in its certification order, as required by Rule 23(c)(1)(B).  Without the definition of class claims, summary judgment briefing would be entirely impracticable.

Respectfully submitted,

/s/Jeffrey Blumenfeld
D.C. Bar No. 181768
LOWENSTEIN SANDLER LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 753-3800
Facsimile:  (202) 753-3838
jblumenfeld@lowenstein.com

*and*

PARRISH LAW OFFICES
James C. Pistorino
788 Washington Road
Pittsburgh, PA 15228
Telephone: (412) 561-6250
Facsimile:  (412) 561-6253
james@dparrishlaw.com

*Attorneys for Plaintiffs*

and

JOSEPH H. HUNT
Assistant Attorney General

MICHELLE BENNETT
Assistant Director, Federal Programs Branch

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

Date: September 9, 2019                     *Counsel for Defendant*