# Exhibit D

# James Pistorino

| | |
|---|---|
| **From:** | James Pistorino |
| **Sent:** | Sunday, August 11, 2019 3:03 PM |
| **To:** | 'Bickford, James (CIV)' |
| **Cc:** | Debbie Parrish; Blumenfeld, Jeffrey |
| **Subject:** | RE: Lewis v. Azar |

James,

OK on the sur-reply.

In light of what we believe to be decent progress on resolving at least some of the issues, we do not intend to contact the Court this week.
Let's see where we are when you get back and whether we still have issues.

Skimming the substance of the main email, in terms of the protective order, our only concern is that the lack of one does not result in a delay in production.
Thus, we are less concerned that one is entered at any particular time than that we get the docs we need.
In this regard, even in the absence of a PO, we are officers of the court and are prepared to treat anything produced with whatever level of confidentiality you designate.

One item I see where there seems to be a misunderstanding relates to Part C cases. Part C just means that they have some sort of Medicare Advantage plan (i.e., something that covers everything Original Medicare does as well as specific other areas). At base, however, Part C coverage is dictated by Original Medicare coverage. Thus, if Original Medicare does not cover something, then the Part C cases will not be able to either, unless the broader coverage has been specifically approved. Accordingly, to my knowledge, all Part C plans are bound, e.g., by CMS 1682-R and will reject, e.g., claims for Medtronic CGMs. I am not sure what you mean by "those claims never receive initial denials." To our knowledge, they most certainly do. Part C cases are handled in the same way Original Medicare cases are including all the levels of appeal. That is, a person with a Part C plan submits a claim. Depending on what the claim is for, it is ether submitted to Original Medicare for payment/processing or handled by the Part C plan itself under its supplemental coverage. A CGM claim submitted to a Part C plan would be submitted to Original Medicare and, assuming it did not comply with CMS 1682-R, rejected. In sum, we want the data corresponding to Part C cases as well.

In terms of E1399 and A9999, as long as the problem is being looked at to try to do something that is reasonable, we are content.
If it were me, I would gather everything in one shot and then winnow from there. That way, I only have to bother people one time.
That is just the way I do things and you may prefer a different approach.

In terms of the RFA/Rogs on contentions/facts, there is no two ways about it, we need that.
I am not going to file briefs only to have them opposed with facts/positions I have never heard of before.
Thus, e.g., if the Secretary admits that notice and comment was not complied with for CMS 1682-R, that eliminates that as an issue for this case and Plaintiffs need no further proof in that regard. Alternatively, if it is disputed, we want to know on what basis so that we can address it in our briefs. Depending on the answers/positions, our MSJ briefing will look different. We disagree on "minimal value" but, if true, then there is no reason not to admit it/answer. I suggest that you confer with your client and let us know if you really want to go to down this route. We both know that there is no "statute" excluding CGM coverage and that the Secretary did not comply with notice and comment. Just admit that and let's address the consequences, if any. There is ZERO chance that we will walk away from this.

1

Regards,
James Pistorino




**From:** Bickford, James (CIV) <James.Bickford@usdoj.gov>
**Sent:** Sunday, August 11, 2019 1:13 PM
**To:** James Pistorino <james@dparrishlaw.com>
**Cc:** Debbie Parrish <debbie@dparrishlaw.com>; Blumenfeld, Jeffrey <JBlumenfeld@lowenstein.com>
**Subject:** Re: Lewis v. Azar

James,

We think the jurisdictional arguments are properly raised, and oppose the filing of a surreply.

Thanks for conferring; I'll look for your filing.

