**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAROL A. LEWIS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Case No. 18-cv-2929 (RBW) |
| ALEX M. AZAR II, in his official capacity as Secretary of Health and Human Services, | ) |
| | ) |
| Defendant. | ) |

**MOTION FOR PROTECTIVE ORDERS**

**TABLE OF CONTENTS**

BACKGROUND ................................................................................................................... 1

ARGUMENT ........................................................................................................................ 4

    A.    This Court should enter an order protecting the Secretary from irrelevant, burdensome discovery. ............................................................................................ 4

    B.    This Court should adopt the Secretary's proposed Privacy Act protective order. ............ 10

CONCLUSION .................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**CASES**

*Almy v. Sebelius*,
  679 F.3d 297 (4th Cir. 2012) .................................................................................................. 9

*Berger v. Home Depot USA, Inc.*,
  741 F.3d 1061 (9th Cir. 2014) ................................................................................................ 8

*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997) .............................................................................................. 10

*Ne. Hosp. Corp. v. Sebelius*,
  657 F.3d 1 (D.C. Cir. 2011) .................................................................................................... 1

*Porzecanski v. Azar*,
  316 F. Supp. 3d 11 (D.D.C. 2018) ...................................................................................... 2, 4

*Rockwell Int'l Corp. v. Dep't of Justice*,
  235 F.3d 598 (D.C. Cir. 2001) .............................................................................................. 10

*United States v. Adebimpe*,
  819 F.3d 1212 (9th Cir. 2016) ................................................................................................ 2

**STATUTES**

5 U.S.C. § 552a(b)(11) ............................................................................................................ 10, 11

5 U.S.C. § 706(2)(A) ....................................................................................................................... 5

28 U.S.C. § 2201 ............................................................................................................................. 5

42 U.S.C. § 1395x(n) ...................................................................................................................... 1

42 U.S.C. § 1395ff(a)(1) ................................................................................................................. 2

42 U.S.C. § 1395ff(a)(3) ................................................................................................................. 4

42 U.S.C. § 1395ff(b)(1)(A) ................................................................................................... 4, 7, 9

42 U.S.C. § 1395ff(b)(1)(E) ............................................................................................................ 4

42 U.S.C. § 1395ff(c) ...................................................................................................................... 4

**REGULATIONS**

42 C.F.R. § 405.920 *et seq.* ................................................................................................. 2

42 C.F.R. § 405.940 *et seq.* ................................................................................................. 4

42 C.F.R. § 405.960 *et seq.* ................................................................................................. 4

42 C.F.R. § 405.968(a)(1) .................................................................................................... 9

42 C.F.R. § 405.1000(a) ...................................................................................................... 4

42 C.F.R. § 405.1000(d) ...................................................................................................... 9

42 C.F.R. § 405.1110 ........................................................................................................... 4

42 C.F.R. § 405.1130 ........................................................................................................... 4

42 C.F.R. § 405.1132 ........................................................................................................... 4

42 C.F.R. § 412.202 ..................................................................................................... 1, 5, 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAROL A. LEWIS, *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Case No. 18-cv-2929 (RBW) |
| ALEX M. AZAR II, in his official capacity as Secretary of Health and Human Services, | ) ) ) ) |
| Defendant. | ) ) ) |

**MOTION FOR PROTECTIVE ORDERS**

The Secretary of Health and Human Services respectfully moves the Court for the entry of two protective orders: one to protect the Secretary from burdensome discovery requests that have no relevance to any claims or defenses that may be raised or any class that may be certified in this case, and the other to permit the disclosure of information protected by the Privacy Act of 1974.

**BACKGROUND**

Medicare Part B "is an optional supplemental insurance program that pays for medical items and services not covered by Part A," which "covers medical services furnished by hospitals and other institutional care providers." *Ne. Hosp. Corp. v. Sebelius*, 657 F.3d 1, 2 (D.C. Cir. 2011). Part B covers "outpatient physician services" and "durable medical equipment," among other things. *Id.* This case presents the question of whether certain continuous glucose monitors (CGMs) are durable medical equipment under the Medicare statute and regulations. *See* 42 U.S.C. § 1395x(n); 42 C.F.R. § 414.202.

