## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAROL A. LEWIS, *et al.*,                          )
                                                   )
          Plaintiffs,                    )
                                                   )
   v.                                          )
                                                   )   Case No. 18-cv-2929 (RBW)
ALEX M. AZAR II, in his official                   )
capacity as Secretary of Health and               )   **PLAINTIFFS' OPPOSITION TO**
Human Services,                                    )   **DEFENDANT'S MOTION**
                                                   )   **FOR PROTECTIVE ORDER**
          Defendant.                     )
_____)

Plaintiffs Carol Lewis and Douglass Sargent respectfully file their opposition to the Secretary's motion for protective order. There is no merit to the Secretary's claims.

By way of background, this is the case where the Secretary has denied claims on the grounds that a life-saving CGM serves no medical purpose. The Secretary has fully litigated this issue three times before and lost. Moreover, because that position is so baseless, each of those Courts effectively sanctioned the Secretary by awarding attorneys' fees to the plaintiffs.

In this fourth case, the Secretary is employing the tactics of sheer delay. Those tactics have included violating multiple agreements related to discovery. More than 125 days after requests for production were first served, not a single document has been produced. During this extended period of delay, it is believed that the Secretary has denied in excess of 40,000 claims for CGM coverage on the grounds that a CGM serves no medical purpose.

### I.   DISCUSSION

#### a.  Plaintiffs' Proposed Protective Order Should Be Entered

As an initial matter, of course, the Secretary has been engaged in a multi-month delay effort with respect to production founded on a protective order. Plaintiff first raised the issue of a

protective order in April, addressed it in the Joint Report pursuant to Civil Local Rule 16.3 on June

12, at the Scheduling Conference, and sent the Secretary a copy of the Model Protective Order

from the Northern District of California on June 18, 2019.  When there was no response from the

Secretary on the protective order but the Secretary objected to production because one was not

entered, Plaintiffs indicated their intention to contact the Court.  The Secretary then committed to

proposing any revisions by August 9, 2019.  The Secretary did not keep his word and nothing in

this regard was received until August 20, 2019, more than 60 days after Plaintiffs sent the Model

Order.

On August 29, 2019, the parties contacted the Court seeking a discovery conference.

Thereafter, on September 3, 2019, the parties were directed to submit a statement describing the

discovery disputes.  During the call held on September 13, 2019, the Court indicated that from the

Secretary's papers it did not understand why Plaintiffs' proposed protective order was insufficient

and the Secretary requested, and was granted, another seven (7) days to file a paper more fully

explaining its position.

The Secretary's current paper is nearly a verbatim repetition of the material submitted on

September 3, 2019.  Pages 4-6 of the September 3, 2019 paper contain the Secretary's position

with respect to a protective order.  Pages 10-12 of the current paper contain the Secretary's

position.  Other than the first two sentences on page 10, the remainder is identical to the material

submitted on September 3, with only individual, non-material, words changed here and there.

Thus, the additional filing from the Secretary did not substantively advance the issue, but it did

result in additional delay.

Plaintiffs have proposed the Model Protective Order from the Northern District of

California, modified only to make clear that anything that does not reveal a beneficiary's name,

address, or HICN (*e.g.*, excerpts and compilations) is not confidential.  Addressing that now will avoid future disputes about what is and is not confidential.  The Secretary has never explained how Plaintiffs' proposal is insufficient.

By contrast, the Secretary's proposed protective order is unworkable and would lead to further disputes.  In particular, the Secretary's proposed protective order seeks to:

1) shield information that would be produced in response to a FOIA request (*see* Para. 3 "any information copied or extracted from Protected Material", "excerpts, summaries, or compilations"); and

2) place the burden of determining what is allegedly confidential on Plaintiffs (*see* Para. 5) thereby leading to uncertainty and the possibility of Plaintiffs being accused of unwittingly violating the protective order.

These proposals would only lead to further disputes and uncertainty.

Plaintiffs proposed protective order should be adopted.

