**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CAROL A. LEWIS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 18-cv-2929 (RBW) |
| ALEX M. AZAR II, in his official | ) | |
| capacity as Secretary of Health and | ) | |
| Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDERS**

The Secretary has agreed to produce records of the decisions made at each level of administrative review—initial determination, redetermination, and reconsideration, as well as decisions by administrative law judges and the Medicare Appeals Council—for members of a putative class of individuals denied Medicare coverage for continuous glucose monitors (CGMs). These records contain the explanation for each coverage decision, and their production is not in dispute (although it will require the entry of an appropriate protective order).

What the Secretary challenges here are plaintiffs' requests for two categories of internal policy and deliberative documents. First, plaintiffs are seeking discovery related to "any policy or practice of indicating 'Statutorily excluded'" on "initial denials of CGM claims, including . . . any deliberations or discussions about . . . such a policy or practice." Request for Production No. 3. Second, plaintiffs are seeking "documents that . . . relate to" the explanations for initial denials of CGM claims, including documents that show a) "who created and/or drafted" those explanations, b) "who approved" them, c) "the minutes or notes of any meeting where such" explanations for initial denials were "discussed," d) "any memos discussing the" explanations for

such initial denials, and e) "how and when" such explanations were "communicated to Medicare contractors."  Request for Production Nos. 9 & 10.

As the Secretary explained in his motion, these requests are irrelevant to the merits of plaintiffs' coverage claim, or to any class that could be certified here.  The merits of the case rest upon the legal sufficiency of "the Secretary's final decision" that certain continuous glucose monitors are not durable medical equipment under the Medicare statute and regulations.  42 U.S.C. § 1395ff(b)(1)(A).  Nothing that could be gleaned from internal documents about the development of initial denials will be relevant to this Court's review of that decision.  As for class discovery, named plaintiffs who understood their appeal rights and exercised them cannot represent individuals allegedly deceived into abandoning theirs.  Because no plaintiff in this case seeks to use ostensibly deceptive language in initial denials as a defense against his or her failure to exhaust, discovery of internal documents related to those initial denials is again irrelevant.

Plaintiffs disagree, suggesting in their opposition that the requested records are relevant both to the merits of their claim and to the question of class certification.  Their argument as to the merits is difficult to parse.  At one point, plaintiffs say that internal policy and deliberative documents about the formulation of initial denials could "be relevant to the basic question of whether Ms. Lewis' claim should be covered" because they may contain "an admission contradicting the Secretary's alleged basis for denial."  ECF No. 40 at 5.  The basis for the denial of Ms. Lewis's claim (and both of Mr. Sargent's) is the Secretary's determination that the continuous glucose monitor in question was not durable medical equipment under the Medicare statute and regulations.  Plaintiffs seem to be suggesting that this decision may have been made in bad faith—that there may be internal documents contradicting the Secretary's public position, and privately acknowledging that plaintiffs are correct.

Judicial review of administrative action does not allow for such broad and unsubstantiated allegations of impropriety.  Federal courts review the legal sufficiency of "'the basis articulated by the agency' in the [administrative] record" for undertaking the challenged action.  *Genuine Parts Co. v. EPA*, 890 F.3d 304, 314 (D.C. Cir. 2018) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 50 (1982)); *see Checkosky v. SEC*, 23 F.3d 452, 489 (D.C. Cir. 1994) (declaring that "[a]gency opinions, like judicial opinions, speak for themselves").  They do not, absent exceptional circumstances, probe to see if some other motive lurks behind that stated rationale.  As this Court has explained, "because 'the reasonableness of the agency's action is judged in accordance with its stated reasons' under the arbitrary and capricious standard of review, 'the actual subjective motivation of agency decisionmakers is immaterial as a matter of law—unless there is a showing of bad faith or improper behavior.'"  *Styrene Info. & Research Ctr., Inc. v. Sebelius*, 944 F. Supp. 71, 85 (D.D.C. 2013) (Walton, J.) (quoting *In re Supoena Duces Tecum*, 156 F.3d 1279, 1279–80 (D.C. Cir. 1998)).  That showing, moreover, must be a "strong" one.  *United States v. Microsoft Corp.*, 56 F.3d 1448, 1459 (D.C. Cir. 1995) ("Even when a court is explicitly authorized to review government action under the Administrative Procedure Act, 'there must be a strong showing of bad faith or improper behavior' before the court may 'inquir[e] into the mental processes of administrative decisionmakers.'" (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (alteration in original)).

