## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CAROL A. LEWIS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 18-cv-2929 (RBW) |
| ALEX M. AZAR II, in his official | ) | |
| capacity as Secretary of Health and | ) | |
| Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### JOINT STATEMENT REGARDING DISCOVERY DISPUTE
### AND PROPOSED SCHEDULE

Pursuant to the Court's Order of January 29, 2020, the parties submit this joint statement regarding their discovery disputes and proposed schedule for completion of discovery from the defendant.

Plaintiffs' Statement:

**Compliance With The Court's Order of November 6, 2019 (HICNs)**

After a substantial delay caused by Defendant, on November 6, 2019, this Court issued an Order requiring the Secretary to produce "spreadsheets containing information regarding initials denials of Medicare coverage for continuous glucose monitors, including each beneficiary's Health Insurance Claim Number (HICN)" by November 22, 2019.  *See* Dkt. #47. As has been the subject of much dispute, no other identifying information of any kind was provided.  Thus, Plaintiffs were only provided with a series of numbers and no way to verify their accuracy.  HICNs are required in order to determine how many unique class members there are as well as to potentially address the Secretary's amount in controversy arguments.

Contrary to FED.R.CIV.P. 34(b)(2)(E) and in an apparent effort to hinder review, the Secretary converted the database reports in electronic form into a single PDF containing more than 7,000 pages and comprising at least eight (8) different documents.  As a result, Plaintiffs' counsel was required to expend hours undoing the Secretary's failure to comply.  In addition, the Secretary encrypted the document using non-standard software not disclosed to Plaintiffs further thwarting review.

When Plaintiffs finally were able to review the materials, Plaintiffs sought to determine their completeness and accuracy.  Lacking any other identifying information, Plaintiffs simply checked the claims of the parties-in-suit to determine if they were accurately reported and it is clear that they were not.

In particular, Ms. Lewis' claim in this case arises from Medicare Claim # 15300737497000.  That claim number is reported in the production but is associated with a different apparent HICN.  At the same time, other claims submitted by Ms. Lewis are reported with her HICN.  Thus, from the produced data, it would appear that claims were submitted by two people rather than the single person of Ms. Lewis.  As a result, from the reported data it is impossible to determine how many members there may be in the proposed class and which claim are associated with each person.

Plaintiffs' counsel brought this failure to the Secretary's attention in an email dated January 13, 2020 seeking correction before the end of January.  *See* Exhibit A.  Consistent with the overall tactic of delay, the Secretary did not substantively respond.  Plaintiffs again sought a compliant production before the end of January in an email dated January 20, 2020, and the Secretary did not substantively respond.  Plaintiffs again sought a compliant production before

the end of January in an email dated January 24, 2020, and the Secretary did not substantively respond.

As a result of this failure, and others, the parties contacted the Court on January 29, 202 to request a discovery conference.

**Compliance With The Court's Order of November 6, 2019
(Part C Initial Denial Information)**

As noted in other papers, Plaintiffs served requests for production in May and June 2019 and had been addressing the need for a Protective Order since May.  Plaintiffs' effort was to have one proposed to the Court so that the absence of one would not be used as an excuse to delay discovery.  While Plaintiff repeatedly raised this issue, the Secretary delayed.  Finally, the Secretary served discovery responses objecting to production on the grounds that there was no Protective Order because the Secretary had failed to respond on the issue.  A conference was held where Plaintiffs indicated their intention to contact the Court about the discovery responses. In order to stave that off, the Secretary agreed to propose a Protective Order by a date certain and also produce initial denial information covering a one-year period by August 20, 2019.  The Secretary did not keep either commitment.

Subsequently a dispute arose as to whether Part C information was required by the requests.  Plaintiffs indicated that they thought they were and were prepared to conduct third-party discovery to obtain that information if necessary.  In a phone call held on Tuesday, August 20, 2019, the Secretary agreed to produce the Part C denial information (including initial denials).  Plaintiffs' counsel followed up with a confirmatory email.  *See* Exhibit A.

At the hearing held on November 5, 2019, the production of Part C information was specifically discussed.

> MR. PISTORINO:  … I do just want to make clear that the initial denial information will include denials for Part C claims, because those are about a third as we understand it; to make sure that that's what we're getting as well.
>
> THE COURT:  Okay, very well. ….

*See* Transcript at 42:19-23 (Exhibit B).  Consistent with that discussion, the Court's Order of November 6, 2019, differentiated between initial denial information and appeal information in Part B/C cases.  The Court's Order required production of the initial denial information without limitation to Part B or Part C (*i.e.*, all the denial information was required to be produced).  By contrast, the Order required production of only partial Part B appeal information.

Again, on review and given the lack of other information, it was unclear whether Part C initial denial information was included.  Plaintiffs began questioning whether Part C information was included in an email sent December 5, 2019.  The Secretary response on December 9 was unclear as to whether any Part C initial denial information was included.  It was not until January 23, 2020, that the Secretary finally revealed that no Part C initial denial information of any kind had been produced.

