IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAROL A. LEWIS, and DOUGLAS B. SARGENT, on behalf of themselves and all others similarly situated,

    *Plaintiffs,*

    v.

ALEX AZAR, in his capacity as Secretary of the United States Department of Health and Human Services,

    *Defendant.*

Case No. 1:18-cv-02929

## CAROL LEWIS' AND DOUGLAS SARGENT'S
## BRIEF REGARDING CLASS CERTIFICATION/MERITS BRIEFING

Pursuant to this Court's Order of February 25, 2020, Plaintiffs Carol Lewis and Douglas Sargent submit this brief to address whether there are any legal/procedural requirements governing the timing of when class certification and merits issues may be resolved in a class action lawsuit. Simply put, there are none. In addition, in the interests of clarity, Plaintiffs address topics raised at the hearing held on February 24, 2020.

### CLASS ACTION LITIGATION BACKGROUND

During the period from December 2012 to July 2019 (the last date of data produced by the Secretary), it is believed that approximately 90,000 people had claims for continuous glucose monitor (CGM) coverage denied by Medicare. Each of these claims was denied for the same reason (and only this reason): the Secretary's determination that a CGM is not "durable medical equipment." More specifically, the Secretary has denied each of the claims on the grounds that a CGM is not "primarily and customarily used to serve a medical purpose." Plaintiffs Carol Lewis

and Douglas Sargent are two of these 90,000 people. Each of the 90,000 people have one or more claims against the Secretary for failing to follow the laws passed by Congress directing the Secretary to cover "durable medical equipment."

The claims of these 90,000 people could be filed individually - resulting in 90,000 cases (including cases by Carol Lewis and Douglas Sargent). That would necessitate 90,000 filing fees, 90,000 appearances, 90,000 rulings on the merits, etc. and, presumably, occupy years of judicial work-days to resolve. Alternatively, a single case with 90,000 plaintiffs (including Carol Lewis and Douglas Sargent) could be filed. While that would eliminate some of the duplicate process (*e.g.*, filing fees, appearances, etc.), it would not eliminate the need for 90,000 merits rulings that would, again, occupy years of judicial work-days to resolve. In addition to the extreme load imposed on the judiciary and waste of judicial resources, using either of these two processes would place a similar onerous burden on both the plaintiffs and the Secretary.

Yet a third alternative is to litigate the 90,000 claims as a class action. A class action is a venerable procedure that pre-dates the merger of Courts of Law and Equity in 1938 and has been a feature of the FEDERAL RULES OF CIVIL PROCEDURE since their adoption in 1938. *See* FED.R.CIV.P. 23 (Advisory Committee Notes to 1937 Adoption). A class action is a more efficient procedure for resolving claims by large numbers of people that avoids the need to rule on the merits of each of the class member's claims individually and is also a way to provide relief/justice when the value of individual claims is so low that individual litigation would be uneconomic.

In a class action, some of the class members file suit in their own names seeking to litigate their own claims. For example, as reflected in the caption in this case, Carol Lewis and

Douglas Sargent filed suit "on behalf of themselves." These people are referred to as the "class representatives."

In addition to their own claims, the class representatives assert that their claims are so like the claims of the other class members that individual decisions on the merits are not necessary. Thus, the class representatives assert that a decision granting or denying the class representative's claims should be treated as a decision on all the class member's claims - thereby avoiding the need for individual merits decisions.

In agreeing to be a class representative, class representatives undertake the duty to protect the unnamed class members' interests with the same zeal that they protect their own interests. *See* FED.R.CIV.P. 23(a)(4) ("the representative parties will fairly and adequately protect the interests of the class."). Again, this is reflected in the caption in this case where Carol Lewis and Douglas Sargent indicate that they are not just filing suit on "behalf of themselves" but also on behalf of "all others similarly situated."

