**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAROL A. LEWIS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Case No. 18-cv-2929 (RBW) |
| ALEX M. AZAR II, in his official | ) |
| capacity as Secretary of Health and | ) |
| Human Services, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'
BRIEF ON THE BRIEFING SCHEDULE**

In the ordinary case, a Medicare beneficiary can obtain judicial review of a coverage denial so long as 1) she has exhausted her administrative remedies, 2) her claim satisfies the statutory amount-in-controversy, and 3) it is not time-barred. Plaintiff Carol Lewis satisfies all three requirements—though her claim has an air of mootness about it, as she has litigated this issue to final judgment once already and now refuses to argue collateral estoppel or accept payment. The Secretary has argued that Plaintiff Douglas Sargent fails the second requirement, because both of his claims fall short of the minimum amount-in-controversy for judicial review. If this Court denies class certification, it may never need to reach the merits of these claims: in Mr. Sargent's case because the Court lacks jurisdiction, and in Ms. Lewis's case because she would have no reason to waive *res judicata* and refuse payment without the prospect of class litigation.

With proper representatives, a sufficiently numerous group of fully exhausted, timely claims that meet the amount-in-controversy can certainly merit class certification. In this case, that group would be quite small—possibly smaller than 40 claims, and certainly not much larger. To get to the numbers that plaintiffs suggest, one must conclude that administrative exhaustion

was unnecessary, that a claim of any amount is entitled to judicial review here, and that claims are timely so long as they accrued on or before December 13, 2012. Most beneficiaries denied coverage in January 2013 saw their claims expire long ago, but plaintiffs suggest that such denials for coverage of continuous glucose monitors remain justiciable, whether or not the initial decision was ever appealed. Much of the parties' class certification briefing will concern the question of whether this theory is viable. But, rather than put the issue to the test, plaintiffs would put the cart before the horse and proceed immediately to the merits of their case. Doing so would severely prejudice the Secretary for the reasons explained below, and this Court should not allow it.

## ARGUMENT

"One of the recognized problems that arises when dispositive motions are addressed before class certification motions is that of one-way intervention." *Hyman v. First Union Corp.*, 982 F. Supp. 8, 11 (D.D.C. 1997). "By allowing putative class members to wait while the merits of a claim are decided, these members are given the ability to watch the proceedings without any risk [that] their individual claims . . . would be precluded by an adverse ruling on the merits." *Id.*; *see Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1058 (7th Cir. 2016).

That "abusive practice" is exactly what plaintiffs are proposing here. *Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 311 n.5 (D.D.C. 2018). Plaintiffs ask this Court to determine the merits of their claims before potential class members must decide whether to be bound by the Court's judgment. If the Court holds for plaintiffs, then potential class members will be assured of victory as well. But if the Court holds for the government, only the named plaintiffs will lose their claims: the potential class members will be free to seek a more favorable forum.[1]

---

[1] Plaintiffs' counsel has also filed a premature motion for summary judgment on behalf of a putative member of the *Lewis* class in *Olsen v. Azar*, No. 19-cv-3814, which is pending before this Court. Adjudication of that motion on the merits would have the same effect as addressing the

Such "one-way intervention" was a principle target of the 1966 amendments to Rule 23. *Campbell*, 311 F. Supp. 3d at 311 n.5.  Before those amendments, "members of the claimed class could in some situations await . . . final judgment on the merits in order to determine whether participation would be favorable to their interests." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974).  "If . . . a judgment precluded the possibility of a favorable determination, such putative members of the class who chose not to intervene or join as parties would not be bound by the judgment." *Id.*  "This situation . . . aroused considerable criticism upon the ground that it was unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one." *Id.* (discussing "so-called 'one-way intervention'").

