# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CAROL A. LEWIS, *et al.*, | ) | |
| | ) | Case No. 18-cv-2929 (RBW) |
| Plaintiffs*,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALEX M. AZAR II, in his official | ) | |
| capacity as Secretary of Health and | ) | |
| Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CAROL LEWIS AND DOUGLAS B. SARGENT'S
## MOTION FOR CLASS CERTIFICATION AND
## APPOINTMENT OF CLASS COUNSEL

## TABLE OF CONTENTS

I.  FACTUAL BACKGROUND ................................................................................................ 2

   A.  Medicare Program Administration ................................................................ 2

   B.  Health Insurance Claim Number (HICN)/Claims ................................ 3

   C.  Durable Medical Equipment .......................................................................... 4

   D.  CMS 1682-R ......................................................................................................... 4

   F.  Class Discovery ................................................................................................. 6

   G.  Part B Claims ..................................................................................................... 7

   H.  Part C Claims ..................................................................................................... 7

   I.  Combined Claims .............................................................................................. 9

   J.  Appeal Data ........................................................................................................ 9

   K.  Ms. Lewis' Rejected Claim ......................................................................... 10

   L.  Mr. Sargent's Rejected Claims .................................................................. 11

II.  DISCUSSION ..................................................................................................................... 13

   A.  At Least One Named Plaintiff Has Article III Standing .......................... 13

   B.  Class Certification .......................................................................................... 13

     1.  Numerosity ................................................................................................. 15

       a.  Claims Pending From August 15, 2018 to the Present ............................. 16
       b.  Claims Pending December 13, 2012-August 15, 2018 ............................. 16

     2.  Commonality .............................................................................................. 16

     3.  Typicality .................................................................................................... 17

     4.  Adequacy ..................................................................................................... 19

       a.  Neither Ms. Lewis Nor Mr. Sargent Have Antagonistic or Conflicting Interests With the Unnamed Members of the Class .................................. 19

       b.  Vigorous Prosecution Through Qualified Counsel .................................. 20

i. Parrish Law Office:.............................................................. 20

ii. Lowenstein Sandler:............................................................ 21

**C.** **This Case Falls Into One or More of the Categories Listed in Fed.R.Civ.P. 23(b)** 21

**D.** **Plaintiffs' Statement on the Mechanics of Notice** ........................................ 24

**1.** **How, when, by whom, and to whom notice shall be given** ...................................... 24

**2.** **How and by whom payment for notice is to be made** ............................................. 25

**3.** **By whom the response to the notice is to be received** ............................................. 25

**E.** **Appointment of Class Counsel**.......................................................... 25

**1.** **Fed.R.Civ.P. 23(g)(1)(A)(i) – efforts to investigate and identify potential claims** . 25

**2.** **Fed.R.Civ.P. 23(g)(1)(A)(ii) - experience** ................................................. 26

**3.** **Fed.R.Civ.P. 23(g)(1)(A)(iii) – knowledge of the applicable law** ............................. 26

**4.** **Fed.R.Civ.P. 23(g)(1)(A)(iv) – commitment of resources** ....................................... 26

**III.** **CONCLUSION** .......................................................... 27

# TABLE OF AUTHORITIES

Cases

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)..................................................................................................23

*Barnes v. Dist. of Columbia,*
   242 F.R.D. 113 (D. D.C. 2007).................................................................................16

*Bloom v. Burwell,*
   Case No. 16-cv-121-GWC (D. Vermont) .................................................................20

*Bowen v. City of New York,*
   476 U.S. 467 (1986)..................................................................................................18

*Bowen v. Massachusetts,*
   487 U.S. 879 (1988)............................................................................................13, 22

*Bynum v. District of Columbia,*
   214 F.R.D. 27 (D. D.C. 2003)......................................................................17, 22, 23

*Daskalea v. Wash. Humane Soc'y,*
   275 F.R.D. 346 (D. D.C. 2011).................................................................................17

*Goodnight v. Shalala,*
   837 F.Supp. 1564 (D. Utah 1993).............................................................................14

*Howard v. Liquidity Services, Inc.,*
   322 F.R.D. 103 (D. D.C. 2017).................................................................................16

*Hoyte v. District of Columbia,*
   325 F.R.D. 485 (D. D.C. 2017).................................................................................13

*Huashan Zhang v. U.S. Citizenship and Immigration Services,*
   344 F.Supp.3d 32 (D. D.C. 2018).............................................................................24

*J.D. v. Azar,*
   925 F.3d 1291 (D.C. Cir. 2019)................................................................................13

*Lewis v. Burwell,*
   Case No. 15-cv-13530-NMG (D. Mass.)...................................................................20

*Mathews v. Elridge,*
   424 U.S. 319 (1976)..................................................................................................18

*O.A. v. Trump,*
   404 F.Supp.3d 109 (D. D.C. 2019)...........................................................................17

*Olsen v. Azar,*
   Case No. 19-cv-3814-RBW (D.D.C.)........................................................................20

*Seidman v. American Mobile Sys., Inc.,*
   157 F.R.D. 354 (E.D. Pa. 1994)................................................................................18

*Smith v. Azar,*
   Case No. 18-cv-181-MOC (W.D. N.C.).....................................................................20

*Twelve John Does v. Dist. of Columbia,*
   117 F.3d 571 (D.C. Cir. 997)....................................................................................19

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011)............................................................................................17, 21

*Whitcomb v. Azar,*
   Case No. 17-cv-14-DEJ (E.D. Wisc.)........................................................................20

*Zieroth v. Azar*,
   Case No. 20-cv-172-MMC (N.D. Cal.) ............................................................................ 20

## Statutes

42 U.S.C. § 1395w-22(a)(1)(A) .................................................................................................... 2
42 U.S.C. § 1395w-22(a)(3)(A) .................................................................................................... 3
42 U.S.C. § 1395x(n) .................................................................................................................... 4

