FOR THE DISTRICT OF COLUMBIA

CAROL A. LEWIS et al.)
               ) Case No. 18-cv-2929 (RBW)
   Plaintiffs,  )
              ) DECLARATION OF PLAINTIFF
   v.          ) CAROL A. LEWIS IN SUPPORT OF
              ) CLASS CERTIFICATION MOTION AND
ALEX M. AZAR II, in his official,) APPOINTMENT OF CLASS
capacity as Secretary of Health and  ) COUNSEL
Human Services,         )
              )
   Defendant.  )
              )

I, Carol Lewis, declare:
1. I am over the age of 18, have never been convicted of a felony, and I make the following statements of my own free will.

Personal Background
2. I am a 74-year-old resident of Chatham, Massachusetts. I am also a mother of three children.
3. Approximately 40 years ago, I began designing and selling women's apparel from a push-cart in downtown Boston. I continue to operate that business with my daughter, and my clothing is now sold at stores in Massachusetts and Louisiana, where I spend part of each year. In addition to operating my business, I volunteer with my church and at the local senior center.

Diabetic Condition and Experience
4. In 1985, I was diagnosed with Type I Diabetes, a life-threating condition with many serious complications. Before I received a continuous glucose monitor, I checked my blood glucose levels as many as 12 times a day by drawing blood from a finger and testing it (i.e., "finger-stick testing"). One cannot do that testing while sleeping. As a result, even with the most disciplined efforts, there were hours each day where there was no testing, and my glucose levels could go dangerously high or low, causing a health emergency.
A normal body automatically tracks blood glucose levels all day and night and releases the exact amount of insulin needed at just the right time to keep blood glucose at a stable level. My body does not produce any insulin at all, so I must add this vital hormone myself with an insulin pump.
A normal Blood Glucose level is from 80 to 120. My blood glucose levels can range from a high of 400 to below 30 on any given day. This fluctuation makes determining the right amount of insulin to handle daily activities including meals, exercise, work and the stresses of daily life a nearly impossible task. The information provided by a CGM has an immediate and profound effect on the ability to perform this task. It notifies me when I am experiencing high blood glucose and more insulin may be needed to minimize possible long-term complications that can damage eyes, kidneys, nerves, and my heart. Continued high blood glucose can also lead to coma and to death. By notifying when blood glucose falls to a dangerous low, indicating that immediate action is needed, a CGM can, and has, saved my life.
This device gives accurate blood glucose reading every 3 minutes around the clock. It also displays a graph that will show my blood glucose levels over the past 1, 6, or 24 hours. This feature tells me how fast my blood glucose is changing, and if it is rising or falling. This information is vital to make good decisions about insulin administration.

5. I am what is referred to as a "brittle" diabetic. That is, my blood glucose levels are prone to wild and rapid swings. Thus, in the span of as little as thirty (30) minutes, I could go from normal glucose levels to unconscious as a result of low glucose levels.

6. In addition to being brittle, I have what is referred to as "hypoglycemic unawareness." Most people who suffer from diabetes experience physical symptoms - such as headaches or sweats - when their blood glucose levels fall too low. As a result, they are alerted to check their blood sugar and make whatever changes are necessary (e.g., drinking orange juice).

7. Unfortunately, the longer someone suffers from diabetes, the less likely they are to experience these symptoms when their blood sugar falls too low. This is referred to as "hypoglycemic unawareness." Thus, they no longer have any physical symptoms of a problem. As a result, one moment they can feel fine, and the next moment they may be unconscious.

8. A CGM addresses both of these issues because it tests the glucose levels every five minutes and tracks the trend of the glucose. Thus, if the glucose levels are out of range (or trending out of range) the device alerts the user to take action. In addition, some CGMs interface with an insulin pump to automatically adjust insulin levels in response to readings. This is especially important at night when glucose levels may fall and, if delivery of insulin by the pump is not halted, death can result.

Medicare CGM Claim Experience

9. I have been fighting for Medicare CGM coverage for myself since 2011. Although I am not an attorney and have no specialized knowledge or training in this regard, I handle all the appeals of denials (i.e., redeterminations and reconsiderations). I have also participated in numerous ALJ hearings regarding CGM coverage. I keep multiple folders covering the appeals and the sheer workload in trying the track the claims and not miss deadlines as the Secretary repeatedly denies the claims is daunting.

10. Rather than a matter of medical need, Medicare has transformed this into a legal battle that no non-lawyer could practically expect to handle. I have been fortunate in being able to obtain legal representation at no cost to assist me in this fight for the last several years. Without that, I would not have been able to handle the appeals (and certainly the district court litigation) of this issue. Thus, without the legal help which I cannot afford, I would have been forced to let the Secretary's unreasonable denials stand and may have been forced to go without the life-saving CGM device.

