## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROL A. LEWIS, *et al.*, | Case No. 18-cv-2929 (RBW) |
| Plaintiffs, | |
| v. | DECLARATION OF PLAINTIFF DOUGLAS B. SARGENT IN SUPPORT OF CLASS CERTIFICATION MOTION AND APPOINTMENT OF CLASS COUNSEL |
| ALEX M. AZAR II, in his official capacity as Secretary of Health and Human Services, | |
| Defendant. | |

I, Douglas B. Sargent, declare:

1.    I am over the age of 18, have never been convicted of a felony, and I make the following statements of my own free will.

**Personal Background**

2.    I am a 75 year-old resident of Portland, Connecticut where I live with my wife of 48 years (Beth). I am also the father of three (3) and grandfather to eight (8).

3.    I am a retired electrical engineer. In addition, I served for six years in the Connecticut Air National Guard, rising to the rank of Staff Sargent before I was honorably discharged. In addition, I was a volunteer fire-fighter for 35 years, serving for many of those years in roles including Emergency Medical Technician, 3rd, 2nd, and 1st Lieutenant and Captain. In my free time, I enjoy spending time with my family and supporting my grandchildren in their sports activities.

**Diabetic Condition and Experience**

4.    I am a Type I diabetic. Diabetes is a very serious condition with many serious complications. Before I received a continuous glucose monitor, I checked my blood glucose levels as many as 12 times a day by drawing blood from a finger and testing it (*i.e.*, "finger-stick testing"). Obviously, one cannot do that testing while sleeping. As a result, even with the most disciplined

efforts, there were hours each day where there was no testing and the glucose levels could go dangerously high or low.

5.    I am what is referred to as a "brittle" diabetic. That is, my blood glucose levels are prone to wild and rapid swings. Thus, in the span of as little as thirty (30) minutes, I could go from normal glucose levels to unconscious as a result of low glucose levels. Accordingly, no realistic amount of finger-stick testing could prevent this from occurring, particularly while I am sleeping. If my blood glucose levels fall too low, I could die as a result.

6.    In addition to being brittle, I have what is referred to as "hypoglycemic unawareness." Most people who suffer from diabetes experience physical symptoms - such as headaches or sweats - when their blood glucose levels fall too low. As a result, they are alerted to check their blood sugar and make whatever changes are necessary (e.g., drinking orange juice).

7.    Unfortunately, the longer someone suffers from diabetes, the less likely they are to experience these symptoms when their blood sugar falls too low. This is referred to as "hypoglycemic unawareness." Thus, they no longer have any physical symptoms of a problem. As a result, one moment they can feel fine and the next moment they may be unconscious.

8.    Prior to receiving a CGM, I had more than 20 incidents where paramedics had to be called to my house to revive me from a diabetic coma. Since becoming accustomed to a CGM, I have had no such incidents in more than 3 years.

9.    A CGM addresses both of these issues because it tests the glucose levels every five minutes and tracks the trend of the glucose. Thus, if the glucose levels are out of range (or trending out of range) the device alerts the user to take action. In addition, some CGMs interface with an insulin pump to automatically adjust insulin delivery in response to readings. This is especially important at night when glucose levels may fall and, if delivery of insulin by the pump is not halted and if the CGM were not there to alert the user, death could result.

**Medicare CGM Claim Experience**

10.    I have been fighting for Medicare CGM coverage for myself since 2016. Although I am not an attorney and have no specialized knowledge or training in this regard, I handle all the

appeals of denials (*i.e.*, redeterminations and reconsiderations) and have also participated in numerous ALJ hearings regarding CGM coverage. I keep multiple folders covering the appeals and the sheer workload in trying the track the claims and not miss deadlines as the Secretary repeatedly denies the claims is daunting. So far, I have had eight (8) ALJ hearings and multiple appeals are pending at the MAC.

