## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CAROL A. LEWIS, *et al.*, | ) | |
| | ) | Case No. 18-cv-2929 (RBW) |
| Plaintiffs, | ) | |
| | ) | **DECLARATION OF JEFFREY** |
| v. | ) | **BLUMENFELD IN SUPPORT OF** |
| | ) | **CLASS CERTIFICATION MOTION** |
| ALEX M. AZAR II, in his official | ) | **AND APPOINTMENT OF CLASS** |
| capacity as Secretary of Health and | ) | **COUNSEL** |
| Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

I, Jeffrey Blumenfeld, declare:

1.      I am over the age of 18, have never been convicted of a felony, and I make the following statements of my own free will.

2.      I am a graduate of Brown University (A.B.) cum laude, and the University of Pennsylvania Law School (J.D.), and have been practicing law for more than 45 years.

3.      In the past, I have worked in the Antitrust Division of the Department of Justice and also worked in private practice specializing in litigation and licensing of intellectual property and antitrust litigation and counseling.  I am a partner at Lowenstein Sandler LLP where I co-chair the Antitrust & Trade Regulation Group. I primarily operate out of the firm's Washington, D.C. office.

4.      Currently, Mr. Gavin Rooney, a partner and chair of the Business and Class Action Litigation Group, and I, as well as a paralegal, Ms. Paula Seguin, staff this case.  As reflected in our biographies, attached as Exhibit 1, both Mr. Rooney and I have decades of experience litigating in federal courts across the country.  If additional staff is needed, they will be assigned to this case.

5.      A list of class action matters that Mr. Rooney and I have been involved in is attached as Exhibit 2.  The list covers more than 20 cases spanning at least two decades.

6.      While Lowenstein Sandler does not have experience litigating Medicare CGM claims, the Parrish Law Office does.  Conversely, the Parrish Law Office is less experienced in class action litigation than Lowenstein Sandler.  Accordingly, by partnering together to handle this case, both firms are able to bring their expertise to bear in representing the class in this important litigation.  As a result, the class is receiving the highest caliber representation.

7.      Lowenstein Sandler is committed to investing whatever resources are necessary to properly represent the class in this matter.

I declare under penalty of perjury, except for statements made upon information and belief, that the statements made herein are true and correct and if called upon as a witness I would testify thereto.

Executed this 23rd day of March, 2020 at Washington, District of Columbia.

_____
Jeffrey Blumenfeld

# Exhibit 1





# Jeffrey Blumenfeld

Partner
Co-Chair, Antitrust & Trade Regulation

Washington, D.C.
T: +1 202.753.3810
jblumenfeld@lowenstein.com

Jeff is a leading figure in the competition issues that shape today's economy, particularly those affecting telecommunications, ecommerce, and other technology-based companies. Clients value his understanding of a wide variety of industries as well as his collaborative approach to accomplishing business goals. With more than 35 years of government and private practice experience, Jeff has an in-depth knowledge of competition principles, technology, regulation, and economics.

Drawing on nearly two decades of experience, Jeff works with clients on the increasingly important and complex competition issues in intellectual property including participation in standards setting, collective IP activity such as patent pools and collective defense, licensing issues including for standard essential patents (SEPs), and the competition issues that have become common in patent litigation over FRAND/RAND licensing terms for SEPs. As outside counsel, in-house general counsel, board director, and litigator, Jeff represents companies and their investors on a broad range of competition issues, including criminal antitrust matters (investigations and trials), class action antitrust lawsuits, actions brought by customers and suppliers, actions by or against competitors, monopolization cases, and transactions. Understanding that legal strategy must serve business strategy, Jeff functions as an integral part of his clients' business teams, from major brands to early-stage venture-backed tech companies.

Beginning his career with more than a decade at the Antitrust Division of the Department of Justice (DOJ) and in the U.S. Attorney's Office for DC, Jeff has first chaired more than 60 jury trials and has argued more than 20 appellate cases. As Assistant Chief of the Special Regulated Industries Section of the Antitrust Division, Jeff supervised investigative and trial staffs in complex matters in the financial services and telecommunications industries.

Jeff was one of four senior trial attorneys in the 18-month trial of *United States v. AT&T* (the divestiture case), arguably the most complex monopolization case ever tried successfully by the Government, covering anticompetitive conduct over a span of several decades. He had a senior supervisory role directing a large team in determining the theory of the case, conducting discovery including extensive depositions, architecting the Government's case, and both presenting and cross-examining numerous key witnesses, including fact, technology, engineering, and economic witnesses.  He then served as chief of the entire trial staff during the first wave of post-divestiture litigation.

