**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAROL A. LEWIS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Case No. 18-cv-2929 (RBW) |
| ALEX M. AZAR II, in his official | ) |
| capacity as Secretary of Health and | ) |
| Human Services, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO CLASS CERTIFICATION**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 1

    A.    Medicare Part B and its Claim Appeal Process ...................................... 1

    B.    Medicare Part C and its Coverage Appeal Process................................. 4

    C.    Plaintiffs' Claims for Part B Coverage .................................................. 5

ARGUMENT .................................................................................................................. 6

I.    Neither plaintiff should be permitted to litigate this case on the merits. ........................... 7

    A.    Carol Lewis has won a judgment on this issue; she is therefore entitled to preclusion and payment of her claim, but not to fully litigate a second case....................................................................................................... 7

    B.    This Court lacks subject matter jurisdiction over Douglas Sargent's claims, which should be dismissed. ..................................................... 12

II.    The proposed class overwhelmingly consists of individuals without any viable claim to judicial review...................................................................... 16

    A.    To be eligible for judicial review, Medicare beneficiaries must ordinarily exhaust administrative remedies, comply with a statute of limitations, and meet a minimum amount in controversy. ............................................ 16

    B.    Almost all putative class members failed to exhaust their administrative remedies, and waiver of exhaustion is not justified here. .................................... 19

    C.    Any claim that accrued before October 9, 2018 is time-barred, and tolling of the limitations period is not justified here. ...................................... 33

    D.    Any claim for less than $1,600 is below the minimum amount in controversy, and supplemental jurisdiction is not available. ............................... 34

III.    The proposed class does not satisfy the requirements of Rule 23. ................................. 35

    A.    The proposed class does not satisfy the requirements of Rule 23(a)................... 35

           1.    Because the proposed class has at most twelve members with live claims, plaintiffs have not established numerosity. ................................... 35

2. Plaintiffs have not affirmatively demonstrated that absent class members would receive adequate representation. ................................... 39

B. The proposed class does not satisfy the requirements of Rule 23(b). ................... 41

1. The Medicare Act does not authorize the injunctive or declaratory relief described in Rule 23(b)(2). .............................................................. 41

2. The proposed class does not satisfy Rule 23(b)(3). ................................ 43

CONCLUSION ...................................................................................................................... 45

# TABLE OF AUTHORITIES

## CASES

*Allen v. McCurry*,
449 U.S. 90 (1980) ............................................................................................ 8, 10

*Amador County, Cal. v. Salazar*,
640 F.3d 373 (D.C. Cir. 2011) ................................................................................ 9

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ..................................................................................... 35, 43

*American Chiropractic Ass'n, Inc. v. Leavitt*,
431 F.3d 812 (D.C. Cir. 2005) ....................................................................... 18, 36

*American Hosp. Ass'n v. Azar*,
895 F.3d 822 (D.C. Cir. 2018) ......................................................................... *passim*

*American Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) ............................................................................................ 33

*Amore v. Accore, S.A.*,
484 F. Supp. 2d 124 (D.D.C. 2007) ................................................................... 11

*Bloom v. Azar*,
2018 WL 583111 (D. Vt. Jan. 28, 2018) ...................................................... 13, 14

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) ............................................................................................ 42

*Bowen v. Michigan Academy of Family Physicians*,
476 U.S. 667 (1986) ............................................................................................ 18

*Bowen v. City of New York*,
476 U.S. 467 (1986) ..................................................................................... *passim*

*Burlington Res. Oil & Gas Co. v. U.S. Dep't of the Interior*,
21 F. Supp. 2d 1 (D.D.C. 1998) ......................................................................... 11

*Califano v. Yamasaki*,
442 U.S. 682 (1979) ............................................................................................ 35

*Campbell v. Am. Int'l Grp., Inc.*,
926 F. Supp. 2d 178 (D.D.C. 2013) ................................................................... 14

*Campbell-Ewald Co. v. Gomez,*
   136 S. Ct. 663 (2016) ................................................................................................ 11

*Coleman v. District of Columbia,*
   306 F.R.D. 68 (D.D.C. 2015) .................................................................................... 38

*Comcast Corp. v. Behrend,*
   569 U.S. 27 (2013) ............................................................................. 7, 19, 35, 38

*Comm'r v. Sunnen,*
   333 U.S. 591 (1948) ................................................................................................ 7, 12

*Consol. Edison Co. v. Bodman,*
   449 F.3d 1254 (D.C. Cir. 2006) ............................................................................ 8, 9

*Cotton v. Heyman,*
   63 F.3d 1115 (D.C. Cir. 1995) ................................................................................. 8

*Council for Urological Interests v. Sebelius,*
   668 F.3d 704 (D.C. Cir. 2011) ................................................................................ 32

*Deposit Guar. Nat'l Bank v. Roper,*
   445 U.S. 326 (1980) ................................................................................................. 16

*Exxon Mobil Corp. v. Allapattah Servs., Inc.,*
   545 U.S. 546 (2005) ................................................................................................. 15

*Federated Department Stores, Inc. v. Moitie,*
   452 U.S. 394 (1981) ................................................................................................. 10

*Fogg v. Ashcroft,*
   254 F.3d 103 (D.C. Cir. 2001) ................................................................................. 9

*Goodnight v. Shalala,*
   837 F. Supp. 1564 (D. Utah 1993) ................................................................. *passim*

*Gullo v. Veterans Coop. Housing Ass'n,*
   269 F.2d 517 (D.C. Cir. 1959) ................................................................................ 11

*Heckler v. Ringer,*
   466 U.S. 602 (1984) ................................................................................... 17, 41, 42

*I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.,*
   723 F.2d 944 (D.C. Cir. 1983) ................................................................................. 8

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018) ................................................................................ 16

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  725 F.3d 244 (D.C. Cir. 2013) ........................................................................... 35

*Kremer v. Chemical Constr. Corp.*,
  456 U.S. 461 (1982) ............................................................................................. 8

*Lewis v. Azar*,
  308 F. Supp. 3d 574 (D. Mass. 2018) ......................................................... 5, 7, 9

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ..................................................................... 22, 31, 33, 41

*McLaughlin v. Bradlee*,
  803 F.2d 1197 (D.C. Cir. 1986) ..................................................................... 8, 12

*Menominee Indian Tribe of Wisconsin v. United States*,
  614 F.3d 519 (D.C. Cir. 2010) ........................................................................... 36

*Montana v. United States*,
  440 U.S. 147 (1979) ...................................................................................... 8, 10

*National Athletic Trainers Ass'n v. HHS*,
  455 F.3d 500 (5th Cir. 2006) ............................................................................. 27

*National Treasury Employees Union v. IRS*,
  765 F.2d 1174 (D.C. Cir. 1985) ................................................................... 10, 12

*Nat'l Kidney Patients Ass'n v. Sullivan*,
  958 F.2d 1127 (D.C. Cir. 1992) ................................................................... 17, 18

*Ne. Hosp. Corp. v. Sebelius*,
  657 F.3d 1 (D.C. Cir. 2011) ............................................................................. 1, 2

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ............................................................................................. 8

*NextWave Pers. Commc'ns Inc. v. FCC*,
  254 F.3d 130 (D.C. Cir. 2001) ............................................................................. 8

*Parklane Hosiery Co. v. Shore*,
  439 U.S. 322 (1979) ........................................................................................... 10

*Porzecanski v. Azar*,
    943 F.3d 472 (D.C. Cir. 2019) ........................................................................ *passim*

*Richards v. Delta Air Lines, Inc.*,
    453 F.3d 525 (D.C. Cir. 2006) ................................................................................ 35

*Richardson v. United States*,
    193 F.3d 545 (D.C. Cir. 1999) ................................................................................ 40

*Ryan v. Bentsen*,
    12 F.3d 245 (D.C. Cir. 1993) .......................................................... 29, 30, 31, 32

*Saksenasingh v. Sec'y of Educ.*,
    126 F.3d 347 (D.C. Cir. 1997) ................................................................................ 14

*Shalala v. Ill. Council on Long Term Care, Inc.*,
    529 U.S. 1 (2000) ............................................................................ 17, 20, 41

*Stanton v. D.C. Court of Appeals*,
    127 F.3d 72 (D.C. Cir. 1997) ........................................................................ 10, 11

*Tataranowicz v. Sullivan*,
    959 F.2d 268 (D.C. Cir. 1992) .......................................................................... 31, 32

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ............................................................................ 8, 10

*Texaco, Inc. v. Hickel*,
    437 F.2d 636 (D.C. Cir. 1970) ................................................................................ 10

*Tinsley v. Equifax Credit Info. Servs.*,
    1999 WL 506720 (D.C. Cir. June 2, 1999) .......................................................... 11

*Twelve John Does v. District of Columbia*,
    117 F.3d 571 (D.C. Cir. 1997) ................................................................................ 39

*United Mine Workers v. Gibbs*,
    383 U.S. 715 (1966) ........................................................................................ 14, 15

*United States v. Adebimpe*,
    819 F.3d 1212 (9th Cir. 2016) ................................................................................ 27

*Wal–Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................ 35, 38

*Weinberger v. Salfi*,
   422 U.S. 749 (1975) ............................................................................................ 36

*Yamaha Corp. of Am. v. United States*,
   961 F.2d 245 (D.C. Cir. 1992) ........................................................................ 8, 9

## STATUTES

5 U.S.C. § 702 ...................................................................................................... 42

28 U.S.C. § 1367 .................................................................................................. 14

28 U.S.C. § 2072 .................................................................................................. 16

42 U.S.C. § 405 ............................................................................................ *passim*

42 U.S.C. § 1395 *et seq.* ........................................................................................ 1

42 U.S.C. § 1395ff ........................................................................................ *passim*

42 U.S.C. § 1395ii ........................................................................................ 17, 18

42 U.S.C. § 1395w-22 .............................................................................. 4, 18, 44

42 U.S.C. § 1395x .......................................................................................... 2, 28

42 U.S.C. §§ 1395c to 1395i-5 ............................................................................ 2

42 U.S.C. §§ 1395j to 1395w-4 ........................................................................... 2

42 U.S.C. §§ 1395w-21 to 1395w-28 ................................................................. 4

Pub. L. 108-173, 117 Stat. 2066 (Dec. 8, 2003) ............................................... 32

## REGULATIONS

42 C.F.R. § 401.108 ......................................................................................... 2, 32

42 C.F.R. § 405.920 .............................................................................................. 2

42 C.F.R. § 405.940 .............................................................................................. 3

42 C.F.R. § 405.960 .............................................................................................. 3

42 C.F.R. § 405.990 .......................................................................... 3, 30, 31, 32

42 C.F.R. § 405.1000 ........................................................................................... 3

42 C.F.R. § 405.1006 ................................................................................................ 13

42 C.F.R. § 405.1063 ............................................................................................ 2, 32

42 C.F.R. § 405.1100 ............................................................................................ 3, 36

42 C.F.R. § 405.1130 ............................................................................................ 3, 36

42 C.F.R. § 405.1132 .............................................................................. 3, 5, 13, 37

42 C.F.R. § 405.1136 ................................................................................................ 33

42 C.F.R. § 414.202 .............................................................................................. 2, 26

42 C.F.R. § 422.566 .................................................................................................... 4

42 C.F.R. § 422.578 *et seq.* ...................................................................................... 4

42 C.F.R. § 422.592 .................................................................................................... 4

42 C.F.R. § 422.600 .................................................................................................... 4

42 C.F.R. § 422.608 .................................................................................................... 4

83 Fed. Reg. 47,620 (Sept. 20, 2018) ................................................................ 12, 34

## RULES

Fed. R. Civ. P. 20 ...................................................................................................... 38

Fed. R. Civ. P. 23 ............................................................................................... *passim*

Fed. R. Civ. P. 82 .............................................................................................. 16, 36

## OTHER AUTHORITIES

CMS Ruling 1682-R (Jan 12, 2017), https://www.cms.gov/Regulations-and-
   Guidance/Guidance/Rulings/Downloads/CMS1682R.pdf ........................................ 2

Dicitionary of Medicare Claim Modifiers,
   https://www.cms.gov/Medicare/Coding/HCPCSReleaseCodeSets/Alpha-Numeric-HCPCS-
   Items/2020-Alpha-Numeric-HCPCS-File.html ...................................................... 27

Restatement (Second) of Judgments § 27 (1982) .......................................................... 9

William B. Rubenstein,
   1 Newberg on Class Actions (5th ed.) ...................................... 16, 17, 38, 39, 41, 43

## INTRODUCTION

Plaintiffs ask this Court to adjudicate tens of thousands of unexhausted, mostly time-barred claims on behalf of absent parties.  If the Court permits either plaintiff to litigate on the merits it should deny class certification, principally on grounds of numerosity.  At most twelve potential class members, and possibly as few as seven, are eligible for judicial review.  All other putative class claims are outside of this Court's subject matter jurisdiction or barred by the statute of limitations—and often both.  This is not the rare case where judicial waiver of administrative exhaustion or equitable tolling of the limitations period would be appropriate, and class actions are not a vehicle for claims that would be dismissed if brought separately.  Because plaintiffs have not satisfied the requirements of Federal Rule of Civil Procedure 23, their motion for class certification should be denied.

