**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAROL A. LEWIS, *et al.*,          ) | |
|                       ) | Case No. 18-cv-2929 (RBW) |
|         Plaintiffs,       ) | |
|                       ) | |
|        v.                 ) | |
|                       ) | |
| ALEX M. AZAR II, in his official     ) | |
| capacity as Secretary of Health and   ) | |
| Human Services,           ) | |
|                       ) | |
|        Defendant.        ) | |
| _____ ) | |

**CAROL LEWIS AND DOUGLAS SARGENT'S**
**REPLY RE: MOTION FOR CLASS CERTIFICATION AND**
**APPOINTMENT OF CLASS COUNSEL**

## TABLE OF CONTENTS

I.    DISCUSSION ............................................................................................................ 2

  A.    THE SECRETARY'S EFFORT TO LITIGATE HIS AFFIRMATIVE  DEFENSES AGAINST THE
       ABSENT CLASS MEMBERS ................................................................................... 2

  B.    THE ABSENT CLASS MEMBERS' POTENTIAL RESPONSE TO  ANY ASSERTED
       AFFIRMATIVE DEFENSES .................................................................................... 5

  C.    RESPONSE TO BACKGROUND ............................................................................. 6

  D.    CLASS CERTIFICATION STANDARDS ................................................................... 7

    1.    Numerosity ............................................................................................... 7
       a)    Claims Pending When the Complaint Was Filed ................................... 8
       b)    The Secretary's "Twelve Class Members" Argument ........................... 9

    2.    Adequate Representation .......................................................................... 9
       a)    Ms. Lewis ........................................................................................... 12
       b)    Mr. Sargent ........................................................................................ 12
          i.    Factual Error ................................................................................. 12
          ii.   Legal Error ................................................................................... 14
          iii.  Mr. Sargent's Decision to Benefit the Class ................................. 14

    3.    The Secretary's Rule 23(b)(2) Injunction Argument ............................. 16
       a)    Background ......................................................................................... 16
       b)    The Secretary's Arguments ................................................................ 17

    4.    The Secretary's Rule 23(b)(3) "Superiority" Argument ........................ 18

  E.    THE SECRETARY'S REQUEST FOR A SUA SPONTE SUMMARY JUDGMENT AGAINST
       HIMSELF ............................................................................................................ 19

    1.    Background ............................................................................................. 19

    2.    Discussion .............................................................................................. 21
       a)    Unpled/Intentionally Waived Legal Theory ....................................... 22
       b)    Rejected Settlement Offer .................................................................. 23

  F.    THE SECRETARY'S REMARKS REGARDING MR. SARGENT ....................................... 24

    1.    The Secretary's Motion to Dismiss ....................................................... 24

     a)   **Mr. Sargent's Claims Are Entitled to Judicial Review** ......................................... 24

     b)   **Supplemental Jurisdiction**....................................................................................... 25

**II.**       **CONCLUSION .......................................................................................................... 25**

# TABLE OF CONTENTS

## Cases

*Afghan & Iraqi Allies v. Pompeo*,
  2020 WL 590121 (D.D.C. Feb. 5, 2020) ........................................................................ 4

*Agendia, Inc. v. Azar*,
  420 F.Supp.3d 985 (C.D. Cal. 2019) (appeal pending) ................................................ 10

*American Pipe & Construction Co. v. Utah*,
  414 U.S. 538 (1974) ................................................................................................... 9, 14

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*,
  568 U.S. 455 (2013) ....................................................................................................... 4

*Bowen v. City of New York*,
  476 U.S. 467 (1986) ....................................................................................................... 3

*Bowen v. Massachusetts*,
  487 U.S. 879 (1986) ..................................................................................................... 17

*Campbell-Ewald v. Gomez*,
  136 S.Ct. 663 (2016) .................................................................................................... 23

*Cotton v. Heyman*,
  63 F.3d 1115 (D.C. Cir. 1995) ..................................................................................... 21

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ....................................................................................................... 4

*Greenlaw v. U.S.*,
  554 U.S. 237 (2008) ..................................................................................................... 22

*In re: McCormick & Co.*,
  422 F.Supp.3d 194 (D.D.C. 2019) ................................................................................. 4

*In re: Veneman*,
  309 F.3d 789 (D.D.C. 2002) ........................................................................................... 5

*Lewis v. Azar*,
  308 F.Supp.3d 574 (D. Mass. 2018) ............................................................................ 19

*Martinez v. Puerto Rico Federal Affairs Admin.*,
  813 F.Supp.2d 84 (D.D.C. 2011) ................................................................................... 3

*Matthews v. Eldridge*,
  424 U.S. 319 (1976) ....................................................................................................... 3

*Sheehan v. Saoud*,
  526 B.R. 166 (N.D. W. Va. 2015),
  *amended in part on other grounds*, 2015 WL 693224 (N.D. W. Va. Feb. 18, 2015) ............................ 22

*Suarez v. Colvin*,
  140 F.Supp.3d 94 (D.D.C. 2015) ................................................................................... 3

*Swinomish Indian Tribal Community v. Azar*,
  406 F.Supp.3d 18 (D.D.C. 2019) ................................................................................... 3

*The Fair v. Kohler Die & Specialty Co.*,
  228 U.S. 22 (1913) ....................................................................................................... 22

*Twelve John Does v. District of Columbia*,
  117 F.3d 571 (D.C. Cir. 1997) ..................................................................................... 10

*U.S. v. Sineneng-Smith*,
   ____ S.Ct. ____ (May 7, 2020) .............................................................................. 22
*United Mine Workers of America v. Gibbs*,
   383 U.S. 715 (1966) .............................................................................................. 25
*Wood v. Milyard*,
   566 U.S. 463 (2012) .............................................................................................. 22

## Statutes

28 U.S.C. § 1367(a) ...................................................................................................... 25
42 U.S.C. § 1395ff(a)(3)(C)(i) ....................................................................................... 8
42 U.S.C. § 1395ff(b)(1)(E)(i) ...................................................................................... 24
42 U.S.C. § 1395ff(b)(1)(E)(ii) ..................................................................................... 14
42 U.S.C. § 1395ff(d)(2)(A) ........................................................................................... 7
42 U.S.C. § 1395hh(a)(2)/(b) ........................................................................................ 10
42 U.S.C. § 1395w-22(g)(5) ......................................................................................... 18
42 U.S.C. § 405(g) .......................................................................................... 3, 17, 24

## Rules

FED.R.CIV.P. 18 .................................................................................................... 15, 24
FED.R.CIV.P. 23(a)(3) ................................................................................................. 10
FED.R.CIV.P. 23(a)(4) ................................................................................................. 10
FED.R.CIV.P. 23(b)(2) ........................................................................................... 16, 17
FED.R.CIV.P. 23(c)(2) ................................................................................................... 5
FED.R.CIV.P. 24 ........................................................................................................... 19
FED.R.CIV.P. 8(c)(1) ..................................................................................................... 3

## Regulations

42 C.F.R. § 405.1063(b) ................................................................................................. 6

Plaintiffs Carol Lewis and Douglas Sargent file this Reply in support of their motion for class certification and appointment of class counsel.  The motion should be granted.