James



On Aug 11, 2019, at 11:54 AM, James Pistorino <james@dparrishlaw.com> wrote:

> James,
>
> I will review what you have here and respond if necessary.
>
> Given that you are going to be out, can you let me know if the Secretary opposes Plaintiffs' motion for leave to file a sur-reply?
> We want to say that some of the arguments on jurisdiction are improperly raised in the reply brief.
> In addition, we have a comment about Lewis/Bloom here.
>
> Just let me know if we should put you down as consenting or opposed.
>
> Regards,
> James
>
> **From:** Bickford, James (CIV) <James.Bickford@usdoj.gov>
> **Sent:** Sunday, August 11, 2019 11:49 AM
> **To:** James Pistorino <james@dparrishlaw.com>
> **Cc:** Debbie Parrish <debbie@dparrishlaw.com>; Blumenfeld, Jeffrey <JBlumenfeld@lowenstein.com>
> **Subject:** RE: Lewis v. Azar
>
> James,
>
> I am going to be out of the office this coming week, but before I go I wanted to update you on our production in this case. In response to your RFPs seeking initial denials and subsequent decisions on CGM coverage, we are currently gathering:
>
> - From the DME MACs, a spreadsheet containing records of all initial denials and all redetermination decisions for billing codes A9276, A9277, A9278, K0553, and K0554, for a date range from 12/13/12 through 7/31/19;

2

- From the QIC, all reconsideration decisions for billing codes A9276, A9277, A9278, K0553, K0554, E1399, and A9999 for a date range from 12/13/12 through 7/31/19;
- From the Office of Medicare Hearings and Appeals (i.e., the ALJ office), all decisions for billing codes A9276, A9277, A9278, K0553, K0554, E1399, and A9999 for a date range from 12/13/12 through 7/31/19; and
- From the Medicare Appeals Council, all decisions that contain the phrase "continuous glucose monitor" or "CGM" from 12/13/12 through 7/31/19.

We can revisit initial denials and redetermination decisions for billing codes E1399 and A9999 when I have gathered a little more information. As you know, those are miscellaneous codes, and I don't yet have a way to reliably distinguish CGM claims from other claims submitted with those codes. At the reconsideration and ALJ levels, we will be reviewing and producing the actual decisions, which should allow us to distinguish E1399 and A9999 claims for CGM components from other, irrelevant claims submitted under those codes, so long as the volume is manageable. (I am told that, at the ALJ level, our search criteria produce something on the order of 1000 decisions, of which nearly half are for E1399 codes; if the volume is substantially larger at the QIC level, it may become quite burdensome to pick the CGM needles out of the E1399 haystack.) We are searching Appeals Council decisions by keyword because the Council does not keep records by billing code.

Because your RFPs begin with initial denials and then seek denials that were appealed to each subsequent level, we are not producing Part C claims from the higher appeal levels (because those claims never receive initial denials). We understand your case and your requests to be focused on individuals who receive their Medicare benefits through the original Part B system.

As for the rest of your email, we are open to revising our discovery responses thus far, once we have gathered the records described above, which are necessary for us to respond to many of your requests. The only requests that do not require reference to these records seem to fall into our disagreement as to what is a request for a legal interpretation, and what is a proper contention request. I candidly do not understand what you think is at stake in your request that, for example, we admit that certain language in the Medicare regulations does not also appear in the Medicare statute. But I suspect that, whatever the minimal value of this request to us or to you, it's not worth calling in the Court to mediate.

I regret that I have not yet been able to get a proposed protective order to you, but I will endeavor to get that cleared while I am away over the course of this coming week. It has taken a great deal of work to understand the various databases that we are querying in response to your RFPs, and to design sensible queries that will produce the information that you need; I prioritized the completion of that work, so that the searches could proceed while I was away.

You should have no need to contact the Court this coming week, but if you intend to do so I expect that you will give me a full day's notice so that I can make arrangements to join the call myself or have a colleague participate.

Sincerely,

James Bickford
Trial Attorney, Federal Programs Branch
Civil Division, U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530
(202) 305-7632
James.Bickford@usdoj.gov

3

This email may contain information that is privileged, confidential, or otherwise protected by applicable law. If the reader of this email is not the intended recipient or the employee or agent responsible for delivery of the email to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or use of this email or its contents is strictly prohibited. If you have received this email in error, please notify the sender immediately and destroy all copies of it.