1

The complaint names two plaintiffs, Carol Lewis and Douglas Sargent, each of whom had claims for Medicare coverage of continuous glucose monitors denied. Ms. Lewis's claim for coverage of CGM sensors, a transmitter, and a receiver, was initially denied on the grounds that "Medicare does not pay for this item or service." AR 309–10; *see* 42 U.S.C. § 1395ff(a)(1); 42 C.F.R. § 405.920 *et seq.*; *Porzecanski v. Azar*, 316 F. Supp. 3d 11, 15 (D.D.C. 2018) (describing the system for making initial determinations of Part B coverage). Mr. Sargent's two claims for coverage of CGM sensors were initially denied with the same explanation, that "Medicare does not pay for this item or service." AR 1935, 2187. Like all durable medical equipment claims, these claims were submitted with billing codes: A9276 for the sensors, A9277 for the transmitter, and A9278 for the receiver. AR 309–10, 1935, 2187.[1] And as with many such claims, the submitting suppliers appended modifiers to these billing codes.

"In Medicare's claim submission system, suppliers" can place "'modifiers' on the claim to communicate information to Medicare." *United States v. Adebimpe*, 819 F.3d 1212, 1215 (9th Cir. 2016). More than three hundred such modifiers are currently in use, conveying a wide range of information. The GX modifier, which was used by the supplier for both of Mr. Sargent's claims, AR 1935, 2187, tells Medicare that the supplier issued a voluntary notice of liability to the beneficiary, indicating that the supplier did not expect Medicare to cover the equipment in question. As relevant here, the GY modifier, which was used by the supplier for all three components of Ms. Lewis's claim, AR 309–10, tells Medicare that the supplier believes the item or service is statutorily excluded—that is, not covered by Medicare—or does not meet the definition of any Medicare benefit.[2] When a supplier appends a modifier to a billing code, a

---

[1] These record pages are attached as Exhibit A.
[2] A dictionary of the current modifiers can be found at https://www.cms.gov/Medicare/Coding/

2

short description of that modifier appears on the initial coverage determination, after the description of the item or service that is the subject of the claim. For example, each of Mr. Sargent's initial denials for CGM sensors contained the following description:

> **Quantity, Item/Service Provided & Billing Code**
> ………………………………
> 90 Sensor; invasive (e.g., subcutaneous), disposable, for use with interstitial continuous glucose moni (A9276-GX)
> Voluntary liability notice

AR 1935, 2187. And the initial denial of Ms. Lewis's claim for a CGM transmitter contained this description:

> **Quantity, Item/Service Provided & Billing Code**
> ………………………………
> 1 Transmitter; external, for use with interstitial continuous glucose monitoring system (A9277-GY) Statutorily excluded

AR 310. The descriptions of the CGM sensor and receiver were similarly formatted; each included the GY modifier and the short description "Statutorily excluded." AR 309. These modifiers and their associated messages did not, however, provide the explanation for the denial of these claims. That explanation appeared in a note at the bottom of each page: "Medicare does not pay for this item or service." AR 309–10, 1935, 2187.

After receiving these initial denials, Ms. Lewis and Mr. Sargent pursued a series of administrative appeals. First, they sought "redetermination" by the same contractor that made

---

HCPCSReleaseCodeSets/Alpha-Numeric-HCPCS-Items/2019-Alpha-Numeric-HCPCS-File.html. Open the ZIP file, then open the Excel document titled HCPC2019_CONTR_ANWEB. The GX and GY modifiers are defined in rows 129 and 130.

the initial determination; their claims were again denied. AR 301, 1206, 2192; *see* 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.940 *et seq.*; *Porzecanski*, 316 F. Supp. 3d at 15 (describing redeterminations of Part B coverage). Next, they sought "reconsideration" by an independent contractor; their claims were denied once again. AR 285-86, 1176, 2167; *see* 42 U.S.C. § 1395ff(c); 42 C.F.R. § 405.960 *et seq.* (describing reconsiderations of coverage).