### b.  Production in Response to Plaintiffs' Requests for Production Should be Ordered

### i.  Plaintiffs' Requests for Production/Admission

### 1.  Background

After submitting a claim, a Medicare beneficiary receives *from Medicare* a "Medicare Summary Notice" detailing whether claims have been initially approved or denied, the associated amounts, and the reasons therefore.[1]  As noted in the Complaint, the Secretary has provided initial denials to beneficiaries claiming that CGMs are "statutorily excluded."  For example, that explanation was provided to Ms. Lewis on the denial that is at issue in this case.  *See* AR307-10.

---

[1] Medicare beneficiaries with Medicare Advantage Plans/Part D coverage receive a similar paper called an "Explanation of Benefits."

In other cases, such as Mr. Sargent's, the initial denial is silent as to the reason for the denial except saying: "Medicare does not pay for this item or service."[2]

Since May 20, 2019, *i.e.*, more than four months ago, Plaintiffs have sought documents reflecting any policy or practice of telling beneficiaries that CGMs were "statutorily excluded", how that policy or practice came into place and any deliberations or discussions about adopting, continuing, or discontinuing such a policy or practice. *See* Request for Production No. 3. *See* Exhibit A. Plaintiffs also sought that same information for any explanation for an initial denial (not just "statutorily excluded") when it became clear that other explanations might have been provided.

Medicare billing is controlled by directives from the Secretary. Thus, beneficiaries (or suppliers acting on the beneficiaries' behalf) submit claims using various codes dictated by the Secretary. At least some of that direction comes in the form of Local Coverage Articles/Policy Articles. For example, Local Coverage Article A52464 ("Glucose Monitor") (excerpt attached as Exhibit B) indicates that anything that does not comply with CMS 1682R's requirement should be billed with various codes. Thus, all the billing is done at the Secretary's direction and somebody, somewhere decided that "statutorily excluded" was one of the explanations that was going to be given to beneficiaries when denying their CGM claims.

## 2.   The Requested Information is Relevant

The requested information is relevant to multiple issues in this case, including at least the basic question of coverage, the class action nature of this case, and whether the exhaustion/60 day requirements should be waived. Plaintiffs do not know the true reasons the Secretary adopted

---

[2] Regardless of the reasons set forth in the initial denials, the true reason for the Secretary's denial of these claims is the Secretary's contention that the a CGM is not "primarily and customarily used to serve a medical purpose."

these policies because, of course, they are being withheld.  That said, assume *arguendo* that, knowing that there was no statute that precluded coverage, the Secretary adopted a policy of saying "statutorily excluded" for the deliberate purpose of deceiving beneficiaries and discouraging them from appealing initial denials.  Likewise, for the same reasons, assume that the Secretary adopted a policy of saying anything other than "a CGM serves no medical purpose."  That information would be relevant to the basic question of whether Ms. Lewis' claim should be covered because it would be an admission contradicting the Secretary's alleged basis for denial.

Likewise, that information would be relevant to the issue of whether the exhaustion/60 day requirements should be waived.  Of course, the exhaustion and 60-day requirements are not jurisdictional.  *See, e.g., Smith v. Berryhill*, 139 S.Ct. 1765, 1773-4 (2019).  Those requirements may be waived by the Secretary or by the Court.  *Id.*  While there may be other bases for waiving the requirements, at least one such basis is equitable tolling.  *See, e.g., Bowen v. City of New York*, 476 U.S. 467, 479-80 (1986).  One basis for such tolling is where "the Government's secretive conduct prevents plaintiffs from knowing of the violation of rights."  *Id*. at 481-2 (internal citations and quotations omitted).  Thus, the information is relevant to the issue of whether the government intentionally or inadvertently engaged in secretive conduct in this case and, therefore, whether the exhaustion/60 day requirements should be waived.

Conversely, if the government was, in fact, explaining to beneficiaries in initial denials that their claims were being denied because CGMs serve no medical purpose, and did so so that people would pursue their appeal rights, that would be information indicative that maybe the exhaustion/60 day requirements should not be waived.  Only the requested discovery will allow a determination of that issue.