Plaintiffs have not even attempted such a showing here.  This Court's role is therefore to decide whether the Secretary's coverage determination was legally sufficient based on the administrative record.  If the Court finds that this determination was reasonable, it should rule for the Secretary; if it finds to the contrary, it should rule for plaintiffs.  The case is that simple—and

subjective motivation plays no part in it.  The disputed discovery is therefore not relevant to the merits of plaintiffs' claim.[1]

Nor is the disputed discovery relevant to class certification.  Plaintiffs are seeking to certify a class of individuals who had Medicare coverage denied on the grounds that their continuous glucose monitors were not durable medical equipment under the Medicare statute and regulations.  They would like to include within that class individuals who did not exhaust their administrative remedies.  One theory for why this Court should include those individuals is, apparently, that the language on the documents denying their claims led them to misunderstand the basis for the denial and so abandon their right to appeal.  But neither named plaintiff abandoned his or her appeal rights; both exhausted their claims fully.  Neither claims to have been deceived by any language on their initial denials.  As the Secretary explained in his motion,

---

[1] Plaintiffs also argue that the Secretary's initial denials themselves are relevant to judicial review.  ECF No. 40 at 7–8.  This is not an argument that internal documents about the formulation of those initial denials are relevant.  And in any case, the Secretary agrees that the initial denials themselves are relevant in the broadest sense, which is why they were included in the administrative record and will be produced in class discovery (once an appropriate protective order is entered).  But plaintiffs misunderstand the relationship between those initial denials and the Secretary's final decision.  After the initial denial, a beneficiary may seek redetermination, which is "an independent review of an initial determination," and may include new evidence and raise new issues.  42 C.F.R. § 405.948.  Redetermination is followed by reconsideration, a similarly "independent, on-the-record review of an initial determination, including the redetermination and all issues related to payment of the claim," at which new evidence may again be taken.  *Id.* § 405.968.  Reconsideration is followed by a hearing before an administrative law judge, who "conducts a de novo review," *id.* § 405.1000(d), resolving "all the issues for the claims or appealed matter specified in the request for hearing that were brought out in the initial determination, redetermination, or reconsideration that were not decided entirely in a party's favor."  *Id.* § 405.1032(a).  Before the ALJ, new issues may be raised and new evidence presented in certain circumstances.  *Id.* §§ 405.1018, 405.1028, 405.1032(b); *see also* § 405.1122 (a)(1) (acknowledging that an ALJ may "decide[] a new issue that the parties were not afforded an opportunity to address").  Finally, the Medicare Appeals Council "undertakes a de novo review" of the "ALJ's . . . decision."  *Id.* § 405.1100(c); *see* 42 U.S.C. § 1395ff(d)(2)(B); *Almy v. Sebelius*, 679 F.3d 297, 310 (4th Cir. 2012) ( "[T]he MAC is explicitly charged with undertaking *de novo* review" and is not "obligated to defer to the outcomes of prior decisions below.").

ECF No. 39 at 8–9, they therefore cannot represent the subclass of individuals who would assert

that defense.  And even if plaintiffs could represent those individuals, discovery of internal

policy documents about the formulation of initial denials would still be inappropriate.  Surely it

is the objective effect of the initial denials and their purported impact on putative class members

who failed to exhaust, and not the subjective intent of the authors of the initial denials, that

would govern this Court's analysis of their implications for the obligation to exhaust.

Along with the clear irrelevance of internal documents about the formulation of initial

denials, this Court must weigh the burden that their discovery would impose. As the Secretary

explained in his motion, these requests seek meeting minutes and other deliberative documents[2]

related to the dozens of different explanations provided for the initial denial of CGM claims.

The Secretary does not know the volume of documents that might be at issue, but the search for

such a wide range of documents would be burden enough—with no benefit, for the reasons

described above.  Under Rule 26(b)(1), this Court must weigh "the importance of the discovery

in resolving the issues, and whether the burden . . . of the proposed discovery outweighs its likely

benefit."  The discovery in question here is not important—because the subjective intent of the

decisionmakers simply does not matter—and the burden of searching for it would be substantial.

This Court should therefore grant the Secretary a protective order against it.[3]

---

[2] The challenged requests call for explicitly deliberative material, including records of "deliberations or discussions," Request for Production No. 3, and minutes or meeting notes, Request for Production Nos. 9 & 10.  If the Secretary is required to search for responsive records, which he should not be required to do, he will log those protected materials at the appropriate time.

[3] The Secretary rests on his motion for a Privacy Act protective order.  Although the Court did not order briefing on the subject, and plaintiffs have not moved to compel, plaintiffs ask this Court to rule on the parties' dispute regarding Requests for Admission 10 and 11.  If this Court is

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MICHELLE BENNETT
Assistant Director, Federal Programs Branch

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

Date: September 30, 2019                    *Counsel for Defendant*

---

inclined to do so, the Secretary rests on the position set forth in the joint statement about
discovery disputes, ECF No. 37 at 15–16.