Once it became clear that Part C initial denial information was not included, the Secretary attempted to explain why it did not keep its commitment and failure to comply with the Court's Order and also offering post-hoc objections.

In this vein, the Secretary offers that Plaintiffs' "misunderstood" his commitment, despite Plaintiffs' confirmatory email and the discussion at the hearing.  Simply put, there is no "misunderstanding."  There is just the Secretary's failure to abide by his commitments and the Court's Order.

Now, the Secretary also offers that he does not "have" the documents.  Whether that is accurate or not, of course, it should go without saying that, pursuant to FED.R.CIV.P. 34(a)(1), a party is required to produce information "in its possession, custody, or control."  Part C plans are

totally controlled by the Secretary.  Just one aspect of that control is detailed in 42 U.S.C. § 1395w-27(d)(2)(A)/(B) requiring each Part C plan contract to have provisions to inspect records of services performed and amounts paid.  Thus, belated claim that the Secretary does not have "possession, custody, or control" of Part C initial denial information simply cannot be supported.

In yet another post-hoc claim, the Secretary offers that one reason he failed to keep his prior commitment and comply with the Court's Order is because he now feels that those documents are not relevant.  First, of course, the time for making that objection long since passed.  Moreover, it is baseless.  Denials in Part C cases are dictated by the Secretary and appeals of such denials are processed by the Secretary (that is why the Secretary has produced partial Part C appeal information).  Thus, if the Secretary directs payment of the claims at issue in this class action, then the Part C plans have to comply.

In short, the Secretary's failure and refusal to comply with both his prior commitment and the Court's Order cannot be justified and the requested information should be produced without further delay.

### Failure to Produce Date Claim Submitted Information

Request for Production No. 1 sought the basic claim denial information relevant to this case.  In order to potentially address the Secretary's amount in controversy arguments, RFP No. 1 sought the date each claim was submitted on.

It does not appear to be disputed that the Secretary failed to provide this information.

Plaintiffs counsel brought this deficiency to the Secretary's attention in an email dated December 5, 2019.  Again, consistent with the overall tactic of delay, the Secretary has neither produced the information nor offered a date when it would be produced.

**Proposed Schedule for Completion of Class Certification Discovery**

In short, Plaintiffs believe that the Court should simply proceed with class certification briefing and either rely on the information produced so far to establish numerosity or simply deem it established.  In order to establish the numerosity requirement, Plaintiffs do not believe that they need to show an exact number of potential class members, just that the number is greater than 40 and certainly in the thousands.  Plaintiffs have been attempting to gather more precise class numbers to more accurately show the class size and provide alternative analysis approaches.  In addition, Plaintiffs have pursued it because this same information would be needed to address several other issues/potential issues in this case (*e.g.*, class size considering the Secretary's amount in controversy claims, class size looking at only cases pending when suit was filed).

However, the Secretary is using the Plaintiffs' desire to provide the Court with more information to delay the litigation overall.  Thus, the Secretary repeatedly seeks delay, fails to comply with the Court's Orders of production, and fails to keep his commitments (*e.g.*, to propose a Protective Order and produce Part C initial denial information), all the while offering that the remedy is more delay.

While the class certification briefing proceeds, the Secretary should be ordered to complete the production so that the information will be available to address other issues and for the class notification process.  Although even there, it appears that the plan, again, is for further delay.  Because none of the information produced so far contains the contact information that would be required to notify potential class members, the production would need to be repeated.

<u>Defendant's Statement:</u>

**1.      Productions to Date and Remaining Productions**

In the approximately three months since this Court entered its protective order, the

Secretary of Health and Human Services has made five productions totaling more than 27,000

pages.  Most of those pages have required review to redact the names and addresses of Medicare

beneficiaries and their family members, and to identify other confidential information.  Plaintiffs

have expressed concerns with the first production, which are discussed below, but have raised no

issues with the other four productions (although they only received the most recent production

today).

In the Secretary's view, two additional productions remain to be made: a) reconsideration

decisions regarding Part C claim denials for coverage of continuous glucose monitors from

December 2012 through July 2019; and b) redetermination decisions regarding Part B claim

denials for coverage of continuous glucose monitors dating from December 2012 through July

2016.  The Secretary proposes to make the first of these productions—the reconsideration

decisions regarding Part C claim denials—on or before February 21, 2020.  The Secretary will

use his best efforts to make the second production by that date as well, but may not be able to

make a complete production by then.  The Secretary therefore attaches a proposed order for the

first production as Exhibit C, and asks the Court's leave to propose a date for the second

production at the conference scheduled for February 24, if the second production is not

completed by then.

**2.      Plaintiffs' Concerns with the Secretary's First Production**

As plaintiffs note, through administrative oversight, the Secretary's production of

"spreadsheets containing information regarding initial denials of Medicare coverage for

continuous glucose monitors, including each beneficiary's Health Insurance Claim Number

(HICN)," which was made on November 22, 2019, *see* ECF No. 47 at 1, did not contain

information about the date that each claim was submitted.  When plaintiffs brought this oversight

to the Secretary's attention, the Secretary began to prepare a corrected production, which the

Secretary still intends to make.