The two main issues to be decided in a class action are: 1) the merits of the class representatives' claims; and 2) whether the case should be treated as a class action (*i.e.*, "class certification"). To some degree, these are independent inquiries. Nevertheless, at a minimum, an understanding of the class representatives' personal claims is necessary to determine whether those claims are sufficiently similar to the claims of the other claim members (*i.e.*, "commonality" and "typicality."). Thus, in order to determine whether this case can properly be certified as a class action, the Court will need some understanding of Carol Lewis and Douglas Sargent's personal claims.

In seeking to have the case certified as a class action, the class representatives must show that the class includes so many people that joining them individually would be impractical (*i.e.*,

"numerosity"). *See* FED.R.CIV.P. 23(a)(1). In this regard, there is a rebuttable presumption that it would be impractical to join the class members individually if the putative class has more than 40 members. *See, e.g., In re Namenda Direct Purchaser Antitrust Litigation*, 331 F.Supp.3d 152, 202 (S.D. N.Y. 2018) (simultaneously denying defendant's motion for summary judgment and certifying class). Thus, when the putative class includes more than 40 members, it is presumed that a class action is the preferred manner of litigating the matter. In the present case, Plaintiffs assert that the class is at least the 90,000 people who had CGM claims denied since December 2012 on the same grounds as Ms. Lewis and Mr. Sargent's claims (*i.e.*, that a CGM is not "durable medical equipment.").

Even if class certification is denied, then such a ruling with not end the litigation. All that means is that the Court has decided that the plaintiffs have not yet met their burden to show that the case should be handled as a class action. *See* FED.R.CIV.P. 23(c)(1)(C) ("An order that grants or denies class certification may by altered or amended before final judgment."). The merits of the class representatives' individual claims remain to be decided.

Thus, in the present case, if the Court were to decline to certify this case as a class action before entertaining any summary judgment motions, the merits of both Ms. Lewis' and Mr. Sargent's personal claims would remain to be decided. *See, e.g., In re: Joseph Hardesty*, 2018 WL 7046869 (6th Cir. Nov. 13, 2018) ("The denial on class certification is not the death knell of the litigation, and the posture of the action below does not favor an immediate appeal.", class representative's individual claims remain to be litigated).

**Motions for Summary Judgment in APA Cases**

In an Administrative Procedure Act case, such as this one, the "function of the district court is to determine whether or not as a matter of law the evidence in the administrative record

permitted the agency to make the decision it did." *See, e.g., HealthAlliance Hospitals, Inc. v. Azar*, 346 F.Supp.3d 43, 54 (D.D.C. 2018). Thus, while styled a "motion for summary judgment", none of the summary judgment standards apply. *See also, e.g.*, LCvR 7(h)(2)/(n). Instead, the court rules as a matter of law based solely on the administrative record. Accordingly, in an APA case, there is no trial or witnesses or issues of fact to be resolved and the only "evidence" is the administrative record itself.

Thus, regardless of when the Court decides to reach the merits issues, the only evidence the Court will consider in deciding Ms. Lewis' individual claim will be the administrative record in her own claim. Likewise, when the Court considers Mr. Sargent's individual claims, that consideration will be limited to the administrative record in Mr. Sargent's claims. The evidence in support of Ms. Lewis' and Mr. Sargent's claims will not change, regardless of when the Court considers the merits of their claims.

**The Court May Rule on the Merits Before Deciding Class Certification Issues**

Pursuant to FED.R.CIV.P. 23(c)(1)(A), the Court must determine the class certification issues "at an early practicable time[.]" This language was adopted in 2003 and is less restrictive regarding timing than the earlier "as soon as practicable" language that had been adopted in 1966. As noted in the Advisory Committee comments to the 2003 Amendments, this change was made to reflect "prevailing practice" in recognition that the courts had found "many valid reasons that may justify deferring the initial certification decision."