"The 1966 amendments were designed, in part, specifically to mend this perceived defect in the former Rule and to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments." *Id.*  The amendments did so by adding a requirement that "the district court . . . determine whether a case may be maintained as a class action '[a]s soon as practicable after the commencement of [the] action.'" *Curtin v. United Airlines, Inc.*, 275 F.3d 88, 92 (D.C. Cir. 2001) (quoting the then-current Fed. R. Civ. P. 23(c)) (brackets in original).  Although this requirement was loosened somewhat in 2003, and now requires determination of class status "[a]t an early practicable time," Fed. R. Civ. P. 23(c)(1)(A), the 2003 amendments did "not restore the practice of 'one-way intervention' that was rejected by the 1966 revision of Rule 23." Fed. R. Civ. P. 23 advisory committee's notes 2003.

---

merits before class certification here: it would commit the Court to a substantive outcome in this case before potential class members had to decide whether to be bound by the Court's decision.

To the contrary, "Rule 23 'still disfavor[s] one-way intervention' and counsels against a court 'rul[ing] on motions that encroach on the merits of a final decision before class certification.'" *Koehler v. USAA Cas. Ins. Co.*, 2019 WL 4447623, at *5 (E.D. Pa. Sept. 17, 2019) (quoting *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 2015 WL 790081, at *2 (D. Kan. Feb. 25, 2015)) (alterations in original).  Indeed, many circuits observe a "rule against one-way intervention."  *Taha v. County of Bucks*, 862 F.3d 292, 298 (3d Cir. 2017); *Costello*, 810 F.3d at 1057 ("The rule against one-way intervention prevents plaintiffs from moving for class certification after acquiring a favorable ruling on the merits of a claim."); *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 432 (6th Cir. 2012) ("The rule against one-way intervention prevents potential plaintiffs from awaiting merits rulings in a class action before deciding whether to intervene in that class action."); *see London v. Wal-Mart Stores, Inc.* 340 F.3d 1246, 1252–53 (11th Cir. 2003).

Because one-way intervention prejudices defendants and advantages potential class members—who gain the option of accepting the Court's decision or declining to be bound by it—courts will sometimes decide the merits of a case before class certification if a defendant makes the request, or otherwise waives its argument against one-way intervention.  As the D.C. Circuit has observed, where "the defendant itself [seeks] an early decision on the merits," prejudice to the defendant is obviously no concern.  *Curtin*, 275 F.3d at 92 (noting that "it is often more protective of the interests of defendants to begin with the issue of class certification, because only a merits decision made after certification will bind all members of the class").  When the defendant moves "for summary judgment prior to certification, courts view the defendant as deliberately waiving the possibility of a victory against the whole class (which would occur if certification were to precede a defendant's victory at summary judgment); they therefore permit such motions to go

forward so long as a defendant is willing to waive the 'protections' that certification could offer." William B. Rubenstein, 3 Newberg on Class Actions § 7:10 (5th ed.); *see also Taha*, 862 F.3d at 299–300 (defendant waived argument against one-way intervention).

The "usual order of disposition," which is "often more efficient and fairer to the parties," would have the Court "decide the class question first" and thereby require class members to opt out or agree to be bound before the Court decides the merits. *Curtin*, 275 F.3d at 92. But in this circuit "'the order of disposition of motions for summary judgement and class certification' is 'a question of discretion for the trial court.'" *Campbell*, 311 F. Supp. 3d at 311 n.5 (D.D.C. 2018) (quoting *Curtin*, 275 F.3d at 92). As discussed above, a court will sometimes, in its discretion, decide the merits before class certification "where the defendant seeks an early disposition of those claims." *Curtin*, 275 F.3d at 92 (explaining that "a district court does not abuse its discretion by resolving the merits before considering the question of class certification" in those circumstances); *accord Campbell*, 311 F. Supp. 3d at 311 n.5; Fed. R. Civ. P. 23 advisory committee's notes 2003 (noting that "[t]he party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified"). The advisory committee has also suggested that a need for class certification discovery or time to explore the designation of class counsel are among the "many circumstances" that "may justify deferring the certification decision." Fed. R. Civ. P. 23 advisory committee's notes 2003. Indeed, this Court has justifiably deferred the certification decision by more than a year to allow class discovery to proceed. But that is no reason for it now to decide the merits before resolving the class question—especially as class discovery has concluded.