## Rules

FED.R.CIV.P. 23(a) ................................................................................................................. 1, 21
FED.R.CIV.P. 23(a)(1) ................................................................................................................. 15
FED.R.CIV.P. 23(a)(2) ................................................................................................................. 16
FED.R.CIV.P. 23(a)(3) ................................................................................................................. 17
FED.R.CIV.P. 23(b) ............................................................................................................... 1, 21
FED.R.CIV.P. 23(c)(1) .................................................................................................................... 1
FED.R.CIV.P. 23(g) ..................................................................................................................... 25
LCvR 23.1(b) .................................................................................................................................. 1
LCvR 23.1(c) ............................................................................................................................... 24

## Regulations

42 C.F.R. § 405.1063(b) ............................................................................................................... 5
42 C.F.R. § 405.942(a) ............................................................................................................... 14
42 C.F.R. § 414.202 ...................................................................................................................... 4
42 C.F.R. § 422.101(a) .................................................................................................................. 2
42 C.F.R. § 422.562(d)(1) ............................................................................................................. 3

Pursuant to FED.R.CIV.P. 23(c)(1) and LCvR 23.1(b), Plaintiffs Carol Lewis and Douglas Sargent respectfully move for an Order certifying the requested class in this case. Specifically, Plaintiffs seek to represent a class of all persons whose claims for Medicare continuous glucose monitor (CGM)[1] coverage (whether Part B or Part C) were denied on the grounds that a CGM is not "durable medical equipment", and not subsequently reversed on appeal, from December 13, 2012 through the conclusion of this case.

As detailed herein, all the pre-requisites for maintaining this action as a class action under FED.R.CIV.P. 23(a) are satisfied and doing so is the best, most efficient, and likely only way to resolve the common dispute between the parties. Further, this case clearly falls into one of the categories of class actions authorized by FED.R.CIV.P. 23(b). Finally, Plaintiffs' counsel should be appointed class counsel due to their demonstrated past and on-going efforts, experience, knowledge, and commitment of resources in this and numerous other cases involving CGM claims, Medicare coverage, and class actions.

Since December 2012, more than 90,000 persons suffering from diabetes have had Medicare claims for CGM coverage denied on the ground that a CGM is not "durable medical equipment", specifically the Secretary's claim that a CGM is not "primarily and customarily used to serve a medical purpose." Plaintiffs contend the Secretary's position is contrary to the law, is inconsistent with the Secretary's own regulations, and violates the Administrative Procedures Act. Indeed, the Secretary's position defies common sense and is at odds with reality.

---

[1] A continuous glucose monitor (CGM) consists of three components: 1) sensors; 2) a transmitter; and 3) a receiver. The sensors are placed under the skin and test glucose levels approximately every five (5) minutes and send the readings to the transmitter. The sensors must be replaced every five (5) to seven (7) days. The transmitter transmits the readings from the sensors to the receiver, which may also be connected to/incorporated into an insulin pump. The transmitter typically lasts several months, while the receiver (which may be a cell phone) lasts years.

So far, every federal court to examine the issue has ruled that the Secretary's position both is wrong and not substantially justified. However, because of the low value of each individual CGM claim, and the time and financial resources required to pursue each individual claim through the daunting Medicare appeal process, only a class action has any prospect of achieving the requested relief for the class members. Indeed, this is precisely the kind of case that should be resolved as a class action.

## I.    FACTUAL BACKGROUND

This case relates to claims for CGM coverage denied by Medicare and, in order to avoid unnecessary repetition, it shall be understood that (unless explicitly stated otherwise) all of the discussion below relates to claims for CGM coverage.

### A.    Medicare Program Administration

To administer the durable medical equipment (DME) aspect of the Medicare program under Part B (*i.e.*, "Original Medicare"), the Secretary has divided the country into four regions (JA, JB, JC, and JD). In turn, those four regions are administered by two contractors (Noridian and GCS). When a claim is submitted to Medicare, the claim is handled by the contractor for the relevant region, who maintains records of denials and payments on claims.

In addition to Part B, Medicare also includes so-called "Medicare Advantage Plans" under Part C. Medicare Advantage Plans contract with Medicare to provide coverage for all the services covered by Original Medicare as well as additional services (*e.g.*, dental and vision coverage). *See* 42 U.S.C. § 1395w-22(a)(1)(A) ("shall provide … benefits under the original Medicare fee-for-service program …"); 42 C.F.R. § 422.101(a) ("Provide coverage of … all services that are covered by Part A and Part B of Medicare[.]").

2

Medicare Advantage Plans' coverage is totally dictated by Medicare itself and Medicare Advantage Plans cannot cover anything unless approved by Medicare.  *See* 42 U.S.C. § 1395w-22(a)(3)(A) ("Benefits included *subject to Secretary's approval*": "… each [Medicare Advantage Plan] may provide to individuals enrolled under this part … supplemental health care benefits that the Secretary may approve.") (emphasis added).  Thus, a decision by a Medicare Advantage Plan under Part C to grant or deny CGM coverage is dictated entirely by Medicare - from whom those plans get their instructions.

Denials of Medicare Advantage Plan claims for coverage are appealed through the regular Medicare appeals process (*i.e.*, eventually an ALJ hearing and then a decision by the Medicare Appeals Council/Departmental Appeals Board).  *See* 42 C.F.R. §§ 422.562(d)(1) and 608.  If an ALJ or the MAC/DAB orders coverage, then a Medicare Advantage Plan must carry out that command.  Likewise, if an ALJ or the MAC/DAB denies coverage, then a Medicare Advantage Plan must carry out that command.[2]

## B.    Health Insurance Claim Number (HICN)/Claims

Medicare beneficiaries are assigned a Healthcare Insurance Claim Number (HICN) that is used to identify each beneficiary.  This number is their Social Security number with added letters.  This simple system is complicated by the fact that beneficiaries may make claims/receive coverage under other people's HICNs.  For example, depending on factors, a divorced spouse may make claims/receive coverage under their former spouse's HICN, or their own HICN, or both, in any order.

---

[2] *See, e.g.*, MEDICARE MANAGED CARE MANUAL, Chapter 13 ("Parts C & D Enrollee Grievances, Organization/Coverage Determinations, and Appeals Guidance"), Section 90 ("When a plan's decision is reversed in whole or in part by any other appeal entity, the plan must authorize or provide the service or benefits as expeditiously as the enrollee's health condition requires[.]"). Available at https://www.cms.gov/Medicare/Appeals-and-Grievances/MMCAG/index.html.