11. I understand that, the Secretary contends that a CGM is not "durable medical equipment" and, for that reason alone, rejects CGM claims. More specifically, I understand that, at different times, the Secretary has contended that a CGM is "precautionary." What that means has never been explained by the Secretary and is unclear to me. Likewise, the Secretary contends that a CGM is not "primarily and customarily used to serve a medical purpose." However, a CGM is recognized as standard of care treatment for Type 1 Diabetes by the medical profession and is approved by the FDA. Likewise, I understand that in January 2017, the Secretary issued CMS 1682-R which stated the Secretary's determination that any CGM whose readings needed to be checked using a finger-stick before making a treatment decision is not "primarily and customarily used to serve a medical purpose." Again, I fail to understand the Secretary's reasoning and believe that it is wrong.

12. As the Court is already aware, I was the plaintiff in Lewis v. Burwell, Case No. 15-cv-13530-NMG (D. Mass.), where I was represented by the Parrish Law Office and where the same issue of Medicare CGM coverage that is at issue, in this case, was litigated. Ultimately, the district court, in that case, determined that the Secretary's denial of coverage of my CGM claim on the grounds that my CGM was not "durable medical equipment" was wrong and ordered coverage. See Lewis v. Burwell, 2018 WL 1639687 (D. Mass. April 5, 2018) (Gorton, J.).

13. Even after I received the favorable decision from Judge Gorton, I continued to have my CGM claims denied by Medicare on the grounds that a CGM was not "durable medical equipment." These denials continued even when I provided a copy of Judge Gorton's decision and even after the filing of this case.

14. In addition to my claims and district court case, I am aware of the district court decisions holding that a CGM is "durable medical equipment" and ordering Medicare coverage in the Whitcomb v. Azar and Bloom v. Azar cases which I have monitored.

The Claim At Issue In This Case

15. The claim at issue, in this case, is my claim for coverage of my Dexcom G5 CGM supplies. Pursuant to CMS 1682-R, I understand that the Secretary now admits that the Dexcom G5 device is "durable medical equipment." However, the Secretary contends that my Dexcom G5 device is not "durable medical equipment" because I submitted my claim before January 12, 2017. I fail to see how when a claim is submitted changes the "durable medical equipment" nature of the CGM.

Duties as a Class Representative

16. I understand that in this case, I am bringing not only my own claim for coverage but will be acting as a representative of the class members. In this regard, I am committed to fairly and adequately protecting the interests of the class members and to working with counsel and Mr. Sargent in making decisions for the class. As a class representative, along with Mr. Sargent, I receive regular updates on developments in this case, and with the guidance of counsel, participate in the decisions on how to proceed and what instructions to give to counsel.

17. An important part of my efforts in seeking coverage for my own CGM claims is my desire to help all those who are suffering both from diabetes and the Secretary's failure to follow the law. Thus, it has been my hope that by litigating the issue of coverage, the Secretary will change his policies or will be ordered to do so by the courts. Indeed, the fact that the Secretary continues to issue denials for CGM coverage even after losing the identical coverage issue before multiple courts has lead me to believe that the only way to obtain relief is to bring a class action because the Secretary ignores individual appeal and district court decisions.

18. Many people who suffer from diabetes are of limited means, partly because the diabetes itself can make working difficult. While I am fortunate in being able to provide for myself and handle my own claims, I know many other diabetics who are not so lucky. Where Medicare will not cover their CGM expenses, they are forced to make difficult choices, and some are forced to go without CGM treatment or supplies because they cannot afford it. Thus, because they are being denied Medicare CGM coverage, these people are risking serious injury and death. I feel strongly that this is wrong and am eager to do what I can to right it.

19. Putting aside everything else, I believe that the Secretary's refusal to provide coverage for CGMs is extremely wasteful. As detailed above, diabetics who suffer from low blood sugar may slip into a diabetic coma with no advance symptoms or warning to themselves or others. Whenever diabetics are found unconscious, paramedics have to respond and transport the patient to the emergency room where they are treated. Curiously, Medicare pays for each of these incidents, which cost many multiples of the cost of yearly CGM coverage. Further, many brittle diabetics may suffer multiple instances like this each year or even each month. Thus, even putting aside the human cost, the Secretary's refusal to provide CGM coverage is wasteful of tax dollars.

20. I feel so strongly that the Secretary's failure to provide CGM coverage is wrong that I have rejected and will continue to reject any offer to resolve my personal claim that does not result in a recovery to the class as a whole.

I declare under penalty of perjury, except for statements made upon information and belief, that the statements made herein are true and correct and if called upon as a witness I would testify thereto. Executed this 23rd day of March, 2020 at Chatham, Massachusetts.

*Carol Lewis*
Carol Lewis