11.     I understand that, the Secretary contends that a CGM is not "durable medical equipment" and, for that reason alone, rejects CGM claims. More specifically, I understand that, at different times, the Secretary has contended that a CGM is "precautionary", though what that means is unclear to me and has never been explained by the Secretary. Likewise, I understand that, the Secretary contends that a CGM is not "primarily and customarily used to serve a medical purpose", though no other purpose has ever been identified or explained and none comes to mind or is readily apparent. Likewise, I understand that in January 2017, the Secretary issued CMS 1682-R which stated the Secretary's determination that any CGM whose readings needed to be checked using a finger-stick before making a treatment decision is not "primarily and customarily used to serve a medical purpose." Almost daily, my CGM alerts me of an upcoming hypoglycemic episode with the potential for brain damage or death. To me, this is an obvious medical purpose. Again, I fail to understand the Secretary's reasoning and believe that it is wrong.

12.     In addition to my claims, I am aware of the district court decisions holding that a CGM is "durable medical equipment" and ordering Medicare coverage in the *Whitcomb v. Azar*, *Lewis v. Burwell*, and *Bloom v. Azar* cases which I have monitored.

**The Claims At Issue In This Case**

13.     The claims at issue in this case are my claims for coverage of my Medtronic CGM sensors and transmitters. Despite the multiple district court decisions stating otherwise (indeed, the Medtronic CGM was the CGM at issue in each of those cases), the Secretary contends that my CGM is not "durable medical equipment." In particular, I understand that the Secretary contends that the Medtronic CGM is not "primarily and customarily used to serve a medical purpose." I feel that this is non-sensical and have never seen any rationale that could justify such a claim.

- 3 -

**Duties as a Class Representative**

14.     I understand that in this case, I am bringing not only my own claims for coverage but will be acting as a representative of the class members. In this regard, I am committed to fairly and adequately protecting the interests of the class members and to working with counsel and Ms. Lewis in making decisions for the class. As a class representative, along with Ms. Lewis, I receive regular updates on developments in this case, and with the guidance of counsel, participate in the decisions on how to proceed and what instructions to give to counsel.

15.     An important part of my efforts in seeking coverage for my own CGM claims is my desire to help all those who are suffering both from diabetes and the Secretary's failure to follow the law. Thus, it has been my hope that by litigating the issue of coverage, the Secretary will change his policies or will be ordered to do so by the courts. Indeed, the fact that the Secretary continues to issue denials for CGM coverage even after losing the identical coverage issue before multiple courts has lead me to believe that the only way to obtain relief is to bring a class action because the Secretary ignores individual appeal and district court decisions.

16.     Many people who suffer from diabetes are of limited means, partly because the diabetes itself can make working difficult. While I am fortunate in being able to provide for myself and handle my own claims, I know many other diabetics who are not so lucky. Where Medicare will not cover their CGM expenses, they are forced to make difficult choices and some are forced to go without CGM treatment or supplies because they cannot afford it. Thus, because they are being denied Medicare CGM coverage, these people are risking serious injury and death. I feel strongly that this is wrong and am eager to do what I can to right it.

17.     Putting aside everything else, I believe that the Secretary's refusal to provide coverage for CGMs is extremely wasteful. As detailed above, diabetics who suffer from low blood sugar may slip into a diabetic coma with no advance symptoms or warning to themselves or others. Whenever diabetics are found unconscious, paramedics have to respond and transport the patient to the emergency room where they are treated. Curiously, Medicare pays for each of these incidents, which cost many multiples of the cost of yearly CGM coverage. Further, many brittle

diabetics may suffer multiple instances like this each year or even each month as I did before getting a CGM. Thus, even putting aside the human cost, the Secretary's refusal to provide CGM coverage is wasteful of tax dollars.

18.     I feel so strongly that the Secretary's failure to provide CGM coverage is wrong that I will reject any offer to resolve my personal claim that does not result in a recovery to the class as a whole.

I declare under penalty of perjury, except for statements made upon information and belief, that the statements made herein are true and correct and if called upon as a witness I would testify thereto. Executed this 23rd day of March, 2020 at Portland, Connecticut.

Douglas B. Sargent