While in private practice, Jeff was called back to the Antitrust Division several times to work with trial staffs in developing complex cases, including those that became *US v Microsoft* and *US v MasterCard and Visa*.  In addition, he has continued to advise clients in the technology and payments industries, working with electronic payment companies on both the issuer and merchant sides, as well as those providing transaction acceptance and fraud protection and remediation.  Jeff also regularly counsels clients and trade associations on antitrust issues relating to credit and collections.

Jeff is an accomplished litigator and trial lawyer in a variety of complex matters. His trial expertise includes both presenting and cross-examining not only fact witnesses but also technologists, engineers, economists, and finance and other experts. He also has a long record of successfully trying complex technology matters involving these same issues at US District Courts, at the FCC, and at state regulatory commissions nationwide. All these benefit from his ability to "translate" complex technology for non-technology-literate decision makers.

Drawing on this experience, Jeff has taught trial practice throughout his career, at a variety of forums including the Attorney General's Advocacy Institute of the US Department of Justice, the National Institute for Trial Advocacy ("NITA"), as an adjunct professor at the Georgetown University Law Center, and at several law firms.

## EXPERIENCE

> Serve as outside general counsel to HEVC Advance, formed to accelerate the widespread adoption and deployment of H.265/High Efficiency Video Coding technology and products.

> Represented Ethoca in its acquisition by MasterCard.

> Represented an ecommerce company automating receivables in the real estate industry.

> Represented a major provider of payments and issuer processing services.

> Represented an air cargo carrier in international antitrust cartel investigations on fuel surcharges and related civil litigation.

> Represented a Fortune 10 company as plaintiff in an antitrust civil litigation for recovery of overcharges by cartel members.

> Represented a Fortune 100 company in defense of an antitrust class action.

> Represented a major online company in defense of civil antitrust litigation.

> Represented the Transport Workers Union in the Department of Justice challenge to the merger of American Airlines and US Airways.

## HONORS & AWARDS

> **The Best Lawyers in America (2009-2020)**
> Recognized in the Antitrust Law section.

> **Super Lawyers (2017-2019)**
> Recognized for Antitrust Litigation in Washington, D.C.

> **Antitrust Division of the Department of Justice**
> Special Commendation for Outstanding Service in the Antitrust Division

> **Corporate INTL: Technology Sector Antitrust Law Firm of the Year in Washington D.C. (2020)**
> Recognized for demonstrated excellence in knowledge and service over the past 12 months.

## NEWS & INSIGHTS

**Publications**

> January 29, 2020
> **"2020 HSR Thresholds Announced by Federal Trade Commission,"** *Antitrust & Trade Regulation Client Alert*
> Jack Sidorov, Jeffrey Blumenfeld, Jeffrey M. Shapiro

> January 15, 2020
> **"Maximum Civil Penalties for HSR Violations Increased to $43,280 per Day,"** *Antitrust & Trade Regulation Client Alert*
> Jeffrey Blumenfeld, Jack Sidorov

> August 8, 2019
> **"New Guidelines on Antitrust Compliance Programs Offer Chance to Avoid Criminal Charges,"** *Lowenstein Sandler Client Alert*
> Jeffrey Blumenfeld, Rachel Maimin

> June 27, 2019
> **"A New Court Approach To DOJ And SEC Parallel Proceedings,"** *Law360*
> H. Gregory Baker, Rachel Maimin, Jeffrey Blumenfeld

> June 21, 2019
> **"Key Takeaways From a Recent Development in the Theranos Case,"** *White Collar Criminal Defense & Litigation Client Alert*
> H. Gregory Baker, Rachel Maimin, Jeffrey Blumenfeld

> March 5, 2019
> **"2019 HSR Thresholds Announced by Federal Trade Commission,"** *Antitrust & Trade Regulation Client Alert*
> Jack Sidorov, Jeffrey Blumenfeld, Jeffrey M. Shapiro

> February 5, 2018
> **"2018 HSR Thresholds Announced by Federal Trade Commission,"** *Antitrust & Trade Regulation Client Alert*
> Jack Sidorov, Jeffrey Blumenfeld, Jeffrey M. Shapiro

> January 26, 2017
> **"2017 HSR Thresholds Announced by Federal Trade Commission,"** *Antitrust & Trade Regulation Client Alert*
> Jack Sidorov, Jeffrey Blumenfeld, Jeffrey M. Shapiro

> February 4, 2016
> **"2016 HSR Thresholds Announced by Federal Trade Commission,"** *Antitrust & Trade Regulation Client Alert*
> Jack Sidorov, Jeffrey Blumenfeld, Jeffrey M. Shapiro

> August 2014
> **"Illegal Cartel Sheds Light on Antitrust Importance,"** *North American Windpower*
> Jeffrey Blumenfeld, Eric Jesse

**In the Media**

> October 15-20, 2019
> The transition of leadership of Lowenstein Sandler's D.C. office to **Antitrust & Trade Regulation** partner **Zarema A. Jaramillo** was covered in **Bloomberg Law – Big Law Business**, **General Counsel News**, **The Hill**, **The Deal**, and **The Washington Post**. Jaramillo is set to take over on January 1, 2020, from **Jeffrey Blumenfeld**, who founded the D.C. office in 2014 and will remain Co-chair of the firm's Antitrust & Trade Regulation practice group.