But this Court should resolve the case without reaching class certification.  It lacks jurisdiction over plaintiff Douglas Sargent's claims, as he seeks review of decisions below the Medicare Act's minimum amount in controversy.  Plaintiff Carol Lewis is entitled to collateral estoppel, because she has already won a final judgment against the Secretary on the issue raised in this case.  She is not entitled to litigate the matter all over again.  The Court should instead raise issue preclusion *sua sponte*, and enter judgment in her favor.

## BACKGROUND

### A.     Medicare Part B and its Claim Appeal Process

Medicare is a federal health insurance program for the elderly and disabled, *see* 42 U.S.C. § 1395 *et seq.*, which is administered on behalf of the Secretary of Health and Human Services by the Centers for Medicare & Medicaid Services (CMS).  Part A of the Medicare statute "covers medical services furnished by hospitals and other institutional care providers."  *Ne.*

*Hosp. Corp. v. Sebelius*, 657 F.3d 1, 2 (D.C. Cir. 2011) (citing 42 U.S.C. §§ 1395c to 1395i-5).

Medicare Part B "is an optional supplemental insurance program that pays for medical items and

services not covered by Part A, including outpatient physician services" and "durable medical

equipment," among other things. *Id.* (citing 42 U.S.C. §§ 1395j to 1395w-4).

The statutory definition of durable medical equipment (DME), codified at 42 U.S.C.

§ 1395x(n), "includes iron lungs, oxygen tents, hospital beds, and wheelchairs . . . used in the

patient's home," as well as "blood-testing strips and blood glucose monitors for individuals with

diabetes," among other specified items.  The Secretary's regulation, 42 C.F.R. § 414.202,

provides a more general definition.  In 2017, the Secretary issued a CMS Ruling—a "statement

of policy or interpretation" that is "binding on all CMS components," 42 C.F.R. § 401.108; *see*

*id.* § 405.1063(b)—on the subject of continuous glucose monitors.  CGMs are not blood glucose

monitors within the meaning of the statute; they measure glucose levels in the interstitial fluid

between patients' cells, not in their blood.  CMS Ruling 1682-R at 6 (Jan 12, 2017), *available at*

https://www.cms.gov/Regulations-and-Guidance/Guidance/Rulings/Downloads/CMS1682R.pdf.

The CMS Ruling said that continuous glucose monitors accurate enough "to replace a blood

glucose monitor" were covered as durable medical equipment, *id.* at 8, but that less accurate

devices were not covered, *id.* at 15.

To seek reimbursement for the cost of a continuous glucose monitor or anything else, "a

Medicare Part B beneficiary must submit a claim for an 'initial determination' of whether 'the

items and services are covered or otherwise reimbursable.'"  *Porzecanski v. Azar*, 943 F.3d 472,

475–76 (D.C. Cir. 2019) (quoting 42 C.F.R. § 405.920); *see* 42 U.S.C. § 1395ff(a)(1).  "Initial

coverage determinations are made by" Medicare administrative contractors hired by the agency

"to manage the preliminary claims administration process."  *Porzecanski*, 943 F.3d at 476.  "If

the contractor denies the beneficiary's claim," he may "obtain a 'redetermination' from the same

contractor."  *Id.* (citing 42 U.S.C. § 1395ff(a)(3)(A); 42 C.F.R. § 405.940).  "If unsuccessful, the

beneficiary can seek 'reconsideration' by a 'qualified independent contractor' who is wholly

independent of the initial determination contractor."  *Id.* (citing 42 U.S.C. § 1395ff(c)(1)–(2); 42

C.F.R. § 405.960).

　　　If the beneficiary remains unsatisfied, he has a choice of two avenues along which to

pursue his claim.  First, subject to a minimum amount-in-controversy requirement, "he can

request a hearing before an administrative law judge (ALJ)."  *Id.* (citing 42 C.F.R. § 405.1000);

*see* 42 U.S.C. § 1395ff(b)(1)(E).  After that, he can seek review by the Medicare Appeals

Council, *see* 42 C.F.R. § 405.1100, which makes the final decision for the Secretary, *id.*

§ 405.1130.  If the beneficiary is not satisfied with the decision of the Council (or if it has not

acted in a timely fashion, *see id.* § 405.1132), he may then seek judicial review within 60 days,

42 U.S.C. § 405(g), subject to another amount-in-controversy requirement, *id.* § 1395ff(b)(1)(E).

　　　Alternatively, if his case presents a "question of law or regulation" that the Medicare

Appeals "Council does not have the authority to decide," 42 C.F.R. § 405.990(a)(2), such as the

validity of a statute, regulation, or CMS Ruling, *id.* § 405.990(c)(2), then the beneficiary can

request expedited access to judicial review of the reconsideration decision, bypassing the ALJ

and Appeals Council.  *See* 42 U.S.C. § 1395ff(b)(2); 42 C.F.R. § 405.990.  This expedited

process is subject to the same amount-in-controversy requirement as ordinary access to judicial

review.  42 C.F.R. § 405.990(b)(3).

**B.      Medicare Part C and its Coverage Appeal Process**

Part C of the Medicare statute, 42 U.S.C. §§ 1395w-21 to 1395w-28, establishes the

program now known as Medicare Advantage, which provides Medicare benefits through private

health insurance plans.  With exceptions not relevant here, a Medicare Advantage insurer must

cover every item or service that would be covered under Medicare Parts A and B, including

durable medical equipment.  *Id.* § 1395w-22(a)(1)(B).

Each participating insurer must "have a procedure for making determinations regarding

whether an individual . . . is entitled to receive a health service."  42 U.S.C. § 1395w-

22(g)(1)(A); 42 C.F.R. § 422.566(a)–(b).  The insurer must also "provide for reconsideration" of

its coverage decision "upon request by the enrollee."  42 U.S.C. § 1395w-22(g)(2)(A); *see* 42

C.F.R. § 422.578 *et seq.*  If the beneficiary requests reconsideration by his insurer, and if the

insurer "affirm[s] denial of coverage, in whole or in part," that decision is automatically

reviewed by "an independent, outside entity" hired by the Secretary.  42 U.S.C. § 1395w-

22(g)(4); 42 C.F.R. § 422.592(a).  From that point, if the beneficiary remains unsatisfied, he is

entitled to review by an ALJ and then the Medicare Appeals Council, subject to a minimum

amount in controversy.  42 U.S.C. § 1395w-22(g)(5); 42 C.F.R. §§ 422.600 (ALJ), 422.608

(Appeals Council).  The Secretary must "make the [insurer] a party" to any such proceedings.  42

U.S.C. § 1395w-22(g)(5).  Finally, "upon notifying the [insurer]," and subject to a separate

amount-in-controversy requirement and a 60-day limitations period, a dissatisfied beneficiary is

"entitled to judicial review of the Secretary's final decision."  *Id.*; *see id.* § 405(g).  By statute,

"both the individual and the [insurer]" are "entitled to be parties to that judicial review."  *Id.*

§ 1395w-22(g)(5).

### C.       Plaintiffs' Claims for Part B Coverage

In 2015, Carol Lewis filed suit in the United States District Court for the District of Massachusetts, seeking judicial review of a decision by the Medicare Appeals Council that her continuous glucose monitor was not durable medical equipment within the meaning of the Medicare statute and regulations.  *Lewis v. Azar*, 308 F. Supp. 3d 574, 576 (D. Mass. 2018).  The district court ultimately ruled in her favor, holding that "[t]he Council's decision . . . constituted legal error."  *Id.* at 579.  At the time of the Court's ruling, Ms. Lewis had another case pending before the Appeals Council, for review of an indistinguishable ALJ decision.  AR 65.  Before the Council could rule on her appeal, and without presenting the final judgment in her favor,[1] Ms. Lewis requested escalation to district court pursuant to 42 C.F.R. § 405.1132, which was granted, *see* AR 1–4, and timely filed this complaint.  Ms. Lewis seeks judicial review of the denial of a claim for $3,594 in parts and supplies for a continuous glucose monitor, on the grounds that the monitor was not durable medical equipment within the meaning of the Medicare statute and regulations.  AR 89–98.

Douglas Sargent seeks judicial review of the denial of two claims, each for $1,419, which were separately adjudicated through the administrative process.  The Medicare Appeals Council denied both.  AR 963–75, 1991–2003.  Mr. Sargent's continuous glucose monitor did not come within the terms of coverage set out in CMS Ruling 1682-R, at 8, because it was not accurate enough "to replace a blood glucose monitor."  *See* AR 974, 2001–02.

---

[1] In her one-paragraph letter requesting escalation, Ms. Lewis included the District of Massachusetts decision in a string citation following the sentence "Relevant district court decisions have issued."  AR 3.  But she never asked the Medicare Appeals Council to pay her claim in light of the district court judgment in her favor.

**ARGUMENT**

The Secretary's argument proceeds in three parts.  *First*, neither plaintiff should be permitted to litigate this case on the merits.  Ms. Lewis is entitled to the preclusive effect of a judgment she won in the District of Massachusetts, which controls the outcome here, but she has no right to repetitious litigation of an issue that has already been resolved (in her favor) between her and the Secretary.  The Court should raise issue preclusion *sua sponte* and enter judgment for Ms. Lewis on that basis.  As for Mr. Sargent, the Court lacks subject matter jurisdiction over his claims for the reasons explained in the Secretary's pending motion to dismiss, and briefly reviewed below.

*Second*, judicial review of Medicare claims is "extremely limited."  *Porzecanski v. Azar*, 943 F.3d 472, 480 (D.C. Cir. 2019).  Three limitations will define the scope of any class that could be certified here: 1) the obligation to fully exhaust administrative remedies, which follows from the requirement to obtain a "final decision" of the Secretary, 42 U.S.C. §§ 405(g), 1395ff(b)(1)(A); 2) a limitations period for seeking judicial review that expires sixty days after a beneficiary receives notice of that final decision, *id.* § 405(g); and 3) a provision denying judicial review of any claim below the jurisdictional amount in controversy, *id.* § 1395ff(b)(1)(E).  Applying those three limits to plaintiffs' proposed class reduces its size from tens of thousands of beneficiaries to twelve, at the most.  Plaintiffs must therefore urge the Court to lift the first two limits by waiving exhaustion of administrative remedies and equitably tolling the limitations period.  They justify their request with allegations that the Secretary has employed a secret policy that deceives Medicare beneficiaries.  But an examination of the law and the Secretary's conduct reveals that he has done no such thing, and that neither waiver nor tolling is appropriate here.

*Third*, and finally, the Secretary turns to Rule 23.  Plaintiffs must "affirmatively demonstrate" their compliance with that rule to merit class certification.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  They have not done so here, principally because a class of twelve does not satisfy the numerosity requirement of Rule 23(a)(1).  For that reason, and others discussed below, class certification should be denied.