The genesis of this case is the Secretary's systematic refusal to provide Medicare coverage for continuous glucose monitors used by diabetics on the grounds that life-saving CGMs are not "durable medical equipment"/"primarily and customarily used to serve a medical purpose."  This case involves claims by some 90,000 persons (through July 2019) whose requests for Medicare coverage were rejected on those same grounds.  In Ms. Lewis' and Mr. Sargent's opening brief, they showed that all the requirements for class certification are met in this case.

Remarkably, the Secretary's opposition does not address the standards for class certification until page 35 of a 45-page brief.  Opp. at 35 ("We come, finally, to the question of class certification …").  Instead, the first 35 pages are spent on other, misguided, pursuits.

The fundamental basis of the Secretary's opposition is an effort to litigate the merits of the Secretary's affirmative defenses of exhaustion/60 days[1] against the absent class members (but not Ms. Lewis or Mr. Sargent) *before* the Court decides that there is a class to start off with.  The illogical nature of the Secretary's position is highlighted by the fact that the Secretary alleges that Ms. Lewis and Mr. Sargent will not adequately represent the absent class members with regard to the Secretary's exhaustion/60 day affirmative defenses.  Opp. at 39-41.  Simultaneously, the Secretary urges the Court to rule on the merits of his affirmative defenses against the absent class members *before* deciding whether a class is appropriate (and, if so, whether Ms. Lewis and Mr. Sargent are proper representatives) or giving the absent class members notice.  Opp. at 16-33.  That approach is barred.

---

[1] By "exhaustion/60 days", Plaintiffs refer to the Secretary's potential affirmative defenses that some class members will not have exhausted their administrative remedies and will not have filed suit in federal court within 60 days of a final decision by the Secretary.

The Secretary's request that the Court issue a *sua sponte* summary judgment ruling *against the Secretary* (in an attempt to eliminate Ms. Lewis as a class representative) is inventive but improper.  Opp. at 7-12.  Even if the Court could take up the Secretary's request (which it cannot), the effect of such a ruling would not be to eliminate or dismiss Ms. Lewis.  Instead, it would only mean that the Secretary's liability was established.  The requested relief would remain to be addressed.  While the Secretary's approach is barred, an approach that achieves the same result in terms of establishing the Secretary's liability is available to the Court – *i.e.*, granting Ms. Lewis' motion for summary judgment.

When the Secretary actually addresses the class certification issues (pages 35-45), he incorrectly presumes that the Court has already granted an unnoticed and unbriefed motion for summary judgment on the Secretary's affirmative defenses against the absent class members.  The Secretary's other comments are not well founded.  The motion should be granted.

## I.      DISCUSSION

**A.     The Secretary's Effort to Litigate His Affirmative Defenses Against the Absent Class Members**

Before addressing the actual issues related to class certification, it may assist the Court if, at the outset, Plaintiffs dispel the Secretary's comments regarding his affirmative defenses of exhaustion and statute of limitations against the absent class members.  To pick but a few examples, the Secretary contends:

> Three limitations will define the scope of any class that could be certified here: 1) the obligation to fully exhaust administrative remedies, which follows from the requirement to obtain a "final decision" of the Secretary; 2) a limitations period for seeking judicial review that expires sixty days after the beneficiary receives notice of that final decision; …
>
> * * *
>
> Exhaustion of administrative remedies and (to a lesser extent) the statute of limitations are the central legal issues for class certification in this case.  … Yet plaintiffs have almost completely failed to brief these central issues on a motion

> where they bear the burden of persuasion.  This all but total failure to carry their
> burden is, by itself, enough to merit denial.
>
> * * *
>
> And the cursory presentation of the central issues of waiver and equitable tolling in
> plaintiffs' class certification motion may also be relevant to the Court's analysis.

Opp. at 6, 19, 41(internal citations omitted).   The Secretary is simply misguided as to the procedural steps in a class action and who bears the burden on the Secretary's affirmative defenses against the absent class members and.

First, exhaustion of administrative remedies and statute of limitations are affirmative defenses of the Secretary and neither are jurisdictional.[2]  The Secretary bears the burden of pleading and proving these defenses at the appropriate time – after the class has been certified.

The Secretary's "final decision" comments are a variation on his exhaustion affirmative defense.  In *Matthews v. Eldridge*, 424 U.S. 319 (1976) the Supreme Court held that the "final decision" requirement of 42 U.S.C. § 405(g) is composed of two parts: 1) a non-waivable "presentment" component; and 2) a waivable exhaustion component.  *Id.* at 328.  By definition, every member of the proposed class has satisfied the presentment requirement. Thus, by referring to "final decision", the Secretary is simply referring to his exhaustion affirmative defense on which the Secretary bears the burden of proof.

---

[2] *See, e.g.,* FED.R.CIV.P. 8(c)(1); *Bowen v. City of New York*, 476 U.S. 467, 478 (1986) ("the 60-day requirement is not jurisdictional, but rather constitutes a period of limitations."); *Swinomish Indian Tribal Community v. Azar*, 406 F.Supp.3d 18, 24 (D.D.C. 2019) (appeal pending) ("[Statute of limitations] is an affirmative defense."); *Martinez v. Puerto Rico Federal Affairs Admin.*, 813 F.Supp.2d 84, 94 (D.D.C. 2011) (Walton, J.) ("because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it") (internal citations and quotations omitted); *Suarez v. Colvin*, 140 F.Supp.3d 94, 99 (D.D.C. 2015) ("the requirement that the plaintiff must complete the agency review process is non-jurisdictional and may be waived.").

Second, the Secretary's affirmative defenses cannot be asserted against either Ms. Lewis or Mr. Sargent (and the Secretary does not appear to do so).  Thus, to the extent the Secretary intends to assert these defenses, he must do so only against the absent class members.