**From:** James Pistorino <james@dparrishlaw.com>
**Sent:** Wednesday, August 07, 2019 6:05 PM
**To:** Bickford, James (CIV) <jabickfo@CIV.USDOJ.GOV>
**Cc:** Debbie Parrish <debbie@dparrishlaw.com>; Blumenfeld, Jeffrey <JBlumenfeld@lowenstein.com>
**Subject:** RE: Lewis v. Azar

James,

Following up on this email and our meet and confer yesterday.

In terms of the meet and confer, the parties specifically agreed:
1) For this round of discovery only, Plaintiffs are willing to accept production of only HICNs and will not demand names/addresses (Plaintiffs reserve the right to seek information in this regard in subsequent rounds of discovery);
2) The Secretary will propose a protective order no later than Friday, August 9, 2019.
3) The Secretary will produce responsive information at the initial denial, redetermination, and reconsideration levesl for at least one year prior to July 2019 no later than August 20.
4) While we agreed that the Secretary would provide a final answer on producing discovery covering the entire class period (i.e., back to December 13, 2012) by Friday, August 9, 2019, you have already sent a confirmation that the Secretary will produce that.

Beyond that, there were no agreements/narrowing of the issues.

In particular, the Secretary stood by his refusals to answer the RFAs and rogs.
With regard to RFA Nos. 10 and 15 in particular, respectfully, that continued refusal is indefensible.
Those RFAs (and the associated RFPs and Rogs) seek the Secretary's contentions/facts.
The Secretary failed/refused to identify any case/statute indicating that the Secretary is immune from normal contention discovery.
Either Plaintiffs are going to get answers to those or Judge Walton is going to have to rule on the Secretary's refusal.
There is no other way.

In terms of the Rogs, the Secretary refused answer.
Same as RFA Nos 10 and 15 to which they are tied.
Either Plaintiffs are going to get answers (or admissions on the RFAs) or Judge Walton is going to have to rule on the Secretary's refusal.
There is no other way.

In terms of the RFPs, the Secretary:
1) refused to withdraw any of the objections;

4

2) refused to explain why none of the responsive documents had been produced despite the passage of months/why the Secretary did not move for a protective order, etc.;
3) indicated that for all of the requests, the Secretary had not conducted/completed searches and, therefore, did not know on what basis he might object to requests, whether responsive information was being withheld, and would not withdraw objections;
4) refused to indicate whether the multiple claims that information could be found in documents not produced were an effort to invoke Fed.R.Civ.P. 33(d);
5) did not provide a privilege log for any information being withheld on alleged grounds of "privacy" or "deliberative process privilege."; and
6) further contended that the "deliberative process privilege" protected materials even when the policy discussed was adopted.

If you believe my summary is inaccurate, just let me know.

With regard to the issues raised in your email shortly before the meet and confer:

1:   The issue of the codes is the subject of a separate email.
2:   Whether requests are allegedly duplicative is not a valid basis for objecting.
3:   Plaintiffs were offended by the knowing disregard for the Secretary's discovery obligations. I think too highly of you to believe that you are unaware that contention discovery is appropriate, that "deliberative process privilege" is not some talisman that shields all discovery, etc. In terms of the objections to the "Dexcom G5" and "Medtronic Minimed" being undefined, that is not a valid basis for objection either. I note that each of these RFAs (RFA Nos. 13 and 14) simply sought an admission that each device was "primarily and customarily used to serve a medical purpose." When you say that you "answered" those RFAs, you mean that you denied them. That is, e.g., you first objected that "Dexcom G5" was undefined and then denied that Ms. Lewis' Dexcom G5 was "primarily and customarily used to serve a medical purpose" at all times. That position is difficult to defend and, unless modified, will certainly be an exhibit to the coming motions for summary judgment.

I note that the discovery responses (rogs and RFAs) are signed only by yourself.
Unless a verification is provided by someone else, we will have nobody but you to depose about them when the depositions start.
Is that really what you want?