The plaintiffs then sought review by an administrative law judge. *See* 42 C.F.R. § 405.1000(a). Ms. Lewis's claim was again denied, AR 95, as was one of Mr. Sargent's, AR 2086–87. Mr. Sargent's other claim was approved by the administrative law judge. AR 1072. The Medicare Appeals Council, which makes the final decision for the Secretary, 42 C.F.R. § 405.1130, chose to review the decision in Mr. Sargent's favor; Mr. Sargent and Ms. Lewis sought review of the other decisions. *See* 42 C.F.R. § 405.1110. The Appeals Council denied both of Mr. Sargent's claims. AR 974, 2002. Before it could rule on Ms. Lewis's claim, she requested escalation to district court pursuant to 42 C.F.R. § 405.1132, AR 1, 3, and timely filed this complaint, along with Mr. Sargent.

## ARGUMENT

**A. This Court should enter an order protecting the Secretary from irrelevant, burdensome discovery.**

Ms. Lewis and Mr. Sargent are seeking "judicial review of the Secretary's final decision" that their continuous glucose monitors are not durable medical equipment under the Medicare statute and regulations. 42 U.S.C. § 1395ff(b)(1)(A). Mr. Sargent appeals from two decisions of the Medicare Appeals Council,[3] while Ms. Lewis appeals from the decision of an administrative

---

[3] As explained in the Secretary's pending partial motion to dismiss, this Court lacks jurisdiction over Mr. Sargent's appeals because the amount in controversy falls short of the statutory threshold. *See* 42 U.S.C. § 1395ff(b)(1)(E). Nonetheless, for ease of analysis, the Secretary will treat Mr. Sargent as a proper plaintiff for purposes of this motion.

law judge. These two named plaintiffs seek to represent a class of individuals who have had Medicare coverage of continuous glucose monitors denied. Under Rule 23, they can only do so if their "claims or defenses . . . are typical of the claims or defenses of the class" that they would represent. Fed. R. Civ. P. 23(a)(3).

Mr. Sargent and Ms. Lewis have only one core claim, although the complaint frames it in several ways: they claim that the denial of Medicare coverage for their continuous glucose monitors violated the Medicare statute and regulations.[4] Because these denials were grounded on the determination that their CGMs were not "primarily and customarily used to serve a medical purpose," 42 C.F.R. § 414.202, whether those monitors are so used is the "question of law or fact" that must be common to any class that this Court may choose to certify. Fed. R. Civ. P. 23(a)(2). Whether class certification would be appropriate, and on what terms, are questions for another day. At issue here is the scope of the discovery that can be taken on class certification and the merits of the plaintiffs' claim.

Plaintiffs have sought records of denials of CGM claims, and administrative appeals from those denials, which the Secretary will produce pursuant to an appropriate protective order. From those records, plaintiffs will be able to see the explanations that were given for the determination of each claim at each level of administrative appeal. But Plaintiffs have also

---

[4] As discussed in the Secretary's partial motion to dismiss, Plaintiffs plead this claim in many different ways, several of which fail to state a claim. For purposes of this motion, it does not matter whether the Court chooses to resolve the claim under the Administrative Procedure Act's arbitrary and capricious standard, 5 U.S.C. § 706(2)(A), see Compl. ¶¶ 152–54, or under the Declaratory Judgment Act, 28 U.S.C. § 2201, see Compl. ¶¶ 164–66, or under one of the other legal frameworks alleged by Plaintiffs. Whether the denial of Medicare coverage for certain continuous glucose monitors violated the Medicare statute and regulations will be the legal issue that this Court must resolve in any case. To the extent that Plaintiffs intend to assert a separate, procedural challenge, see Compl. ¶¶ 158–60, the discovery matters discussed here have no relevance to that claim.

sought internal agency documents, such as memoranda and meeting notes, regarding 1) the "statutorily excluded" message that appears on initial determinations when a supplier uses the GY modifier, and 2) the explanations given for initial denials.