Plaintiffs do not believe that there is an "statute" that precludes CGM coverage and that the Secretary's representation to beneficiaries that there is was false. Thus, for both reasons set forth above, Plaintiffs served Request for Admission No. 10 (attached as Exhibit C) asking the Secretary to admit the same. Perhaps appreciating the gravity of falsely claiming there is such a statute (and being required to identify it) or admitting that there is no such statute and that its representations to the beneficiaries were false, the Secretary has simply refused to admit or deny the Request for Admission.

The requested information is relevant to multiple issues in this case and responsive production should be ordered by a date certain without further delay.

### ii.  The Secretary's Claims Are Without Merit

The Secretary offers a smorgasbord of reasons why he does not want to produce the requested information. However, the Secretary makes vanishing little effort to substantiate any of these claims. Regardless, making those claims has achieved yet more delay.

#### 1.  Burdensomeness

As an initial matter, the Secretary contends that production is burdensome. *See, e.g.*, Mot. at 6. However, the Secretary never provides any factual basis for that claim. Is it 10 documents or 10,000? The Secretary does not say. As the party seeking a protective order, the Secretary bore the burden of establishing that compliance with relevant requests would be burdensome and the Secretary made no effort to do that.

#### 2.  Privilege

The Secretary makes a general claim of privilege in the responsive materials. Mot. at 10. As the party asserting privilege, the Secretary bore the burden of establishing that a privilege applies and providing enough information so that the claim can be assessed by Plaintiffs. *See*

Fed.R.Civ.P. 26(b)(5).  The Secretary made no effort to do so.  No privilege log of any kind has been served.  Indeed, this is exactly the kind of conclusory claim of privilege that has been rejected by other Courts in this District.  *See, e.g., U.S. Dept. of Treasury v. Pension Benefit Guaranty Corp.*, 222 F.Supp.3d 38 (D.D.C. 2016) (Sullivan, J.).  Having totally failed to make the required showing, the Secretary's privilege claim is meritless.

Moreover, no claim of privilege could even apply in the first place.  All of the documents sought in this case relate to policies that were actually adopted by the Secretary.  Thus, regardless of whether the documents are "pre-decisional", because the policy was adopted, they are not privileged.  *See, e.g., Pension Benefit*, 222 F.Supp.3d at 42-3; *U.S. v. Philip Morris USA, Inc.*, 218 F.R.D. 312 (D.D.C. 2003) (Kessler, J.).

### 3.  Alleged Irrelevance

The Secretary's general claim that the discovery is not relevant is addressed above.  The Secretary also alleges that, regardless of what was said in the initial denial, only what was said in the decision from the MAC is relevant.  Mot. at 9.  That is simply not so.  Pursuant to 42 C.F.R. § 405.1032, absent special efforts not employed here, the only issues the ALJ may consider are those "that were brought out in the initial determination, redetermination, or reconsideration that were not decided entirely in a party's favor."  Further, pursuant to 42 C.F.R. § 405.1112(c), the MAC's review is limited to specific alleged errors in the ALJ's decision.  Finally, pursuant to 42 U.S.C. § 405(g), the Court's review is to be based on the administrative record before the agency.[3]

---

[3] The Secretary misreads 42 C.F.R. § 405.968(a)(1).  Reconsiderations by the "Qualified Independent Contractor" (QIC) are "independent" in the sense the QIC is allegedly a third-party decision maker (i.e., not an employee of Medicare).  Again, as set forth there, the QIC's decision is to be based on the evidence and findings at the claim levels below.

Thus, it is improper for an ALJ to craft new bases for denial not listed in the initial determination and it is further improper for the MAC to craft new bases for denial not listed in the ALJ's decision.  Accordingly, pursuant to 42 U.S.C. § 405(g), the review in this case starts with the basis for the initial denial, if any, and proceeds from there.  "Final", as used in 42 U.S.C. § 405(g), refers to the fact that there is to be no further consideration by the agency, not that judicial review is limited to the last paper issued by the Secretary.  Indeed, in Ms. Lewis' case, there was no separate MAC decision, so the review is limited to the ALJ decision allegedly based on the decisions below.