On January 13, 2020, plaintiffs raised two additional concerns with the Secretary's first

production.  Plaintiffs have described one concern as the Secretary's failure to produce Health

Insurance Claim Numbers (HICNs)—a confusing formulation, since the spreadsheet listed a

HICN for each claim.  But the Secretary now understands that the HICN listed for Ms. Lewis for

the claim at issue in this case was incorrect, and plaintiffs (not unreasonably) are therefore

worried that other HICNs may also be incorrect.  Plaintiffs' final concern with the initial

production is that an additional "1" was added to the beginning of at least some claim numbers.

The Secretary has not yet determined the cause of these anomalies, which he intends to correct to

the best of his ability.

Once the Secretary has determined how best to address all three of plaintiffs' concerns—

the lack of a date-submitted field, the presence of at least one error in the HICN field, and the

addition of a numeral to at least some claim numbers—he will make a corrected production.  If

the Secretary has not made that corrected production by the time of the February 24 conference,

he asks the Court's leave to propose a date for the corrected production then.

### 3.      Plaintiffs' Request for Data on Initial Denials in Part C

Finally, plaintiffs are requesting data about the initial coverage decisions made by private

insurance companies acting as Medicare Advantage Organizations under Part C of the Medicare

statute.  This data is in the possession of more than 200 different insurers, each of which

maintains their own database, and would therefore be extremely burdensome to gather.

Moreover, the data are irrelevant to this case.

As the Court will recall, Medicare Part B beneficiaries submit claims for coverage of

durable medical equipment to administrative contractors (formerly known as fiscal

intermediaries) hired by the agency to make initial coverage determinations.  42 C.F.R.

§ 405.920 *et seq.*  "If the beneficiary disagrees with the contractor's initial determination," she

"may request a 'redetermination' by the same contractor."  *Porzecanski v. Azar*, 316 F. Supp. 3d

11, 15 (D.D.C. 2018) (citing 42 C.F.R. § 405.940); *see* 42 U.S.C. § 1395ff(a)(3).  Pursuant to

this Court's orders, the Secretary has produced data regarding initial denials and reconsideration

decisions for Part B beneficiaries; that data is maintained by government contractors.[1]

The analogous data for Part C beneficiaries—that is, individuals who elect to receive

their Medicare benefits through a private health insurance plan—is not maintained by the

government or its contractors, but rather by the private health insurers themselves.  In this year

alone, more than 200 insurance companies are offering Part C plans.  To gather initial denial data

for Part C beneficiaries over a seven-year period would therefore be a considerable undertaking

involving hundreds of different insurers.

And, once gathered, that data would have no relevance to this case.  Both named

plaintiffs are Part B beneficiaries, who believe (as the Secretary understands it) that the

government should have paid for their continuous glucose monitors.  But Part C beneficiaries are

covered by the private insurers through which they receive their benefits, not by the government

---

[1] The government or its contractors similarly adjudicate both Part B and Part C appeals at the
levels of reconsideration and hearings before an administrative law judge or the Medicare
Appeals Council.  The Secretary agreed to produce these government-held records as to Part C
beneficiaries in an attempt to reach an accommodation with plaintiffs, although the Secretary
maintains that they are neither relevant nor responsive to the requests for production as drafted.

directly.  When a Part C beneficiary prevails on a coverage claim, what the beneficiary wins is an order that their private insurer cover the item in question.  This Court could not order the government to reimburse a Part C beneficiary for a continuous glucose monitor because that beneficiary is owed reimbursement, if any, from the insurer acting as their Medicare Advantage Organization.  No such insurers are parties to this case.

Counsel for the Secretary has labored to be precise in his conversations with opposing counsel and in his appearances and filings in this Court.  Undersigned counsel for the Secretary does not think that there is any serious argument that the Court has already ordered the production of Part C initial denial data, but he apologizes for any imprecision that may have led to confusion on this issue.

### 4.        Schedule for Class Certification Briefing

The Secretary has no objection to proceeding with class certification briefing on the schedule as presently ordered.

Respectfully submitted,

/s/Jeffrey Blumenfeld
D.C. Bar No. 181768
LOWENSTEIN SANDLER LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 753-3800
Facsimile:  (202) 753-3838
jblumenfeld@lowenstein.com

*and*

PARRISH LAW OFFICES
James C. Pistorino
788 Washington Road
Pittsburgh, PA 15228
Telephone: (412) 561-6250
Facsimile:  (412) 561-6253
james@dparrishlaw.com

*Attorneys for Plaintiffs*

and

JOSEPH H. HUNT
Assistant Attorney General

MICHELLE BENNETT
Assistant Director, Federal Programs Branch

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendant*

Date: February 7, 2020