Even under the prior more restrictive "as soon as practicable" language, district courts were ruling on motions for summary judgment filed by both plaintiffs and defendants prior to ruling on class certification issues as a matter of practice. *See* Advisory Committee Notes to 2003 Amendments *citing* WILLGING, HOOPER & NIEMIC, *Empirical Study of Class Actions in*

*Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules* 26-36 (Federal Judicial Center 1996). As reported there, between 22% and 67% of the studied cases involved the court resolving merits issues on summary judgment (brought by either the plaintiff or defendant) prior to addressing class certification issues. *Id.* at FIG. 25 and 26 (67% of studied N.D. Cal. cases involved pre-certification rulings on motions for summary judgment, ~47% of studied E.D. Pa. case pre-certification summary judgment motions ruled on were brought by plaintiffs or plaintiffs and defendants).



Figure 25: Timing of Rulings on Motions for Summary Judgment in Relation to Rulings on Class Certification



Figure 26: Type of Party Filing Motion for Summary Judgment

6

Thus, the Court has discretion to address summary judgment and class certification issues in any order it chooses.

Both the judicial guides put out by the Federal Judicial Center and the case law reflect this discretion. *See* MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES (3rd ed.) (Federal Judicial Center 2010) at 9:

> Given the flexibility in the rules, the most efficient practice is to rule on motions to dismiss or for summary judgment before addressing class certification. …. The most important actions you can take to promote settlement are to rule on dispositive motions and then, if necessary, rule on class certification.

*See, e.g., Curtin v. United Airlines, Inc.*, 275 F.3d 88, 92 (D.C. Cir. 2001) ("… 'practicable' allows for wiggle room – enough to make the order of disposition of motions for summary judgment and class certification a question of discretion for the trial court.   … [N]othing … requires the district court to rule on class certification before granting or denying a motion for summary judgment.") (internal citations and quotations omitted); *Hunt v. Imperial Merchant Services, Inc.*, 560 F.3d 1137, 1143 (9th Cir. 2009) (summary judgment in plaintiff's favor and class certification decided simultaneously, defendant bears the costs of class notice); *In re Prudential Insurance Co. of America SGLI/VGLI Contract Litigation*, 286 F.R.D. 155, 159 (D. Mass. 2012) ("A district court may rule on the merits of a summary judgment motion before deciding the class certification issue under Rule 23…") (internal citations and quotations omitted).

One concern with a pre-certification/class notice ruling granting a motion for summary judgment in plaintiff's favor is so-called "one-way intervention."  That is, potential class members may condition their decision on whether to participate in the class on the outcome of the summary judgment decision.  While that concern is potentially valid in some circumstances,

as indicated by the cases cited above and the modification of the Rule, that concern may be outweighed by other factors related to case management.

For example, in this case, Part C claims constitute potentially one third of all class members and Plaintiffs requested discovery concerning those claims for both class certification/notice and merits issues (*e.g.*, exhaustion and 60-day issues).  *See* Exhibit A (Kaiser Family Foundation Date Note dated June 2019).



As seems to be his practice, the Secretary reneged on his prior commitments to provide that discovery and now refuses to produce this information on the grounds that Plaintiffs are going to lose on the merits and producing the information is burdensome.  Thus, resolving the merits issue would help guide the discovery for both class certification/notice issues.

Obviously, if the court determines that a CGM is not "primarily and customarily used to serve a medical purpose" on summary judgment, there is no reason for further proceedings at this level and the parties can proceed to appellate review.  Conversely, if the court determines that a

CGM is "primarily and customarily used to serve a medical purpose", then regardless of the Secretary's claims about burden, the information will be needed to notify the class members, assuming a class is certified.

**Defendant's Attempts to Remove the Current Class Representatives**

Because the class certification process focuses so much on the claims of the class representatives, frequently, defendants seek to eliminate the class representatives. In doing so, defendants are hoping that either new representatives cannot be located and substituted or that delay will be caused. Conversely, because the plaintiffs are seeking relief for the class as a whole (not just for the class representatives), plaintiffs seek to defend/maintain the class representatives.