Nor do plaintiffs offer any substantial reason for the Court to do so. Their argument on the subject consists of three obscure sentences which suggest, with no explanation, *see* ECF No. 58 at

8, that resolving the merits of plaintiffs' claims would somehow facilitate additional discovery on class certification as to Part C beneficiaries—discovery that the Court denied in its most recent order. *See* Order of Feb. 25, 2020, ECF No. 57 at 2. It is quite difficult to understand why plaintiffs might believe that this was so. The question of whether continuous glucose monitors are durable medical equipment under the Medicare statute and regulations has absolutely nothing to do with the issues that might prevent Part C beneficiaries from joining any class represented by two individuals who receive their benefits through Medicare Part B.

Plaintiffs discuss two such issues in their brief. First, the Medicare statute provides that, when a Part C beneficiary seeks judicial review of the Secretary's decision that a Medicare Advantage organization (*i.e.*, a private insurer) was not required to cover a particular item or service, "both the individual and the organization shall be entitled to be parties to that judicial review." 42 U.S.C. § 1395w-22(g)(5). Plaintiffs suggest that the plain text of the statute "is simply false" because the Secretary and not the Medicare Advantage organization is the proper defendant in such cases. ECF No. 58 at 11. Plaintiffs miss the point: the Secretary is the defendant because his decision is under review, but the Medicare Advantage organization is "entitled to be part[y] to that judicial review" because it has a financial stake in the outcome of the case. If the beneficiary prevails, the Medicare Advantage organization (and not the Secretary) pays for coverage. For that reason, a class action that adjudicated the obligations of Medicare Advantage organizations would, by the plain language of the Medicare statute, have to afford the large number of affected insurers an opportunity to participate as parties.

A second complicating factor is that, while Medicare Advantage organizations must cover most everything covered by traditional Medicare, they may also cover additional items or services. When a Part C beneficiary brings a coverage challenge, the analysis therefore proceeds in two

parts.  The first question is whether traditional Medicare would provide coverage.  If so, the insurer generally must do so as well.  If not, the second question is whether the insurance contract provides for coverage in excess of traditional Medicare.  If so, the insurer must honor its contract.  It is true that such "supplemental health care benefits" may only be provided with the Secretary's approval, although the Medicare statute mandates approval "unless the Secretary determines that including such supplemental benefits would substantially discourage enrollment . . . with the [Medicare Advantage] organization."  42 U.S.C. § 1395w-22(a)(3)(A).  Because Medicare Advantage organizations may provide different supplemental health care benefits, a Part C coverage case will not necessarily reach the same result that would be reached under Medicare Part B.  That the Secretary has some role in approving supplemental health care benefits does nothing to change that fact.

The Secretary has not sought to prevent plaintiffs from arguing in their class certification motion that Part C beneficiaries should be class members.  The Secretary will respond to any such arguments if they are presented.  All that the Secretary asks here is for the Court to resolve the issue of class certification first, so that any class members must choose whether to opt out before knowing the substantive outcome of the case.

## CONCLUSION

For the reasons set forth above, the Court should follow the "usual order of disposition" and "decide the class question first," before proceeding to adjudicate the merits of this case. *Curtin*, 275 F.3d at 92.  Indeed, merits briefing may never be required if class certification is denied.

                Respectfully submitted,

                JOSEPH H. HUNT
                Assistant Attorney General

                                          MICHELLE BENNETT
                                        Assistant Director, Federal Programs Branch

                                        */s/ James Bickford*
                                        JAMES BICKFORD
                                        Trial Attorney (N.Y. Bar No. 5163498)
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L Street, NW
                                        Washington, DC 20530
                                        James.Bickford@usdoj.gov
                                        Telephone: (202) 305-7632
                                        Facsimile: (202) 616-8470

Date: March 16, 2020                              *Counsel for Defendant*