Each item or service for which coverage is sought by a beneficiary is separately assigned a unique Claim number.  Thus, a single prescription for a CGM system (*i.e.*, sensors, a transmitter, and a receiver) will result in multiple claims/claim numbers.  Medicare beneficiaries have one year from receiving a supply or service to submit a request for coverage and may (and often do) combine multiple claims into a single request for coverage.

## C.   Durable Medical Equipment

Pursuant to 42 U.S.C. § 1395x(n), Medicare covers "durable medical equipment" including "blood glucose monitors."  The Secretary has further defined "durable medical equipment" as equipment furnished by a medical equipment supplier or home health agency that meets a five-part test: 1) can withstand repeated use; 2) has an expected life of at least 3 years; 3) is primarily and customarily used to serve a medical purpose; 4) generally is not useful to an individual in the absence of an illness or injury, and 5) is appropriate for home use.  *See* 42 C.F.R. § 414.202.  With regard to the five-part test, none of the claims at issue in this case have ever been denied on any basis other than allegedly not being "primarily and customarily used to serve a medical purpose."

## D.   CMS 1682-R

The Secretary had been denying claims for CGM coverage for years on the grounds that a CGM allegedly was not "durable medical equipment" and more specifically not "primarily and customarily used to serve a medical purpose."  In this context, the Secretary described CGMs as "precautionary" – a non-statutory/regulatory term for which the Secretary has never offered a definition.  On January 12, 2017, the Centers for Medicare & Medicaid Services (CMS) (a body within the Department under the control of the Secretary) issued CMS Ruling CMS-1682-R that sought to formalize that allegation.  As stated there, the Ruling is a "statement of policy and interpretation" and purports to interpret the "primarily and customarily used to serve a medical

purpose" requirement for purposes of CGM coverage.  *Id.* at 1 and 7-8.  In CMS 1682-R, CMS contended that any CGMs whose readings should be confirmed with finger-sticks before making a treatment decision did not qualify as "primarily and customarily used to serve a medical purpose", were "precautionary", and not "durable medical equipment."  Conversely, CGMs whose readings did not have to be confirmed with finger-sticks before making a treatment decision were characterized as "therapeutic" and "durable medical equipment."

As stated there, CMS Rulings are "binding on all CMS components, on all department of Health and Human Services components that adjudicate matters under the jurisdiction of CMS[.]"  *Id.* at 1.  *See also* 42 C.F.R. § 405.1063(b) (same).  The Ruling applied to all claims submitted *on or after* January 12, 2017.  *Id.* at 16.  At the time of the Ruling, the only CGM device which would have qualified for coverage was the Dexcom G5 CGM.  All other CGMs (such as the Medtronic CGM used by Mr. Sargent) would not qualify.

Thus, after January 12, 2017, all levels of Medicare (including ALJs and the MAC) were required to deny CGM clams (whether Part B or Part C), whenever the presented CGM did not replace finger-sticks.  Accordingly, all claims for, Medtronic CGM coverage *e.g.*, submitted after January 12, 2017 would be denied as allegedly not "durable medical equipment" and ALJs and the MAC/DAB were bound to so rule.

## E.   Prior Litigation

The issue of whether a CGM is "durable medical equipment" has been the subject of repeated federal court litigation.  Three such cases have been litigated through a judicial conclusion as to whether a CGM is "durable medical equipment" and Parrish Law Offices handled each one.  *See Whitcomb v. Azar*, Case No. 17-cv-14 (E.D. Wisc. Oct. 26, 2017) (Jones, J.), *Bloom v. Azar*, 2018 WL 583111 (D. Vt. January 29, 2018) (Crawford, J.) and *Lewis v. Burwell*, 2018 WL

1639687 (D. Mass. April 5, 2018) (Gorton, J.).  Each court concluded that a CGM is "durable medical equipment" and found that the Secretary's position that a CGM was not "durable medical equipment" lacked substantial justification and ordered the Secretary to pay plaintiff's attorney's fees.

### F.      Class Discovery

Class related discovery in this case began on May 20, 2019, when Plaintiffs served their First Set of Requests for Production seeking, *inter alia*, information related to CGM claims submitted for Medicare coverage since December 13, 2012 (*i.e.*, six years before the filing of the Complaint) that were denied, where the denial was not reversed on appeal.  In addition, on July 1, 2019, Plaintiffs served their Second Set of Requests for Production.  In response to these requests, the Secretary produced some data on CGM claims submitted, and initially denied, between December 13, 2012 and July 31, 2019 but produced data for Medicare Part B claims only.

For Medicare Part B and Part C appeals involving CGM claims, the Secretary has produced only partial data.  For Part C initial denials and requests for reconsideration, after negotiating for a delay by Plaintiffs, the Secretary reneged on his prior commitments and produced nothing.

All of the information concerning the Secretary's production and the class/claim data disclosed there and referenced in this brief is detailed in the attached declaration of James Pistorino.

**G.    Part B Claims**

The production covering only Part B claim initial denials shows:

|  | Total Denied Claims December 13, 2012- July 31, 2019 | Claims denied December 13, 2013 and no longer pending on August 15, 2018 | Claims denied August 15, 2018- July 31, 2019 |
|---|---|---|---|
| People[3] | 58,928 | 34,564 | 34,828 |
| Claims | 252,337 | 163,271 | 89,066 |

**H.    Part C Claims**

As noted, after obtaining the requested delay from Plaintiffs, the Secretary reneged on his commitment to provide data regarding Part C initial denials as well requests for reconsideration. Accordingly, the very purpose of class related discovery has been frustrated by the Secretary's obstructionism and this matter has been unjustifiably delayed.

Nevertheless, relying on publicly available data, Part C participants appear to constitute approximately one-third of all Medicare beneficiaries since 2012/13.  *See* Exhibit A (Kaiser Family Foundation Data Note dated June 2019).

---

[3] This number is complicated by the fact that 7,276 HICNs include indications that the HICN reported may be for a person other than the beneficiary.  Thus, the actual number of unique people may be as low as 51,652 or some number in-between.  Because the information necessary to uniquely identify a beneficiary has not been produced by the Secretary, each unique HICN having a CGM claim is used in this analysis.  The subcolumns do not add up to the total because a single person could have had expired claims as well as claims that were pending when suit was filed or filed after.