> September 26, 2019

**Jeffrey Blumenfeld,** co-chair of the firm's **Antitrust & Trade Regulation** practice, comments in an article in *The Hill* on concerns that antitrust investigations into four leading automakers may be driven by politics. Blumenfeld, who served twice in the Department of Justice's (DOJ) Antitrust Division, questions whether the DOJ now has sufficient legal grounds to pursue the investigation, and warns that a politically motivated investigation could permanently damage the Antitrust Division's reputation: "Once people begin to suspect that law enforcement is not based on the law and is not even handed − once a law enforcement agency loses that moral authority, I don't know how you get it back."

> July 12-19, 2019

Longtime firm client Tower International's (NYSE: TOWR) acquisition by private equity-owned Autokiniton Global Group, in a $900 million deal expected to close in September or October, is reported in **Crain's Detroit Business**, *The PE Hub Network*, *Automotive News*, *InvestorsHub*, *Law360*, *Smart Business Dealmakers*, *Mergers & Acquisitions*, and the **Global Legal Chronicle**. (Lowenstein deal team: **Peter H. Ehrenberg**, **Andrew E. Graw**, **Lowell A. Citron**, **Marita A. Makinen**, **Jeffrey Blumenfeld**, **Jack Sidorov**, **Jeffrey M. Shapiro**, **Elisia M. Klinka**, **Justin Gindi**, **Kate Basmagian**, **Daniel C. Porco**, **Matthew A. Weston**, **Erica Perlmutter**, **Robert Bee**, **Sabrina Cua**, **Brian A. Silikovitz**, **Kristin V. Taylor**, **Katie R. Glynn**, **Nicholas G. Mehler**, **Doreen M. Edelman**, **Lynda A. Bennett**, **Megan Monson**, **Michael B. Himmel**, and **Norman W. Spindel**) View Lowenstein's news announcement about this transaction.

> March 12-April 18; May 24, 2019

*Mondaq News*, *Retail Dive*, *The PE Hub Network*, *StreetInsider.com*, and the **Global Legal Chronicle** cover news of Lowenstein client Ethoca's acquisition by Mastercard. (The Lowenstein deal team included: **Steven E. Siesser**, **Traci A. Tomaselli**, **Anthony O. Pergola**, **Lesley P. Adamo**, **Jeffrey Blumenfeld**, **Jeffrey M. Shapiro**, **Jack Sidorov**, **Michael J. Mueller**, **Darren Goodman**, **Megan Monson**, **Gina M. Seong**, **James McDonough**, **Sophia Mokotoff**, **Erica Perlmutter**, and **Lauren Killeen**.) View Lowenstein's news announcement about this transaction.

> January 24, 2019

**The PE Hub Network**, **The Deal**, and *Law360* (December 12, 2018; January 24, 2019) note Lowenstein Sandler as lead counsel to Cerberus Capital Management, L.P. in its acquisition of Sparton Corporation (NYSE: SPA). (Lowenstein deal team: **Marita A. Makinen**, **Robert G. Minion**, **Jeffrey Blumenfeld**, **Mary J. Hildebrand**, **Nicholas G. Mehler**, **Christine Osvald-Mruz**, **Matt Savare**, **Jeffrey M. Shapiro**, **James C. Shehan**, **Michael Walutes**, **Jack Sidorov**, **Norman W. Spindel**, **Stuart S. Yusem**, **Manali Joglekar**, **Sabrina Cua**, **Allison Gabala**, **Megan Monson**, **Alex H. Rosenthal**, **Bryan Sterba**, **Matthew Tippy**, **Lauren E. Killeen**, and **Lauren M. Troeller**.) *(subscription required to view certain content) View Lowenstein's news announcement about this transaction.*