## I.      Neither plaintiff should be permitted to litigate this case on the merits.

The Court can resolve this case without addressing plaintiffs' motion for class certification, and it should do so.  The Court has jurisdiction over the claim presented by Ms. Lewis, but the only issue that she raises is *res judicata* in her favor.  Although Ms. Lewis would prefer to evade the preclusive effect of her judgment in the District of Massachusetts, and litigate this case a second time, the Court has the clear authority to address issue preclusion *sua sponte*. The Court need not entertain repetitious litigation on the merits when an earlier judgment establishes a clear entitlement to relief here.  And as the Secretary has explained in his pending motion to dismiss, the Court lacks subject matter jurisdiction over the two claims presented by Mr. Sargent, because both fall short of the Medicare Act's jurisdictional amount in controversy.

### A.      Carol Lewis has won a judgment on this issue; she is therefore entitled to preclusion and payment of her claim, but not to fully litigate a second case.

Ms. Lewis has already litigated to final judgment against the Secretary the issue of whether her continuous glucose monitor is durable medical equipment under the Medicare statute and regulations.  She won.  *Lewis v. Azar*, 308 F. Supp. 3d 574, 579 (D. Mass. 2018).  But now she would avoid the judgment in her favor and persuade this Court to repeat the exercise. "Once a party has fought out a matter in litigation with the other party, [s]he cannot later renew that duel."  *Comm'r v. Sunnen*, 333 U.S. 591, 598 (1948).  Ms. Lewis is entitled to the preclusive effect of her earlier victory; she has no right to pretend that it never happened.  This Court should

enter judgment in her favor on the grounds of *res judicata* and remand her case to the Secretary, so that he can pay her claim.  It should not entertain "repetitious litigation involving . . . the same issue[]" already resolved between these parties.  *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983).

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *accord NextWave Pers. Commc'ns Inc. v. FCC*, 254 F.3d 130, 142 (D.C. Cir. 2001) (quoting *I.A.M.*, 723 F.2d at 946).  "The objective of the doctrine of issue preclusion (also known as collateral estoppel) is judicial finality; it 'fulfills the purpose for which civil courts had been established, the conclusive resolution of disputes within their jurisdiction.'"  *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982)); *accord Montana v. United States*, 440 U.S. 147, 153 (1979); *Consol. Edison Co. v. Bodman*, 449 F.3d 1254, 1258 (D.C. Cir. 2006) (quoting *Yamaha*).

"Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment. . . .'"  *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)); *accord Yamaha*, 961 F.2d at 254 ("The Supreme Court has defined issue preclusion to mean that 'once a court has decided an issue of fact or law necessary to its judgment, that decision'" usually "'preclude[s] relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *Cotton v. Heyman*, 63 F.3d 1115, 1119 (D.C. Cir. 1995) ("Generally, issue preclusion bars the relitigation of specific issues decided in a prior proceeding between the same parties."); *McLaughlin v. Bradlee*, 803 F.2d 1197, 1201 (D.C. Cir. 1986) (quoting *Allen*). As the Second Restatement puts it, "When an

issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."  Restatement (Second) of Judgments § 27 (1982); *accord Amador County, Cal. v. Salazar*, 640 F.3d 373, 384 (D.C. Cir. 2011); *Consol. Edison*, 449 F.3d at 1258; *Fogg v. Ashcroft*, 254 F.3d 103, 111 (D.C. Cir. 2001) (all quoting Second Restatement).

Under the D.C. Circuit's three-part test "for establishing the preclusive effect of a prior holding," *Yamaha*, 961 F.2d at 254, Ms. Lewis's previous judgment clearly entitles her to prevail here.  "First, the same issue now being raised"—the question of whether continuous glucose monitors are durable medical equipment under the Medicare statute and regulations—was "contested by the parties and submitted for judicial determination in the prior case." *Id.*; *see Lewis*, 308 F. Supp. 3d at 576 (exercising "judicial review" over the Secretary's finding that a "CGM was not covered under the Durable Medical Equipment ('DME') Medicare benefit"). "Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in the prior case." *Yamaha*, 961 F.2d at 254.  It was.  *Lewis*, 308 F. Supp. 3d at 579 (holding that the Secretary's interpretation "constituted legal error").  "Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Yamaha*, 961 F.2d at 254 ("An example of such unfairness would be when the losing party lacked any incentive to litigate the point in the first [case], but the stakes of the second [case] are of a vastly greater magnitude.")  The Secretary lost the first case, and does not suggest that entry of judgment for Ms. Lewis on the grounds of issue preclusion would be unfair in any way.

The issue in this case is plainly *res judicata* between Ms. Lewis and the Secretary.  The only question is whether Ms. Lewis can avoid the preclusive effect of her first judgment by refusing to raise it here.  This Court need not—and should not—permit her to do so.

"It is a sound and important policy in the administration of justice that what has already been done and determined not be redone and redetermined unnecessarily." *Texaco, Inc. v. Hickel*, 437 F.2d 636, 646 (D.C. Cir. 1970).  "[W]hile res judicata exists in part to shield parties from duplicative and vexatious litigation, the interests that courts protect are also often their own—or, more precisely, those of society." *Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997); *Allen*, 449 U.S. at 94 ("As this Court and other courts have often recognized, . . . collateral estoppel relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication."); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) ("Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party . . . and of promoting judicial economy by preventing needless litigation."); *see Taylor*, 553 U.S. at 892; *Montana*, 440 U.S. at 153–54.  "Courts today are having difficulty giving a litigant one day in court.  To allow that litigant a second day is a luxury that cannot be afforded." *Stanton*, 127 F.3d at 77 (quoting *National Treasury Employees Union v. IRS*, 765 F.2d 1174, 1177 (D.C. Cir. 1985)); *see also Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981) (explaining that "today's crowded dockets" make principles of preclusion "even more compelling").

"As res judicata belongs to courts as well as to litigants, even a *party's* forfeiture of the right to assert it . . . does not destroy a *court's* ability to consider the issue sua sponte." *Stanton*, 127 F.3d at 77 (emphases in original).  As the D.C. Circuit has explained, a "district court may

apply res judicata upon taking judicial notice of [the] parties' previous case." *Tinsley v. Equifax Credit Info. Servs.*, 1999 WL 506720, at *1 (D.C. Cir. June 2, 1999) (per curiam) (describing the holding of *Gullo v. Veterans Coop. Housing Ass'n*, 269 F.2d 517 (D.C. Cir. 1959) (per curiam)); *see Amore v. Accore, S.A.*, 484 F. Supp. 2d 124, 129 (D.D.C. 2007); *Burlington Res. Oil & Gas Co. v. U.S. Dep't of the Interior*, 21 F. Supp. 2d 1, 4 n.4 (D.D.C. 1998) (both considering issue preclusion *sua sponte* because the doctrine "belongs to courts as well as to litigants," *Stanton*, 127 F.3d at 77).

The Court should do so here. There is no reason to allow Ms. Lewis to manufacture a second federal case on an issue that she has already won in litigation against the Secretary. When Ms. Lewis received her first judgment, the claim for which she seeks review here was pending before the Medicare Appeals Council. She could simply have asked the Council to recognize the judgment in her favor; if it did not do so, she could have raised a simple plea of *res judicata* in district court. Instead she did neither, accelerating this case to federal court and then attempting to evade the effect of the earlier judgment. The only possible explanation for this stratagem is that Ms. Lewis wishes to serve as a class representative. For the reasons explained below, class certification would be inappropriate even if Ms. Lewis is allowed to litigate her case on the merits once again. But her desire to represent a class does not provide independent grounds for her repetitious claim. Indeed, that argument gets the relationship between individual claims and class claims precisely backwards: a plaintiff can serve as class representative only where she has a "personal stake in the outcome of the lawsuit." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (quotations omitted). Ms. Lewis no longer has anything at stake in the Court's resolution of the merits of this case.

"Preclusion doctrine provides ample means to dispose of repetitive suits like this one." *McLaughlin*, 803 F.2d at 1201.  As the Supreme Court has long held, "matters which were actually litigated and determined in the first proceeding" between two parties "cannot later be relitigated."  *Sunnen*, 333 U.S. at 598.  And "[t]here is . . . an important judicial concern at stake" in the application of issue preclusion here.  *National Treasury Employees Union*, 765 F.2d at 1177.  Ms. Lewis has litigated this issue once already, and she has prevailed.  She is therefore entitled to payment of her claim for benefits.  But Ms. Lewis has no right to needlessly consume the resources of the federal courts—and the Secretary, as well—by demanding a second determination on the merits.

Rather than entertaining repetitious litigation, this Court should take judicial notice of her earlier case, enter judgment on *res judicata* grounds, and remand her claim to the Secretary for payment of benefits.

**B.      This Court lacks subject matter jurisdiction over Douglas Sargent's claims, which should be dismissed.**

As the Secretary has explained in his pending motion to dismiss, Mr. Sargent's claims both fall short of the Medicare Act's minimum amount in controversy for judicial review, and this Court therefore lacks jurisdiction over them.  For the convenience of the Court, and because these arguments are also relevant to certain issues regarding class certification, the Secretary briefly restates them here.

After exhausting administrative remedies, a Medicare beneficiary is "entitled . . . to judicial review of the Secretary's final decision," but "judicial review shall not be available to the individual if the amount in controversy is less than" an inflation-indexed sum, which stood at $1,600 when this suit was filed.  42 U.S.C. § 1395ff(b)(1)(A), (E)(i), (iii); *see* 83 Fed. Reg. at 47,620.  Mr. Sargent seeks judicial review of two final decisions of the Secretary, each of which

involved a claim for less than $1,600.  But he suggests that he can avoid the jurisdictional bar by including both claims in a single complaint that also seeks review of a claim by Ms. Lewis for more than $1,600.

The Secretary did not aggregate Mr. Sargent's claims in the administrative process,[2] so that they would result in one final decision worth more than the threshold amount.  42 U.S.C. § 1395ff(b)(1)(E)(ii); 42 C.F.R. § 405.1006(e)(1).  And Mr. Sargent does not suggest that the statutory aggregation provision allows him to combine his claims for the first time here.  As another district court has noted, "the lack of any [statutory] mention of aggregation at the district court level suggests that Congress did not intend for the courts to be aggregating claims to meet the amount-in-controversy requirement of [42 U.S.C.] § 1395ff(b)(1)(E)."  *Bloom v. Azar*, 2018 WL 583111, at *6 (D. Vt. Jan. 28, 2018).

---

[2] Out of his duty of candor to the Court, the Secretary notes that Mr. Sargent sought aggregation, by letter received on October 11, 2018.  AR 2012.  At that time, both of his cases were still pending before the Medicare Appeals Council; one was eligible for escalation to district court under 42 C.F.R. § 405.1132.  Mr. Sargent sought to aggregate his appeals and escalate them both, if necessary after a short delay to allow the second case to become ripe for escalation.  AR 2012.  Instead, the Council resolved the two cases in separate opinions issued October 15, 2018. AR 963–75, 1991–2003.  Undersigned counsel first learned of the escalation request, which Mr. Sargent did not discuss in either his complaint or his opposition to the Secretary's motion to dismiss, when reviewing the administrative record in preparation for this filing.

Out of that same duty of candor, the Secretary also informs the Court that Mr. Sargent received a third decision from the Medicare Appeals Council on May 10, 2019, Dkt. No. M-19-685 (reviewing ALJ Appeal No. 1-7725439646), denying Part B coverage of supplies for a continuous glucose monitor on the grounds that the device was not durable medical equipment within the meaning of the Medicare statute and regulations, as interpreted by CMS Ruling 1682-R.  Although the Parrish Law Firm represented Mr. Sargent before the Appeals Council and the Secretary produced this decision in discovery as Bates Nos. 8863–74, with no redactions, Mr. Sargent has never sought to amend his complaint to seek review of that decision here.  In preparing this filing, undersigned counsel learned that the amount in controversy for this third decision appears to be above the jurisdictional threshold for judicial review.  *See* Ex. A, Decl. of Jon Dorman ¶ 4.a ("Dorman Decl.").