In a class action litigation, the Court first must determine whether the class action form is the proper method of resolving the dispute before the Court and whether the proposed representatives (*i.e.*, the named/lead plaintiffs) will properly represent the interests of the absent class members.  *See, e.g., Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455, 460 (2013) ("But the office of a [class] certification ruling is not to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently.") (internal quotations omitted).  Thus, in Rule 23 practice, the court may not decide the merits in considering whether to grant class certification. [3]  *Id*. at 466; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *In re: McCormick & Co.*, 422 F.Supp.3d 194, 223 (D.D.C. 2019) ("While a court's class certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.") (internal citations and quotations omitted); *Afghan & Iraqi Allies v. Pompeo*, 2020 WL 590121 at *7 (D.D.C. Feb. 5, 2020) ("… in determining whether to certify a class, a court may not examine whether plaintiffs have stated a cause of action or will

---

[3] By contrast, the Court can properly decide matters that relate to the named/lead plaintiffs before deciding class certification – even if those matters might also relate to the potential class members.  The named/lead plaintiffs know of the litigation and are represented.  Thus, they need rely on no one else to protect their interests.  In recognition of this fact, before class certification, the Secretary has moved to dismiss Mr. Sargent on alleged amount in controversy grounds.  *See* Dkt. #22.  Likewise, the Secretary's opposition seeks to have Ms. Lewis' claim decided on the Secretary's preferred legal theory before class certification.  Opp. at 7-13.  Similarly, Ms. Lewis has moved to have the Secretary's liability on her claim decided on summary judgment.  *See* Dkt. #58.

prevail on the merits.") (internal citations and quotations omitted); *In re: Veneman*, 309 F.3d 789, 795 (D.D.C. 2002) ("inappropriately mix the issue of class certification with the merits").

If the Court finds that the class action form is the proper method of resolving the dispute and that the representatives are also proper, the Court then notifies the absent class members so that (if they decide to) they can opt-out or actively join the litigation to protect their interests rather than rely on the representatives. *See* FED.R.CIV.P. 23(c)(2). Only after completing those first two steps can the Court decide the claims of the previously-absent class members or any affirmative defenses of the defendant that are applicable only against them.

So far, the absent class members have neither been provided with notice that the Secretary's affirmative defenses against them are being litigated nor appointed champions (Ms. Lewis and Mr. Sargent) to protect their interests. Thus, nearly the entirety of the Secretary's opposition simply proceeds from a false premise.

**B.      The Absent Class Members' Potential Response to Any Asserted Affirmative Defenses**

While this Court cannot take up the Secretary's affirmative defenses at this time (for the reasons already explained), some discussion of what the class will contend if the Secretary properly asserts them may assist the Court, if only so that the Court knows what is likely ahead.

Because it would require detailed analysis on a properly noticed motion for summary judgment by the Secretary (which the Secretary has not filed), Plaintiffs cannot address every legal issue implicated by exhaustion. Suffice it to say, there are many issues related to secret conduct, futility, final position on the meaning of a statute, and the doctrine of "vicarious exhaustion"/"single filer" rule. Those all remain to be addressed.

That said, factually, in the present case, *every* denial of a Part B CGM claim did not reveal its true basis. Not one of the denials informed the beneficiary that their claim was rejected because

the Secretary was taking a position that a CGM was not "primarily and customarily used to serve a medical purpose."  Instead, various obfuscatory statements were used by the Secretary which prevented the beneficiaries from understanding that their rights were being violated.[4]  For example, in approximately 1/3 of all Part B cases, the beneficiaries were affirmatively misled when they were told that their claims for CGM coverage were "statutorily excluded" - when no such statute exists.[5]

In addition, CMS rulings are binding on all levels of the claims process.  *See* 42 C.F.R. § 405.1063(b).  With the issuance of CMS 1682-R on January 12, 2017, the discretion ALJs formerly had to order CGM coverage was eliminated.  Thus, for claims with dates of service after January 12, 2017 (like one of Mr. Sargent's), exhausting administrative remedies would have been the quintessentially futile act, because the claims could never be granted.  This applies to an estimated 249,145 claims out of the estimated 378,505 claims in this suit – *i.e.*, ~2/3 of all claims through July 31, 2019 (166,097 Part B claims and an estimated 83,048 Part C claims).

## C.    Response to Background

One item included in the "background" section of the Secretary's brief merits correction. With regard to Ms. Lewis' claim, the Secretary offers: "Before the Council could rule on her

---

[4] Indeed, rather than the true basis for denial ("not primarily and customary used to serve a medical purpose"), four pages of the Secretary's brief (Opp. at 25-28) are spent trying to explain why the beneficiaries were falsely told that CGMs were "statutorily excluded" or given other reasons for the denials.  This explanation by the Secretary culminates in a footnote (Opp. at 27, n. 7) directing beneficiaries to a website several levels down, where they can then "open the ZIP file, then open the Excel document", then go to rows 133 and 134 to see what the GX and GY codes mean.  The Secretary's effort at explanation makes Plaintiffs' point.

[5] Out of 252,337 Part B CGM claims during the period December 13, 2012-July 31, 2019, some 76,062 claims were denied using the GY modifier falsely asserting that some "statute" excluded coverage.  Because the Secretary produced no discovery concerning Part C denials, it is not known what, if anything, was communicated to the Part C beneficiaries.

appeal, and without presenting the final judgment in her favor, Ms. Lewis requested escalation to the district court[.]" Opp. at 5. That is not accurate.

Instead, the correct facts are that Ms. Lewis appealed the negative decision of ALJ Holt to the Council on December 7, 2016. CAR 65-69. Pursuant to the statute, the Council was required to issue a decision within 90 days. *See* 42 U.S.C. § 1395ff(d)(2)(A). When the Council had not issued a decision almost *two years* later, Ms. Lewis requested escalation on November 21, 2018. CAR 3. In that request, Ms. Lewis brought the final, favorable decision of the Massachusetts District Court (as well as similar decisions from the other courts) to the Council's attention. When the Council still did not issue a decision, this suit was filed *more than two years after* Ms. Lewis' appeal to the Council.

**D.    Class Certification Standards**

With regard to the actual class certification issues (Opp. at 35-45), the Secretary does not dispute: 1) commonality under Rule 23(a)(2); 2) typicality under Rule 23(a)(3); or 3) that Parrish Law Office and Lowenstein Sandler should be appointed class counsel if a class is certified.

The Secretary does dispute: 1) numerosity; 2) adequate representation; 3) whether an "injunction" is available (Rule 23(b)(2)); and 4) whether a class action is superior to individual litigation (Rule 23(b)(3)). As shown below, none of the Secretary's arguments has any merit.