Regards,
James Pistorino

**From:** Bickford, James (CIV) <James.Bickford@usdoj.gov>
**Sent:** Tuesday, August 6, 2019 11:54 AM
**To:** James Pistorino <james@dparrishlaw.com>
**Cc:** Debbie Parrish <debbie@dparrishlaw.com>; Blumenfeld, Jeffrey <JBlumenfeld@lowenstein.com>
**Subject:** Lewis v. Azar

James,

While we maintain the objections asserted in our various discovery responses, we are willing to work to narrow our disagreements as to the scope of discovery in this case.

You have sought information about denials of Medicare coverage for continuous glucose monitors from all levels of the Medicare appeals process, dating back to December 13, 2012. HHS is having its contractors and components query their databases and will produce responsive records as follows. HHS will produce, in spreadsheet form, records of initial denials, redetermination denials, reconsideration

5

denials, and denials issued by administrative law judges, for claims with HCPCS codes A9276, A9277, and A9278. These are the codes that correspond to denials for non-covered CGM components. Although there are other HCPCS codes that would come within the literal terms of your request for production of records showing "each claim for CGM coverage . . . that was denied," it is my understanding from our previous conversations that you are not interested in records related to those other codes. (The other codes that I am aware of are K0553, K0554 and, for a portion of 2017, E1399 and A9999; these codes were used for covered CGM components, and any denials would be for reasons unrelated to this case.) For records of denials by the Medicare Appeals Council, HHS will conduct a keyword search of its records and will produce the actual decisions of the Council. It will limit its production to denials on the grounds that a CGM was not durable medical equipment within the meaning of the Medicare statute and regulations, and will not produce denials of CGM coverage for reasons unrelated to this case.

It our expectation that, for initial denials and redetermination denials, the spreadsheet will include all the categories of information that you sought in your requests for production (except for beneficiary name and address, which I discuss below). We are happy to produce a limited, representative set of the denial documents actually issued, so that you can see how the data recorded on the spreadsheet appeared in the actual documents. For reconsideration denials and denials issued by administrative law judges, we will likely need to produce the actual denial documents listed in the spreadsheets to capture the reasons that coverage was denied.

And HHS will further agree to produce records including HICNs, pursuant to an appropriate protective order. You have previously agreed to withdraw your request for beneficiary names. I expect that you will also withdraw your request for beneficiary addresses. We will not agree to the standard protective order for the Northern District of California, because we need the order to include language explicitly referencing the Privacy Act of 1974. We are preparing a draft order for your review.

Although we believe that we have validly objected to your requests for discovery from a period many times longer than the bounds of any class that your named plaintiffs could reasonably hope to represent, HHS is considering whether it will agree to produce records dating back to December 13, 2012. I regret that I do not have a final position from the agency at this moment, but I expect to have one shortly.

After producing these records, we may revise our discovery responses. As you know, many of your requests are duplicative. For example, your first request for production seeks the reasons for all initial claim denials, while your first, second, fourth, and fifth requests for admissions also concern the reasons for initial claim denials, as do your first and second interrogatories. We have answered many of these duplicative requests by referring you to the records that we are producing, which I have described above. After we have produced those records and had a chance to review them ourselves, we may be able to provide more substantive responses to your other discovery requests.

Finally, in our correspondence you have seemed especially offended that, in response to requests for admission in which you defined the terms "you" "refer to," and "statute," we objected to "Dexcom G5" and "Medtronic Minimed CGM" as undefined. (The term "CGM" was defined, though not used consistently.) I would simply note that we answered the two requests for admission in which those terms appear.

I look forward to speaking with you shortly.

James Bickford
Trial Attorney, Federal Programs Branch
Civil Division, U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

6

(202) 305-7632
<u>James.Bickford@usdoj.gov</u>

This email may contain information that is privileged, confidential, or otherwise protected by applicable law. If the reader of this email is not the intended recipient or the employee or agent responsible for delivery of the email to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or use of this email or its contents is strictly prohibited. If you have received this email in error, please notify the sender immediately and destroy all copies of it.