Specifically, plaintiffs have sought discovery related to "any policy or practice of indicating 'Statutorily excluded'" on "<u>initial denials</u> of CGM claims, including (but not limited to) when such policy or practice came into place, and any deliberations or discussions about adopting, continuing, or discontinuing such a policy or practice."  Request for Production No. 3 (emphasis added).  They have also sought discovery of "all documents that constitute or refer or relate to" the explanations for <u>initial denials</u> of CGM claims, including a) "who created and/or drafted" those explanations, b) "who approved" them, c) "the minutes or notes of any meeting where such" explanations for initial denials were "discussed," d) "any memos discussing the" explanations for such initial denials, and e) "how and when" such explanations were "communicated to Medicare contractors."  Request for Production Nos. 9 & 10.[5]  These requests are quite burdensome, and entirely irrelevant to plaintiffs' claims or to any class that may be certified on the basis of those claims.

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering," among other things, "the importance of the discovery in resolving the issues, and whether the burden . . . of the proposed discovery outweighs its likely benefit."  The discovery

---

[5] Request for Production No. 9 appears to concern the explanations given for initial denials of CGM claims, while Request for Production No. 10 seems to focus on the true grounds for such denials.  Because the explanations given for the initial denials were their true grounds, there is in practice little difference between these requests.  Portions of these two requests seek information about the denials themselves, rather than internal documents related to their creation; the Secretary will produce the information about the denials themselves pursuant to an appropriate protective order.

6

requests at issue here are not relevant to any claim or defense that might be raised by the named plaintiffs. Plaintiffs' only claim, however framed, is that their continuous glucose monitors are durable medical equipment within the meaning of the Medicare statute and regulations, and should therefore have been covered by Medicare Part B. Internal documents about the "statutorily excluded" message—which, as explained above, is not an explanation for initial denials but rather a message generated by a supplier's use of the GY billing code modifier[6]— have no relevance to plaintiffs' claim that their CGMs are "primarily and customarily used to serve a medical purpose" under 42 C.F.R. § 414.202. Nor do the other internal documents requested, such as meeting notes related to explanations given for the initial denial of CGM claims, have any relevance to plaintiffs' claims. (In the relevant period, CGM claims were denied with a wide variety of explanations, most of which have nothing to do with this case, including "Payment cannot be made for equipment that's the same or similar to equipment already being used" and "The provider of this service is not eligible to receive Medicare payments.")

Plaintiffs' individual claims turn entirely on the legal sufficiency of the explanation given in "the Secretary's <u>final decision</u>," 42 U.S.C. § 1395ff(b)(1)(A) (emphasis added), that their continuous glucose monitors are not durable medical equipment under the Medicare statute and regulations. Internal documents about the explanations for <u>initial denials</u>, several appeals removed from the Secretary's final decisions, are doubly irrelevant to Plaintiffs' individual claims. First, the explanations for initial denials are irrelevant to the question of whether "the Secretary's final decision" rested on legally permissible grounds. And second, even if the

---

[6] By the same token, "Voluntary liability notice," which is the message generated by a supplier's use of the GX modifier, is not an explanation for initial denials. *See* AR 1935, 2187.

7

explanations for initial denials were themselves somehow relevant (which they are not), memoranda, meeting notes, and other internal documents related to those explanations would still be irrelevant to this Court's review.

Turning to the putative class, plaintiffs have suggested that internal documents about the "statutorily excluded" message on initial denials may be relevant to class claims or defenses in either of two ways, and that internal documents about the explanations for initial CGM denials may be similarly relevant. Neither explanation has any merit. First, plaintiffs have said that either the "statutorily excluded" message or the explanations for initial denials were used to conceal the true reason for the denial of CGM claims, which was that certain CGMs did not meet the requirements of the Medicare regulations. Plaintiffs seem to suggest that the "statutorily excluded" message or the explanations given for initial denials dissuaded beneficiaries from filing administrative appeals, and that those beneficiaries should therefore be excused from exhausting their administrative remedies before bringing a claim in federal court.