### iii.  Typicality

This Court has indicated that class certification pleading will begin after the class discovery is complete.  Pursuant to Fed.R.Civ.P. 23(a)(3), Plaintiffs will have to make a showing that their claims or defenses are typical of the class.  The Secretary seeks to preclude Plaintiffs from making that showing by simply refusing to produce the requested discovery.  This is akin to a party refusing to produce discovery because it has what it feels is a dispositive motion pending.  There would obviously be no basis for such a position.  Likewise here.  Once the requested discovery has been provided, all the parties and the Court will be in a position to evaluate whether the Plaintiffs' claims are typical of the class.  Plaintiffs believe that it would be improper to make that determination now, without discovery.

While Plaintiffs do not believe that the Court should take up typicality at this time, at best, the Secretary appears to be contending that, as a matter of law, the Plaintiffs cannot satisfy the typicality requirement.  There is no basis for such a claim.  Whether the typicality requirement is met will be based on the factual showing by Plaintiffs and the discovery sought is designed to allow Plaintiffs to do just that.

To the extent that the Court wants to consider the issue at this time, Plaintiffs' claim is that the Secretary has been improperly denying claims for CGM coverage on the grounds that a CGM is not "primarily and customarily used to serve a medical purpose." "Typicality requires that the claims of the representatives be typical of those of the class," *See, e.g., Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 9 (D.D.C. 2010), and is generally satisfied "when the plaintiffs' claims arise from the same course of conduct, series or events, or legal theories of other class members." *In re XM Satellite Radio Holdings Secs. Litig.*, 237 F.R.D. 13, 18 (D. D.C. 2006). "The facts and claims of each class member do not have to be identical to support a finding of typicality; rather [t]ypicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff." *Radosti v. Envision EMI, LLC*, 7171 F.Supp.2d 37, 53 (D. D.C. 2010). "Demonstrating typicality does not mean showing that there are no factual differences between the claims of the plaintiffs." *Bynum v. District of Columbia*, 214 F.R.D. 27, 35 (D. D.C. 2003).

Plaintiffs' claims arise from the same course of conduct (i.e., the denial of their CGM claims on the grounds that they are not "primarily and customarily used to serve a medical purpose") as all the members of the class. A quote from *Matyasovszky v. Housing Authority of the City of Bridgeport*, 226 F.R.D. 35, 42 (D. Conn. 2005) may be instructive:

> In government benefit class actions, the typicality requirement is generally satisfied when the representative plaintiff is subject to the same statute, regulation, or policy as class members. In *Robidoux v. Celani*, the Second Circuit noted that when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met, regardless of minor variations in the fact patterns underlying individual claims. A plaintiff's claim is not atypical when an alleged defense may affect an individual's right to recover, but does not affect the presentation of the case on the liability issues for the class.

Here, both Plaintiffs and all the class members have been subject to the same misguided policy without legal basis and the Plaintiffs therefore satisfy the typicality requirement. That the

Secretary feels that he has better defenses against some of the class members or that there are minor factual differences does not affect whether the Plaintiffs are "typical" within the meaning of the Rule.

Nevertheless, Plaintiffs stress that the Court should not decide this issue without allowing Plaintiffs the opportunity to make a complete showing based in part on the requested discovery.

### c. Defendants Should be Ordered to Admit or Deny the Requests for Admission

Not addressed during the conference held on September 13, 2019, was the Secretary's refusal to admit or deny Requests for Admission Nos. 10 and 11.  *See* Exhibit C.  For the reasons set forth in Dkt. # 37 at 14-15, the Secretary should be ordered to admit or deny these requests.

## II.    CONCLUSION

For the reasons set forth above, Plaintiffs' proposed protective order should be entered, production of the requested materials ordered by a date certain without further delay, Defendants ordered to admit or deny the requests for admission they have refused to.

Respectfully submitted,

/s/Jeffrey Blumenfeld
D.C. Bar No. 181768
LOWENSTEIN SANDLER LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 753-3800
Facsimile:  (202) 753-3838
jblumenfeld@lowenstein.com

*and*

PARRISH LAW OFFICES
James C. Pistorino
224 Lexington Dr.
Menlo Park, CA  94025
Telephone: (650) 400-0043
james@dparrishlaw.com

*Attorneys for Plaintiffs*

Date: September 23, 2019