These competing interests play out in efforts by the defendant to procedurally eliminate class representatives or settle with them individually (as opposed to the class). Class representatives that reject settlement offers that do not cover the whole class (*e.g.*, that only benefit the class representative) are acting in accord with their duties as a class representative. *See* FED.R.CIV.P. 23(a)(4) ("the representative parties will fairly and adequately protect the interests of the class.").

For example, in *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663 (2016), plaintiff Jose Gomez received unsolicited text messages from defendant Campbell-Ewald, allegedly in violation of the Telephone Consumer Protection Act. Each violation of the Act is potentially punishable by a fine of $500, which may be trebled. Plaintiff Gomez filed a class action on behalf of himself and all others similarly situated. In response, Campbell-Ewald offered to pay Gomez, individually, everything he could have received (but nothing for the other class members). *Id.* at 667-8. Consistent with his duties to the class, as a whole, Gomez rejected this

offer and the Supreme Court held that the unaccepted offer did not render the case moot and could proceed on the class claims.

In the present case, with respect only to Ms. Lewis, the Secretary offered at the February 24, hearing that he will now pay her personal claims but not those of the other class members.[1] Just as in *Campbell-Ewald*, the Secretary's offer in this regard is simply an effort to delay and hinder relief to the class as a whole by inviting Ms. Lewis to breach her duties to the class. Consistent with her duties to the class, Ms. Lewis rejects the Secretary's offer. Similarly, the Secretary has moved to dismiss Mr. Sargent on amount-in-controversy grounds. As noted, these are typical defense tactics focused on delay and hindering consideration of the merits.

**Comments Regarding Part C Plans**

At the hearing, in an effort to distinguish Part C plans, the Secretary made a number of comments about Part C plans that are simply factually incorrect. For example, Plaintiffs explained that Part C plans are totally controlled by the Secretary as to what is and is not covered and Part C plans must follow the Secretary's command to not cover CGMs. *See* 42 U.S.C. § 1395w-22(a)(1)(A) ("shall provide … benefits under the original medicare fee-for-service program …"); 42 C.F.R. § 422.101(a) "Provide coverage of … all services that are covered by Part A and Part B of Medicare[.]").

At the hearing, the Secretary asserted in response that Part C plans are not controlled by the Secretary and that Part C plans can offer services in addition to what is covered by Original Medicare without the Secretary's approval. For example, the Secretary asserted that Part C plans

---

[1] In this regard, the Secretary's new-found respect for prior decisions by Article III judges and his own ALJs is notable. That certainly was not the case when Ms. Lewis brought the prior decisions in Ms. Lewis' favor to the attention of the Medicare Appeals Council and they refused to approve her claim for coverage. *See* CAR001-003. As a result, Ms. Lewis filed the current action and seeks to represent the class of all other CGM patients who have been denied Medicare coverage by the Secretary on identical grounds.

can offer "gym memberships" without the Secretary's approval. Simply put, that is totally false whether with respect to gym memberships or CGMs. Part C plans can offer nothing beyond Original Medicare coverage without the Secretary's approval. *See* 42 U.S.C. § 1395w-22(a)(3)(A) ("Benefits included *subject to Secretary's approval*": "… each [Medicare Advantage Plan] may provide to individuals enrolled under this part … supplemental health care benefits that the Secretary may approve.") (emphasis added).[2]