In light of the Secretary's failure to provide discovery and based on the assumption that diabetes/CGM usage is no more or less common for Part C participants than for Part B participants, Part C participants with denied CGM claims and claims themselves would be expected to be 50% of the Part B values (*i.e.*, one-third of the Part B and Part C total).

Thus, in light of the Part B figures and the publicly available Part C data, the Part C initial denial figures are estimated as follows:

|  | Total Denied Claims December 13, 2012- July 31, 2019 | Claims denied December 13, 2013 and no longer pending on August 15, 2018 | Claims denied August 15, 2018- July 31, 2019 |
|---|---|---|---|
| **People** | 29,464 | 17,282 | 17,414 |
| **Claims** | 126,168 | 81,635 | 44,533 |

### I.      Combined Claims

Combining the Part B and Part C initial data results in the following figures.

|         | Total Denied Claims December 13, 2012- July 31, 2019 | Claims denied December 13, 2013 and no longer pending on August 15, 2018 | Claims denied August 15, 2018- July 31, 2019 |
|---------|------|------|------|
| **People** | 88,392 | 51,846 | 42,242 |
| **Claims** | 378,505 | 244,906 | 133,599 |

### J.      Appeal Data

The appeal data produced by the Secretary is woefully incomplete and precludes any precise estimate of how many of the claims that were initially denied may have been reversed on appeal.  First, of course, the Secretary has failed to produce redetermination data (*i.e.*, the first level of appeal in Part B) regarding Part B claims from December 2012-July 2016 for at least one of the jurisdictions.  Second, the Secretary has failed to produce *any* reconsideration data (*i.e.*, the first level of appeal in Part C cases) for Part C claims.

What data the Secretary has produced indicates that the number of claims that reached the various levels of appeal is so low that any possible reversals would not materially affect the class certification numbers.

In summary, the data indicate:

| | Part B | Part C |
|---|---|---|
| **People/Claims** | 58,928/252,337 | 29,464/126,168 (estimated) |
| **Redeterminations** | 2,809 | No data[4] |
| **Reconsiderations** | 543 | 661[5] |
| **ALJ Decisions** | 196 | 91 |
| **MAC Decisions** | 145 | (included in the 145) |

These figures are not material to the issues of class certification but, ultimately, will be relevant to determining who receives class notice.

**K.     Ms. Lewis' Rejected Claim**

On October 26, 2015, Ms. Lewis received a Dexcom G5 CGM receiver, transmitter, and sensors and, thereafter, she submitted a claim for Medicare CGM coverage which was denied on March 31, 2016.

As reflected there, Ms. Lewis claim was rejected using codes A9276, A9277, and A9278[6] with the explanation that her CGM claims were "statutorily excluded." *See* A.R. at 307-310.  Ms. Lewis timely sought redetermination, and reconsideration, both of which were denied.  Ms. Lewis' request for reconsideration was denied on the grounds that a CGM is "precautionary" and, therefore, not "durable medical equipment." *See* A.R. at 282-87.  Ms. Lewis timely appealed and

---

[4] In Part C cases, this level of appeal is referred to as "reconsideration."

[5] In Part C cases, this level of appeal is referred to as "reconsidered determination."

[6] Regardless of what is said to the beneficiary, these are codes the reveal the reason that Medicare actually rejected their claims.  Codes A9276; A9277; A9278; K0553; and K0554 were used by the Secretary to indicate that the claim was being rejected on the grounds that the item was not "durable medical equipment."

ALJ Holt again denied Ms. Lewis' claim on the ground that a CGM is "precautionary" and, therefore, not "durable medical equipment." *See* A.R. at 108-115.

Ms. Lewis again timely appealed.  *See* A.R. at 65-69.  When the Medicare Appeals Council/Departmental Appeals Board did not issue a decision after nearly two years, Ms. Lewis filed a request for escalation, notifying the MAC/DAB of the prior district court decisions including her own, to which the MAC/DAB did not timely respond. *See* A.R. at 2-3.  Accordingly, ALJ Holt's decision rejecting Ms. Lewis' claim became the Secretary's final decision and this suit followed.

### L.      Mr. Sargent's Rejected Claims

Mr. Sargent is appealing two final decisions from the Secretary rejecting his claims for Medicare CGM coverage on the grounds that a CGM is not "durable medical equipment."

#### MAC Appeal M-18-239

On August 9, 2016, Mr. Sargent received a 90-day supply of sensors for use with his Medtronic MiniMed CGM system and, thereafter, submitted a claim for Medicare CGM coverage. On September 9, 2016, Mr. Sargent's claim for coverage was rejected using code A9276 and the explanation that "Medicare does not pay for this item or service." *See* A.R. at 2187.  Mr. Sargent sought redetermination and that was denied on the grounds that a CGM is "precautionary" and not "durable medical equipment."  *See* A.R. at 2191-92.  Mr. Sargent timely sought reconsideration and that was denied on April 21, 2017 on the grounds that a CGM is "precautionary" and, therefore, not "durable medical equipment."  *See* A.R. at 2164-68.

Mr. Sargent timely sought a hearing before an ALJ.  On September 5, 2017, ALJ Shurtliff issued a decision denying coverage on the grounds that a CGM does not meet the definition of "durable medical equipment."  *See* A.R. at 2056-61.  Mr. Sargent timely appealed to the

MAC/DAB, including notifying them of the prior favorable district court decisions.  *See* A.R. at 2014-20.

The MAC/DAB denied Mr. Sargent's claim on the grounds that a CGM is not "durable medical equipment" because it is "precautionary" and is not "primarily and customarily used to serve a medical purpose."  *See* A.R. at 1993-2003.

**MAC Appeal M-18-6040**

On April 12, 2017, Mr. Sargent received a 90-day supply of sensors for use with his Medtronic MiniMed CGM and, thereafter, submitted a claim for Medicare CGM coverage.  Mr. Sargent's claim for Medicare CGM coverage was rejected on April 21, 2017 using code A9276 with the explanation that "Medicare does not pay for this item or service."  *See* A.R. at 1935-38.