> October 15; November 30; December 18, 2018

**StreetInsider.com**, **The Deal**, **citybizlist**, *The PE Hub Network* (October 15, 2018; December 18, 2018) MarketWatch, Law360, *Global Legal Chronicle*, and **Business Wire** note Lowenstein Sandler as counsel to Cambium Learning Group, Inc. in its $900 million definitive merger agreement with Veritas Capital. (Lowenstein deal team: **Steven E. Siesser**, **Elisia M. Klinka**, **Brooke A. Gillar**, **Michael J. Mueller**, **Lauren M. Troeller**, **Bianka V. Barraza**, **Lowell A. Citron**, **Jeffrey Blumenfeld**, **Jack Sidorov**, **Jeffrey M. Shapiro**, **Steven M. Skolnick**, **Kate Basmagian**, **Scott Siegel**, **Lesley P. Adamo**, **Sophia Mokotoff**, **Darren Goodman**, **Megan Monson**, **Katie R. Glynn**, **David W. Field**, **Michael A. Kaplan**, **Eric Jesse**, **Nicholas G. Mehler**, **Steven M. Hecht**, Sean Collier, **Edward J. Hunter**, **Zarema A. Jaramillo**, **Andrew David Behlmann**, and **Gina M. Seong**.) *(subscription required to access certain content) View Lowenstein's news announcement about this transaction.*

> November 5-12; December 13-19, 2018

**MarketWatch**, **GlobeNewswire**, **TenLinks**, **StreetInsider.com**, **Yahoo! Finance**, **Digital Engineering**, *Global Legal Chronicle,* and **Crain's Detroit Business** note Lowenstein Sandler as counsel to Altair Engineering Inc. (Nasdaq: ALTR) in its $176 million acquisition of Datawatch Corporation (Nasdaq: DWCH). (Lowenstein deal team: **Peter H. Ehrenberg**, **Michael J. Mueller**, **Elizabeth A. Mandle**, **Justin Gindi**, **Colin J. Kirby**, **Valeska Pederson Hintz**, **Kate Basmagian**, **Lauren E. Killeen**, **Darren Goodman**, **Megan Monson**, **Brian A. Silikovitz**, **Sophia Mokotoff**, **Mark P. Kessler**, **Manali Joglekar**, **Leah Satlin**, **Jeffrey Blumenfeld**, **Jack Sidorov**, **Jeffrey M. Shapiro**, **Lynda A. Bennett**, **Eric Jesse**, **Lowell A. Citron**, **Lauren M. Troeller**, and **Erica Perlmutter**.) View Lowenstein's news announcement about this transaction.

> October 5, 2018

*CNN* quotes **Jeffrey Blumenfeld** in an article noting that the outcome of the U.S. Department of Justice's (DOJ) appeal of the lower court's decision permitting AT&T's $85 billion acquisition of Time Warner will depend on the views of the judges on the panel. The DOJ will have a more difficult time winning if the judges are skeptical of government intervention in business matters, which is often the case with more conservative judges Blumenfeld states, but may find a court more sympathetic to its arguments against the merger if the judges on the panel are less skeptical of such intervention.

> August 7; September 2; September 24, 2018

**Wired**, the *Riverdale Standard*, and **LNR** quote **Jeffrey Blumenfeld** in an article profiling Incompas CEO Charles Pickering and his support of net neutrality. Blumenfeld notes that, after the government forced AT&T to break into several smaller carriers (Baby Bells), Incompas (then called Comptel) played a key role in the telecom industry during post-breakup litigation over what the Bell companies could—and could *not*—do under the court decree that broke up the AT&T monopoly.

> September 7-8, 2018

*The Hill*, *The Washington Post*, the **Houston Chronicle**, and the *East Bay Times* quote **Jeffrey Blumenfeld** in an article reporting that the U.S. Department of Justice has invited attorneys general from some states, but not other important state attorneys general such as those from New York, California, Connecticut, and Washington − where the attorneys general are Democrats − to participate in a meeting in Washington, D.C., to assess whether tech companies such as Twitter, Facebook, and Google are hurting competition by deliberately stifling certain types of speech. Blumenfeld notes he does not know of a time when the DOJ selectively invited some but not others when issuing invitations to coordinate investigations.*(subscription required to access certain content)*

> July 12-24, 2018

*Bloomberg Law – Big Law Business*, *The Washington Post*(July 12, 2018; July 19, 2018), CNBC's "Squawk Alley," *Law360*, and *Mobile World Live* cover **Jeffrey Blumenfeld**'s perspective on the U.S. Department of Justice's (DOJ) appeal of the U.S. District Court for the District of Columbia's decision permitting AT&T's $85 billion acquisition of Time Warner. Blumenfeld's observations include noting that: The appeal may cause companies to pause on plans for industry vertical mergers pending the case's outcome; the appeal shows the DOJ wants clarity on the AT&T/Time Warner merger and similar transactions and that the DOJ's action means pending and future deals may come under increased scrutiny; the district court judge "simply credited everything that AT&T said and discounted almost everything the government said"; an appellate defeat could hinder "efforts to

challenge similar vertical deals the future"; the appellate court might apply a burden of proof standard that the DOJ may have difficulty meeting in later cases; and, even if the DOJ loses, it could sue in the future to break up the merged entity if there were evidence of negative market impact or if, at a later date, there were evidence of anticompetitive conduct. *(subscription required to access certain content)*

> June 25, 2018
> *The Washington Post* quotes **Jeffrey Blumenfeld** in an article discussing the implications of the Supreme Court's decision to leave in place a ruling that allows American Express to enact "anti- steering provisions" on merchants who accept its credit cards. Blumenfeld notes that, since this decision will not change how American Express interacts with merchants, it's an open question whether it will have an effect on merchants' pricing.