Instead, Mr. Sargent argues that because "judicial review shall . . . be available to the individual if the amount in controversy" is met, 42 U.S.C. § 1395ff(b)(1)(E)(i), an individual may plead as many claims as necessary to reach the jurisdictional threshold.  But the Medicare statute provides for "judicial review *of the Secretary's final decision*," and not judicial review in the abstract.  *Id.* § 1395ff(b)(1)(A) (emphasis added).  Read as a whole, the statute authorizes 1) judicial review of final Medicare coverage decisions worth at least the statutory amount in controversy, and 2) the aggregation of similar claims at the administrative level to satisfy the amount in controversy (thus producing a single final decision that is eligible for judicial review).  Although "judicial review shall . . . be available to the individual," *id.* § 1395ff(b)(1)(E)(i), that individual may only seek review of final decisions that meet the jurisdictional amount in controversy.  The statutory language supports the Secretary's interpretation and "supplies no basis" for Mr. Sargent's.  *Bloom*, 2018 WL 583111, at *5.

In the alternative, Mr. Sargent invokes supplemental jurisdiction.  *See* 28 U.S.C. § 1367(a).  But "[t]here can be no supplemental jurisdiction without original jurisdiction to supplement."  *Campbell v. Am. Int'l Grp., Inc.*, 926 F. Supp. 2d 178, 182 (D.D.C. 2013); *see Saksenasingh v. Sec'y of Educ.*, 126 F.3d 347, 351 (D.C. Cir. 1997).  Mr. Sargent suggests that this original jurisdiction is supplied by Ms. Lewis's claim, ECF No. 30 at 4–5, but it is not.

"[B]ecause jurisdiction in this case derives from the Medicare Act," the amount-in-controversy and "aggregation rules of the Medicare Act apply," and Mr. Sargent "cannot use § 1367 to avoid those . . . r[u]les."  *See Bloom*, 2018 WL 583111, at *8.  Moreover, two claims are only "so related . . . that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), if they "derive from a common nucleus of operative fact," *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).  If "*a plaintiff's claims*

are such that he would ordinarily be expected to try them all in one judicial proceeding," then there is such a common nucleus. *Id.* (emphasis added); *accord Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 580 (2005). But there is no such common factual nucleus between the claims of two separate plaintiffs whose only relationship is a common legal argument. Mr. Sargent's jurisdictionally-barred claims are not "such that he would ordinarily be expected to try them all in one judicial proceeding" together with the claim by Ms. Lewis. To the contrary, he would ordinarily be expected to bring his claims in a completely separate proceeding. This Court therefore lacks supplemental jurisdiction over those claims, which must be dismissed.[3]

In sum, the Court should enter judgment for Ms. Lewis because the issue she would raise here has been preclusively resolved in her favor, and it should dismiss Mr. Sargent's claims for lack of subject matter jurisdiction. Having done so, the Court should deny the motion for class certification as moot. The Secretary turns to the threshold jurisdictional issues that would shape the Court's assessment of class certification, should it reach the merits of that motion.

---

[3] As this Court is aware, *Bloom v. Burwell*, No. 18-2390, is currently on appeal to the Second Circuit, which heard argument October 7, 2019. That case raises the same question of original jurisdiction at issue here: whether the Medicare statute's provision that "judicial review shall . . . be available to the individual if the amount in controversy" is met, 42 U.S.C. § 1395ff(b)(1)(E)(i), allows an individual to plead as many claims as necessary to reach the jurisdictional threshold, or whether each claim must individually satisfy that requirement. But the question of supplemental jurisdiction in *Bloom* is different. *Bloom* concerns a single plaintiff with at least one claim that exceeds the statutory amount in controversy; he asks for supplemental jurisdiction over his other, less valuable claims on the same issue. Here, by contrast, Mr. Sargent asks the Court—on the basis of its original jurisdiction *over Ms. Lewis's claim*—to exercise supplemental jurisdiction over his claims as well. Dr. Bloom suggests a rule that original jurisdiction over a beneficiary's claim justifies supplemental jurisdiction over *his other identical claims*; Mr. Sargent argues that original jurisdiction over a claim by one beneficiary merits supplemental jurisdiction over *all such claims brought by any beneficiary*.

## II.  The proposed class overwhelmingly consists of individuals without any viable claim to judicial review.

Although Medicare beneficiaries must ordinarily exhaust their administrative remedies and file suit within sixty days of the Secretary's final decision, 42 U.S.C. § 405(g), almost none of the putative class members have done so.  Because class actions do not extend the jurisdiction of the district courts, or enlarge any substantive right, those individuals cannot join a class unless they could bring a separate action—which they could only do if this Court waived exhaustion of administrative remedies (and, for most of the proposed class, tolled the statute of limitations as well).  Before addressing the class certification requirements set out in Rule 23, the Secretary therefore discusses the limits on judicial review of Medicare claims, explains why waiver and tolling are not appropriate here, and notes the application of the amount-in-controversy requirement to any class claims.

### A.  To be eligible for judicial review, Medicare beneficiaries must ordinarily exhaust administrative remedies, comply with a statute of limitations, and meet a minimum amount in controversy.

The putative class members' claims all arise under the Medicare Act.  As the D.C. Circuit has explained, "[f]ederal jurisdiction is extremely limited" for such claims.  *Porzecanski v. Azar*, 943 F.3d 472, 480 (D.C. Cir. 2019).  And those jurisdictional limits apply with equal force whether the claims are litigated separately or as a class, because a class action is merely a mechanism for "the aggregation of individual claims."  *In re Asacol Antitrust Litig.*, 907 F.3d 42, 56 (1st Cir. 2018); *see Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) (discussing "[t]he aggregation of individual claims in the context of a classwide suit").  Rule 23, like all the Federal Rules, is a "general rule[] of practice and procedure," 28 U.S.C. § 2072(a), which does "not abridge, enlarge or modify any substantive right," *id.* § 2072(b), nor "extend or limit the jurisdiction of the district courts," Fed. R. Civ. P. 82; William B. Rubenstein, 1 Newberg on

Class Actions § 1:1 (5th ed.) ("Rule 23 is . . . fundamentally a *procedural* device," which does not "extend . . . the jurisdiction of federal courts or . . . enlarge any substantive right." (emphasis in original)).  To be counted as a member of this putative class, therefore, each beneficiary must individually have access to the "extremely limited" federal jurisdiction "for claims arising under the Medicare Act." *Porzecanski*, 943 F.3d at 480.

The named plaintiffs are beneficiaries seeking "judicial review of the Secretary's final decision" denying coverage under Medicare Part B.  42 U.S.C. § 1395ff(b)(1)(A).  Several interrelated statutory provisions "create the scheme for obtaining judicial review of Medicare claims" such as these.  *American Hosp. Ass'n v. Azar*, 895 F.3d 822, 825 (D.C. Cir. 2018); *see Porzecanski*, 943 F.3d at 480–81.  "First, 42 U.S.C. § 405(h) divests the district courts of federal-question jurisdiction 'on any claim arising under' Title II of the Social Security Act, and it bars any 'decision of the Commissioner of Social Security' from being judicially reviewed, 'except as herein provided' in other Title II provisions."  *American Hosp. Ass'n*, 895 F.3d at 825.  "Second, 42 U.S.C. § 405(g) provides for judicial review of Social Security Act claims, thus creating the exception 'herein provided.'"  *Id.*  "In pertinent part, it permits any person to file a civil action, 'after any final decision of the Commissioner of Social Security made after a hearing to which he was a party,' to 'obtain a review of such decision' in federal district court."  *Id.*  "Third, 42 U.S.C. § 1395ii states that certain provisions in § 405 and elsewhere in Title II 'shall also apply with respect to' Title XVIII of the Social Security Act—*i.e.*, the Medicare Act—'to the same extent as they are applicable with respect to' Title II, with any reference to the 'Commissioner of Social Security' considered as one to the Secretary of HHS."  *Id.* (citing *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 7–9 (2000); *Heckler v. Ringer*, 466 U.S. 602, 614–15 (1984); *Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1130–31 (D.C. Cir. 1992)).

"Although § 1395ii does not specifically enumerate § 405(g) as one of the incorporated Title II provisions," *id.*, § 405(g) is incorporated by 42 U.S.C. § 1395ff(b)(1)(A), which establishes the mechanism for judicial review of Medicare Part B coverage determinations.[4] *Porzecanski*, 943 F.3d at 481; *see also Nat'l Kidney*, 958 F.2d at 1130 (discussing earlier version of § 1395ff(b)).

Three limitations on judicial review of a Medicare claim are embedded within that statutory scheme.[5] First are the paired requirements of presentment and exhaustion: "[j]udicial review may be had only after the claim has been presented to the Secretary and administrative remedies have been exhausted." *American Chiropractic Ass'n, Inc. v. Leavitt*, 431 F.3d 812, 816 (D.C. Cir. 2005). A statute of limitations is second: judicial review is only available "by a civil action commenced within sixty days after the mailing . . . of notice" of the Secretary's decision. 42 U.S.C. § 405(g). And the third requirement is a minimum amount in controversy: "judicial review shall not be available to the individual if the amount in controversy is less than" the jurisdictional sum. *Id.* § 1395ff(b)(1)(E)(i).

Plaintiffs' proposed class is overwhelmingly composed of individuals who did not exhaust their administrative remedies, and whose limitations periods have run. Many of these putative class members also have claims below the minimum amount in controversy for judicial review. By the Secretary's calculation, at most twelve individuals have timely claims over which this Court can exercise jurisdiction. *See infra* at 36–38. Plaintiffs do not explain in any detail why they believe that other individuals have viable claims (without which they cannot

---

[4] Section 405(g) is similarly incorporated by 42 U.S.C. § 1395w-22(g)(5), which establishes the mechanism for judicial review of Medicare Part C coverage determinations.

[5] Because §§ 405(g) and 405(h) are "incorporated *mutatis mutandis*" from the Social Security Act into the Medicare Act, *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 679 (1986), cases interpreting the scope of judicial review under the Social Security Act are directly relevant to the question of federal jurisdiction over Medicare claims.

become members of any class).  There is a very brief discussion of exhaustion and the statute of limitations in plaintiffs' class certification motion, where they cite a single case: *Goodnight v. Shalala*, 837 F. Supp. 1564 (D. Utah 1993).  Mot. at 14–15; ECF No. 63 at 19–20.  The statutory amount in controversy for judicial review of putative class claims is not discussed at all.  Although plaintiffs suggest that their potential class members' failure to exhaust or to comply with the statute of limitations should not be considered on a motion for class certification, *id*. at 18–19; ECF No. 63 at 23–24, their sole substantive authority on those issues involves just such a motion.  *Goodnight*, 837 F. Supp. at 1570–78 (exhaustion and limitations period); *id.* at 1581–84 (class certification).

Exhaustion of administrative remedies and (to a lesser extent) the statute of limitations are the central legal issues for class certification in this case.  The Court's resolution of those issues will determine whether plaintiffs' proposed class would contain tens of thousands of beneficiaries, or only a few.  Yet plaintiffs have almost completely failed to brief these central issues on a motion where they carry the burden of persuasion.  *See, e.g.*, *Comcast*, 569 U.S. at 33.  This all but total failure to carry their burden is, by itself, enough to merit denial.  Despite these inexplicable lacunae in plaintiffs' motion, however, the Secretary will address plaintiffs' position as he understands it.