**1.    Numerosity**

The Secretary did not dispute the factual information provided in Plaintiffs' opening brief regarding the numbers of claims/persons rejected during the class period by the Secretary on the identical grounds (*i.e.*, that a CGM is not "durable medical equipment" because it is not "primarily and customarily used to serve a medical purpose"). As detailed in Plaintiffs' opening brief, this

occurred an estimated 378,505 times to some 88,392 people during the period December 13, 2012 to July 31, 2019 (and likely tens of thousands more times in the subsequent months). Mot at 9.

Thus, Plaintiffs' numerosity showing is unrebutted.

### a)   Claims Pending When the Complaint Was Filed

In their opening brief, Plaintiffs identified a subset of the class comprised of claims pending when the Complaint in this case was filed (*i.e.*, claims that were denied on or after August 15, 2018). Plaintiffs did so because they understood that the Secretary did not contest that at least these claims would properly be part of any certified class, which would easily satisfy the numerosity requirement (133,599 claims by 42,242 persons through July 31, 2019). Mot. at 9.

Plaintiffs used the August 15, 2018 date because it is 120 days prior to the filing of Plaintiffs' Complaint (December 13, 2018). The statute (42 U.S.C. § 1395ff(a)(3)(C)(i)) and the Secretary's communications with Medicare beneficiaries indicate that a response to an initial denial (*i.e.*, a request for "redetermination") is timely if received within 120 days. *See, e.g.*, CAR 307 (for Ms. Lewis). Thus, any denial issued on or after August 15, 2018 was still subject to appeal (and, therefore, pending) when the Complaint was filed on December 13, 2018.

In a footnote, the Secretary asserts that only claims pending 60 days before the Complaint was filed (*i.e.*, October 14, 2018) should be included, because that is the deadline to seek "judicial review." Opp. at 33, n. 9. While that is both premature and wrong,[6] solely for the purpose of demonstrating how many claims/persons are undisputed, even the Secretary's cut-off date results in an estimated 117,612 claims by 34,120 people through July 31, 2019 (78,408 claims and 22,747 people for Part B, an estimated 39,204 claims and 11,373 people for Part C).

---

[6] Again, this is an affirmative defense of the Secretary that is not applicable to Ms. Lewis or Mr. Sargent. Accordingly, the Court cannot reach that issue before a class is certified and notified.

Again, even using the Secretary's erroneous cut-off date, numerosity is satisfied.

### b)   The Secretary's "Twelve Class Members" Argument

Frankly, it is difficult to take the Secretary's argument that there are "at most" twelve (12) class members seriously.   Opp. at 35-38.   The Secretary's "twelve" number is based on the presumption that the Court has already granted an unannounced summary judgment of the merits of the Secretary's affirmative defenses against the *absent* class members (but not Ms. Lewis or Mr. Sargent) *before* even certifying a class.   As set forth above, this is plainly wrong.

Further, the Secretary's "twelve" number is based on the misguided assumption that the filing of the class action Complaint did not suspend the statute of limitations (again, an affirmative defense) for any class member' claims pending when the Complaint was filed on December 13, 2018.   That is an erroneous view of the law.   *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974) ("the commencement of a class action suspends the applicable statute of limitations").   Nevertheless, the Court cannot resolve this issue at this time because, again, statute of limitation is an affirmative defense, no class is certified, and this matter would *only* be applicable to the *absent* class members (and not Mr. Lewis or Mr. Sargent).

Thus, the Secretary's entire approach is misguided and numerosity has been shown.

### 2.   Adequate Representation

Before addressing the Secretary's comments, some review of Ms. Lewis' and Mr. Sargent's claims may help orient the Court.   Ms. Lewis and Mr. Sargent both contend that the Secretary's denial of their CGM claims as not durable medical equipment/"not primarily and customarily used to serve a medical purpose" is arbitrary and capricious, not supported by substantial evidence, etc. If either Plaintiff is victorious, all the proposed class members will be victorious.

In addition, by the time one of Mr. Sargent's CGM claims accrued, the Secretary had formalized his "not primarily and customarily used to serve a medical purpose" position in CMS 1682-R and LCD 33822 – which were issued, without notice and comment, on January 12, 2017. CMS 1682-R and LCD 33822 formed the actual basis for the rejection of that claim. *See* CAR973-4. Thus, an independent reason to reverse the denial of that separate claim is the Secretary's violation of the Medicare' specific notice and comment provisions. *See* 42 U.S.C. § 1395hh(a)(2)/(b); *Agendia, Inc. v. Azar*, 420 F.Supp.3d 985, 995-98 (C.D. Cal. 2019) ("… the LCD and policies at issue were unlawfully promulgated without notice and comment …") (appeal pending).

It is very difficult to follow the Secretary's arguments challenging the Plaintiffs' adequacy of representation under FED.R.CIV.P. 23(a)(4). Opp. at 39-41. The Secretary has not challenged Plaintiffs' showing of "typicality" under FED.R.CIV.P. 23(a)(3) and even the Secretary acknowledges that the test for adequacy of representation "tends to merge" with (in this case, uncontested) typicality. Opp. at 39.

Remarkably, the Secretary never even acknowledges that the requirements for adequacy of representation are: 1) that the named plaintiffs "must not have antagonistic or conflicting interests with the unnamed members of the class"; and 2) that the named representatives "must appear able to vigorously prosecute the interests of the class *through qualified counsel*." *See* Mot. at 19 (citing *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)) (emphasis added). The Secretary does not contend that either Ms. Lewis or Mr. Sargent have antagonistic or conflicting interests with the unnamed class members. Indeed, the Secretary explicitly concedes that Ms. Lewis is not antagonistic to the class members. Opp. at 40. Further, the Secretary does

not challenge the qualifications of either Parrish Law Offices or Lowenstein Sandler.  Accordingly, Plaintiffs showing of adequacy of representation is unrebutted.

Rather than the actual test of adequacy, the Secretary again seeks to reframe the issue in terms of "typicality" with respect to the Secretary's affirmative defenses.  As noted in Plaintiffs' opening papers, that approach is misguided because "typicality" is concerned only with the claims and defenses of the plaintiff class *not* with any affirmative defenses of the defendant.  Mot. at 18. The Secretary apparently cites *Twelve Does* for the notion that the test for adequacy is "vigorous prosecution" of the Secretary's affirmative defenses.  Opp. at 39.  *Twelve Does* says nothing of the kind and instead refers to "vigorous prosecution through qualified counsel."  Again, the existence of "qualified counsel" to vigorously prosecute all issues in this case is not disputed.