This theory has many flaws. But the flaw most relevant here is that <u>neither Ms. Lewis nor Mr. Sargent seeks to be excused from exhausting administrative remedies</u> on the theory that the letters initially denying their Medicare claims induced them to abandon their administrative appeal rights through purportedly deceptive language. Both Ms. Lewis and Mr. Sargent fully exhausted their administrative remedies. Their claims and defenses are therefore not "typical . . . of the class" of individuals allegedly deceived by their initial denial letters, who now wish to assert that deception as a defense to their failure to exhaust. Fed. R. Civ. P. 23(a)(3). Ms. Lewis and Mr. Sargent plainly understood their appeal rights, and exercised them; under Rule 23(a), they cannot represent a sub-class of individuals who allegedly misunderstood theirs. *See, e.g.*, *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1076 (9th Cir. 2014) ("Because he is not a

member of those subclasses, Berger cannot prosecute claims on their behalf."), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017).  And because the argument that the "statutorily excluded" message or another element of the initial denial letter was deceptive cannot play any role in the class claims or defenses (any more than it can play such a role in the individual claims), discovery on that subject is not relevant under Rule 26(b)(1).

Alternatively, plaintiffs have suggested that the explanations given for initial denials may bind the Secretary as a claim proceeds through the various levels of administrative review, such that each appeal merely adjudicates the adequacy of the original explanation.  Even if this were true, it would not justify the discovery of internal notes or memoranda about the creation of these explanations: a court would simply review the explanations actually given.  But plaintiffs' premise is flatly incorrect.  Each level of the administrative appeals process reviews each claim *de novo*: the Medicare Appeals Council accords no deference to the administrative law judge, *see, e.g.*, *Almy v. Sebelius*, 679 F.3d 297, 310 (4th Cir. 2012), who accords no deference to the decision on reconsideration, 42 C.F.R. § 405.1000(d), which is "independent" of the decisions on redetermination or initial determination, *see id.* § 405.968(a)(1).  Internal documents about the explanations for <u>initial denials</u> therefore have no relevance to any individual or potential class claims or defenses in a case about "the Secretary's <u>final decision</u>." 42 U.S.C. § 1395ff(b)(1)(A) (emphasis added).

Pursuant to an appropriate protective order, the Secretary will produce records of the decisions made at each level of administrative review for putative class members.  These records will contain the explanations for each final decision (and every intermediate decision, as well), which form the basis for any judicial review.  This discovery will allow the parties to brief, and the Court to determine, the question of whether class certification is appropriate under Rule 23.

9

But plaintiffs are not content to discover the explanations actually given by the agency for its decisions: they also wish to probe internal documents related to the formulation of those explanations, as well as the "statutorily excluded" message that appears when suppliers use the GY modifier.  As explained above, those requests for production have no relevance to any individual or class claim or defense that could play any part in this case.  And the requests are quite burdensome besides, far outweighing any benefit that the information would likely provide.  (For example, Requests for Production Nos. 9 and 10 seek meeting minutes related to the dozens of different explanations for the initial denial of CGM claims, all but one of which—"Medicare does not pay for this item or service," the basis for both Ms. Lewis's and Mr. Sargent's denials—is completely irrelevant here.)  Moreover, internal documents that are deliberative in nature and which predate the Secretary's final decision are protected from disclosure by the deliberative process privilege.  *See, e.g.*, *See Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 601 (D.C. Cir. 2001); *In re Sealed Case*, 121 F.3d 729, 737, 745 (D.C. Cir. 1997).  For those reasons, these discovery requests are not authorized by Rule 26(b)(1), and this Court should enter an order protecting the Secretary from them.

A proposed order is attached as Exhibit B.