Likewise, citing 42 U.S.C. § 1395w-22(g)(5), the Secretary asserted that, if Part C claims were litigated in this case, Medicare Advantage Plans would need to be made parties. Again, that is simply false. While a Medicare Advantage Plan must be made a party to proceedings *before* the Secretary ("… to a hearing before the Secretary …. and in any such hearing the Secretary shall make the [Medicare Advantage Plan] a party."), in judicial proceedings, "the Secretary of HHS, in his or her official capacity, is the proper defendant." *See* 42 C.F.R. § 405.1136(d)(1). Indeed, in cases where a Medicare Advantage Plan has been originally listed as a named defendant, motions to dismiss have been granted. *See, e.g., Logan v. Sebelius and Mid Rouge Independent Physician Assoc.*, 2012 WL 4429090 (D. Ore. Aug. 6, 2012) (recommending dismissal of Mid-Rouge); *Madsen v. Kaiser Foundation Health Plan, Inc.*, 2009 WL 1537878 (S.D. Cal. June 2, 2009) (granting motion to dismiss because only the Secretary is a proper party defendant). *See also Maupin v. Azar*, 2019 WL 7172599 (C.D. Cal. Dec. 9, 2019) (Fitzgerald, J.) (appeal of Part C denial where only the Secretary listed as a defendant).

---

[2] See Exhibit B (CMS' Press Release dated 4/1/19 announcing expansion of "supplemental benefits" Medicare Advantage Plans can offer).

11

**The Effect of a Ruling on Original Medicare Cases on Part C Cases**

At the hearing, the Court offered comments suggesting that a ruling on the merits of only Original Medicare cases would have some effect on Part C cases. Respectfully, that is not accurate either practically or legally.

As an initial matter, it is beyond reasonable doubt that the Secretary does not respect rulings issued by courts in prior cases. For example, after the decisions in *Whitcomb v. Burwell*, 17-cv-14 (decided Oct. 26, 2017) (D. Wisc.) (Jones, J.); *Bloom v. Hargan*, 16-cv-121 (decided Jan. 29, 2018) (D. Vermont) (Crawford, J.); and *Lewis v. Azar*, 15-cv-1350 (decided April 5, 2018) (D. Mass) (Gorton, J.) which held that a CGM is "durable medical equipment", the Secretary maintained denials on that same ground in both Ms. Lewis' and Mr. Sargent's cases. Indeed, with respect to Ms. Lewis, the Secretary maintained a denial and issued new denials knowing that Ms. Lewis herself had already received a decision from an Article III district court. Thus, there is no reason to believe that the Secretary will show greater respect to a ruling limited to Original Medicare claims when considering Part C claims than the Secretary has in the past.

Further, because of the unique posture of the United States as a litigant, the Supreme Court has held that offensive, non-mutual collateral estoppel does not apply against the United States. *See U.S. v. Mendoza*, 464 U.S. 154 (1984). Thus, if Part C claims were not litigated as part of this case, Part C claimants could not successfully maintain that the Secretary was estopped from asserting, again, that a CGM is not "durable medical equipment." To achieve that determination, Part C claimants would have to start a new litigation and prove that conclusion all over again.

By contrast, if Part C claims are included in the relevant class and litigated as part of this case and the Court finds that a CGM is "durable medical equipment", then (in addition to relief

on the particular claims that are the subject of this litigation), going forward, Part C claimants will be able to assert that the Secretary is collaterally estopped from asserting that a CGM is not "durable medical equipment" on their individual claims.

Accordingly, absent inclusion of Part C claims in the proposed class in this case, a ruling covering Original Medicare claims only will have no effect on Part C claims. For that reason, Ms. Lewis and Mr. Sargent assert that the proper class in this case is all people who had CGM claims denied by the Secretary starting in December 2012, regardless of whether they filed Original Medicare or Part C claims.

## CONCLUSION

For the reasons set forth above, the Court may consider a motion for summary judgment filed by either party prior to addressing the issues of class certification/notice.

Dated: March 2, 2020

Respectfully submitted,

/s/Jeffrey Blumenfeld
D.C. Bar No. 181768
LOWENSTEIN SANDLER LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 753-3800
Facsimile: (202) 753-3838
jblumenfeld@lowenstein.com

*and*

PARRISH LAW OFFICES
Parrish Law Offices
224 Lexington Drive
Menlo Park, CA 94025
(650) 473-1564
james@dparrishlaw.com

*Attorneys for Plaintiffs*