Mr. Sargent timely sough redetermination and that was denied on August 15, 2017 on the grounds that his CGM was "therapeutic" as defined in CMS 1682-R (*i.e.*, not "primarily and customarily used to serve a medical purpose") and, therefore, not "durable medical equipment."  *See* A.R. at 1205-6.

Mr. Sargent timely sought reconsideration and that was denied on March 2, 2018 on the grounds that his CGM was "not a covered benefit."  *See* A.R. at 1174-77.  Mr. Sargent timely sought an ALJ hearing.

After conducting a hearing in which CMS chose not to participate, on June 15, 2018, ALJ Han issued a decision finding that the CGM sensors at issue were "durable medical equipment" and ordered coverage.  *See* A.R. at 1059-73.

CMS sought own motion review and on October 15, 2018, the MAC issued a decision reversing the ALJ essentially on the same grounds as M-18-239 (i.e., a CGM is "therapeutic",

"precautionary", not "primarily and customarily used to serve a medical purpose", and not "durable medical equipment").  *See* A.R. at 966-75.

## II.   DISCUSSION

As detailed below, Plaintiffs have established each of the requirements for class certification and appointment of class counsel.

### A.   At Least One Named Plaintiff Has Article III Standing

While standing does not appear to be disputed, at least one named plaintiff must have injury and standing to bring suit.  *See, e.g., J.D. v. Azar*, 925 F.3d 1291, 1323-34 (D.C. Cir. 2019).  In the present case, there has never been a challenge to Mrs. Lewis' alleged injury or standing.  Ms. Lewis contends that she has been injured by the Secretary's failure to follow the laws passed by Congress and she clearly has standing to contest denial of her claim for Medicare CGM coverage.

In order to avoid any confusion, as set forth in the Complaint, a case like this technically seeks "injunctive relief" not "damages."  *See Bowen v. Massachusetts*, 487 U.S. 879, 893-901 (1988).  Regardless of the term used to describe the appropriate remedy for the Secretary's unlawful acts, the Complaint seeks an order requiring the Secretary to approve the Medicare claims submitted by the class members for CGM coverage that were denied on the grounds that a CGM is not "durable medical equipment", where the denial has not already been reversed on appeal.

### B.   Class Certification

The party seeking certification bears the burden of persuasion and must show that the proposed classes meet the requirements of FED.R.CIV.P. 23 by a preponderance of the evidence.  *See, e.g., Hoyte v. District of Columbia*, 325 F.R.D. 485, 491 (D. D.C. 2017) (Cooper, J.).  In the present case, Plaintiffs proposed class is:

> All persons whose claims for Medicare CGM coverage (whether Part B or Part C) were denied on the grounds that a CGM is not durable medical

equipment, and not subsequently reversed on appeal, from December 13,
2012 through the conclusion of this case.

While it is expected that some claims for Medicare CGM coverage may have been rejected on other grounds (*e.g.*, wrong form, not timely filed, etc.), the class consists of only those persons/claims that were/are rejected on the grounds that a CGM is not "durable medical equipment." That is the basis for the rejection of Ms. Lewis and Mr. Sargent's claims and of every class member identified above.

Importantly, the class of persons whose claims for Medicare CGM coverage has been rejected on the grounds that a CGM is not "durable medical equipment" is readily ascertainable. As discussed, each claim so rejected was coded by the Secretary using the codes A9276; A9277; A9278; K0553; and K0554 as reflected in the produced materials. Indeed, the Secretary's production consisted only of claims denied and coded on these grounds.

Plaintiffs understand that, subject to the Secretary's amount-in-controversy argument, the Secretary does not contest that Ms. Lewis and Mr. Sargent are proper representatives for anyone whose CGM claims were pending (or whose deadline to appeal a denial had not passed) when this suit was filed on December 13, 2018 or who subsequently filed a claim that was denied (where the denial was not reversed on appeal). After an initial denial, beneficiaries have 120 days to file a notice of appeal. *See* 42 C.F.R. § 405.942(a). Thus, even the Secretary would seemingly have to agree that the class should include all persons who received a notice of denial of a CGM claim for coverage on or after August 15, 2018, whether filed after that date or still pending on that date.

Before addressing the requirements of Rule 23, Plaintiffs note that the class certification issues in this case are extremely similar to the issues in *Goodnight v. Shalala*, 837 F.Supp. 1564 (D. Utah 1993). There, plaintiffs filed suit on behalf of a class alleging that the Utah branch of the Social Security Administration was employing a secret, illegal policy in evaluating (and denying)

claims for social security disability income (SSDI) and supplemental security income (SSI).  At least in part because the policy was secret and the class members did not know the true reason for the denial of their claims, many of the class members did not exhaust their administrative remedies or bring suit within 60 days.  The class sought to be certified went back (apparently) six years before the suit was filed and comprised an estimated 30,000 members whose claims were denied under the improper policy.

The district court rejected the Secretary's motion to dismiss alleging failure to exhaust and file suit within 60 days.  The court noted that the exhaustion/60-day requirement is not jurisdictional and could be waived by the Secretary or by the court.  *Id.* at 1570-71.  In light of the secret policy, the court waived the exhaustion/60-day requirement and certified a class of an estimated 30,000 members, some of whom had failed to exhaust their administrative remedies and file suit within 60 days.  *Id.* at 1573.

Likewise, in the present case, Plaintiff allege a class of some 90,000 people whose claims for CGM coverage were improperly denied.  Moreover, for virtually all of those people, the basis for the denial was either hidden from them or the Secretary falsely represented that coverage was "statutorily excluded."[7]

With that background, the requirements of FED.R.CIV.P. 23(a) are addressed.

### 1.    Numerosity

Pursuant to FED.R.CIV.P. 23(a)(1), Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable."  To establish numerosity, a party need not provide a precise number of class members as long as there is a reasonable basis to estimate it.  *See, e.g.,*

---

[7] As Plaintiffs have noted before, there is no statute excluding CGM coverage.  Moreover, in response to Interrogatories and Requests for Admission, the Secretary has failed and refused to identify any alleged statute excluding CGM coverage.