> June 14, 2018
> *Law360* quotes **Jeffrey Blumenfeld** in an article discussing the antitrust enforcement implications of the U.S. District Court for the District of Columbia's decision permitting AT&T's $85 billion acquisition of Time Warner. Blumenfeld notes how surprising it was that the judge placed greater emphasis on defendant executives' court testimony than on contemporaneous documents showing what the executives were thinking and discussing while the deal was being negotiated because testimony reflects preparation with lawyers, but contemporaneous documents "tell the real story." Blumenfeld also notes that the government faces a difficult decision on whether to appeal the decision based, in part, on the judge's treatment of the documents, both because there would be a high burden of proof and because of the risk that an adverse appellate decision could have greater impact. *(subscription required to access article)*.

> June 12, 2018
> *CNNMoney* quotes **Jeffrey Blumenfeld** in an article discussing the U.S. District Court for the District of Columbia's decision permitting AT&T's $85 billion acquisition of Time Warner and the parties' possible next steps. Blumenfeld notes that if the U.S. government does not get an injunction to prevent the deal closing during what is likely to be a lengthy appeals process, the companies will merge their operations, making it that much more difficult to undo.

> May 26, 2018
> *GCR* quotes **Jeffrey Blumenfeld** on the proposed merger of T-Mobile and Sprint.

> May 9, 2018
> *Law360* quotes **Jeffrey Blumenfeld** on the U.S. Department of Justice lawsuit seeking to block AT&T's proposed merger with Time Warner. Blumenfeld comments on the risks of relying too heavily on economic evidence, the potential for AT&T documents to reveal the true motivations for the merger, AT&T's burden of proof in defending against assertions of the deal's negative economic impact, and the impact of the judge possibly imposing arbitration as a remedy. *(subscription required to access article)*

> April 30, 2018
> *The Seattle Times*, the *Los Angeles Times*, *The Washington Post*, and *Gildshire Magazines* quote **Jeffrey Blumenfeld** on the proposed merger of T-Mobile and Sprint.

> April 23, 2018
> CNNMoney quotes **Jeffrey Blumenfeld** on the U.S. Department of Justice lawsuit that seeks to block AT&T's proposed merger with Time Warner. Blumenfeld notes the judge's broad discretion in adjudicating the case and that the judge's questions to witnesses may not be clues as to his decision.

> March 18-26, 2018
> *The Hill, USA Today, CNN*, and **Law360** quote **Jeffrey Blumenfeld** on the U.S. Department of Justice lawsuit that seeks to block AT&T's proposed merger with Time Warner. In *The Hill*, Blumenfeld notes the ineffectiveness of imposing behavioral conditions to avoid anticompetitive behavior following major industry mergers. In *USA Today*, he notes that this litigation offers consumers a real-world lesson in the antitrust issues that can affect everyday activities such as watching cable television and streaming programs. *CNN* quotes Blumenfeld on the difficulties AT&T customers might face should the deal be approved when attempting to obtain content that is not owned by AT&T. In *Law360*, Blumenfeld discusses the parties' back-and-forth regarding confidentiality concerns and notes how greater evidentiary openness in this case can offer consumers a look at antitrust law as applied to an industry they understand and interact with every day.

> December 14, 2017
> **Jeffrey Blumenfeld** discusses net neutrality in **The Washington Post** and **TheStreet**.

> August 2017
> **Jeffrey Blumenfeld** comments in *Washington Lawyer* on how Lowenstein Sandler capitalizes on international legal networks and a collaborative culture to meet our clients' legal needs in today's globalized economy.

> April 25, 2017
> In **Law360**, **Jeff Blumenfeld** discusses what to expect in the new administration's approach to antitrust and merger enforcement under AAG nominee Makan Delrahim.

> November 1, 2016
> **Jeff Blumenfeld** is quoted in **Variety** on how the AT&T-Time Warner merger will affect content competitors such as Netflix and Hulu.

> October 25, 2016
> **Jeff Blumenfeld** comments in a *Bloomberg BNA* article about possible ramifications of the 2011 joint agreement between Comcast and NBCUniversal on the AT&T-Time Warner bid.