**B.**     **Almost all putative class members failed to exhaust their administrative remedies, and waiver of exhaustion is not justified here.**

In their class certification brief, plaintiffs suggest that 145 potential class members have exhausted their administrative remedies by receiving a decision from the Medicare Appeals Council.  Mot. at 10, ECF No. 63 at 15.  (Most of those claims are time-barred, however, as discussed below.)  Yet plaintiffs seek certification of a class with tens of thousands of members who have not exhausted their administrative remedies.  To obtain certification of such a class,

they must therefore persuade the Court that this is the rare Medicare case in which the full exhaustion of "all available administrative remedies" should be waived. *Porzecanski*, 943 F.3d at 481; *American Hosp. Ass'n*, 895 F.3d at 826.

**Judicial waiver of exhaustion is possible "in certain circumstances."** Full exhaustion of the "many . . . procedural steps set forth in § 405(g)" is ordinarily mandatory, but "a court can deem [it] waived in certain circumstances, even though the agency technically holds no 'hearing' on the claim." *Ill. Council*, 529 U.S. at 24 (citations omitted). Plaintiffs suggest that the circumstances here are "extremely similar" to those in *Goodnight v. Shalala*, 837 F. Supp. 1564 (D. Utah 1993), which they describe as involving a "secret, illegal policy" whose existence led the district court to waive the full exhaustion of administrative remedies. Mot. at 14; ECF No. 63 at 19. As it seems to be the sole source of plaintiffs' argument for waiver—and, as will be seen below, for equitable tolling as well—the Secretary will examine the case in some detail, and then compare it to the agency conduct at issue here.

*Goodnight v. Shalala* was a class action brought by residents of Utah who had applied for benefits under the Social Security Disability Insurance (SSDI) or Supplemental Security Income (SSI) programs. Eligibility for either program requires a finding of disability. As the *Goodnight* court described it, "[w]hether an individual is disabled is initially determined by a state agency, pursuant to regulations, guidelines, and standards established by the Secretary." 837 F. Supp. at 1568. The regulations required a "five-step 'sequential evaluation' process" involving an individualized assessment of each applicant's impairments and abilities. *Id.* An unsatisfied applicant was then entitled to "a three-stage administrative review process," beginning with reconsideration by the state agency, and followed by two levels of federal review, one conducted by an ALJ and the next by an Appeals Council. *Id.* at 1568–69.

Plaintiffs' allegations were, in essence, that Utah's state agency was not conducting the first two steps of this process in good faith.  Plaintiffs contended that Utah "den[ied] applications for SSDI and SSI benefits without an individual assessment of the applicant's ability."  *Id.* at 1569.  Plaintiffs did not "challenge specific disability determinations, but, rather, [sought] relief" from what they alleged was Utah's systematically unlawful conduct of the first two steps of the administrative process, *id.*—the "clandestine and illegal policies and practices" by which the state ignored the federal requirement of individualized assessment, *id.* at 1583.  Their "only challenge to the Secretary [wa]s that she ha[d] failed to assure compliance with federal disability law by the State" of Utah.  *Id.* at 1569.

All of the putative class members had presented their claims to the Secretary, but many had not fully exhausted their administrative remedies.  Plaintiffs argued that Utah's "secret policy" of refusing to apply federal law in good faith justified waiver.  *Id.* at 1572.  The *Goodnight* court found that this question, and hence its own jurisdiction under 42 U.S.C. § 405(g), "depend[ed] entirely on whether Plaintiffs satisf[ied] the test for waiver established by [*Bowen v.*] *City of New York*," 476 U.S. 467 (1986).  837 F. Supp. at 1572.

That case bore a strong resemblance to *Goodnight*, except that the Secretary's own conduct of the five-step evaluation process was at issue.  *City of New York*, 476 U.S. at 470.  Plaintiffs there alleged, on behalf of a class, that the Secretary employed a "fixed clandestine policy against those with mental illness," *id.* at 475, which "had the effect of eliminating steps four and five from the sequential evaluation process," *id.* at 473.  For mentally ill applicants whose impairments did not appear on a certain list, the Secretary would apply a "presumption . . . of ability to do at least unskilled work," instead of conducting an individualized assessment. *Id.*  This presumption led to the denial of disability benefits.  *Id.*  The district court found that the

Secretary had in fact "followed the covert policy alleged by respondents and that the policy was illegal." *Id.* at 474.

Before the Supreme Court, the Secretary challenged the inclusion in the *City of New York* class of individuals who had failed to fully exhaust their administrative remedies. After discussing the government's "secretive conduct" and "clandestine," "illegal," "unrevealed policy," *id.* at 481, 485, the Court concluded that "it would be unfair to penalize . . . claimants for not exhausting under these circumstances," where they "could not attack a policy they could not be aware existed," *id.* at 482 (quotation omitted). The Court therefore waived exhaustion for those claimants whose time to exhaust had expired. *Id.* As for claimants who still had the opportunity to exhaust, the Court looked to *Mathews v. Eldridge*, where it had waived exhaustion for a constitutional challenge "entirely collateral to [a] substantive claim of entitlement," on which "full relief" would not be assured "at a postdeprivation hearing," because irreparable harm could well occur in the interim. *Id.* at 483 (quoting *Mathews*, 424 U.S. at 330–31). The circumstances were comparable in *City of New York*: the class members "challenged the Secretary's failure to follow the applicable regulations," not the denial of particular benefits, and the district court had found that they were at risk of an irreparable harm. *Id.* The Court therefore waived exhaustion in *City of New York* for claimants who still had the opportunity to exhaust, as well, emphasizing that the "application of the exhaustion doctrine is 'intensely practical.'" *Id.* at 484 (quoting *Mathews*, 424 U.S. at 331 n.11).

After reviewing the facts and holding of *Bowen v. City of New York*, the *Goodnight* court returned to the case before it. It concluded that "[w]hether the secret policy is applied at the first two levels of administrative review, as Plaintiffs allege, or throughout the entire appeals process, as in *City of New York*, is a meaningless distinction," 837 F. Supp. 1572, and that "[t]he same

reasoning used by the *City of New York* Court applies equally well to the facts alleged . . . in the instant case" by plaintiffs who "could not have known that their adverse decisions allegedly were made on the basis of systematic procedural irregularities," *id.* at 1573.  The *Goodnight* court therefore waived full exhaustion for putative class members whose time to exhaust had expired. *Id.*  Turning to the class members who still had time to exhaust, the *Goodnight* court found that "Plaintiffs' challenge to the procedural irregularities at the Utah [state agency] and to the Secretary's failure to ensure that uniform standards are applied at all levels of review is collateral to their claims for disability benefits," *id.* at 1574, and that the prospect of "several months without food, shelter, or other necessities" while they pursued their administrative remedies would constitute an irreparable harm, *id.* at 1575.  Finally, the *Goodnight* court concluded that "the policies underlying exhaustion of remedies would not be undermined" by waiver because "[t]he administrative process available to disability claimants does not provide an adequate means of developing the facts concerning the alleged unfairness of the claimants' application process at the Utah" state agency, *id.* at 1576, and so requiring exhaustion "would leave claimants with no possible means [of] challeng[ing] alleged clandestine policies and procedures applied at the state level," *id.* at 1577.

***Grounds for waiver asserted here.***  To the extent that plaintiffs have presented any argument on the subject of exhaustion, they have suggested that *Goodnight v. Shalala*—and, by reference, *Bowen v. City of New York*—should govern this Court's analysis.  As we have seen, those cases involved 1) plaintiffs bringing a collateral challenge (not directly seeking benefits), 476 U.S. at 483; 837 F. Supp. at 1573; 2) against a secret policy of refusing to conduct individualized assessments, 476 U.S. at 484–85; 837 F. Supp. at 1572; in circumstances where 3) requiring exhaustion would raise a serious risk of irreparable harm, 476 U.S. at 483–84; 837

F. Supp. at 1577; and 4) the purposes of exhaustion would not be undermined by waiver, 476 U.S. at 484–86; 837 F. Supp. at 1576–77.  None of those things is true here.

In this case, plaintiffs appear to suggest that the Court should waive exhaustion for putative class members who did not pursue "all available administrative remedies," *Porzecanski*, 943 F.3d at 481; *American Hosp. Ass'n*, 895 F.3d at 826, because when those beneficiaries received their initial denials, the true "basis for the denial was either hidden from them or the Secretary falsely represented that coverage was 'statutorily excluded.'"  Mot. at 15; ECF No. 63 at 20.  To understand this argument—which, again, plaintiffs do not develop at all in their motion for class certification—will require a review of the format in which initial denials are issued to Medicare beneficiaries.

The named plaintiffs received three initial denials of claims for coverage of continuous glucose monitors, which will serve as representative examples here.  Their claims were initially denied on the grounds that "Medicare does not pay for this item or service."  AR 309–10, 1935, 2187.[6]  That explanation appeared in a note at the bottom of each page on which a CGM claim was listed.  The full discussion of one of Mr. Sargent's initially denied claims appears on the following page:

---

[6] These administrative record pages are attached as Exhibit A to the Secretary's motion for protective orders, ECF 39-1.

Douglas Sargent                                              **THIS IS NOT A BILL | Page 5 of 6**

**August 9, 2016**
**Minimed Distribution Corp; (800)933-3322**
18000 Devonshire St, Northridge, CA 91325-1219
Ordered by Christine M Signore

| Quantity, Item/Service Provided & Billing Code | Item/ Service Approved? | Amount Supplier Charged | Medicare-Approved Amount | Amount Medicare Paid | Maximum You May Be Billed | See Notes Below |
|---|---|---|---|---|---|---|
| 90 Sensor; invasive (e.g., subcutaneous), disposable, for use with interstitial continuous glucose moni (A9276-GX) Voluntary liability notice | **NO** | $1,419.00 | $0.00 | $0.00 | **$1,419.00** | G |
| **Total for Claim #16230744538000** | | $1,419.00 | $0.00 | $0.00 | **$1,419.00** | H |

**Notes for Claims Above**

**G**  Medicare does not pay for this item or service.

**H**  We have sent your claim to ANTHEM BCBS NORTHEAST - PART B. Send any questions regarding your Medigap benefits to them.

AR 2187 (white space removed); *see* AR 309–10, 1935.

Plaintiffs apparently allege that because (as they contend) continuous glucose monitors are durable medical equipment within the meaning of the Medicare statute and regulations, the message "Medicare does not pay for this item or service" evinced a federal policy of deceiving beneficiaries about whether their CGM was a covered device.  The nature of the alleged deception is either that a) the Secretary told beneficiaries that CGMs were non-covered when in fact (on plaintiffs' account) the law required coverage, or b) the Secretary's message was too vague, and failed to elaborate on the legal analysis by which he had concluded that "Medicare does not pay for this item or service."  On the latter theory, beneficiaries would have known to pursue further administrative review if they had been given a more detailed explanation, and the absence of such an explanation deprived them of a fair opportunity to seek review.  (It is far from clear why plaintiffs believe that a more detailed message such as "We have determined that this

item is not durable medical equipment under 42 C.F.R. § 414.202" would have greatly increased

the likelihood of administrative appeal.)

    As to a subset of putative class members, plaintiffs evidently contend that the Secretary

affirmatively misrepresented the reason for the denial of their claims by including the phrase

"Statutorily excluded" on the initial denial form.  Ms. Lewis can serve as the example here:



**October 26, 2015**
Neighborhood Diabetes; (800) 937-3028;
660 Technology Park Dr 20, Billerica, MA 01821-4127
Ordered by Richard S Beaser

| Quantity, Item/Service Provided & Billing Code | Item/ Service Approved? | Amount Supplier Charged | Medicare-Approved Amount | Amount Medicare Paid | Maximum You May Be Billed | See Notes Below |
|---|---|---|---|---|---|---|
| 1 Transmitter; external, for use with interstitial continuous glucose monitoring system (A9277-GY) Statutorily excluded | NO | $999.00 | $0.00 | $0.00 | $999.00 | A |
| Total for Claim #15300737497000 | | $999.00 | $0.00 | $0.00 | $999.00 | |

**Notes for Claims Above**

**A**  Medicare does not pay for this item or service.

AR 310 (white space removed); *see* AR 309.