While the Secretary contends that the facts of Ms. Lewis and Mr. Sargent's cases "would undercut" the other class members' arguments with respect to any asserted affirmative defenses, the Secretary never explains how this is so.  To the contrary, *e.g.*, when Mr. Sargent is challenging the illegal issuance of CMS 1682-R, the facts there would tend to support the "futility" argument with respect to 2/3 of the claims in this case.  Likewise, when Ms. Lewis presents evidence of the "statutorily excluded" representation by the Secretary, that would tend to support the falsity of the stated reasons for denial of 1/3 of the claims of the unnamed class members.  Likewise, when both Ms. Lewis and Mr. Sargent present evidence that none of the denials in their cases initially disclosed their true basis, that tends to support the unnamed class members' "secret policy" position.

The Secretary then offers criticisms regarding Ms. Lewis and Mr. Sargent individually.

a)      **Ms. Lewis**

The Secretary contends that Ms. Lewis' interests are at "variance" with the class members' because Ms. Lewis has a "trump card" in the form of collateral estoppel.  Opp. at 39-40.  That contention is belied by Ms. Lewis' refusal to plead collateral estoppel, her objection to the imposition of collateral estoppel on her theories of the case, and her continuing rejection of the Secretary's efforts to pay her off by imposition of a rejected settlement offer.  *See* Section E, *infra*.

b)      **Mr. Sargent**

The Secretary wrongly contends that Mr. Sargent cannot adequately represent class members who received the false "statutorily excluded" representation when Mr. Sargent only received denials that failed to disclose their true bases.  Opp. at 40.  That contention is without merit.  Whether by silence, obfuscation, or prevarication, the Secretary did not reveal the true bases for all the CGM denials and that applies to Mr. Sargent just as much as the other class members.

The Secretary refers to a Council decision that Mr. Sargent received after this case was filed denying another of Mr. Sargent's claims for CGM coverage.  The Secretary alleges that this third decision involves a claim that exceeds the required amount in controversy, that Mr. Sargent could have removed a "serious question about his ability to proceed with this case" had he moved to amend the Complaint to include this third decision, and that, by failing to do so, a motion to amend "might now be met with an undue delay objection."  Opp. at 40.  In the Secretary's view, this deficient "level of attention to detail" calls into "question the vigor with which the class would be represented here."  The Secretary's assertions are off the mark.

i.      **Factual Error**

After this case was filed, Mr. Sargent did receive another decision from the Council denying a claim for CGM coverage on May 10, 2019, reviewing ALJ Appeal No. 1-7725439646

on Claim #17335732921000.  Opp. at 13, n. 2.  That is true.  The Secretary then alleges that the amount in controversy on this claim, by itself, is above the threshold for judicial review.  *Id.*; Opp. at 40 ("apparently worth more than that jurisdictional amount").  That is false.

Attached as Exhibit 4 are the Medicare Summary Notice, decision on Redetermination, decision on Reconsideration, ALJ decision, and Council decision relevant to this claim.  As reflected in all of these materials, at issue was a 90-day supply of sensors for use with Mr. Sargent's CGM provided on November 15, 2017.  While a number of other items are listed, those additional items were either denied (but Mr. Sargent was not responsible for paying for them) or they were approved (and Mr. Sargent was responsible only for his co-pay).  Thus, the total amount of disputed charges was $1,419 (*i.e.*, the same amount as each of the two claims that are already part of this case).

The Declaration of Mr. Dorman submitted in support of the Secretary's opposition is likely to lead the reader astray.  Subject to the disclaimer of Dorman ¶3, Mr. Dorman avers in ¶4(a) that the "Medicare Appeals System lists *an original amount billed* greater than $1,600" for ALJ Appeal No. 1-7725439646 (emphasis added).  Obviously, "original amount billed" and "amount in controversy" may be two different things.  For Claim #17335732921000, the "original amount billed" was $2,309 while the remaining "amount in controversy" is $1,419.

Had the Secretary applied any "level of attention to detail" or "vigor" to this issue (Opp. at 40), he could have avoided the confusion by reviewing his own production of documents.  In particular, included as part of the Secretary's First Document Production on November 21, 2019, are Lewis003440 (initial denial) and Lewis004936 (Redetermination) which both list the amount

at issue for Claim #17335732921000 as $1,419.[7]   Alternatively, with Mr. Dorman's command of

the Medicare Appeals System, he could have searched for claims based on Mr. Sargent's HICN or

the ALJ appeal number (which also ties back to a claim number).   Such a search would have shown

quickly that the actual amount disputed on this claim is less than $1,600.

The Secretary's factual claim is false.

### ii.        Legal Error

Because the latest Council decision issued on Claim #17335732921000, if considered

individually, also had an amount in controversy below the $1,600 amount the Secretary alleges is

required for judicial review, there would have been no point in seeking to amend the Complaint to

include this claim at this time.   While Mr. Sargent contends that all of his claims are aggregated to

meet the amount in controversy applicable in district court, the Secretary would have presented

the same arguments in his motion to dismiss and Mr. Sargent would have opposed on the same

grounds.   For that reason, moving to amend to add the third claim would have only led to more

delay.   The Secretary's legal assertions about how Mr. Sargent handled his latest Council denial

are erroneous and do not impact his ability to adequately represent the class.[8]

### iii.        Mr. Sargent's Decision to Benefit the Class

The Secretary also notes that when litigating before the Secretary, pursuant to 42 U.S.C. §

1395ff(b)(1)(E)(ii), Mr. Sargent sought aggregation of the decisions at issue in this case before the

---

[7] In addition, the Secretary's Third Document Production on January 6, 2020 includes Lewis013664-69, which is the Reconsideration denial for this same claim.

[8] Likewise erroneous is the Secretary's suggestion that any future effort by Mr. Sargent to assert the claim that was the subject of the most recent Council denial "might be met with an undue delay objection."   Opp. at 40.   Pursuant to the Supreme Court's decision in *American Pipe*, the filing of this class action suspended any applicable statute of limitations with regard to Mr. Lewis' pending claims.   *See* 414 U.S. at 550, 554.   Thus, Mr. Sargent is not required to further pursue any claims (including those at issue in the most recent Council denial) at this time.

Council.  Opp. at 13, n. 2; CAR2012; 42 U.S.C. § 1395ff(b)(1)(E)(ii) ("the Secretary *shall* allow two or more appeals to be aggregated") (emphasis added).  At the time, Mr. Sargent did so for the explicit purpose of obtaining a single decision that would meet the amount in controversy limit for federal court jurisdiction.