**B.**     **This Court should adopt the Secretary's proposed Privacy Act protective order.**

Plaintiffs have sought discovery of continuous glucose monitor claims made by Medicare beneficiaries who are not parties to this action.  Because the requested records contain private medical information, under the Privacy Act they may (as relevant here) only be disclosed "pursuant to the order of a court of competent jurisdiction."  5 U.S.C. § 552a(b)(11).  The Secretary has proposed such an order, tailored to the needs of this case.  Plaintiffs have instead proposed the model protective order from the Northern District of California, which does not

address the Privacy Act concerns presented here, and would inappropriately incorporate many of that district's local rules.

The Secretary's proposal is modeled on the order entered in *M.W. v. U.S. Dep't of Army*, No. 5:16-cv-4051 (N.D. Cal.), *see* Dkt. Nos. 58 & 60, which the Secretary selected in an effort to reach accommodation with plaintiffs.  Section 8.2 of the Secretary's proposed order is especially critical as it makes clear that, under 5 U.S.C. § 552a(b)(11), the order "provides a basis for release of the requested records, documents, and other information pursuant to the Privacy Act" and "insulates Defendants from potential liability under the Privacy Act for improper disclosure."  Other significant items include the definition of the terms "Individually Identifiable Health Information," "Personally Identifiable Information," and "Protected Health Information," which are used elsewhere in the proposed order.  Although plaintiffs did not object to Section 8.2 or any of these definitions in the parties' discussions of a protective order or the joint filing recently submitted to the Court, plaintiffs now seek the entry of an order omitting them.

In the parties' conversations, plaintiffs have objected to only three elements of the Secretary's proposal.  Plaintiffs objected to Section 5, which adverts to independent legal obligations regarding "the privacy of personal and health information," and provides that the parties "agree to take all measures necessary to comply with the requirements of . . . any . . . applicable laws" governing the handling of this information.  Plaintiffs also objected to the phrase in Section 6.1 which provides that "all [Protected Health Information] and [Personally Identifiable Information] may be appropriately designated as 'CONFIDENTIAL.'"  The grounds for plaintiffs' objection were not clear.  The Secretary seeks the inclusion of these provisions to insure that plaintiffs are aware of and intend to comply with their legal obligations regarding personal and health information, and to make clear that all such information is appropriately

designated as confidential.  The Secretary is concerned that, absent the disputed phrase in Section 6.1, plaintiffs may object to the designation of Protected Health Information or Personally Identifiable Information as "CONFIDENTIAL," which would create ongoing disputes between the parties and additional burdens on the Secretary.

Plaintiffs also objected to Section 3, which describes the scope of the protective order. Plaintiffs seek to add language providing that "any copies, excerpts, summaries, or compilations of Protected Material that do not reveal a beneficiary's name, address, or HICN [a unique numerical identifier] are not CONFIDENTIAL."  The Secretary objects to this addition, on the grounds that decisions by the Medicare Appeals Council or an administrative law judge (or, less likely, an administrative contractor) may contain enough specific information about a beneficiary to effectively identify him without the use of his name or HICN.  Such decisions can contain detailed background sections which may, in some cases, reveal specific identifying facts or circumstances.  Plaintiffs' proposed language would allow them to publicly use any such identifying information without redaction.  The Secretary instead proposes that the protective order define "group-level statistics derived from Protected Material (e.g., X% of initial denials were submitted for redetermination, or Y decisions were made on a particular legal basis)" as unprotected, and leave the remainder of the scope provision as it exists in the N.D. Cal. model order.  The Secretary has also offered to stipulate to the appropriateness of the release of any particular excerpt or summary of protected information that plaintiffs may wish to use provided the Secretary is able to review it first.  It should be easy to agree that concrete examples do not contain protected material.

The Secretary respectfully asks this Court to enter his proposed Privacy Act protective order, which is attached as Exhibit C.

## CONCLUSION

For the reasons set forth above, this Court should enter the Secretary's proposed protective orders.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MICHELLE BENNETT
Assistant Director, Federal Programs Branch

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

Date: September 20, 2019            *Counsel for Defendant*