*Howard v. Liquidity Services, Inc.*, 322 F.R.D. 103, 117 (D. D.C. 2017).  Typically, a class of at least 40 members presumptively meets the numerosity requirement.  *See, e.g., Barnes v. Dist. of Columbia*, 242 F.R.D. 113, 121 (D. D.C. 2007).

      a.      Claims Pending From August 15, 2018 to the Present

As set forth above, it is understood that the Secretary does not dispute the suitability of a class action for any person whose CGM claim was submitted, and denied, after August 15, 2018.

For the period August 15, 2018 through July 31, 2019, those claims total some 89,096 Part B claims brought by 34,828 persons, an estimated 44,533 Part C claims by 17,414 persons, and a combined estimated 133,599 claims by 42,242 persons.

Given that the data produced so far covers only the period through July 2019, it is expected that thousands of additional claims brought by thousands of persons (*i.e.*, additional class members) are expected to fall into this group.

      b.      Claims Pending December 13, 2012-August 15, 2018

In addition to the claims pending in the post-August 15, 2018 period, the class should also include all persons who had CGM claims filed or pending starting on December 13, 2012.  Those claims total some 163,271 Part B claims brought by 34,564 persons, an estimated 81,635 Part C claims by 17,282 persons, and a combined estimated 244,906 claims by 51,846 persons.

Thus, regardless of which time period is examined, the class clearly would be so numerous that joinder of all the members is impracticable.

    **2.**      **Commonality**

Pursuant to FED.R.CIV.P. 23(a)(2), Plaintiffs must show commonality, *i.e.*, that "there are questions of law or fact common to the class."  The commonality requirement is satisfied if claims of the class members' "depend on upon a common contention" that is "capable of classwide

resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *See O.A. v. Trump*, 404 F.Supp.3d 109, 155-6 (D. D.C. 2019) (Moss, J.) (*citing Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Further, "factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *See Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D. D.C. 2003).

In the present case, there can be little doubt regarding commonality. Each and every one of the claims of the class members stands denied on the same ground that a CGM is not "durable medical equipment", more specifically, that a CGM is not "primarily and customarily used to serve a medical purpose." That one issue is central to the validity of each one of the claims and resolving it will either result in the grant or denial of each claim. Thus, a determination of that issue will resolve the claims of ~90,000 people in one stroke.

**3.      Typicality**

The class must meet the requirement of typicality: that "the claims or defenses of the representative parties are typical of the claim or defenses of the class." FED.R.CIV.P. 23(a)(3). Usually, "[t]he commonality and typicality requirements … tend to merge." *Dukes*, 546 U.S. at 349 n.5 (internal quotation and citations omitted). "Generally speaking, 'typicality is … satisfied when the plaintiffs' claims arise from the same course of conduct, series of events, or legal theories of other class members." *Daskalea v. Wash. Humane Soc'y*, 275 F.R.D. 346, 358 (D. D.C. 2011). But "[t]he facts and claims of each class member do not have to be identical to support a finding of typicality; rather, typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff." *Id.*

In the present case, Ms. Lewis and Mr. Sargent's claims arise from same course of conduct by the Secretary in issuing the same denial of CGM claim for them as for all the other class members. That is, each of the class members has had a Medicare claim for CGM coverage denied on the same legal theory that a CGM is not "durable medical equipment", more specifically, that a CGM is not "primarily and customarily used to serve a medical purpose." Thus, the nature of Ms. Lewis and Mr. Sargent's claims is that the Secretary has failed to follow both Congress' mandate to provide coverage and the Secretary's own regulations regarding what constitutes "durable medical equipment" and, in that regard, has violated the provisions of the Administrative Procedure Act (arbitrary and capricious, unlawfully withheld or denied, etc.) as set forth in the Complaint. Again, each class member's claim has an identical basis.

The Secretary asserts that because Ms. Lewis and Mr. Sargent exhausted their administrative remedies and filed suit within 60 days, while the majority of class members did not, Ms. Lewis and Mr. Sargent's claims are not "typical" of the class. That position is without merit. It is well settled that exhaustion and compliance with the 60-day requirement are not jurisdictional. *See, e.g., Bowen v. City of New York*, 476 U.S. 467, 478 (1986); *Mathews v. Elridge*, 424 U.S. 319, 328, n. 9 (1976). Instead, those are *affirmative defenses* that the Secretary may (or may not) assert and that may be waived either by the Secretary or by the Court.

Importantly, FED.R.CIV.P. 23(a)(3) is concerned with whether the "claims or defenses *of the representative parties* are typical of the claims or defenses *of the class*" and is not concerned with the defenses of a defendant opposing a class. *See, e.g., Seidman v. American Mobile Sys., Inc.*, 157 F.R.D. 354, 361 (E.D. Pa. 1994) (*citing Newberg on Class Actions* § 3.16, at 175-76 (2d. ed. 1985)). For purposes of class certification, any potential defenses that the Secretary may advance against any class members in the future does not affect whether the class representative's

claims or defenses are typical of the members of the class.  Thus, as detailed here, Ms. Lewis and Mr. Sargent's claims are typical of the claims of the class members.

### 4.    Adequacy

The final certification requirement is adequacy: that "the representative parties will fairly and adequately protect the interests of the class."  FED.R.CIV.P. 23(a)(4).  An assessment of adequacy requires: 1) that the named plaintiffs "must not have antagonistic or conflicting interests with the unnamed members of the class"; and 2) that the named representatives "must appear able to vigorously prosecute the interests of the class through qualified counsel."  *See Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 997).

      a.      Neither Ms. Lewis Nor Mr. Sargent Have Antagonistic or Conflicting Interests With the Unnamed Members of the Class

Attached to this brief are the declarations of Carol Lewis and Douglas Sargent.  As described in both declarations, neither of the named plaintiffs have interests that are antagonistic or conflicting with the unnamed members of the class.  Indeed, the interests of the named plaintiffs and the unnamed class members are fully aligned.

As described in Ms. Lewis' declaration, Ms. Lewis has litigated the issue of Medicare coverage of CGM claims for several years and is extremely familiar with the underlying facts, the appeals process before the Department, and the legal theories underlying both claims of coverage and the Department's refusals to provide coverage.  In addition, Ms. Lewis understands her role as a named plaintiff in a class action and is committed to vigorously prosecuting the interests of the class.