> October 24, 2016
> In **Law360**, **Jeff Blumenfeld** discusses AT&T's $84.5B Time Warner takeover and the likely shift in incentives and conduct once the two companies merge.

> June 5, 2014
> In **Bloomberg**, **Jeff Blumenfeld** comments on the regulatory implications of Sprint's proposed acquisition of T-Mobile.

## SPEAKING ENGAGEMENTS

> Speaker, **IPWatchdog Conference,** IPWatchdog, March 15-18, 2020

> Speaker, **FRAND and Willing Licensees: What is Fair Reasonable and Non-Discriminatory, "Standard Essential Patents: Striking a Balance Between Competition and Innovation,"** IP Watchdog Patent Masters Forum, Arlington, VA, September 10-11, 2019

> Speaker, **Business Solutions for Licensing Markets in the Digital Era,** OxFirst Third IP and Competition Forum: Creating the Missing Link in the Digital Economy, Brussels, February 14-15, 2019

> Speaker, **IP/Antitrust in a Changing World ,** China Institute of International Antitrust and Investment, Beijing, China, December 13, 2018

> Speaker, **Washington's New Views on Standard Essential Patents?,** SAS Conference on Patent Litigation, March 2018

> Speaker, **View from Both Sides of the Aisle: Issues in Antitrust Practice in Government Agencies and in Private Practice,** ABA Section of Antitrust Law, Cartel and Criminal Practice Committee and Membership and Diversity Committee, Washington, D.C., January 10, 2018

> Speaker, **View from Both Sides of the Aisle: Issues in Antitrust Practice in Government Agencies and in Private Practice,** ABA Section of Antitrust Law, Cartel and Criminal Practice Comittee, Washington, D.C., January 10, 2018

> Speaker, **Antitrust Essentials for Credit Professionals,** Credit Management Association Webinar, July 25, 2017

> Speaker, **Antitrust, Patent Law, SEPs, FRAND: Who's in Charge Here?,** SAS Conference on Patent Litigation, April 2017

> Speaker, **IP, Antitrust, and FRAND in China Today,** Client Presentation, February 2017

> Speaker, **Recent Developments in Telephone Consumer Protection Act (TCPA) Enforcement and Litigation,** ABA Section of Antitrust Law, Civil Practice and Procedures Committee, New York, NY, December 5, 2016

> Panelist, **The Risk of Connectivity,** Bloomberg NEXT, Washington, D.C., November 17, 2016

> **EU Developments on Standard Essential Patents: Huawei v. ZTE and After,** Client Presentation, October 2016

## EDUCATION

> University of Pennsylvania Law School (J.D.)
> Brown University (A.B.), cum laude

## ADMISSIONS

> District of Columbia

© 2020 Lowenstein Sandler LLP





# Gavin J. Rooney

Partner
Chair, Business and Class Action Litigation

New York
New Jersey
T: +1 212.419.5853  /  +1 973.597.2472  |  F: +1 973.597.2473
grooney@lowenstein.com

Gavin specializes in class action and complex commercial litigation, representing corporate and institutional clients. Consistently recognized as a leading commercial litigator, Gavin has been described by clients as "excellent" and "very thorough, detail-oriented, and extremely intelligent" (*Chambers USA*).

Gavin's interest in military history has served him well in successfully defending corporate clients in securities, shareholder derivative, class action, consumer fraud, mass tort, and RICO claims. Approaching every matter from a strategic angle, he surveys the state of play, assembles facts, determines tactics, and deploys a clear-sighted grand strategy to achieve his clients' business goals. Gavin effectively manages massive claims and supervises large teams of lawyers while remaining the central point of contact for his clients.

Gavin has handled numerous jury and nonjury cases across the United States. He has argued before the appellate courts of California, Florida, Massachusetts, New Jersey, and New York, and before several federal circuit courts of appeal. He also handles other types of commercial litigation, from shareholder disputes to real estate and environmental matters.

## EXPERIENCE

> Represented the State of New Jersey as special outside counsel in the State's lawsuit against Volkswagen, Audi, and Porsche for their role in a massive consumer fraud scandal known as "dieselgate." Successfully negotiated a settlement of all claims for a total of $69 million for New Jersey.

> Defeated certification of a class of ratepayers suing a Massachusetts electric utility for damages caused by widespread and lengthy blackouts following a major winter storm. Successfully defended that result on appeal to the Massachusetts Supreme Judicial Court, which resulted in one of the key Supreme Judicial Court opinions addressing the standards for class certification in Massachusetts.

> Led the defense of Bristol-Myers Squibb against several hundred toxic tort lawsuits designated as a "mass tort" by the New Jersey Supreme Court, with parallel cases pending in the District of New Jersey.