    This claim, like all Medicare claims, was submitted by the supplier with a billing code: in

this case, A9277, which is the code for the transmitter component of a CGM that is not covered

as durable medical equipment.  Mr. Sargent's above claim was submitted by the supplier with

the billing code A9276, which corresponds to sensors for a non-covered CGM device, AR 2187;

Ms. Lewis also seeks reimbursement for such sensors and for a non-covered receiver, which is

billing code A9278, *see* AR 309.  (CGM components covered under the terms of CMS Ruling

1682-R have separate codes, K0553 for the durable receiver and K0554 for the supplies.)

As with many such claims, the submitting suppliers appended modifiers to their billing codes. "In Medicare's claim submission system, suppliers" can place "'modifiers' on the claim to communicate information to Medicare." *United States v. Adebimpe*, 819 F.3d 1212, 1215 (9th Cir. 2016). More than three hundred such modifiers are currently in use, conveying a wide range of information. When a supplier appends a modifier to a billing code, a short description of that modifier appears on the initial coverage determination, after the description of the item or service that is the subject of the claim.[7]

The GX modifier, which was used by the supplier for both of Mr. Sargent's claims, AR 1935, 2187, tells Medicare that the supplier issued a voluntary notice of liability to the beneficiary, informing him that the supplier did not expect Medicare to cover the item in question. The dictionary of modifiers, *see supra* note 7, defines GX to mean "Notice of liability issued, voluntary under payer policy," which is shortened to "Voluntary liability notice" when it appears on initial denial forms. (The notice is voluntary because a supplier is not required to issue it to a beneficiary in these circumstances.) And the GY modifier, which was used for all three components of Ms. Lewis's claim, AR 309–10, similarly indicates that the supplier believes the item not to be covered by Medicare. The modifier dictionary glosses GY as "Item or service statutorily excluded, does not meet the definition of any [M]edicare benefit or, for non-[M]edicare insurers, is not a contract benefit," which is shortened to "Statutorily excluded" on initial denial forms. *See National Athletic Trainers Ass'n v. HHS*, 455 F.3d 500, 506 (5th Cir. 2006) (discussing GY modifier).

---

[7] A dictionary of the current modifiers is publicly available at https://www.cms.gov/Medicare/Coding/HCPCSReleaseCodeSets/Alpha-Numeric-HCPCS-Items/2020-Alpha-Numeric-HCPCS-File.html. Open the ZIP file, then open the Excel document titled HCPC2020_ANWEB_w_disclaimer. The GX and GY modifiers are defined in rows 133 and 134.

Plaintiffs contend that the shortened description of the GY modifier misleads beneficiaries whose item or service is not literally excluded from coverage by the plain text of the Medicare Act.  To be clear, the Secretary has never argued that the exclusion is expressly spelled out in the U.S. Code—it plainly is not, *see* 42 U.S.C. § 1395x(n)—but rather that, as the modifier dictionary puts it, certain continuous glucose monitors "do[] not meet the definition of any . . .  benefit" under the Medicare regulations, which are a lawful implementation of the statutory scheme.  Within the agency and the vast community of suppliers serving Medicare beneficiaries, "statutorily excluded" is the shorthand for this position.

The question for the Court is whether this piece of bureaucratic jargon, or the anodyne phrase "Medicare does not pay for this item or service"—which is the actual explanation for each initial denial in this case—is the equivalent of the "secretive conduct" and "clandestine," "illegal," "unrevealed" policies that justified waiver of exhaustion in *Bowen v. City of New York*, 476 U.S. at 481, 485 and *Goodnight v. Shalala*, 837 F. Supp. at 1571–72.  And to ask that question is to answer it.

***Waiver is not merited here.***  In *City of New York* and *Goodnight*, an agency held itself out as performing an individualized assessment of each disability applicant, in accordance with the governing regulations, when in fact (or at least as alleged) it was issuing blanket denials or otherwise egregiously departing from lawful procedures.  In this case, the Secretary has initially denied claims for coverage of continuous glucose monitors on the grounds that "Medicare does not pay for this item or service," which is an accurate reflection of the Secretary's legal interpretation, and a phrase that he commonly uses on initial denial forms.  Since 2017, the Secretary has published a full explanation of that position on his website as CMS Ruling 1682-R: quite the opposite of a "clandestine" or "unrevealed" policy.  Before that time, his ALJs and

Appeals Council issued many opinions on the subject, and the Secretary defended the substance

of the interpretation in open court.  Again, not "secretive" at all.  It is true that the Secretary did

not include his full legal analysis on every initial denial, but he never does so for any item or

service, and that has never been found to justify waiver.  And it is true that some initial denials

also bore the phrase "statutorily excluded" as a shorthand for "does not meet the definition of

any [M]edicare benefit" under the statute and regulations.  But that is hardly "illegal" behavior.

Nor is it "secretive," as the reason for each initial denial was also explained in plain English:

"Medicare does not pay for this item or service."  To hold otherwise would suggest that

exhaustion should be waived in the broad range of Medicare cases where the GY modifier is

used and the statute does not literally name the excluded item or service.  There is simply no

reasonable comparison to be made between this case and *City of New York* or *Goodnight*.  There

was no secretive conduct or clandestine policy here.  And so there are no grounds for waiver of

exhaustion.

Moreover, *City of New York* and *Goodnight* involved collateral challenges to agency

policy, not direct claims for benefits (as this case does).  They involved benefits programs where

requiring exhaustion could raise a serious risk of irreparable harm, as an applicant might go

"several months without food, shelter, or other necessities" while exhausting his remedies.  837

F. Supp. at 1575; *see* 476 U.S. at 483–84.  Here, the plaintiffs and putative class members allege

that they are owed reimbursement for medical equipment that they used (in most cases) years

ago.  And finally, *City of New York* and *Goodnight* rested partly on the determination that the

exhaustion of "all available administrative remedies," *Porzecanski*, 943 F.3d at 481; *American*

*Hosp. Ass'n*, 895 F.3d at 826, would not serve the purposes of the exhaustion doctrine.  Here, the

D.C. Circuit has counseled the opposite, in *Ryan v. Bentsen*, 12 F.3d 245 (D.C. Cir. 1993).

***Expedited access to judicial review ensures that exhaustion would serve the purposes***
***of the doctrine.***  In that case, an applicant for Social Security retirement benefits raised a
constitutional challenge to the statutory grounds on which his claim was denied.  12 F.3d at 246.
He sought reconsideration, but the denial was affirmed.  *Id.*  He "did not request a hearing before
an administrative law judge or Appeals Council review as provided by the [Social Security]
Act."  *Id.*  "The district court dismissed Ryan's case for lack of subject matter jurisdiction
because he had not exhausted his administrative remedies."  *Id.* at 247.  On appeal, the D.C.
Circuit considered "whether [it] should waive the exhaustion requirement and remand the case to
district court" for consideration of the constitutional claim.  *Id.*  The Circuit noted that "the
Supreme Court has sanctioned waiver when the claimant's . . . challenge is collateral to his claim
of entitlement and he stands to suffer irreparable harm if forced to exhaust his administrative
remedies," *id.* at 248, but explained that Ryan was directly pursuing a claim to entitlement rather
than raising a collateral challenge.

The Circuit then considered whether waiver was justified on the grounds that "the
constitutionality of a [statutory] provision is an issue beyond [the Secretary's] competence to
decide," noting that "exhaustion would appear to be futile."  *Id.* at 247, 248.  To answer that
question, the court turned to the expedited appeals process (EAP) established by the Secretary,
which allowed claimants to bypass ALJ and Appeals Council review for constitutional claims of
statutory invalidity, and proceed directly to district court.  (The Medicare statute and regulations
contain an equivalent procedure for expedited access to judicial review of some purely legal
claims.  42 U.S.C. § 1395ff(b)(2); 42 C.F.R. § 405.990.)

The *Ryan* court "decline[d] to waive the exhaustion requirement" given the availability of
the expedited appeals process, which "benefits both the parties and the court."  *Id.* at 248.  It

benefits the claimant by allowing him "to circumvent full Department review," and benefits both parties because they "come to court in agreement as to the facts and the applicable law," apart from the "the statute's constitutionality." *Id.* Therefore, "when the case reaches the district court there will be no question regarding exhaustion of remedies or applicability of the futility doctrine," and no party will "be faced with novel legal or factual claims beyond the constitutional question," *id.*, which "will be isolated for thorough analysis," *id.* at 249. Moreover, the D.C. Circuit went on, "the court will benefit from the parties' use" of the expedited appeals process. *Id.* "When the procedure is used, a case will come before the court in a posture that facilitates review on the merits." *Id.* "Rather than expending judicial effort," *id.*, on an "intensely practical" analysis of exhaustion and waiver, *Mathews*, 424 U.S. at 331 n.11, "the court is able to pass on the validity of the allegedly unconstitutional statute." *Ryan*, 12 F.3d at 249. Given all of those considerations, the *Ryan* court determined that "resort to the EAP procedure would not have been futile," even for a constitutional claim that the Secretary lacked competence to decide. *Id.*

The Circuit's guidance in *Ryan* should control this Court's analysis of "the policies underlying the exhaustion requirement" here. *City of New York*, 476 U.S. at 484. Before the issuance of CMS Ruling 1682-R in early 2017, expedited access to judicial review was not available to beneficiaries because the Secretary had not spoken definitively on the issue of whether any or all continuous glucose monitors were durable medical equipment under the Medicare statute and regulations. *See* 42 C.F.R. § 405.990(c)(2) (defining grounds for expedited review). At that time, waiving exhaustion would have "thwart[ed] any effort at self-correction" as the agency adjudicated each claim, and "curtail[ed] development of a record useful for judicial review" by placing bare initial denials before the district court. *Tataranowicz v. Sullivan*, 959

F.2d 268, 275 (D.C. Cir. 1992).  Requiring the full exhaustion of "all available administrative

remedies" would therefore have served the purposes of the doctrine.  *Porzecanski*, 943 F.3d at

481; *American Hosp. Ass'n*, 895 F.3d at 826.

　　　After the issuance of CMS Ruling 1682-R, which binds the Medicare Appeals Council,

*see* 42 C.F.R. §§ 401.108, 405.1063(b), requiring exhaustion might arguably have been futile if

expedited access to judicial review of that Ruling were unavailable.  *Ryan*, 12 F.3d at 248.  But

the Medicare statute and regulations authorize expedited review when "the only factor

precluding a decision favorable to the requestor is . . . [a] CMS Ruling that the requester

considers invalid."  42 C.F.R. § 405.990(c)(2), (ii); *see* 42 U.S.C. § 1395ff(b)(2).  And as *Ryan*

teaches, when the legal question presented is beyond the agency's competence to decide, such

expedited review procedures ensure that exhaustion still serves the policies underlying the

doctrine.[8]  12 F.3d at 248–49; *see Council for Urological Interests v. Sebelius*, 668 F.3d 704, 711

(D.C. Cir. 2011) (noting that "the Medicare Act's provisions for expedited judicial review"

afford "prompt access to the federal courts").

---

[8] To the best of the Secretary's knowledge, *Tataranowicz* and *Ryan* are the only cases in which
the D.C. Circuit has addressed waiver of the exhaustion usually required by 42 U.S.C. § 405(g).
Although the cases initially appear to be in some tension, they are easily harmonized.  In
*Tataranowicz*, the D.C. Circuit waived exhaustion in a challenge to the Secretary's interpretation
of the Medicare Act, as recently amended.  959 F.2d at 274–75.  But when that case was decided
in 1992, Congress had not yet provided for expedited access to judicial review of Medicare
claims. *See* Pub. L. 108-173, tit. IX, § 932(a), 117 Stat. at 2399 (Dec. 8, 2003) (enacting 42
U.S.C. § 1395ff(b)(2)).  (Moreover, the interpretation challenged in *Tataranowicz* may never
have been eligible for expedited review, as it seems not to have been announced in a regulation,
CMS Ruling, or other binding format.  42 C.F.R. § 405.990(c)(2); *see* 959 F.2d at 271.)
*Tataranowicz* and *Ryan* together suggest a rule that waiver of full exhaustion may sometimes be
appropriate when plaintiffs bring certain purely legal challenges, 959 F.2d at 273–75, but not if
Congress or the Secretary has provided a mechanism for expedited judicial review of such
challenges, as is available here, 12 F.3d at 248–49.