Rather than follow Congress' mandate to aggregate such appeals, the Council issued two separate decisions on the same day (October 15, 2018) where each one was slightly below ($1,419) the federal amount in controversy ($1,600).  Had the Council complied with the statute, then a single decision would have exceeded the amount in controversy.  Relying on the Secretary's defiance of Congress' mandate, in this case, the Secretary has moved to dismiss Mr. Sargent's claims.  *See* Dkt. #22.

Mr. Sargent has chosen not to litigate the Secretary's defiance of the aggregation statute. Instead, to the benefit of the class members, Mr. Sargent is litigating the amount in controversy issue by relying on FED.R.CIV.P. 18/supplemental jurisdiction, which puts him in the same posture as approximately 75% of the potential class members.  That is, Plaintiffs estimate that ~75% of the potential class members' claims are individually for less than $1,600.[9]  Thus, assuming a class is certified, resolution of the amount in controversy issue in Mr. Sargent's case will also resolve the issue as it relates to ~75% of the potential class members.

---

[9] This figure is subject to uncertainties as a result of the Secretary's failure to provide information/produce documents called for in discovery.  First, because no names were produced and beneficiaries may submit claims under multiple HICNs, a single person may have submitted claims under different HICNs that, if added together, would be in excess of the amount in controversy.  Second, the Secretary produced no Part C beneficiary data.  As a result, how many Part C beneficiaries have claims above or below the amount in controversy is unknown.

Given Mr. Sargent's sacrifice for the class, even before one is certified, the Secretary's charge that Mr. Sargent will not fairly and adequately protect the class member's interests is without basis.

### 3. The Secretary's Rule 23(b)(2) Injunction Argument

While it is not clear that much of the Secretary's discussion of FED.R.CIV.P. 23(b)(2) (Opp. at 41-43) actually concerns the standards for 23(b)(2) certification, Plaintiffs respond to clear up any confusion.

#### a) Background

The Secretary alleges that the class may not be certified under FED.R.CIV.P. 23(b)(2) because injunctive relief is not available for claims under the Medicare Act. Opp. at 41. That is plainly wrong.

As an initial matter, the Secretary misapprehends the entire nature of this suit, the composition of the proposed class, and the relief sought. As set forth in the Complaint, Plaintiffs allege that the Secretary's denials of CGM claims as not covered "durable medical equipment" is in violation of multiple provisions of the Administrative Procedure Act, the Medicare Act itself, and not supported by substantial evidence. In particular, the Secretary's denials based on the assertion that a CGM is not "primarily and customarily used to serve a medical purpose" (and a CGM is, therefore, not "durable medical equipment") are arbitrary and capricious, not supported by substantial evidence, etc.

The proposed class consists of only those persons who have submitted claims for CGM coverage that were denied on the grounds that a CGM is not "durable medical equipment" (and where such claims were not later approved on appeal). Thus, each proposed class member has "presented" a claim to the Secretary and it has been denied. Persons whose claims are not

submitted (and denied on these same grounds) before a final judgment in this case is entered are not members of the proposed class, by definition.

The Complaint seeks only relief retrospective from the date of judgment for CGM claims previously denied on these grounds. That is, the Complaint seeks an "Order ... (3) directing Defendant[] to provide coverage for CGMs for the class member' claims." As explained by the Supreme Court, this is not an action for damages. Instead, it is an action for an injunction. *See Bowen v. Massachusetts*, 487 U.S. 879, 893 (1986) ("injunction either directing or restraining the defendant officer's actions."). As a practical matter, if Plaintiffs are victorious, the injunction will be entered as part of the judgment pursuant 42 U.S.C. § 405(g) (fourth sentence).

To the extent the Complaint seeks a "declaration", it is only a declaration of the factual conclusions that support a judgment in Plaintiffs' favor. The Complaint seeks no prospective relief of any kind (*i.e.*, "future claims").

### b) The Secretary's Arguments

As detailed above, the proposed class consists of only those persons who have or will have submitted CGM claims through the entry of judgment. Thus, the Secretary's comments regarding "presentment", "future claims", and "prospective equitable relief" are wide of the mark. As noted, Plaintiffs seek only retrospective relief for CGM claims already denied by the Secretary through the entry of judgment.

While it is hard to divine, the Secretary's comments regarding "channeling" and "final decision" appear to intimate that the Court lacks jurisdiction to consider presented, but unexhausted, claims of the proposed class members. Opp. at 41-42. This is false and simply a repetition of the Secretary's exhaustion affirmative defense (addressed above). All the prerequisites for certifying the class under FED.R.CIV.P. 23(b)(2) have been demonstrated.

####        4.        The Secretary's Rule 23(b)(3) "Superiority" Argument

The Secretary does not challenge Plaintiffs' showing that common questions of law or fact predominate.  Mot. at 22-23; Opp. at 43-45.

Instead, remarkably, the Secretary contends that the class action form is not superior to other methods of resolving the claims by 90,000 people.  In particular, the Secretary points to two individual suits regarding CGM coverage filed after this suit (*Olsen* and *Zieroth*) as proof that the 89,998 other class members have an "especially strong interest in controlling" their own litigation rather than rely on a class action.  To state the Secretary's position is to refute it.

In addition, the Secretary contends that the inclusion of Part C cases would create "significant difficulties" in the management of the class action because of the need to notify the Medicare Advantage Plans (MAP) and their right (but not requirement) to participate as parties. Opp. at 44-45 (citing 42 U.S.C. § 1395w-22(g)(5)).

As noted in Plaintiff opening papers, it is estimated that through July 31, 2019, the class is composed of some 30,000 Part C participants.  Mot. at 8.  As further shown in Plaintiffs' opening papers, 81% of the Part C market is covered by just seven MAPs (UnitedHealthcare, Humana, BCBS, Aetna, Kaiser Permanente, Wellcare, and Cigna).  *See* Pistorino Decl., Exhibit 2 at 4.  That suggests that notice covering more than 24,000 Part C class members could be accomplished by sending just seven letters – one to each of those entities.  Because the Secretary provided no discovery of Part C initial denial information, it is unknown how many MAPs cover the remaining 6,000 persons.  In any event, when already providing notice to some 90,000 class members, the added burden of notifying 10-100 MAPs would not represent a "significant difficulty."