As described in Mr. Sargent's declaration, he is likewise familiar with the facts, the appeals process, the legal theories underlying both claims of coverage and the Department's refusals to

provide coverage.  In addition, Mr. Sargent understands his role as a named plaintiff in a class action and is committed to vigorously prosecuting the interests of the class.

b.    Vigorous Prosecution Through Qualified Counsel

Ms. Lewis and Mr. Sargent have selected qualified counsel in the form of Parrish Law Offices and Lowenstein Sandler.

i.    Parrish Law Offices:

Simply put, no other firm in the country has the experience Parrish Law Offices has in litigating Medicare CGM claims.  For her work on behalf of Medicare CGM claimants, Debra Parrish was the recipient of the 2017 American Bar Association *Pro Bono Publico* Award.  Since taking on its first Medicare CGM client in 2013, Parrish Law Offices has represented at least 35 Medicare beneficiaries at all levels of the Medicare appeals process, including conducting at least 63 ALJ hearings on the same.  In addition, Parrish Law Offices has handled numerous appeals to the Medicare Appeal Council.

From there, not including the present case, Parrish Law Offices has handled 6 district court litigations (Wisconsin, Massachusetts, Vermont, North Carolina, California, and the District of Columbia).  The Secretary settled one of those litigations (including paying Parrish Law Offices' fees),[8] three were decided against the Secretary on the merits (including orders to pay Parrish Law Offices' fees),[9] and two remain pending.[10]

---

[8] *See Smith v. Azar*, Case No. 18-cv-181-MOC (W.D. N.C.).

[9] *See Whitcomb v. Azar*, Case No. 17-cv-14-DEJ (E.D. Wisc.); *Lewis v. Burwell*, Case No. 15-cv-13530-NMG (D. Mass.); *Bloom v. Burwell*, Case No. 16-cv-121-GWC (D. Vermont).

[10] *See Zieroth v. Azar*, Case No. 20-cv-172-MMC (N.D. Cal.); *Olsen v. Azar*, Case No. 19-cv-3814-RBW (D.D.C.).

Resumes of the Parrish Law Offices attorneys expected to be involved in this matter (James Pistorino, Debra Parrish, and Bridget Noonan) are attached.

        ii.        Lowenstein Sandler:

Lowenstein Sandler, LLP is one of the largest law firms in the United States and has extensive experience in litigating matters in federal courts.  Beyond that, the counsel involved in this case (Mssrs. Jeffrey Blumenfeld and Gavin Rooney) have, between them, been involved in more than 20 class action lawsuits.

Resumes/biographies of the Lowenstein Sandler attorneys expected to be involved in this matter are attached.

Clearly, Parrish Law Offices and Lowenstein Sandler are qualified counsel.

Accordingly, the class representatives have shown that they will fairly and adequately represent the interests of the class.

**C.**    **This Case Falls Into One or More of the Categories Listed in FED.R.CIV.P. 23(b)**

As noted by the Rule, a class action may be maintained if the requirements of FED.R.CIV.P. 23(a) are met and if the case falls into one or more of the categories listed in FED.R.CIV.P. 23(b). *See also Wal-Mart*, 564 U.S. at 345.  The present case would qualify as either a 23(b)(2) or a 23(b)(3) class, or under both categories.

**1.**    **FED.R.CIV.P. 23(b)(2) – acted or refused to act on grounds that apply generally to the class/injunctive relief is appropriate**

As noted above, the Secretary has refused to grant Medicare CGM coverage on grounds that apply generally to the class.  Each class member's claim for CGM coverage stands denied on the grounds that a CGM is not "durable medical equipment", more specifically that it is not "primarily and customarily used to serve a medical purpose."  Putting aside everything else, Plaintiffs need only show that the Secretary "has acted in a consistent manner towards members

of the class so that his actions may be viewed as part of a pattern of activity." *See Bynum*, 214 F.R.D. at 37.  Given the rejection of more than 370,000 estimated claims on this ground shown by Plaintiffs, clearly, this requirement has been shown.

In addition to acting on grounds that apply generally to the class, Plaintiffs must show that they seek final injunctive relief for the class.  As set forth above, in a case like the present one, plaintiffs cannot seek "damages" from the Secretary.  Instead, they must seek an injunction requiring the Secretary to provide coverage.  *See Bowen*, 487 U.S. at 893-901.  Thus, Plaintiffs are seeking the injunction required by the Rule and the class should be certified under FED.R.CIV.P. 23(b)(2).

## 2.    FED.R.CIV.P. 23(b)(3) – common questions of law or fact predominate

To qualify as a class under FED.R.CIV.P. 23(b)(3), two requirements must be met: 1) that there are common questions of law or fact common to the class that predominate over questions affecting only individual members; and 2) that a class action is superior to other methods in fairly and efficiently adjudicating the controversy.

### a.    Predominance

As noted recently by one court in this District:

> There is no definitive test for determining whether common issues predominate, however, in general, predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position.

*See Kinard v. East Capitol Family Rental, L.P.*, 331 F.R.D. 206, 214 (D. D.C. 2019) (Kelly, J.) (internal citations and quotations omitted).

In the present case, clearly, common issues predominate because a determination of whether a CGM is "durable medical equipment" can be proven as a matter of law (the most general of all bases) and that will prove (indeed, be dispositive of) each class member's claim.

b.      **Superiority**

A class action is superior to other methods of resolving the claims of the ~90,000 people, at least, both because it is the most efficient and because it is the only realistic mechanism for providing relief to the class members' whose individual claims would not economically justify individual litigation.

With respect to the ~90,000 people, clearly, litigating all of their claims in a single action is the most efficient route to resolving the issues.  Individual litigation (where even possible) would result in an extreme use of both private party and court resources and would require judges all over the country to consider the same claims.  Thus, the class approach is the most efficient route to resolution.

Further, the claims by the individual class members are not of sufficient magnitude to justify individual litigation.  Reviewing the Part B data produced (subject to the uncertainty in identifying individuals as a result of the Secretary's production), the average class member's claim would be $4,624.  In such a situation, given that it would be uneconomic to litigate the matters individually, a class action is the superior method to resolve the matter.  For example, in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997), the Supreme Court stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

(internal citations and quotations omitted).  That policy is applicable in this case.