> Won a decision from the Third Circuit affirming dismissal of RICO, Consumer Fraud Act, and other claims brought by a putative class of third-party payers against Merck, in which the plaintiffs' alleged injury arose from the defendant's supposed marketing of oncology drugs for "off label" indications. This victory was profiled in *Law360*, "How They Won It," July 10, 2012, and is considered to be one of "**The Best Prescription Drug/Medical Device Decisions of 2012**" by some industry experts.

> Successfully prosecuted a securities fraud claim before the Financial Industry Regulatory Authority on behalf of a large pharmaceutical company against a major investment bank, seeking to recover massive losses incurred from short-term cash management investments when the 2007 financial crisis struck the markets. Secured a nine-figure settlement for the client.

> Defeated a motion to certify a class of real estate developers suing Verizon, claiming that Verizon had improperly charged them for expenses involved in relocating the utility's infrastructure in order to accommodate their developments.

> Won summary judgment on behalf of a short-biased investment fund, dismissing RICO conspiracy claims brought by a pharmaceutical company alleging that the short seller conspired with other hedge funds, a sell-side stock analyst, and others to supposedly spread false information and manipulate the plaintiff's stock price. The case was widely followed by the press ("The Inside Story of a Wall Street Battle Royal," *Forbes*, July 26, 2006, and "SEC Looks at Hedge Funds' Trades," *The Wall Street Journal*, Feb. 13, 2009).

> Defended Schering-Plough against securities fraud claims that it misled investors about its manufacturing problems and the risks those problems supposedly posed to FDA approval of a new blockbuster antihistamine drug.

> Defended numerous product manufacturers against putative class action claims under the New Jersey Consumer Fraud Act, including the manufacturers/sellers of the allergy drug Claritin and Coppertone sunscreen.

> On behalf of Jersey Central Power & Light Company, won the first-ever decertification of a class action pending in New Jersey state court, as well as a decision dismissing a classwide damages model that established New Jersey law on the admissibility of such models.

## HONORS & AWARDS

> **Chambers USA: America's Leading Lawyers for Business: (2013-2019)**
> Recognized for work in General Commercial Litigation

> **The Best Lawyers in America (2015-2019)**
> Recognized in the Commercial Litigation section.

> **New Jersey Super Lawyers (2009-2014, 2017-2018)**
> Recognized for work in Business Litigation, Class Action/Mass Torts, and Securities Litigation

## NEWS & INSIGHTS

### Publications

> June 26, 2017
> **"Lowenstein Sandler Advocates to Reduce Abusive Consumer Class Actions Harming New Jersey Businesses,"** *Class Action Litigation Client Alert*
> Gavin J. Rooney, Naomi D. Barrowclough

> July 29, 2016
> **"Terms of Misuse: Class Plaintiffs Exploit Obscure New Jersey Law, Creating E-Commerce Havoc,"** *Westlaw Journal*
> Matt Savare, Gavin J. Rooney

> June 17, 2016
> **"New Jersey's Truth-in-Consumer Contract law provokes new class-action suits,"** *Westlaw Journal*
> Gavin J. Rooney, Matt Savare

> June 6, 2016
> **"Your Company's Online 'Terms of Use' May Be the Target of a Class Action,"** *InsideCounsel Magazine*
> Gavin J. Rooney

> January 8, 2016
> **"State Courts May Become Sole No-Injury Class Action Forum,"** *Law360*
> Gavin J. Rooney, Amy C. Schwind, Joseph A. Fischetti

> March 10, 2015
> **"NJ Pushes Back Against Pro-Arbitration Federal Policy,"** *Law360*
> Gavin J. Rooney, Joseph A. Fischetti

> October 24, 2014
> **"Putting the 'But For' Back into Concurrent Causation,"** *Bloomberg BNA, Pharmaceutical Law & Industry Report*
> Gavin J. Rooney,

### In the Media

> September 10, 2018
> The **New Jersey Business & Industry Association** quotes **David Leit** and mentions **Gavin J. Rooney** and **Craig Dashiell** in an article discussing the uncertain future of the Deferred Action for Childhood Arrivals (DACA) program, despite the U.S. District Court for the Southern District of Texas denying the plaintiff states' request for a preliminary injunction to halt the program. Leit, who, along with Rooney and Dashiell, led the Lowenstein team that authored and filed an amicus brief supporting the State of New Jersey's opposition to the injunction, notes that the amicus brief's principal argument, that suddenly halting DACA would cause significant economic harm to New Jersey businesses and organizations, was accepted by the Court as a basis to deny the injunction.