For the reasons discussed above, these are not the "rare circumstances," *Goodnight*, 837 F. Supp. at 1570, in which the jurisdictional requirement of exhausting "all available administrative remedies" should be waived.  *Porzecanski*, 943 F.3d at 481; *American Hosp. Ass'n*, 895 F.3d at 826.

### C.      Any claim that accrued before October 9, 2018 is time-barred, and tolling of the limitations period is not justified here.

Under 42 U.S.C. § 405(g), a Medicare beneficiary may only obtain judicial review "by a civil action commenced within sixty days" after he receives notice of the Secretary's decision. This is a statute of limitations, not a jurisdictional requirement.  *Mathews v. Eldridge*, 424 U.S. 319, 328 n.9 (1976).

Regulations establish a rebuttable presumption that a beneficiary receives notice within five days of the mailing of the Secretary's decision.  42 C.F.R. § 405.1136(c)(2).  This suit was filed on December 13, 2018.  Any putative class member's challenge to a decision issued before October 9, 2018 is therefore time-barred, absent unusual circumstances with the mailing.[9]  The filing of the class complaint automatically suspended the limitations period for all members of the asserted class, so no claims have expired since that date.  *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553–54 (1974).  But claims that were barred when the complaint was filed remain so, unless the Court applies equitable tolling.

Plaintiffs seem to suggest equitable tolling for the same reason that they urge waiver of exhaustion: the Secretary's practice of explaining that Part B coverage was initially denied

---

[9] Plaintiffs suggest that, if the Court waived full exhaustion, challenges to any initial denial issued on or after August 15, 2018 would be timely.  But that confuses the longer deadline for pursuing administrative remedies, 42 U.S.C. § 1395ff(a)(3)(C)(1), with the shorter timeline for seeking judicial review.  Absent equitable tolling, a Medicare beneficiary may only obtain judicial review of a "decision of the [Secretary]" in "a civil action commenced within sixty days" after receiving notice of that decision.  *Id.* § 405(g).

because "Medicare does not pay for this item or service," and sometimes employing the phrase "statutorily excluded" on those initial denial forms.  *See* Mot. at 14–15; ECF No. 63 at 19–20. But as discussed above, *see supra* at 28–30, those practices come nowhere near the "secretive conduct" and "clandestine polic[ies]" that justified equitable tolling of the statute of limitations in *Goodnight*, 837 F. Supp. at 1573, and *City of New York*, 476 U.S. at 480–81.  Equitable tolling is not appropriate here.

### D.    Any claim for less than $1,600 is below the minimum amount in controversy, and supplemental jurisdiction is not available.

As discussed above, jurisdiction to review Medicare claims is also restricted by an amount-in-controversy requirement, which stood at $1,600 when this suit was filed.  42 U.S.C. § 1395ff(b)(1)(A), (E)(i), (iii); *see* 83 Fed. Reg. at 47,620.  All potential class members' claims for review of decisions worth less than that sum are therefore barred.

Although plaintiffs do not discuss the amount-in-controversy requirement for the claims of class members, the Secretary understands their position to be the same as it is for Mr. Sargent: that 1) an individual may bring claims below the jurisdictional amount in controversy, so long as their total value equals that sum, and 2) the Court's original jurisdiction over any beneficiary's claim for CGM coverage justifies supplemental jurisdiction over every beneficiary's claim. Those arguments are incorrect, for the reasons discussed above at 12–15, and in the briefs on the Secretary's motion to dismiss Mr. Sargent's claims.  ECF Nos. 22 & 32.  This Court lacks subject matter jurisdiction over any class claims for review of decisions where less than $1,600 was at issue.

III.     **The proposed class does not satisfy the requirements of Rule 23.**

We come, finally, to the question of class certification under Rule 23.  "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)).  "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23."  *Id.* (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  "The Rule 'does not set forth a mere pleading standard.'"  *Id.* (quoting *Wal-Mart*, 564 U.S. at 350).

"Class certification is far from automatic."  *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 249 (D.C. Cir. 2013).  To obtain it, "a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to one of Rule 23(b)'s subdivisions."  *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006).  Plaintiffs have done neither here.

A.     **The proposed class does not satisfy the requirements of Rule 23(a).**

A party seeking class certification must "'prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)."  *Comcast*, 569 U.S. at 33 (quoting *Wal-Mart*, 564 U.S. at 350); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  Plaintiffs have not proven numerosity, and there are significant questions about the adequacy of the representation that they would provide to absent class members.

1.     **Because the proposed class has at most twelve members with live claims, plaintiffs have not established numerosity.**

Under Rule 23(a)(1), plaintiffs must show the existence of a sufficiently "numerous" class.  Plaintiffs suggest that their proposed class numbers in the thousands, which would

certainly satisfy this requirement.  Mot. at 15–16; ECF No. 63 at 20–21.  But, as discussed at length above, the proposed class consists almost entirely of beneficiaries who have failed to exhaust "all available administrative remedies" for their claims.  *Porzecanski*, 943 F.3d at 481; *American Hosp. Ass'n*, 895 F.3d at 826.  This Court would lack jurisdiction[10] over those putative class members' individual claims unless it chose to waive exhaustion—which it should not do, for the reasons already discussed—and so it similarly lacks jurisdiction to aggregate those claims into a class action.  Rule 23 does not "extend . . . the jurisdiction of the district courts."  Fed. R. Civ. P. 82.

A claim for Medicare benefits is fully exhausted upon review by the Medicare Appeals Council.  *See* 42 C.F.R. §§ 405.1100, 405.1130.  Plaintiffs have identified 145 Appeals Council decisions issued to their putative class members.  Mot. at 10, ECF No. 63 at 15.  The Secretary is aware of, and yesterday produced to plaintiffs, another four relevant Appeals Council decisions issued after the period covered by the productions in this case.  Absent waiver, the Court at most has subject matter jurisdiction over those 149 "final decision[s]" (plus one more, as discussed below).  42 U.S.C. § 405(g); *id.* § 1395ff(b)(1)(A) (providing for "judicial review of the Secretary's final decision").

---

[10] Plaintiffs wrongly assert that exhaustion of administrative remedies before bringing Medicare claims is "not jurisdictional."  Mot. at 18; ECF No. 63 at 23.  As the Supreme Court has explained, 42 U.S.C. § 405(g) makes the receipt of "a 'final decision' [of the Secretary] . . . a statutorily specified jurisdictional prerequisite," "something more than simply a codification of the judicially developed doctrine of exhaustion."  *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975); *see American Chiropractic Ass'n*, 431 F.3d at 816 (discussing the "jurisdictional question" raised by the Medicare Act's provision that "[j]udicial review may be had only after the claim has been presented to the Secretary *and administrative remedies have been exhausted*" (emphasis added)).  "Where exhaustion is a jurisdictional requirement," as it is here (though subject to modification by the Court), "every class member must exhaust its administrative remedies."  *Menominee Indian Tribe of Wisconsin v. United States*, 614 F.3d 519, 526 (D.C. Cir. 2010).

As to most of those decisions, the limitations period has run.  Unless the Court applies equitable tolling (which it should not) any claim for judicial review of an Appeals Council decision issued before October 9, 2018 is time-barred.  *See supra* 33–34.  The Secretary has identified only twenty-one merits decisions of the Medicare Appeals Council issued to putative class members on or after that date.[11]  Two of those decisions are being reviewed elsewhere, in cases where the plaintiffs intend to opt out of any class that is certified here.  *See Zieroth v. Azar*, No. 20-cv-172 (N.D. Cal. filed Jan. 8, 2020); *Olsen v. Azar*, No. 19-cv-3814 (RBW) (D.D.C. filed Dec. 23, 2019).  That leaves nineteen.

Of the nineteen final decisions that are neither time-barred nor under review in another action, only six appear to satisfy the statutory amount in controversy.[12]  The Secretary's regulations make an ALJ decision final when the beneficiary invokes the procedures in 42 C.F.R. § 405.1132, as Ms. Lewis did here.  Adding her claim to the six Appeals Council decisions

---

[11] Counsel for the Secretary arrived at this number by reviewing the decisions of the Medicare Appeals Council that were produced in discovery, and the four that were provided yesterday.

[12] These six decisions are: MAC Dkt. No. M-18-3232 (reviewing ALJ Appeal Nos. 1-6960804335 & 1-6960804485), Bates No. 8732; MAC Dkt. No. M-18-6145 (reviewing ALJ Appeal No. 1-7157501924), Bates No. 8828; MAC Dkt. No. M-19-685 (reviewing ALJ Appeal No. 1-7725439646), Bates No. 8863; MAC Dkt. No. M-19-3090 (reviewing ALJ Appeal No. 1-8630803174), Bates No. 35907; MAC Dkt. No. M-20-04 (reviewing ALJ Appeal No. 1-7245879052R1), Bates No. 35922; MAC Dkt. No. M-20-30 (reviewing ALJ Appeal No. 1-8669045980), Bates No. 35940.  *See* Dorman Decl. ¶¶ 4.a–b.

The eight decisions that appear to be below the jurisdictional threshold are: MAC Dkt. No. M-16-8253 (reviewing ALJ Appeal No. 1-3817321143), Bates No. 8050; MAC Dkt. No. M-18-239 (reviewing ALJ Appeal No. 1-6274941714), Bates No. 8615; MAC Dkt. No. M-18-686 (reviewing ALJ Appeal No. 1-6530760780), Bates No. 8804; MAC Dkt. No. M-18-4797 (reviewing ALJ Appeal No. 1-7231991593); MAC Dkt. No. M-18-6040 (reviewing ALJ Appeal No. 1-7414111088), Bates No. 8791; MAC Dkt. No. M-18-6087 (reviewing ALJ Appeal No. 1-7517373653), Bates No. 8817; MAC Dkt. No. M-19-604 (reviewing ALJ Appeal Nos. 1-7793043311 & 1-7793076659), Bates No. 8851; MAC Dkt. No. M-19-703 (reviewing ALJ Appeal No. 1-6303395252R1), Bates No. 8875.  *See* Dorman Decl. ¶¶ 4.c–d.

makes a potential class of seven final, non-time-barred decisions that appear to be above the minimum amount in controversy, including one decision for each of the named plaintiffs.[13]  In addition, the Medicare Appeals Council has issued five relevant decisions to Part C beneficiaries since October 9, 2018.[14]  The value of claims for Part C coverage is not readily ascertainable from the Secretary's database.  *See* Dorman Decl. ¶¶ 3, 4.e.  But including all of them—which would create "likely difficulties in managing a class action," Fed. R. Civ. P. 23(b)(3)(D), *see infra* at 44—would produce a class with twelve members, twelve beneficiaries with one claim each.

"[A] class that encompasses fewer than 20 members" is not so numerous as to call for class certification "absent other indications of impracticability of joinder."  *Coleman v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015) (quoting Rubenstein, Newberg on Class Actions § 3:12 (cited as § 3:11)).  Plaintiffs have not even attempted to show that joining the (at most) ten additional members of their putative class under Rule 20 would be "impracticable."  Fed. Civ. P. 23(a)(1).  Plaintiffs have therefore failed to "affirmatively demonstrate" their compliance with Rule 23(a)(1), and for that reason alone class certification should be denied.  *Comcast*, 569 U.S. at 33; *Wal-Mart*, 564 U.S. at 350.

---

[13] As discussed above, *see supra* at 13 n.2, Mr. Sargent received a final decision denying a claim that appears to be worth more than the jurisdictional amount in controversy in May 2019, but has not sought to have that decision reviewed directly here.