While it is true that the MAPs of Part C class members would have the right to participate as parties, they are not required to.  In this regard, the MAPs are in the same position as the absent

class members who can intervene under FED.R.CIV.P. 24 (either as a matter of right or permissibly). The mere possibility that some MAPs may choose to participate (which Plaintiffs believe to be remote) is not a "significant difficulty" in a class action case resolving the claims of 90,000 persons.

In any event, the inquiry under Rule 23(b)(3) is not whether there might be issues to address when conducting a class action. The inquiry is whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Clearly, a single class action is superior to individual litigation by 90,000 persons.

Plaintiffs' Rule 23(b)(3) showing was unrebutted and the class should be certified.

**E.     The Secretary's Request for a *Sua Sponte* Summary Judgment *Against Himself***

Some review will facilitate consideration of the Secretary's novel theory.

**1.     Background**

As set forth in the Complaint, Ms. Lewis litigated whether a CGM is durable medical equipment and a covered Medicare benefit in Massachusetts District Court (Gorton, J.). Judge Gorton ruled entirely in Ms. Lewis' favor in a decision issued in April 2018. *See Lewis v. Azar*, 308 F.Supp.3d 574 (D. Mass. 2018). Thereafter, the Secretary both maintained his denials of Ms. Lewis' previous claims and issued new denials of her subsequent claims, with full knowledge of Judge Gorton's decision. Thus, at every opportunity, the Secretary failed and refused to honor collateral estoppel and forced Ms. Lewis to bear the costs, delay, and uncertainty of repeated litigation of the same coverage issue.[10]  This suit followed.[11]

---

[10] Likewise, the Secretary subjected Mr. Sargent to the same experience and both the ALJ and Council explicitly refused to accord collateral estoppel effect to Mr. Sargent's prior, final, favorable decisions on the exact same issue. See CAR2001, 2096.

[11] Even after this suit was filed, the Secretary continued to issue denials to Ms. Lewis on the same grounds, with knowledge of Judge Gorton's decision in Ms. Lewis' favor. Twice, the Secretary

In the Complaint in this case, neither Ms. Lewis nor Mr. Sargent asserted collateral estoppel against the Secretary.  This was a deliberate decision - made in order to ensure that both Ms. Lewis' and Mr. Sargent's claims remained founded on the same grounds for denial as the absent class members.

Having inflicted maximum damage and delay and repeatedly disregarding the principles of collateral estoppel and the courts that issued the decisions, the Secretary has had a *tactical* change of heart and wishes to be spared the consequences of his continued denials of Ms. Lewis' claims.  Not only does the Secretary profess a newfound respect for collateral estoppel (but only as limited to Ms. Lewis – not Mr. Sargent or anyone else and only as it might apply in this case), the Secretary contends that Ms. Lewis "has no right" to litigate the case the Secretary forced Ms. Lewis to file when the Secretary continued to defy Congress' mandate.  Opp. at 7.  Indeed, in the Secretary's view, when ALJ Holt denied Ms. Lewis' claim for CGM coverage on the discredited grounds and the Council failed to rule on Ms. Lewis' appeal *for two years*, even with knowledge of Judge Gorton's decision, that was Ms. Lewis "manufactur[ing] a second federal litigation." Opp. at 11.

Neither Ms. Lewis nor Mr. Sargent have or will assert collateral estoppel (and the Secretary cannot assert it against himself).  Further, both Ms. Lewis and Mr. Sargent reject any settlement offer that does not benefit the class.  As a result, the Secretary plaintively asks the Court to impose those steps on Ms. Lewis on the Secretary's behalf.  That is, the Secretary asks the Court to: 1) *sua sponte* impose an unpled legal theory (collateral estoppel) on Ms. Lewis' claims; 2) *sua sponte* grant summary judgment against the Secretary on the unpled theory; and 3) remand Ms. Lewis'

---

represented to this Court that there were no continuing denials, before finally admitting that the denials continued through at least June 2019. *See* Dkt. #30 at 5, n. 2; Dkt. #36 at 2-4

claim to the Secretary without granting Ms. Lewis all of the relief sought in the Complaint.  Stated alternatively, the Secretary wants the Court to impose a rejected settlement offer on Ms. Lewis.

The Secretary's theories are misguided.

2.    **Discussion**

As an initial matter, both Ms. Lewis and Mr. Sargent refuse to assert offensive, mutual collateral estoppel against the Secretary.  Were Ms. Lewis and/or Mr. Sargent to do so, they believe that the Secretary would then contend that their claims were not "typical" of the class in an effort to defeat class certification.  Secondly, Plaintiffs do not question this Court's power to impose mutual collateral estoppel *against* a plaintiff that was a party to a prior proceeding involving the United States to *dismiss a case/claim*.  Plainly, the Court has the power to rule against a plaintiff, in favor of a defendant, to save resources by avoiding repetitious litigation in dismissing a case/claim.

That said, even if all the elements of collateral estoppel are present, the Court cannot impose an unpled/intentionally waived legal theory on the plaintiff to rule in *plaintiff's* favor against a defendant (and only *partially* grant the relief sought) or impose a rejected settlement offer.  Not one of the 25 cases/authorities cited by the Secretary (Opp. at 7-13) stands for that proposition.[12]

---

[12] The closest is *Cotton v. Heyman*, 63 F.3d 1115 (D.C. Cir. 1995) where the court decided the matter on the grounds of "judicial estoppel" rather than plaintiff's asserted theories of mootness and untimeliness.  *Id.* at 1118-9.  By contrast to the present case, there is no indication in *Cotton* that the plaintiff intentionally waived reliance on estoppel and the Court characterized the distinction between the plaintiff's theories and "judicial estoppel" as "subtle."  Likewise, in *Cotton*, the Court's decision was consistent with the plaintiff's aims in the litigation.  By contrast here, the Secretary asks the Court to impose a theory to frustrate Ms. Lewis' aims in the litigation.

### a)      Unpled/Intentionally Waived Legal Theory

It is fundamental that a plaintiff is the master of his own pleading and chooses the law he will rely on.  *See, e.g., The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913).

A corollary to the "master of his own pleading" rule is the "party presentation principle." The "party presentation principle" is basic to the adversarial system of litigation.  *See Wood v. Milyard*, 566 U.S. 463, 472 (2012).  Under that principle, courts "rely on the parties to frame the issues for decision and assign the courts the role of neutral arbiter of the matters the parties present."  *See Greenlaw v. U.S.*, 554 U.S. 237, 243 (2008).  Thus, "as a general rule, our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief."  *Id*. at 244 (internal quotations and citations omitted).  Indeed, "[i]t would be an abuse of discretion … for a court to override a [party's] deliberate waiver of a [legal theory]."  *Wood*, 566 U.S. at 472-3 (internal citations and quotations omitted).