In conclusion, the class in this case can and should be certified under both FED.R.CIV.P. 23(b)(2) and (3).  *See, e.g., Bynum*, 214 F.R.D. at 41 (hybrid (b)(2)/(3) class certified).

### D.     Plaintiffs' Statement on the Mechanics of Notice

Pursuant to LCvR 23.1(c), Plaintiffs propose the following with respect to the mechanics of notice:

### 1.     How, when, by whom, and to whom notice shall be given

Plaintiffs believe that notice be accomplished by individual mailing to class members by first class, United States mail.

Plaintiffs will engage a third-party class action notice/administration service to handle the mechanics of providing the notice and receiving any opt-outs.  Third-party services of this type are routinely used in class action litigation and include entities such as Epiq Global, Hefler Claims Group, Analytics Consulting, etc.  Typically, such services handle individual mailings, receive opt-outs by mail or through a website, and provide that data to the parties.  Such a service if the most economical and expeditious means of providing notice.

As Plaintiffs have noted in other briefing, the notice could be provided either before or after the Court rules on the issue of liability.  In Plaintiffs' view, it would make little sense to notify people if the Court finds that there is no liability while the matter is appealed.  Further, it is common to make a class certification decision simultaneous with a ruling on a motion for summary judgment.  *See, e.g., Huashan Zhang v. U.S. Citizenship and Immigration Services*, 344 F.Supp.3d 32 (D. D.C. 2018) (Sullivan, J.) (class certified and plaintiff's motion for summary judgment granted in single decision).

Plaintiffs do not believe that that the Secretary is the proper party to handle class notice.  First, if the class is certified, then the class members will be the clients of Plaintiffs' counsel and any such notice should come from their own counsel – through the third-party class action administration service.  Plaintiffs object to any process where they have to rely on the Secretary's

representation of what notice was sent, to whom, and when – especially when it is a communication to Plaintiffs' counsel's clients.  Second, as the Secretary has demonstrated in this case, the Secretary is less than competent/reliable to gather records in a timely fashion and the Secretary's representations in this regard are not reliable.  Engaging a third-party service will remove the mechanics of notice/opt-outs from the interested parties and both parties can receive information from the neutral third-party service.

### 2.       How and by whom payment for notice is to be made

If a third-party service is engaged, payment for the notice will be made by Plaintiffs' counsel subject to recovery from the class.  If the Secretary is allowed to provide notice, then the Secretary should pay for that notice.

### 3.       By whom the response to the notice is to be received

Initially, any response to the notice will be received by the third-party service who will then pass along copies of any response to counsel for both Plaintiffs and the Secretary.

### E.       Appointment of Class Counsel

Pursuant to FED.R.CIV.P. 23(g), Plaintiffs also move for an Order appointing current counsel (Parrish Law Offices and Lowenstein Sandler) as class counsel.

Simply tracking the requirements of the Rule:

### 1.       FED.R.CIV.P. 23(g)(1)(A)(i) – efforts to investigate and identify potential claims

As set forth above and in the declaration of James Pistorino, the Parrish Law Offices has invested a tremendous amount of effort in investigating and identifying potential claims.  That effort has included serving multiple FOIA requests and litigating four prior cases, with an additional two pending.

Further, in this case itself, current counsel has served multiple requests for production and vigorously pursued production of all of the relevant information.  Indeed, on behalf of the class members, current counsel has objected to the Secretary's efforts to stymie production and prevent the proper identification of class members, including class members who are Part C plan participants.

2.      FED.R.CIV.P. 23(g)(1)(A)(ii) - experience

As set forth in the attached declarations of James Pistorino and Jeffrey Blumenfeld, current counsel are extremely experienced in handling class actions, complex litigation, and the types of claims asserted in this action.  Counsel from Lowenstein Sandler have participated in more than 20 class actions and have decades of experience in federal court litigation.  Counsel from the Parrish Law Offices bring decades of experience in litigating Medicare claims before the Department, in litigation before federal courts at all levels, and have already prosecuted four cases related to Medicare CGM coverage to completion (and been successful in each one).

3.      FED.R.CIV.P. 23(g)(1)(A)(iii) – knowledge of the applicable law

Clearly, given current counsel's extensive experience (and success) in Medicare CGM litigation, current counsel are very knowledgeable regarding the applicable law in this area.

4.      FED.R.CIV.P. 23(g)(1)(A)(iv) – commitment of resources

As set forth in the attached declarations of James Pistorino and Jeffrey Blumenfeld, current counsel are prepared to commit whatever resources are necessary to properly represent the class.

To date, current counsel have vigorously litigated the issues in this case and staffed the case with four partners from the firms involved.  Further, as set forth above, to the extent that funds are required to accomplish class notice, current counsel are prepared to advance those funds.

In light of current counsel's years-long litigation of the underlying issue, including appellate practice, the commitment of resources by current counsel is evident.

Pursuant to FED.R.CIV.P. 23(g), current counsel should be appointed class counsel.

### III.    CONCLUSION

This case is the ideal for class action status and resolution.  The Court should certify the class as proposed by Plaintiffs as a FED.R.CIV.P. 23(b)(2)/(3) class and appoint current counsel as class counsel.

Dated:  March 23, 2020                                Respectfully submitted,

                                                     /s/Jeffrey Blumenfeld
                                                     D.C. Bar No. 181768
                                                     LOWENSTEIN SANDLER LLP
                                                     2200 Pennsylvania Avenue, NW
                                                     Washington, DC 20037
                                                     Telephone: (202) 753-3800
                                                     Facsimile:  (202) 753-3838
                                                     jblumenfeld@lowenstein.com

                                                          *and*

                                                     PARRISH LAW OFFICES
                                                     James C. Pistorino
                                                     788 Washington Road
                                                     Pittsburgh, PA 15228
                                                     Telephone: (412) 561-6250
                                                     Facsimile:  (412) 561-6253
                                                     james@dparrishlaw.com

                                                     *Attorneys for Plaintiffs*