> July 26-27, 2018
> *ROI*, *NJBIZ*, the **New Jersey Business & Industry Association**, and **NorthJersey.com** highlight Lowenstein Sandler's leading role in authoring and filing an amicus brief in *State of Texas, et al. v. United States of America, et al.*, on behalf of New Jersey businesses, associations, and nonprofit institutions, supporting the State of New Jersey's opposition to Texas's motion to preliminarily enjoin the Deferred Action for Childhood Arrivals (DACA) program in a case pending in the U.S. District Court for the Southern District of Texas. The brief highlights the significant harms to the New Jersey economy and New Jersey businesses that would result if DACA were enjoined and thousands of New Jerseyans suddenly became unable to contribute to the state's economy by working, attending school, and paying taxes. **David Leit**, **Gavin J. Rooney**, and **Craig Dashiell** were the lead attorneys on the brief. **Read Lowenstein's announcement about the brief;** *click here for a copy of the document*.

> July 27, 2018
> *Law360* notes **Gavin J. Rooney** and **Joseph A. Fischetti** in an article highlighting a victory for our clients in two related class actions in which the New Jersey Appellate Division affirmed the lower court's dismissal of the actions. Plaintiffs alleged violations of the New Jersey Truth-in-Consumer, Warranty and Notice Act, but Lowenstein Sandler won a threshold motion to dismiss (affirmed on appeal) for failure to show harm. The case is *Gregory R. Duke, et al. v. All American Ford, et al. (subscription required to access article)*

> May 30, 2018
> The **New Jersey Law Journal** and **Law360** note **Gavin J. Rooney** and **Naomi D. Barrowclough** as counsel to Bil-Jim Construction Co. Inc. executives for whom our lawyers secured dismissal from a putative class action brought under the New Jersey Prevailing Wage Act.

> July 6, 2016

In **Law360**, **Gavin Rooney** comments on the importance of clear notification when it comes to arbitration clauses and their enforceability.

> July 2, 2016
> **Gavin Rooney** comments in **The Economist** about the effect of TCCWNA lawsuits on online businesses offering goods or services.

> June 3, 2016
> **Gavin Rooney** comments in **Forbes** on New Jersey TCCWNA class action suits involving website terms and conditions.

> March 10, 2016
> **Gavin Rooney** comments in the **New Jersey Law Journal** regarding how NJ courts view arbitration clauses.

> September 14, 2015
> **Gavin Rooney** comments in **Law360** about enforcement of TCCWNA limitations which he successfully argued to avoid a class action suit.

> August 13, 2015
> **Gavin Rooney** is quoted in **Law360** regarding implications of the New Jersey Supreme Court's decision to increase the requirements for consumer arbitration agreements.

> August 6, 2015
> **Gavin Rooney** comments in **Forbes** about the implications of defeating class certification in the federal worker misclassification lawsuit filed against Uber.

## SPEAKING ENGAGEMENTS

> Panelist, **Annual Fall Legal Reform Conference,** New Jersey Civil Justice Institute, Florham Park, NJ, October 9, 2018

> Speaker, **A Review of the New Jersey Supreme Court's Recent TCCWNA Decisions,** New Jersey Civil Justice Institute, October 11, 2017

> Speaker, **No-Injury Class Actions: The Efforts to Reform and the Tools to Defend,** Lowenstein Sandler and U.S. Chamber Institute for Legal Reform Seminar, June 15, 2017

> Speaker, **An Update on TCCWNA Action,** New Jersey Civil Justice Institute, April 28, 2017

> Speaker, **Defending No-Injury Class Actions Post-Spokeo: Standing for Statutory Violations, State Court Litigation, and CAFA Removal,** Strafford Class Action Webinar, April 27, 2017

## EDUCATION

> Columbia University School of Law (J.D. 1992), Harlan Fiske Stone Scholar
> State University of New York at Binghamton (B.A. 1989), with honors, Phi Beta Kappa

## ADMISSIONS

> New Jersey
> New York

# Exhibit 2

**Class Action Experience – Jeffrey Blumenfeld**

| Case Style | Case No. | Court | Counsel For |
|---|---|---|---|
| | | | |

One Lowenstein Drive
Roseland, New Jersey 07068
T: 973.597.2500 | F: 973.597.2400

www.lowenstein.com

**Lowenstein Sandler**

**Class Action Experience - Gavin J. Rooney**

| Case Style | Case No. | Court | Counsel For |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

1

Lowenstein Sandler

One Lowenstein Drive
Roseland, New Jersey 07068
T: 973.597.2500 | F: 973.597.2400

www.lowenstein.com

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

One Lowenstein Drive
Roseland, New Jersey 07068
T: 973.597.2500 | F: 973.597.2400
www.lowenstein.com

**Lowenstein Sandler**

3