[14] These five decisions are: MAC Dkt. No. M-16-11183 (reviewing ALJ Appeal No. 1-4190310041), Bates No. 8226; MAC Dkt. No. M-17-3549 (reviewing ALJ Appeal No. 1-4772406346), Bates No. 8287; MAC Dkt. No. M-17-6163 (reviewing ALJ Appeal No. 1-2302249522R1), Bates No. 8375; MAC Dkt. No. M-18-5688 (reviewing ALJ Appeal No. 1-7391947282), Bates No. 8777; MAC Dkt. No. M-19-1328 (reviewing ALJ Appeal No. 1-7991031931), Bates No. 8892.

### 2. Plaintiffs have not affirmatively demonstrated that absent class members would receive adequate representation.

Rule 23(a)(4) requires proof that "the representative parties will fairly and adequately protect the interests of the class."  "Adequate representation is . . . the capstone of the Rule 23(a) requirements: it ensures that the class's champion will pursue its interests sufficiently well so as to produce a judgment that can fairly bind all members of a group who cannot appear before the court individually."  Rubenstein, 1 Newberg on Class Actions § 3:50.  The question of adequacy "tends to merge with" Rule 23(a)(3)'s "requirement that the class representative's claims be typical of the class," because a class representative with atypical claims "may not have the motivation or incentives to adequately pursue the claims of other class members."  *Id.* § 3:57.

Plaintiffs urge the Court to defer decision of the issues regarding exhaustion of administrative remedies and the statute of limitations until after class certification.  If the Court did so, on this motion it would need to analyze whether the named plaintiffs typify, and can fairly represent, a class of beneficiaries arguing for waiver and equitable tolling on the grounds that an allegedly secret policy prevented them from exhausting their remedies and filing a timely complaint.  The facts of plaintiffs' cases would undercut the other class members' arguments that a reasonable beneficiary would have been deceived by the Secretary's conduct.  And because the requirement to exhaust and timely file is no bar to recovery by the named plaintiffs, the Court could reasonably doubt whether the class representatives would have adequate incentives "to vigorously prosecute" the waiver and tolling arguments on behalf of the class.  *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (internal quotations omitted).

Moreover, Ms. Lewis's interests here are at even greater variance with those of the class that she would represent.  As discussed above, Ms. Lewis (unlike almost all of the putative class members) need not litigate the merits of this case in order to gain relief.  She has a trump card in

her back pocket: when it comes time to brief summary judgment, she need only argue issue preclusion to be assured of victory.  This interest is not antagonistic to the proposed class, which would not be harmed by the payment of Ms. Lewis's claim on alternate legal grounds, but it raises doubts about the extent to which the class interests are truly aligned with hers.  And Mr. Sargent, for his part, did not receive any initial denials that included the phrase "Statutorily excluded."  AR 1935, 2187.  He therefore cannot represent a class of individuals whose theory of waiver and tolling turns on the use of that language.

Finally, there are further reasons to question the vigor with which the class would be represented here.  Several weeks before the Secretary filed his motion to dismiss Mr. Sargent from this case for failing to satisfy the jurisdictional amount in controversy, ECF No. 22, Mr. Sargent received a third decision on this same issue from the Medicare Appeals Council, denying a claim that is apparently worth more than that jurisdictional amount.  *See supra* at 13 n.2.  It would have been easy to remove a serious question about Mr. Sargent's ability to proceed with this case by amending the complaint to seek review of his most recent Appeals Council decision. But he has never even mentioned that decision in this litigation.  As things stand today, Mr. Sargent is in danger of being dismissed from the case, and a motion to amend that would have been plainly proper last year might now be met with an objection of undue delay.  *Richardson v. United States*, 193 F.3d 545, 548–49 (D.C. Cir. 1999) ("Leave to amend a complaint should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility.").  It is far from clear that this level of attention to the claims of absent class members would be acceptable under Rule 23(a)(4).  And the cursory presentation of the central issues of waiver and equitable tolling in plaintiffs' class certification

motion may also be relevant to the Court's analysis.  *See* Rubenstein, 1 Newberg on Class Actions § 3:76 & nn. 1–4.

In sum, plaintiffs have not affirmatively demonstrated their compliance with Rule 23(a)(4).

**B.      The proposed class does not satisfy the requirements of Rule 23(b).**

Plaintiffs seeking class certification must also "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."  *Comcast*, 569 U.S. at 33.  They have not done so.

**1.      The Medicare Act does not authorize the injunctive or declaratory relief described in Rule 23(b)(2).**

Plaintiffs first argue that their proposed class can be maintained under Rule 23(b)(2), because they are seeking "final injunctive relief or corresponding declaratory relief" on behalf of the entire class.  But neither injunctive nor declaratory relief is available for claims arising under the Medicare Act.

 "Generally, a beneficiary must first channel his claim 'into the administrative process which Congress has provided for the determination of claims for benefits' before obtaining judicial review."  *Porzecanski*, 943 F.3d at 380 (quoting *Heckler v. Ringer*, 466 U.S. 602, 614 (1984)).  To satisfy this requirement, "the plaintiff must have 'presented' the claim to the Secretary; this requirement is not waivable, because without presentment 'there can be no "decision" of any type,' which § 405(g) clearly requires."  *American Hosp. Ass'n*, 895 F.3d at 825 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)).

If plaintiffs or putative class members believe that any of their claims are exempt from administrative channeling, they are mistaken.  The jurisdictional bar of 42 U.S.C. § 405(h) applies whenever "'the standing and the substantive basis for the presentation' of a claim is the Medicare Act," as it clearly is here.  *Ill. Council*, 529 U.S. at 12 (quoting *Ringer*, 466 U.S. at

615).  Moreover, "a 'claim for future benefits' is a § 405(h) 'claim,'" and so "'all aspects' of any such present or future claim must be 'channeled' through the administrative process."  *Id.* (quoting *Ringer*, 466 U.S. at 614, 621–22).  Medicare beneficiaries cannot avoid "the restrictive mandate of the Medicare Act's channeling requirement" by seeking "prospective relief [that] would functionally determine future claims."  *Porzecanski*, 943 F.3d at 484.  Federal courts therefore lack jurisdiction over any Declaratory Judgment Act suit that would determine future Medicare claims.  *Id.* at 485 n.11.  Plaintiffs have alleged such a jurisdictionally-barred claim in their complaint, ¶¶ 11, 164–66, but do not press it on this motion.

Plaintiffs do, however, suggest their putative class is eligible for injunctive relief.  That is incorrect: the extent of this Court's authority is to conduct "judicial review of the Secretary's final decision."  42 U.S.C. § 1395ff(b)(1)(A); *see id.* § 405(g).  Federal question jurisdiction of the type ordinarily exercised by this Court is expressly barred.  *Id.* § 405(h).  And, for that reason, "prospective equitable relief" is unavailable on the claims presented here.  *Porzecanski*, 943 F.3d at 475, 482–85 & n.11 (affirming "the district court's conclusion that it was precluded . . . from issuing the requested declaratory and injunctive relief" when doing so would determine entitlement to Medicare benefits).

Plaintiffs cite *Bowen v. Massachusetts*, 487 U.S. 879 (1988), for the contrary view.  Mot. at 13, 22; ECF No. 63 at 18, 27.  But that was a case brought under the federal question jurisdiction that § 405(h) prohibits.  *See* 487 U.S. at 887.  *Bowen v. Massachusetts* addressed the question of whether a certain injunction was the equivalent of money damages, and thus outside the scope of the Administrative Procedure Act's waiver of sovereign immunity, 5 U.S.C. § 702. *Id.* at 891–901.  That question has nothing at all to do with this case, or with the scope of the "judicial review of the Secretary's final decision" that has been authorized by Congress here.  42

U.S.C. § 1395ff(b)(1)(A); *see id.* § 405(g).  Plaintiffs have not carried their burden of showing that their proposed class action can be maintained under Rule 23(b)(2).

**2.      The proposed class does not satisfy Rule 23(b)(3).**

"To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual class members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'"  *Amchem*, 521 U.S. at 615.  Courts are "cautioned" to take a "close look at the case before it is accepted as a class action" under this provision.  *Id.* (quotation omitted).

"Rule 23(b)(3) includes a nonexhaustive list of factors pertinent to a court's 'close look' at the predominance and superiority criteria. . . . "  *Id.*  Two are especially pertinent here.  First, the Court must consider "the extent . . . of any litigation concerning the controversy already commenced by . . . members of the class," Fed. R. Civ. P. 23(b)(3)(B), because "other pending litigation is evidence that individuals have an interest in controlling their own litigation." Rubenstein, 1 Newberg on Class Actions § 4:70 ("If other individuals have filed suit, they must want individual litigation, suggesting that a class action may not be superior . . . .").

Two lawsuits have been filed by potential class members in the last several months: *Zieroth v. Azar*, in the Northern District of California, No. 20-cv-172 (filed Jan. 8, 2020), and *Olsen v. Azar*, which is pending before this Court, *Olsen v. Azar*, No. 19-cv-3814 (RBW) (filed Dec. 23, 2019).  In both cases, plaintiffs are represented by the Parrish Law Firm, which suggests an especially strong interest in controlling the course of their own litigation, since there would otherwise be no reason to proceed in separate matters handled by putative class counsel.

- 43 -

The second pertinent factor is "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D). Significant difficulties would be presented by the inclusion of Part C claims in any certified class. As the Court is aware, the Medicare Advantage program offers individuals the option of receiving their benefits through a private insurer, which makes the initial determinations "regarding whether an individual . . . is entitled to receive a health service" under the Medicare program or the insurer's particular contract. 42 U.S.C. § 1395w-22(g)(1)(A). The insurer's determination is ultimately subject to review by the Secretary, and the Secretary's final decision is then subject to judicial review. *Id.* § 1395w-22(g)(5). But access to judicial review is conditioned "upon notifying the [insurer]" of the individual's intention to proceed to federal court, where the insurer is also "entitled to be [a] party." *Id.* Thus the inclusion in any certified class of even a small group of Part C beneficiaries, such as the five potential class members discussed above, would raise thorny questions about whether their Medicare Advantage insurers' statutory rights to notice and participation could be honored without eliminating any efficiencies that justified class litigation in the first place. This would obviously be a larger difficulty in a larger class—though the Secretary notes that plaintiffs' arguments for waiver and equitable tolling, which would produce that larger class, are predicated on the Secretary's particular word choice in the initial denials issued through Medicare Part B. Plaintiffs have never alleged that the hundreds of Medicare Advantage insurers, who are each responsible for making initial coverage determinations for their own beneficiaries, use the same language that plaintiffs have identified as their justification for equitable tolling and waiver of exhaustion.

Plaintiffs have failed to affirmatively demonstrate the superiority of class litigation, as required by Rule 23(b)(3)—and that failure is especially acute as to the potential class members who participate in the Medicare Advantage program.[15]

## CONCLUSION

This Court should 1) dismiss Mr. Sargent's claims for lack of subject matter jurisdiction, 2) take judicial notice of the preclusive effect of Ms. Lewis's earlier judgment and enter judgment in her favor on the grounds of *res judicata*, and 3) deny the motion for class certification as moot.  If the Court proceeds to the merits of the class certification motion, it should deny that motion for the reasons set forth above, chief among them plaintiffs' failure to establish numerosity as required by Rule 23(a)(1).

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MICHELLE BENNETT
Assistant Director, Federal Programs Branch

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530

---

[15] In accordance with Local Civil Rule 23(c), the Secretary respectfully suggests that the Court should "postpone a determination of the matter" of "how, when, by whom, and to whom the notice required by Fed. R. Civ. P. 23(c)(2) shall be given" until after the motion for class certification is decided, as the appropriate method of notice is likely to depend on the size of any class that may be certified.  In addition, if the Court grants class certification, the Secretary suggests that it do so in general terms, and allow the parties to address the technical details of the class composition (which billing codes indicate class membership, for example) in any post-certification briefing.

James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

Date: April 21, 2020                    *Counsel for Defendant*