Applying these principles, courts routinely refuse to "fix" the pleadings of represented parties.  Recently, the Supreme Court applied the "party presentation principle" to unanimously reverse a Circuit that attempted to refashion the theories of an appellant.  *See U.S. v. Sineneng-Smith*, ____ S.Ct. ____ (May 7, 2020).  Indeed, at least one court has rejected exactly what the Secretary requests here: *sua sponte* imposition of offensive collateral estoppel in favor of the plaintiff.  *See Sheehan v. Saoud*, 526 B.R. 166, 182 (N.D. W. Va. 2015), *amended in part on other grounds*, 2015 WL 693224 (N.D. W. Va. Feb. 18, 2015) ("It is not the province of the Court to rewrite [plaintiff's] summary judgment motion, particularly when he has stated that he does not wish to rely on collateral estoppel.").

Simply put, Ms. Lewis is the master of her own pleading and it would be an abuse of discretion for the Court to override Ms. Lewis' deliberate waiver of any reliance on offensive, mutual collateral estoppel against the Secretary.

### b)   Rejected Settlement Offer

Ms. Lewis' and Mr. Sargent's representatives have informed the Secretary that Plaintiffs will reject any settlement offer that does not benefit the class as a whole.  This is consistent with Ms. Lewis' and Mr. Sargent's roles as proposed class representatives and their duties to the absent class members.  Thus, any offer to pay only Ms. Lewis' personal claims is rejected.

Defendant' efforts to pay-off or eliminate only the named representatives, and thereby frustrate the class, are common.  For example, in *Campbell-Ewald v. Gomez*, 136 S.Ct. 663 (2016), the Defendant made an offer of judgment of everything the named plaintiff sought (but nothing for the absent class members).  That offer was not accepted.  *Id.* at 672 ("… Campbell sought to avoid a potential adverse decision, one that could expose it to damages a thousand-fold larger than the bid Gomez declined to accept.").  Nevertheless, the Defendant argued that, in light the offer, the case was moot.  Resolving a split among the Circuits, the Supreme Court held that an unaccepted offer to the class representative does not render a case moot.

Here, the Secretary asks the Court to impose the Secretary's unaccepted offer to pay-off Ms. Lewis (but nothing for the class) and like the defendant in *Campbell-Ewald* asserts that "Ms. Lewis no longer has anything at stake in the Court's resolution of the merits of this case."  Opp. at 11.  Respectfully, that is not a decision for the Court, but one reserved entirely for Ms. Lewis.

**F.       The Secretary's Remarks Regarding Mr. Sargent**

In a section devoted to Mr. Sargent, the Secretary re-argues his pending motion to dismiss (though he adds a supplemental jurisdiction argument not previously moved on) and makes several other comments regarding Mr. Sargent's pending claims.  Opp. at 12-15.

**1.       The Secretary's Motion to Dismiss**

By contrast to defenses that only relate to the absent class members, Plaintiffs agree that the Court could properly take up the Secretary's motion to dismiss Mr. Sargent's claims before deciding class certification.  Though the issues the Secretary raises with respect to Mr. Sargent are also applicable to the absent class members, there is no bar to the Court addressing them before certifying the class.  However, were the Court to do so, that would only apply to Mr. Sargent personally (not the absent class members) and would implicate the "one way intervention" issue the Secretary contends precludes the Court from addressing Ms. Lewis' motion for summary judgment.  Indeed, Plaintiffs believe that, by filing such a motion, the Secretary has waived any objection to the Court taking up the merits of Ms. Lewis and Mr. Sargent's claims before ruling on class certification.

With regard to the merits of the Secretary's motion itself, as set forth in Mr. Sargent's opposition (see Dkt. #30), it is not well founded for two reasons.

**a)       Mr. Sargent's Claims Are Entitled to Judicial Review**

Pursuant to 42 U.S.C. § 1395ff(b)(1)(E)(i) and 42 U.S.C. § 405(g). "judicial review shall not be available to the individual if the amount in controversy is less than [$1,600]."  In the present case, Mr. Sargent is an individual and, pursuant to FED.R.CIV.P. 18, he has joined multiple claims that he has against the opposing party (the Secretary) such that the amount in controversy on his claims in this Court is more than $2,800.  Thus, judicial review is available to Mr. Sargent.

### b) Supplemental Jurisdiction

Additionally, pursuant to 28 U.S.C. § 1367(a), because it is undisputed that this Court has original jurisdiction over Ms. Lewis' claim, this Court has supplemental jurisdiction over Mr. Sargent's claim.  Mr. Sargent's claims are so related to Ms. Lewis' claims that they form part of the same case or controversy.  Both claims arise from the common nucleus of the Secretary's denials of CGM claims on the grounds that they are not "primarily and customarily used to serve a medical purpose.".  Indeed, if filed as separate actions in this Court, Plaintiffs believe that they would have to be listed as "related cases" on the Civil Cover sheet.

The Secretary's citation to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) (Opp. at 14) is curious because it concerns whether federal and state claims can be tried together and also pre-dates Congress enactment of 28 U.S.C. § 1367 in 1990.  As noted by the Supreme Court in *Exxon Mobile Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 558 (2005), 1367(a) is a "broad grant of supplemental jurisdiction."  The Secretary's citation to *Exxon* in particularly inapt. Opp. at 15.  Rather than the majority decision finding supplemental jurisdiction, the Secretary is citing to the dissent which argued that there was no supplemental jurisdiction.

In any event, as noted in Mr. Sargent's opposition to the Secretary's motion and at the hearing held on February 24, 2020, these same issues are currently pending before the Second Circuit in *Bloom v. Burwell*, 18-2390.  Oral argument was held on October 7, 2019 and the parties are awaiting a decision.  Clearly, any decision by the Second Circuit will not be controlling on this Court.  Nevertheless, it may be instructive and inform this Court's decision.

## II.     CONCLUSION

The class certification motion should be granted.

Dated:  May 12, 2020

Respectfully submitted,

/s/Jeffrey Blumenfeld
D.C. Bar No. 181768
LOWENSTEIN SANDLER LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 753-3800
Facsimile:  (202) 753-3838
jblumenfeld@lowenstein.com

*and*

PARRISH LAW OFFICES
James C. Pistorino (admitted *pro hac vice*)
788 Washington Road
Pittsburgh, PA 15228
Telephone: (412) 561-6250
Facsimile:  (412) 561-6253
james@dparrishlaw.com

*Attorneys for Plaintiffs*