## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CAROL A. LEWIS, *et al.*, | ) | |
| | ) | Case No. 18-cv-2929 (RBW) |
| Plaintiffs, | ) | |
| | ) | DECLARATION OF JAMES |
| v. | ) | PISTORINO IN SUPPORT OF |
| | ) | CLASS CERTIFICATION MOTION AND |
| ALEX M. AZAR II, in his official | ) | APPOINTMENT OF CLASS |
| capacity as Secretary of Health and | ) | COUNSEL |
| Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

I, James Pistorino, declare:

1.      I am over the age of 18, have never been convicted of a felony, and I make the following statements of my own free will.

2.      Further to my earlier declaration, I reviewed the spreadsheet of claims compiled from the Secretary's document production and that shows that out of 252,337 Part B CGM claims, 76,062 were denied using the "GY" code during the period December 13, 2012-July 21, 2019.

3.      In addition, during the period December 13, 2012-July 21, 2019, the spreadsheet shows that 166,097 Part B denied CGM claims had dates of service on or after January 12, 2017. Assuming that Part C claims constitute 1/3 of all Medicare claims, this implies 83,048 Part C claims with dates of service on or after January 12, 2017.

4.      In addition, I reviewed the spreadsheet to determine how many claims/persons received denials on or after October 14, 2018.  The spreadsheet shows that, during the period December 13, 2012-July 21, 2019, some 78,408 claims by some 22,747 persons received initial denials.  Again, this implies a corresponding 39,204 claims and 11,373 people for Part C during the same period.

5.      In addition, I reviewed the spreadsheet to determine how many persons would have claims in excess of $1,600 if all their claims were added together.  The production reflects that,

during the period December 13, 2012-July 21, 2019, some 20,429 Part B beneficiaries (corresponding to 183,662 claims) would have such claims. Further, if each denied claim by a beneficiary is considered separately (*i.e.*, whether denied on the same day as other claims or not), some 51,129 claims by some 10,856 people are in excess of $1,600. If all claims denied on the same day are considered, some 79,463 claims by some 14,174 people are in excess of $1,600.

6. Attached as Exhibit 4 are true and correct copies of the Medicare Summary Notice, decision on redetermination, decision on reconsideration, ALJ decision, and MAC decision related to Claim #1733573292100.

I declare under penalty of perjury, except for statements made upon information and belief, that the statements made herein are true and correct and if called upon as a witness I would testify thereto. Executed this 12th day of May, 2020 at Menlo Park, California.

James Pistorino

# EXHIBIT 4



# Medicare Summary Notice
## for Part B (Medical Insurance)

The Official Summary of Your Medicare Claims from the Centers for Medicare & Medicaid Services

Page 1 of 6

DOUGLAS SARGENT
11 PEAR ORCHARD ROAD
PORTLAND, CT 06480-4606

## THIS IS NOT A BILL

**Notice for Douglas Sargent**

| | |
|---|---|
| Medicare Number: | XXX-XX-2493A |
| Date of This Notice: | December 29, 2017 |
| Claims Processed Between: | September 30 - December 29, 2017 |

## Your Deductible Status

Your deductible is what you must pay for most health services before Medicare begins to pay.

**Part B Deductible:** You have now met your **$183.00** deductible for 2017.

## Be Informed!

New Medicare cards are coming! Medicare will mail new Medicare cards with new numbers between April 2018 - April 2019. Medicare won't ask you for personal information or payment to send your new card.

## Your Claims & Costs This Period

| | |
|---|---|
| Did Medicare Approve All Items and Services? | NO |
| Number of Items or Services Medicare Denied | 3 |

See claims starting on page 3. Look for **NO** in the "Item/Service Approved?" column. See the last page for how to handle a denied claim.

| | |
|---|---|
| **Total You May Be Billed** | **$1,594.90** |

## Suppliers with Claims This Period

April 24, 2017 - February 13, 2018
**Minimed Distribution Corp**

¿Sabía que puede recibir este aviso y otro tipo de ayuda de Medicare en español? Llame y hable con un agente en español.
如果需要国语帮助，请致电联邦医疗保险，请先说 "agent"，然后说 "Mandarin".          1-800-MEDICARE (1-800-633-4227)

73630012494

Douglas Sargent

# Making the Most of Your Medicare

## How to Check This Notice

Do you recognize the name of each supplier? Check the dates. Did you make a purchase that day?

Did you get the items/services listed? Do they match those listed on your receipts and bills.

If you already paid the bill, did you pay the right amount? Check the maximum you may be billed for. If the claim was sent to your Medicare supplement insurance (Medigap) plan or other insurer. That plan may pay your share.

## How to Report Fraud

If you think a supplier or business is involved in fraud, call us at 1-800-MEDICARE (1-800-633-4227).

Some examples of fraud include offers for free medical services or billing you for Medicare services you didn't get. If we determine that your tip led to uncovering fraud, you may qualify for a reward.

**Only your physician can order medical equipment for you.**

## How to Get Help with Your Questions

**1-800-MEDICARE (1-800-633-4227)**
Ask for "medical supplies." Your customer-service code is 16013.

**TTY 1-877-486-2048** (for hearing impaired)

Contact your State Health Insurance Program (SHIP) for free, local health insurance counseling. Call **1-800-994-9422.**

## Your Messages from Medicare

**You don't need to do anything to get your new Medicare card.** Beware of anyone who contacts you about your new Medicare card or asks for your personal information.

**Medicare covers many preventive services, such as pap tests and  glaucoma tests.** Check your Medicare & You handbook or visit Medicare.gov to learn more about covered preventive services.

**Get a pneumococcal shot.** You may only need it once in a lifetime. Contact your health care provider about getting this shot. You pay nothing if your health care provider accepts Medicare assignment.

**To report a change of address, call Social Security at 1-800-772-1213.** TTY users should call 1-800-325-0778.

Douglas Sargent

# Your Claims for Part B (Medical Insurance)

Part B Medical Insurance helps pay for durable medical equipment and other health care services.

## Definitions of Columns

**Item/Service Approved?:** This column tells you if Medicare covered the item or service.

**Amount Supplier Charged:** This is your supplier's fee for this item or service.

**Medicare-Approved Amount:** This is the amount a supplier can be paid for a Medicare item or service. It may be less than the actual amount the supplier charged. Your supplier has agreed to accept this

amount as full payment for covered items or services. Medicare usually pays 80% of the Medicare-approved amount.

**Amount Medicare Paid:** This is the amount Medicare paid the supplier. This is usually 80% of the Medicare-approved amount.

**Maximum You May Be Billed:** This is the total amount the supplier is allowed to bill you and can include a deductible, coinsurance, and other charges not covered. If you have Medicare Supplement Insurance (Medigap policy) or other insurance, it may pay all or part of this amount.

**April 24, 2017**
**Minimed Distribution Corp. (818) 576-4770**
13000 Devonshire St. Northridge, CA 91325-1219
Ordered By Christine M. Signore

| Quantity, Item/Service Provided & Billing Code | Item/ Service Approved? | Amount Supplier Charged | Medicare- Approved Amount | Amount Medicare Paid | Maximum You May Be Billed | See Notes Below |
|---|---|---|---|---|---|---|
| 1 External ambulatory infusion pump, insulin (E0784-RRKJKX) Rental (dme) | Yes | $549.50 | $313.67 | $245.92 | **$62.73** | A |
| **Total for Claim #17324763447000** | | $549.50 | $313.67 | $245.92 | **$62.73** | B,C |

Continued →

## Notes for Claims Above

**A** Payment is reduced by 25% beginning the 4th month of rental.

**B** This information is being sent to ANTHEM CT. Send any questions regarding your benefits to them.

**C** After your deductible and coinsurance were applied, the amount Medicare paid was reduced due to Federal, State and local rules.

73630012494

**Douglas Sargent**                                    **THIS IS NOT A BILL** | Page 4 of 6

**May 24, 2017**
**Minimed Distribution Corp. (818)576-4770**
**18000 Devonshire St. Northridge, CA 91325-1219**
**Ordered by Christine M Signore**

| Quantity, Item/Service Provided & Billing Code | Item/ Service Approved? | Amount Supplier Charged | Medicare-Approved Amount | Amount Medicare Paid | Maximum You May Be Billed | See Notes Below |
|---|---|---|---|---|---|---|
| 1 External ambulatory infusion pump, insulin (E0784-RRKJKX) Rental (dme) | Yes | $549.50 | $313.67 | $245.92 | **$62.73** | D |
| **Total for Claim #17324763448000** | | $549.50 | $313.67 | $245.92 | **$62.73** | E,F |

**August 24, 2017**
**Minimed Distribution Corp. (818)576-4770**
**18000 Devonshire St. Northridge, CA 91325-1219**
**Ordered by Christine M Signore**

| Quantity, Item/Service Provided & Billing Code | Item/ Service Approved? | Amount Supplier Charged | Medicare-Approved Amount | Amount Medicare Paid | Maximum You May Be Billed | See Notes Below |
|---|---|---|---|---|---|---|
| 1 External ambulatory infusion pump, insulin (E0784-RRKJKX) Rental (dme) | **NO** | $549.50 | $0.00 | $0.00 | **$0.00** | G,H |
| **Total for Claim #17354737703000** | | $549.50 | $0.00 | $0.00 | **$0.00** | |

Continued ➡

**Notes for Claims Above**

**D** Payment is reduced by 25% beginning the 4th month of rental.

**E** This information is being sent to ANTHEM CT. Send any questions regarding your benefits to them.

**F** After your deductible and coinsurance were applied, the amount Medicare paid was reduced due to Federal, State and local rules.

**G** Medicare won't cover this item without a new, revised or renewed certificate of medical necessity.

**H** You should not be billed for this service. You are only responsible for any deductible and coinsurance amounts listed in the "Maximum You May Be Billed" column.

73630012494

**Douglas Sargent**                                         **THIS IS NOT A BILL |** Page 5 of 6

**November 15, 2017 - February 13, 2018**
**Minimed Distribution Corp. (818)576-4770**
**18000 Devonshire St, Northridge, CA 91325-1219**
**Ordered by Christine M Signos**

| Quantity, Item/Service Provided & Billing Code | Item/ Service Approved? | Amount Supplier Charged | Medicare- Approved Amount | Amount Medicare Paid | Maximum You May Be Billed | See Notes Below |
|---|---|---|---|---|---|---|
| **November 15, 2017** | | | | | | |
| 90 Sensor; invasive (e.g., subcutaneous), disposable, for use with interstitial continuous glucose moni (A9276-GX) Voluntary liability notice | NO | $1,419.00 | $0.00 | $0.00 | $1,419.00 | I |
| 50 Supplies for external insulin infusion pump, syringe type cartridge, sterile, each (A4225) | NO | 195.00 | 0.00 | 0.00 | 0.00 | J,K |
| **November 15, 2017 - February 13, 2018** | | | | | | |
| 13 Supplies for maintenance of insulin infusion catheter, per week (A4224) | Yes | 695.00 | 252.20 | 197.72 | 50.44 | |
| **Total for Claim #17335732921000** | | $2,309.00 | $252.20 | $197.72 | $1,469.44 | L,M |

**Notes for Claims Above**

**I**   Medicare does not pay for this item or service.

**J**   The information provided does not support the need for this many services or items within this period of time.

**K**   You should not be billed for this service. You are only responsible for any deductible and coinsurance amounts listed in the "Maximum You May Be Billed" column.

**L**   This information is being sent to ANTHEM CT. Send any questions regarding your benefits to them.

**M**  After your deductible and coinsurance were applied, the amount Medicare paid was reduced due to Federal, State and local rules.

73630012494

Douglas Sargent                                    **THIS IS NOT A BILL** | Page 6 of 6

# How to Handle Denied Claims or File an Appeal

## Get More Details

If a claim was denied, call or write the supplier and ask for an itemized statement for any claim. Make sure they sent in the right information. If they didn't, ask the supplier to contact our claims office to correct the error. You can ask the supplier for an itemized statement for any item or claim.

Call 1-800-MEDICARE (1-800-633-4227) for more information about a coverage or payment decision on this notice, including laws or policies used to make the decision.

## If You Disagree with a Coverage Decision, Payment Decision, or Payment Amount on this Notice, You Can Appeal

**Appeals must be filed in writing.** Use the form to the right. Our claims office must receive your appeal within 120 days from the date you get this notice.

We must receive your appeal by:

| May 3, 2018 |

## If You Need Help Filing Your Appeal

**Contact us:** Call 1-800-MEDICARE or your State Health Insurance Program (see page 2) for help before you file your written appeal, including help appointing a representative.

**Call your supplier:** Ask your supplier for any information that may help you.

**Ask a friend to help:** You can appoint someone, such as a family member or friend, to be your representative in the appeals process.

## Find Out More About Appeals

For more information about appeals, read your "Medicare & You" handbook or visit us online at www.medicare.gov/appeals.

## File an Appeal in Writing

Follow these steps:

1. Circle the item(s) or claim(s) you disagree with on this notice.

2. Explain in writing why you disagree with the decision. Include your explanation on this notice or, if you need more space, attach a separate page to this notice.

3. Fill in all of the following:

   Your or your representative's full name (form)

   _____

   Your or your representative's signature

   _____

   Your telephone number

   [ ][ ][ ] [ ][ ][ ] [ ][ ][ ][ ]

   Your complete Medicare number

   _____

4. Include any other information you have about your appeal. You can ask your supplier for any information that will help you.

5. Write your Medicare number on all documents that you send.

6. Make copies of this notice and all supporting documents for your records.

7. Mail this notice and all supporting documents to the following address:

   **Medicare Claims Office**
   **c/o Noridian Healthcare Solutions, LLC**
   **Attn: Appeals Dept**
   **P. O. Box 6780**
   **Fargo, ND 58108-6780**

**noridian**
Healthcare Solutions

Noridian Healthcare Solutions, LLC - JA
P.O. Box 6780
Fargo, ND 58108-6780

*Medicare*

201804183315

1 OF 4 F

Return Service Requested

2241 0.9555 MB 0.421        MIXED AADC 060

Douglas B. Sargent
11 PEAR ORCHARD RD                              70
PORTLAND, CT 06480-4606

ENV 2241

DME MAC Jurisdiction A
P.O. Box 6780
Fargo, ND 58108-6780
Beneficiary Services:
1-800-MEDICARE
(1-800-633-4227)
1-877-486-2048 (TDD)
Provider Services:
1-866-419-9458

## Medicare Appeal Decision

April 17, 2018

Medicare Number:        XXX-XX-2493A        Document Control Number:        18092010600
Beneficiary:            Douglas B. Sargent
Date(s) of Service:     November 15, 2017
Claim Control Number(s): 17335732921000

Dear Mr. Douglas B. Sargent:

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for A9276-GX (Sensor and Invasive (e.g. Subcutaneous), Disposable, For Use With Interstitial Continuous Glucose Monitoring System, One Unit = 1 Day Supply).

The appeal decision is unfavorable. Our decision is that your claim is not covered by Medicare.

More information on the decision is provided below. If you disagree with this decision, you may request a reconsideration to the Qualified Independent Contractor (QIC), C2C Innovative Solutions, Inc. You must file your appeal, in writing, within 180 days of receiving this letter. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to request a reconsideration, see the section of this letter entitled, "Important Information About Your Appeal Rights."

A copy of this letter was also sent to Minimed Distribution Corp.

Noridian Healthcare Solutions (Noridian) was contracted by Medicare to review your appeal.

**Summary of the Facts**



- Provider: Minimed Distribution Corp.
- Date(s) of Service: November 15, 2017
- Type of Service: Diabetic Supplies
- A claim was submitted for 90 units of A9276-GX.
- An initial determination on this claim was made on December 29, 2017.
- The claim denied due to the following:
  Medicare does not pay for this item or service.
- On April 2, 2018 we received a request for a redetermination.
- How to Handle Denied Claims or File an Appeal, appeal letter and summary notice were submitted with the request.

## Decision

We have found that the above mentioned claim is not covered by Medicare. We have also found that the beneficiary is responsible for payment of this service(s).

## Explanation of the Decision

We reviewed the submitted documentation and information in your file. No payment will be made. Policy Article A52464 states, "CGM devices covered by Medicare under the DME benefit are defined in CMS Ruling 1682R as therapeutic CGM. CGM devices that do not meet the definition of a therapeutic CGM as defined in CMS Ruling 1682R will be denied as non-covered (no benefit)."

## Who is Responsible for the Bill?

The service(s) in question denied as patient responsibility. Therefore, you are responsible for the denied charges.

## What to Include in Your Request for an Independent Appeal

Special Note to Medicare Providers and Suppliers Only:
Any additional evidence should be submitted with the request for reconsideration. All evidence must be presented before the Reconsideration is issued. If all evidence is not submitted prior to the issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or further appeal unless you can demonstrate good cause for withholding the evidence from the Qualified Independent Contractor.
NOTE: You do not need to resubmit documentation that was submitted as part of the redetermination. This information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Sincerely,

Donna C.
Noridian Healthcare Solutions, LLC
A Medicare Contractor

CC: Minimed Distribution Corp.
Encl:





**Medicare Appeal Number:**
**1-7532374422**

July 05, 2018

**D. B. SARGENT**
**11 PEAR ORCHARD ROAD**
**PORTLANT, CT 06480**

**Medicare Reconsideration Decision**

RE:
Beneficiary: D. Sargent
Med ID#: *****2493A
Appellant: D. B. Sargent

**Contact Information**

If you have questions, write or call:

***C2C Innovative Solutions, Inc.***
QIC DME
P.O. Box 44163
Jacksonville, FL 32231-4163

*Telephone:*
904-224-7433

Who we are:
We are a Qualified Independent Contractor (QIC). Medicare has contracted with us to review your file and make an independent decision.

Dear D. Sargent:

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown under the Appeal Details section.

The appeal decision is UNFAVORABLE. Our decision is that Medicare will make no additional payment. More information on the decision is provided on the next pages. You are not required to take any action.

If you disagree with the decision, you may appeal to an Administrative Law Judge (ALJ). You must file your appeal, in writing, within 60 days of receipt of this letter. For more information on how to appeal, see the page entitled "Important Information About Your Appeal Rights." The amount still in dispute is estimated to be equal to or over $160.00. However, the ALJ will determine if your appeal case meets the $160.00 amount in controversy requirement for an ALJ hearing.



## Summary of Facts

The service(s) shown below were submitted for payment to Noridian Healthcare Solutions (Noridian). The explanation of the decision was released in a Medicare Summary Notice to the beneficiary and a Remittance Advice to the provider of service. A request for a redetermination appeal was submitted to the Medicare Administrative Contractor (MAC). On April 17, 2018, Noridian Healthcare Solutions (Noridian) completed the appeal and sent notice of the decision to the appropriate parties. On May 17, 2018, a Qualified Independent Contractor (QIC) reconsideration request was received for the services referenced in the "Appeal Details" section. Information and records reviewed by the QIC in this case included:

- Redetermination Letter
- Reconsideration Request
- Medicare Summary Notice (MSN)

## Decision

The decision on your appeal is shown below:

| Medicare Coverage | Claim Number (ICN) | Procedure /Date of Service |
|---|---|---|
| Non-covered | 17335732921000 | A9276: Disposable Sensor, Cgm Sys - (11/15/17) |

We have determined that D. Sargent is responsible for the denied charges.

## Explanation of the Decision

Claim Number: 17335732921000

For any item or service to be covered by Medicare, it must fall into a defined Medicare benefit category, it must not be statutorily excluded, it must be reasonable and necessary under §1862(a)(1)(A) of the Social Security Act (SSA), and it must meet other Medicare program requirements for payment. Sections 414.200 through 414.232 of 42 Code of Federal Regulations (CFR) cover payment for durable medical equipment and prosthetic and orthotic devices. The Medicare National Coverage Determinations (NCD) Manual, Publication 100-03, includes NCDs that pertain to certain Durable Medical Equipment, Prosthetics, Orthotics, and Supplies (DMEPOS) items. The Medicare Claims Processing Manual, Publication 100-04, Chapter 20, instructs on billing and payment for DMEPOS. The Medicare Program Integrity Manual (PIM), Publication 100-08, Chapter 5, provides guidance on medical review. The manuals are based upon the above cited law and regulations. DME Medicare Administrative Contractors (MACs) publish Local Coverage Determinations (LCDs) and related Policy Articles. The LCDs address the criteria for "reasonable and necessary," based on Social Security Act §1862(a)(1)(A). The articles encompass the non-medical necessity coverage and payment rules.

| Medicare Appeal Number: |
| --- |
| 1-7532374422 |



## Appeal Details

| Beneficiary | D. Sargent | | |
| --- | --- | --- | --- |
| Provider | Minimed Distribution Corp | | |
| Claim Number | Date of Service | Procedure | Medicare QIC Decision |
| 17335732921000 | 11/15/17 | A9276: Disposable Sensor, Cgm Sys | Unfavorable |

THIS IS NOT A BILL – Keep this letter or a copy for your records.

C2C Innovative Solutions, Inc.
P.O. Box 44163, Jacksonville, Florida 32231-4163
www.C2Cinc.com



Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Seattle Field Office
700 Stewart Street, Suite 11101
Seattle, WA 98101
206-539-5300 (Main)
206-539-5374 (ALJ Booker Team)
206-553-0122 (Fax)
844-556-2949 (Toll Free)

October 31, 2018

D. SARGENT
11 PEAR ORCHARD RD
PORTLAND, CT 06480-4606

## NOTICE OF DECISION

Appellant:               D. SARGENT
OMHA Appeal Number:       1-7725439646

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

### What if I disagree with the decision?

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

### How much time do I have to file an appeal?

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

OMHA-1051                    Page 1 of 4

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

## How do I file an appeal?

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

> Department of Health and Human Services
> Departmental Appeals Board
> Medicare Appeals Council, MS 6127
> Cohen Building Room G-644
> 330 Independence Ave., S.W.
> Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

OMHA-1051                          Page 2 of 4

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

(1) Clicking **Register** on the MOD E-File home page;
(2) Entering the information requested on the "Register New Account" form; and
(3) Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

(1) Logging into MOD E-File;
(2) Clicking the **File New Appeal** menu button on the top right of the screen;
(3) Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
(4) Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal – Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

(1) Request for Review;
(2) Appointment of Representative form (OMB Form 0938-0950);
(3) Copy of Administrative Law Judge or attorney adjudicator decision;
(4) Memorandum or brief or other written statement in support of your appeal; and
(5) Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204**. You must provide the information listed in the bullet points above and a statement that

OMHA-1051                              Page 3 of 4

you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited if (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

## How will the Medicare Appeals Council respond to my appeal?

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

## Questions?

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

MINIMED DISTRIBUTION CORP.
18000 DEVONSHIRE ST
ATTN: LEGAL DEPT.
NORTHRIDGE, CA 91325

C2C Innovative Solutions, Inc.
DME QIC Appeals–ALJ
P.O. Box 44006
Jacksonville, FL 32231-4006

Enclosures:

OMHA-152, Decision
OMHA-001, Notice of Nondiscrimination
OMHA-156, Exhibit List
DAB-101, Request for Review



**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Seattle, Washington**

| | | | |
|---|---|---|---|
| Appeal of: | **D. SARGENT** | OMHA Appeal No.: | **1-7725439646** |
| Beneficiary: | **D. SARGENT** | Medicare: | **Part B** |
| Medicare No.: | **\*\*\*\*\*2493A** | Before: | **Lewis T. Booker, Jr.**<br>U.S. Administrative Law Judge |

## DECISION

This case is before me on a timely request for review submitted by Mr. Sargent (Beneficiary/Appellant) for Supplementary Medical Insurance (Medicare Part B) coverage. It concerns disposable sensors for a continuous glucose monitoring device. I have carefully considered the applicable law, regulations, written guidelines, documentary evidence in the record, and testimony and argument from a hearing. For the reasons set forth below, I enter an **UNFAVORABLE** decision against the Appellant.

## Procedural History

The Beneficiary received 90 units of continuous glucose monitoring (CGM) disposable sensors (A9276) from Minimed Distribution Corp. ("Provider"), date of service November 15, 2017.* Thereafter, Mr. Sargent submitted the claim to Medicare for direct reimbursement of the disposable sensors purchased from the provider. (Exh. 1, p. 26). The claim was denied initially and on redetermination. (Exh. 2, pp. 19-20).

The Appellant appealed the redetermination decision, and on July 5, 2018, C2C Innovative Solutions, Inc., a Qualified Independent Contractor (QIC), issued an unfavorable decision because the CGM disposable sensors under the durable medical equipment (DME) benefit are excluded from coverage as precautionary items. (Exh. 1, pp. 1-5).

The Appellant filed a timely appeal and request for an Administrative Law Judge ("ALJ") Hearing, pursuant to 42 C.F.R. § 405.1002(a) on July 27, 2018. (Exh. 3, p. 1). The ALJ provided due notice to the Appellant and held a hearing by telephone conference on October 25, 2018. The Appellant testified and waived his right to legal counsel. At my request, the Appellant

---

* This is the date of service shown on the billing documents and on the redetermination and reconsideration. A Notice of Hearing generated through our system inadvertently showed the entire coverage period (through February 13, 2018) as the date of service; the date of service listed in this decision and on the redetermination and reconsideration is the correct date of service.

submitted evidence subsequent to the hearing, admitted under Exhibit 5. I admitted Exhibits 1 through 5 without objection and considered them in reaching my decision.

## Issue

Whether the appellant is entitled to reimbursement of the 90 units of CGM disposable sensors (A9276), date of service November 15, 2017, pursuant to the applicable Medicare laws, regulations, and policies.

## Findings of Fact

These facts are established by a preponderance of the evidence:

The Beneficiary, a 72-year-old man, presented to a medical office appointment on March 9, 2017 with a history of diabetes type 1 diagnosed in 1987. (Exh. 2, p. 25). He has an undetectable C-peptide and was started on an animus pump in April 2010. (*Id.*) His diabetes condition is classified as brittle, thus prompting a prescription for a Medtronic pump and Enlite Glucose Sensor. (*Id.*) Every two weeks the Beneficiary sends download information from the pump to his physician. (*Id.*) The Beneficiary struggles with hypoglycemic unawareness thus necessitating multiple 911 emergency calls. (*Id.*)  The local emergency services responded over 2 dozen times over the course of about a decade.  (Exh. 2, p. 1).

On June 26, 2017, the Beneficiary again presented to a medical office visit with Dr. Signore, his endocrinologist, reporting a 911 call due to hypoglycemia since the previous visit. (Exh. 2, p. 30). His sensor was not reading low but he was unresponsive. (*Id.*) His physician advised a snack at 6 p.m., adjusted his alerts, and advised a new Medtronic 670 G monitor to help with the variability. (Exh. 2, p. 33). As of September 27, 2017, the Beneficiary's diabetes remained brittle and multiple adjustments had been made to his insulin treatment regimen on the basis of therapeutic CGM testing. (Exh. 2, p. 35). He had significant improvement in his diabetes control since the addition of continuous glucose sensor. (Exh. 2, p. 40).

Dr. Signore ordered an insulin pump and testing supplies with testing blood glucose levels recommended five times per day. (Exh. 2, p. 118). An Enlite Glucose Sensor labeled for every six day change was also prescribed. (*Id*). A Certificate of Medical Necessity (CMN) for pump and diabetes supplies, dated May 12, 2016, listed an A1C level of 7.6% on March 30, 2016. (Exh. 2, p. 119).  Dr. Signore and Mr. Sargent were both aware that the Medtronic device was not covered by Medicare.  (Exh. 2, p. 40).

The Appellant has been insulin dependent for 30 years and even small changes in his lifestyle can drastically change his glucose levels, making them unpredictable. Many hypoglycemic episodes had occurred late at night while he was asleep. The CGM allowed him to better regulate his daily insulin regimen, with lower chances of a hypoglycemic attack. There were times when his hypoglycemic attacks were so bad that he became violent, so violent that at times the medical first responders had to summon the police.  (ALJ Hearing).

The Appellant as of the date of service at issue was using a CGM with three components: Medtronic Minimed Paradigm MMT-722 Insulin Pump; Medtronic Enlite MMT-7725NA Transmitter and Medtronic Enlite MMT-7008A Sensor. (Exh. 5, p. 1). The Appellant clarified

that only the sensors associated with the CGM, date of service November 15, 2017, were at issue in this appeal. (ALJ Hearing). Mr. Sargent submitted, with his response to the Notice of Hearing, a two-week sample of his glucose levels. The readings show wide fluctuations: for example, his intra-day high on September 21 was over 400 milligrams per deciliter, while the low was around 115 (it appears; the graph did not carry over well from the device to the e-mail facsimile transmission). (Exh. 4, p. 36).

Mr. Sargent's diabetic control regimen for the last several years has involved increasing his sugar consumption to avoid hypoglycemic incidents; that regimen has resulted, however, in his A1C (an estimate of a longer-term manifestation of diabetes) has increased, and as he rightly notes, that increase places him at increased risk of damage to his organs. (Testimony; exh. 1, p. 24; exh. 2, p. 27).

## Legal Framework

### I. ALJ Review Authority

The ALJ within the Office of Medicare Hearing and Appeals performs a *de novo* review of those cases where an individual or organization is dissatisfied with the reconsideration of an initial determination, provided that there is a sufficient amount in controversy and that the appellant files the appeal in a timely fashion. 42 U.S.C. § 1395ff(b)(1)(A); *see also* 42 C.F.R. § 405.1000 and 405.1002. *See generally* 70 Fed. Reg. 36386, 36387 (June 23, 2005)(delegation of Secretary's power specifically to OMHA to conduct reviews). The ALJ will consider all issues brought out in the initial, reconsidered, or revised determination that were not decided entirely in the appellant's favor. *See e.g.*, 42 C.F.R. § 405.1032.

### II. Principles of Law

#### *A. Statutes and Regulations*

The Medicare Part B program entitles a beneficiary to have payment made to him or on his behalf for medical and other health services. Social Security Act § 1832(a)(1), 42 U.S.C. § 1395k(a)(1), 42 C.F.R. § 410.3(a)(1). Coverage of medical and other health services is qualified by the overarching principles of sections 1862(a) and 1833(e) of the Act, 42 U.S.C. §§ 1395y(a), 1395*l*(e). Section 1862(a) of the Act limits Medicare payments to items or services that are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member," notwithstanding any other provision of Title XVIII of the Act. 42 U.S.C. § 1395y(a). *See also* 42 C.F.R. § 411.15(k)(1). Section 1833(e) of the Act requires a claim for payment under Medicare Part B to be supported by sufficient information and documentation. 42 U.S.C. § 1395*l*(e). *See also* 42 C.F.R. § 424.5(a)(6). Statutes and regulations are binding. 42 C.F.R. § 405.1063.

#### *B. Program Guidance*

The Medicare contractor for the region including Connecticut has issued a Local Coverage Determination, L33882, and an accompanying Policy Article, A52464, effective for the date of service at issue. The Policy Article provides in pertinent part that "[c]ontinuous glucose monitors (A9276-A9278) are considered precautionary and therefore non-covered under

the DME benefit." This program guidance is not binding, but it is entitled to substantial deference.  42 C.F.R. § 405.1062.

The Centers for Medicare and Medicaid Services (CMS) also issued a ruling on January 12, 2017, CMS-1682-R, articulating CMS policy concerning the classification of CGM monitoring systems as DME equipment under Part B of the Medicare program. Coverage is provided for a therapeutic CGM if: it has been approved by the FDA for use in place of a blood glucose monitor; it is generally not useful to the individual in the absence of an illness or injury; it is appropriate for home use; and it can withstand repeated use with an expected lifetime of a least 3 years.  This CMS ruling is binding.  42 C.F.R. § 405.1063.

## Analysis

In this case, the record is clear that Mr. Sargent is an insulin-dependent brittle diabetic who suffers from hypoglycemic unawareness that has necessitated multiple 911 emergency calls. In order to alert the Beneficiary to hypoglycemic unawareness episodes, his physician ordered Medtronic CGM testing. Since using this testing device he has experienced significant improvement in his diabetes control. The Appellant contends that the CGM allows him to detect glucose trends and adjust his diet or insulin in direct response to the trends, thus resulting in better diabetic control.

CMS Ruling No. CMS-1682-R allows Medicare coverage for therapeutic CGM systems only if the CGM system meets the definition of DME. For CGM products that are used in the home and approved by the FDA for use in place of a blood glucose monitor for making diabetes treatment decisions, coverage is provided because they are used directly in making diabetes treatment decisions as opposed to alerting the patient to use a blood glucose monitor. Policy Article A52464 is also clear that CGM devices (A9276-A9278) that do not inform treatment decisions are considered precautionary and, therefore, non-covered under Medicare (*i.e.,* excluded from coverage).

Mr. Sargent is using the Medtronic CGM device to monitor his glucose level.  He is not making treatment decisions based on the device's alerts, though, as his blood must still be tested by other means. The physician treating his diabetes, Dr. Signore, acknowledges as much, and Mr. Sargent has not furnished any evidence that, as of the date of service, the Medtronic device had been approved to inform treatment decisions. CMS Ruling 1682-R thus does not support coverage of the appellant's CGM system since the CGM has not been approved by the FDA for use in place of a blood glucose monitor for making diabetes treatment decisions. Although Mr. Sargent significantly benefits from the use of the CGM system and it likely has provided critical lifesaving information, the Medtronic CGM sensor furnished to the appellant does not meet the definition of DME under CMS-1682-R. Policy Article A52464 also explicitly states CGM devices are precautionary. Given the CMS ruling and the Policy Article, Medicare coverage cannot be provided for the sensors at issue.

The CMS ruling is binding.  42 C.F.R. § 405.1063.  The Policy Article is not binding, but it is persuasive authority and represents a considered judgment about the general necessity and reasonableness of a particular device.  This particular case might be appropriate for a departure from the applicable policy, but that is beyond the authority of an ALJ to do (although I note that

OMHA Appeal No. 1-7725439646

at least one ALJ has done so in one of Mr. Sargent's appeals), especially when the basis for excluding coverage of the Medtronic CGM is supported by the FDA.  42 C.F.R. § 405.1062.

Accordingly, I find that the Appellant is not entitled to reimbursement of the CGM sensors (A9276) received on date of service November 15, 2017.  Since the service at issue is denied because it is not a Medicare benefit, the Appellant remains financially responsible for the cost of the non-covered items.

## Conclusions of Law

The CGM (A9276), date of service November 15, 2017, is excluded from coverage by Medicare because the CGM device is considered precautionary equipment and is not an FDA approved CGM system.   Mr. Sargent is financially responsible for the cost of the sensors.

## Order

The Medicare contractor is directed to process this claim in accordance with this decision.

## SO ORDERED

Dated:  31 OCT 2018

Lewis T. Booker, Jr.
U.S. Administrative Law Judge



**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Seattle, Washington**

| | | | |
|---|---|---|---|
| Appeal of: | **D. SARGENT** | OMHA Appeal No.: | **1-7725439646** |
| Beneficiary: | **D. SARGENT** | Medicare: | **Part B** |
| Medicare No.: | *****2493A | Before: | Lewis T. Booker, Jr.<br>U.S. Administrative Law Judge |

**EXHIBIT LIST**

| EXHIBIT NUMBER | DESCRIPTION | PAGE NUMBERS |
|---|---|---|
| 1 | Initial, Redetermination and Reconsideration Procedural Documents | 1-215 |
| 2 | Medical Records/Evidence Received by CMS Contractors | 1-695 |
| 3 | Request for ALJ Hearing | 1-23 |
| 4 | OMHA Proceedings | 1-38 |
| 5 | Evidence received after the Request for ALJ Hearing | 1 |

Dated: *10/31/2018*

RECEIVED MAY 1 5 2019

18-01



**DEPARTMENT OF HEALTH & HUMAN SERVICES**   Office of the Secretary

MAY 10 2019

Departmental Appeals Board, MS 6127
Medicare Appeals Council
330 Independence Avenue
Cohen Building, Room G-644
Washington, DC 20201
(202)565-0100/Toll Free:1-866-365-8204

Docket Number: M-19-685
ALJ Appeal Number(s): 1-7725439646

Douglas Sargent
11 Pear Orchard Rd.
Portland, CT 06480

## NOTICE OF DECISION OF MEDICARE APPEALS COUNCIL

### What This Notice Means

Enclosed is a copy of the decision of the Medicare Appeals Council. If you have any
questions, you may contact the Centers for Medicare & Medicaid Services regional office
or the local Medicare contractor.

### Your Right to Court Review

If you desire court review of the Council's decision and the amount in controversy is
$1,630 or more, you may commence a civil action by filing a complaint in the United
States District Court for the judicial district in which you reside or have your principal
place of business. *See* § 1869(b) of the Social Security Act, 42 U.S.C. § 1395ff(b). The
complaint must be filed within sixty days after the date this letter is received. 42 C.F.R. §
405.1130. It will be presumed that this letter is received within five days after the date
shown above unless a reasonable showing to the contrary is made. 42 C.F.R. §
405.1136(c)(2).

If you cannot file your complaint within sixty days, you may ask the Council to extend the
time in which you may begin a civil action. However, the Council will only extend the
time if you provide a good reason for not meeting the deadline. Your reason must be set
forth clearly in your request. 42 C.F.R. § 405.1134.

2

If a civil action is commenced, the complaint should name the Secretary of Health and Human Services as the defendant and should include the Council's docket number and ALJ appeal number shown at the top of this notice. 42 C.F.R. § 405.1136(d). The Secretary must be served by sending a copy of the summons and complaint by registered or certified mail to the General Counsel, Department of Health and Human Services, 200 Independence Avenue, S.W., Washington, D.C. 20201. In addition, you must serve the United States Attorney for the district in which you file your complaint and the Attorney General of the United States. *See* rules 4(c) and (i) of the Federal Rules of Civil Procedure and 45 C.F.R. § 4.1.

This notice and enclosed order were mailed on ___MAY 10 2019_____

Enclosure

cc:   Debra Parrish, Esq.
      Minimed Distribution Corp.
      Q2A AdQIC Records Management

DEPARTMENT OF HEALTH AND HUMAN SERVICES
DEPARTMENTAL APPEALS BOARD
**Medicare Appeals Council**
**Docket No. M-19-685**

D.S., Appellant
ALJ Appeal No. 1-7725439646

## DECISION

The Administrative Law Judge (ALJ) issued a decision dated October 31, 2018, which concerned sensors furnished on November 15, 2017, for the appellant-beneficiary's (beneficiary's) continuous glucose monitoring (CGM) system. The ALJ determined that these CGM system supplies were not covered by Medicare, and that the beneficiary was financially responsible for the non-covered charges.

The beneficiary, through an appointed representative, has filed a request for review, seeking Council review of the ALJ's action. The Council enters the request for review into the record as Exhibit (Exh.) MAC-1. The appointed representative submitted a CD to the Council, which contains several PDF documents. While some of these documents appear to be copies of documents that are already in the record, the representative did not assert they relate to a new issue or provide good cause for their admission into the record at this stage of review. To the extent these PDF documents are in the record already, the Council need not consider admitting them because they are duplicative. *See* 42 C.F.R. §§ 405.1122(a), (c). Therefore, we exclude this CD with PDF documents from evidence, and mark the CD for identification purposes as Exh. MAC-2 (Excluded).

The Council reviews the ALJ's action *de novo*. 42 C.F.R. §§ 405.1100, 405.1108. We have carefully considered the request for review, as well as the administrative record. As set forth below, we agree with the ALJ's rationale for non-coverage. Accordingly, we adopt the ALJ's decision.

## AUTHORITIES

Medicare is a defined benefits program. Section 1832(a)(1) of the Social Security Act (Act) provides that benefits under Medicare Part B include "medical and other health services." Section 1861(s)(6) of the Act defines "medical and other health services" as including durable medical equipment (DME). Section 1861(n) of the Act lists certain items that are classified as DME. However, by its own terms, section 1861(n) is not an

exhaustive list of those items that qualify as DME. Thus, the fact that an item is not listed in section 1861(n) does not necessarily mean that it is not DME.

The regulations define DME as equipment that:

- can withstand repeated use;
- has an expected life of at least three years;
- *is primarily and customarily used to serve a medical purpose*;
- generally is not useful to an individual in the absence of an illness or injury; and
- is appropriate for use in the home.

42 C.F.R. § 414.202 (emphasis added). A device or system which does not comply with all the terms of this definition does not fall within the statutory DME benefit of the Medicare program.

To receive Medicare coverage, a device must first meet the definition of DME, and must also be medically "reasonable and necessary" for the particular beneficiary and in fact be used in the beneficiary's home. Medicare Benefit Policy Manual (MBPM), CMS Pub. 100-02, Ch. 15, § 110. A claim for a device or system which meets the definition of DME would thus only be covered by Medicare when used by a beneficiary for medical purposes.

The CMS Administrator from time to time issues Rulings that serve as precedent final opinions and official statements of agency policy and interpretation. On January 12, 2017, prior to the date of service at issue here, the CMS Administrator issued a Ruling addressing whether any CGM systems constituted DME. The Ruling[1] states:

> The FDA recently approved expanding the indications of one CGM product to include replacement of blood glucose monitors for diabetes treatment decisions. This Ruling addresses whether 'therapeutic' CGMs, which provide information that can be used to make diabetes treatment decisions meet the definition of DME. For the purpose of this Ruling, all CGMs that are approved by the FDA for use as adjunctive devices to complement, not replace, information obtained from blood glucose monitors in making diabetes treatment decisions are referred to as 'non-therapeutic' CGMs.

CMS Ruling 1682-R at 7. The 2017 Ruling further states that such "therapeutic" CGM systems will be considered DME if the *CGM system is* "approved by the FDA *for use in place of a blood monitor for making diabetes treatment decisions*[;]" generally is not useful to the individual in the absence of an illness or injury; is appropriate for use in the

---

[1] https://www.cms.gov/Regulations-and-Guidance/Guidance/Rulings/Downloads/CMS1682R.pdf (last visited May 6, 2019).

home; and includes a durable component. CMS Ruling 1682-R at 13-14 (emphasis added). In all other cases in which a CGM does not replace a blood glucose monitor for making diabetes treatment decisions, a CGM is not considered DME.

CMS issues national coverage determinations (NCDs) to specifically address certain items and services. "An NCD is a determination by the Secretary of whether a particular item or service is covered nationally under Medicare." 42 C.F.R. § 405.1060(a). "NCDs generally outline the conditions for which an item or service is considered to be covered (or not covered) under § 1862(a)(1) of the Act or other applicable provisions of the Act." Medicare Program Integrity Manual (MPIM), CMS Pub. 100-08, Ch. 13, § 13.1.1. NCDs are binding on all contractors, ALJs, and the Council. 42 C.F.R. § 405.1060(a)(4).

No NCD addresses whether CGM devices or systems qualify as DME or are covered under Medicare. By contrast, the Act has explicitly included home blood glucose monitors as DME and a current NCD spells out the conditions and limitations under which such monitors and associated supplies may be covered. Act § 1861(n); Medicare NCD Manual, CMS Pub. 100-03, § 40.2 (NCD 40.2). CGM devices do not test or monitor blood glucose, but rather monitor interstitial fluid for glucose values, a critical distinction we discuss in more detail later. See CMS Ruling 1682-R at 6.

A Medicare administrative contractor may issue a local coverage determination (LCD) that "is a decision . . . whether to cover a particular item or service on a [contractor]-wide, intermediary wide or carrier-wide basis in accordance with Section 1862(a)(1)(A) of the [Act] (i.e., a determination as to whether the item or service is reasonable and necessary.)" MPIM, Ch. 13, § 13.1.3. LCDs speak only to whether and in which circumstances an item or service meets the coverage requirement of being medically reasonable and necessary for beneficiaries' conditions.[2] Information that is not related to reasonableness and necessity criteria, including whether an item falls within a benefit category or is governed by a statutory exclusion, is published through an associated policy article. Id. LCDs thus would not address whether a device or system falls within the Medicare definition of DME at all, as opposed to whether or when an item of DME is covered under Medicare for use by a beneficiary. ALJs and the Council are not bound by, but are required to give "substantial deference" to, applicable LCDs and other CMS program guidance including program memoranda and manual instructions. 42 C.F.R. § 405.1062(a).

---

[2] An LCD may list relevant HCPCS codes to identify products, supplies, and services, including items of DME, being addressed. The HCPCS was developed by CMS for processing, screening, identifying, and paying Medicare claims. 42 C.F.R. § 414.40. HCPCS is not a methodology or system for making coverage or payment determinations and the development of codes is independent of the coverage determination process. The mere existence of a code for an item or service does not constitute a determination regarding medical necessity, coverage or payment.

4

The relevant DME contractor published an LCD relating to glucose monitors applicable during the dates of service at issue: L33822 (Effective Jan. 12, 2017).[3] The LCD provides that home blood glucose monitors will be considered medically reasonable and necessary for a beneficiary only if the beneficiary has diabetes and is trained to use the home monitor. The LCD also specifies that payment for any glucose monitor will be denied as not medically reasonable and necessary if those two "basic coverage criteria" are not present.

The LCD refers to an associated policy article which contains non-medical necessity provisions applicable to glucose monitors. This policy article states:

> Effective for claims with dates of service on or after January 12, 2017, Medicare covers therapeutic CGM devices under the DME benefit. CGM devices covered by Medicare are defined in CMS Ruling 1682R as therapeutic CGM. CGM devices that do not meet the definition of a therapeutic CGM as defined in CMS Ruling 1682R will be denied as non-covered (no benefit).

Policy Article A52464 (Effective Jan. 12, 2017).

## BACKGROUND

1. The CGM at issue

In order to manage diabetes, individuals need to test their levels of blood glucose at varying intervals and determine what treatment in terms of diet and/or insulin is appropriate. For those who need to test frequently, home blood glucose monitors may "enable certain patients to better control their blood glucose levels by frequently checking and appropriately contacting their attending physician for advice and treatment." NCD 40.2. These meters use blood drops placed by the patient on specially treated reagent strips to measure color changes and report blood glucose levels. *Id*.

A CGM does not measure blood glucose at all; rather, it estimates, on a continuous basis, the level of glucose in "interstitial" fluid. A CGM has three basic components: a disposable sensor, placed under the skin, that generates an electrical signal in response to the amount of interstitial glucose present and converts that signal into a glucose measurement; a transmitter to which the sensor's information is relayed; and a receiver (or monitor) that is wirelessly connected to the transmitter and receives the interstitial glucose measurement from the transmitter and displays it to the user. If the glucose

---

[3] Active LCDs are available at https://www.cms.gov/medicare-coverage-database/overview-and-quick-search.aspx; retired LCDs are available at https://localcoverage.cms.gov/mcd_archive/ (both last visited May 6, 2019). Associated policy articles can be accessed from the same pages.

levels are high or low, depending on the brand/model, a user may be required to confirm those levels with a finger-stick before taking appropriate action.

Individuals who face daily challenges in managing glycemic levels and trying to avoid hypoglycemic and hyperglycemic episodes may benefit from the use of continuous glucose monitoring. Because continuous access to the blood is impractical, CGMs may provide such individuals with notice to test when levels appear problematic, as well as compiling data on glucose levels over time. However, until recently (as explained later in relation to the 2017 Ruling), treatment actions could not be based on CGM readings without direct blood testing.

### 2. The beneficiary's claim

The record reflects that the beneficiary has type 1 brittle diabetes with hypoglycemic unawareness. Exh. 2 at 35. The beneficiary submitted a claim for coverage of sensors for use with a Medtronic Minimed CGM system. Exh. 1 at 19-20; Exh. 5 at 1; Hearing CD. Initially and on redetermination, the Medicare contractor denied the beneficiary's claims. Exh. 1 at 19-20. On reconsideration, the Qualified Independent Contractor (QIC) agreed that the sensors at issue were not covered by Medicare. The QIC specified that the sensors were considered precautionary equipment, and, as such, they were excluded from the DME benefit. Exh. 1 at 1-4. The contractor and the QIC both found the beneficiary responsible for the non-covered charges. *Id.* at 3-4, 20.

### 3. The ALJ Decision and Request for Review

Following a hearing, the ALJ concluded that the sensors at issue were denied as excluded from Medicare coverage. Decision (Dec.) at 1, 4-5. In reaching this conclusion, the ALJ found that the beneficiary's Medtronic CGM system sensors did not meet the definition of DME under CMS Ruling 1682-R because this CGM had not been approved by the FDA for use in place of a blood glucose monitor for making diabetes treatment decisions. *Id.* at 4. The ALJ further found that the beneficiary had not furnished any evidence that, as of the date of service, the beneficiary's CGM system had been approved to inform treatment decisions. *Id.* The ALJ also concluded that the beneficiary was financially responsible for the non-covered charges because the service at issue was denied as not a Medicare benefit. *Id.* at 5.

Before the Council, the beneficiary's appointed representative first contends that the ALJ failed to consider the District Court decisions in *Whitcomb v. Hargan*, *Bloom v. Azar*, and *Lewis v. Azar*. The representative contends that these decisions are directly on point, and that they deem CGM to be DME under the relevant statute and regulations regardless of whether the CGM replaces a finger stick. The representative also contends that CMS has paid for the same CGM as the beneficiary used for medically indistinguishable Medicare beneficiaries. Second, the appointed representative asserts that A CGM is DME because

it is uniformly acknowledged as a medical device, it is the primary means by which beneficiaries with diabetes and unawareness control their diabetes, it provides medical information no other medical device provides, and neither adjunctive use nor confirmatory testing with a finger stick negate a CGM's medical purpose. Finally, the appointed representative asserts that the ALJ did not consider the opinions of specialists or medical societies, the peer-reviewed literature, or standards of medical care. Exh. MAC-1.

## DISCUSSION

After carefully reviewing the record, including the beneficiary's request for review, the Council finds that Medicare does not cover the sensors furnished to the beneficiary on November 15, 2017, because the beneficiary's Medtronic Minimed CGM system is not included within the statutory DME benefit category as provided in CMS Ruling 1682-R.

*Coverage*

1. The determination of whether a device meets the definition of DME depends on the nature and purpose of the device, not the individual beneficiary's usage or clinical condition.

While the record shows the beneficiary needed his CGM system to assist him with his type 1 brittle diabetes with hypoglycemic unawareness, the beneficiary's individual medical condition is not at issue in this case. Before any question can arise of whether an item of DME may be reasonable and necessary for medical treatment under particular conditions, or whether an individual beneficiary's medical condition has been shown to meet those conditions, a particular device must meet the definition of DME.

The Council does not question the beneficiary's medical condition, the judgment of his doctor, or the utility of the CGM to him. However, we find that the particular system for which the beneficiary requests coverage, a Medtronic Minimed CGM system, is not DME and therefore does not fall within a covered benefit category. In other words, classifying a device as DME (or not DME) has to do with its primary function in medical treatment, not any individual's use of the device, however beneficial.

The determination of whether an item falls within the definition of a statutory benefit category is fundamental to the nature of Medicare as a defined benefit program and its resolution cannot vary from one beneficiary to another. The benefits available under Medicare are defined on a program-wide basis. By contrast, an item or service that falls within one of the defined benefits may or may not be reasonable and necessary to treat a particular beneficiary's clinical condition, a question often briefly summarized as "medical necessity." LCDs, as explained earlier, are issued by contractors help clarify what circumstances and clinical conditions demonstrate medical necessity for a covered

benefit. Before a device like a CGM system can be the subject of an LCD at all, however, it must fall in a defined benefit category.

The focus of our analysis, therefore, must be not on how this beneficiary used the device, but on whether the device met all the definitional requirements of DME (the only statutory benefit category under which the beneficiary sought to claim coverage)..

2. CMS has consistently interpreted the definition of DME as excluding CGMs not approved for therapeutic use.

We begin our analysis with the principle underlying CMS's treatment of CGMs, i.e., that, DME must "primarily and customarily used to serve a medical purpose." 42 C.F.R § 410.202. CMS has concluded that some devices that may be useful to patients, and may provide reassurance or guidance or backup in various ways, may nevertheless not constitute DME serving a medical purpose. The MBPM provides some examples of equipment that is "presumptively nonmedical" such as equipment that serves "comfort or convenience functions," "physical fitness equipment (such as an exercycle)," or "precautionary-type equipment (such as preset portable oxygen units)." MBPM, Ch. 15, § 110.1(B)(2).[4] Such equipment is not DME even if it may have "some remote medically related use." *Id.; see also* NCD 280.1, explaining that preset (as opposed to adjustable) oxygen units are not DME because they are "precautionary equipment; essentially not therapeutic in nature."

Where regulatory language is subject to more than one interpretation, the agency invested with expertise in the subject matter is entitled to apply a reasonable reading, so long as it is a permissible construction of the statutory regime. *See, e.g., Select Specialty Hosp. of Atlanta v. Thompson,* 292 F.Supp.2d 57, 64 (D.D.C. 2003) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 (1984)). In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* the Supreme Court established that, if Congress has not "'directly spoken to the precise question at issue,'" then courts "must defer to a 'permissible' construction of the statute by the agency. *Chevron,* 467 U.S. 837, 843 (1984).

Such deference is particularly appropriate where the statutory and regulatory scheme most depends on agency expertise. As the District Court in Maryland has explained, "deference to the Secretary's interpretations of Medicare regulations is 'all the more warranted,' because Medicare 'is a complex and highly technical regulatory program, in which the identification and classification of relevant criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.'" *Almy v. Sebelius,* 749 F.Supp.2d 315, 324 (D. Md. 2010) (quoting *Dist. Mem'l Hosp. of*

---

[4] Other devices are identified in the MBPM as presumptively medical, including respirators, wheelchairs, and hospital beds. *Id.* at § 110.1(B)(1). In other cases, information may need to be developed to determine into which category a device falls. *Id.* at §110.1.

*Southwestern N.C. v. Thompson*, 364 F.3d 513, 518 (4th Cir.2004); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)). "Courts consistently defer to the Secretary in recognition of her broad statutory authority over Medicare coverage matters . . . ." *Almy* at 324 n.2 (citing *Heckler v. Ringer*, 466 U.S. 602, 617 (1984)).

We note that at least two courts appear to have substituted an interpretation of the phrase "primarily and customarily used to serve a medical purpose" as merely meaning that a device does not have an obvious purpose that is unrelated to health. *See, e.g., Whitcomb v. Hargan*, Civ. No. 17-CV-14, slip. op. at 11 (October 26, 2017) (DME definition is "clear on its face" in that a "device's primary and customary purpose must be medical as opposed to non-medical."); *Bloom v. Azar*, Civ. No. 5:16-CV-121, slip. op. at 19 (January 29, 2018). We disagree. If this requirement merely meant that DME devices must have health-related uses, there would be no point to the further regulatory requirement that a device "generally is not useful to an individual in the absence of an illness or injury." 42 C.F.R. § 414.202. Regulatory language should be read in a manner that gives meaning and effect to all its terms. We conclude that CMS reasonably and within its authority interpreted the regulatory definition of DME to mean that CGM devices must essentially serve or add to therapeutic measures rather than merely be of some medical or health-related use.

We also note that at least one court takes issue with the characterization of CGMs as "precautionary" devices. *See Lewis v. Azar*, Civ. No. 15-13530, slip. op. at 8-9 (April 5, 2018). However, CMS has expressed an interpretation of the definition of DME as limited to those CGM devices which are suitable for direct determination of treatment actions. That interpretation was embodied in policy articles explaining that such CGMs (the only ones available at the time of issuance and the kind the beneficiary has used) were not DME, as they were "precautionary." *See* Article A52464 (Effective Jan. 12, 2017) (coverage based on "therapeutic" status of CGM). While "precautionary" may be a less than felicitous term in this context, the meaning is not unreasonable. Oxygen units, like glucose monitors, are unlikely to be used in the absence of disease. Preset portable oxygen units may provide additional mobility and convenience which may, in some instances, be very important to a patient, but they do not add any treatment modality or function because they cannot be adjusted to respond to treatment needs. CGM systems may provide information, including alerts, about blood sugar fluctuations, but they similarly do not add any treatment modality or function so long as the patient is required to return to blood glucose measures to make treatment decisions. Where an individual must still use another device to accomplish the medical purpose at issue (i.e., measuring the glucose in the individual's blood), the device is essentially used as an additional precaution, but not for the primary medical purpose.

3. CMS has interpreted the definition of DME as including CGMs approved for therapeutic use following issuance of CMS Ruling 1682-R.

Effective January 12, 2017, CMS published Ruling 1682-R, which explains in detail Medicare's coverage policy for CGMs and ancillary equipment. The Ruling states:

> Medicare does not cover CGMs approved by the FDA for use as adjunctive devices to complement, not replace, information obtained from blood glucose monitors. In our view, such devices are not used for making diabetes treatment decisions, such as changing one's diet or insulin dosage based solely on the readings of the CGM, and therefore, have not been covered under Medicare because they are not considered to serve the medical purpose of making diabetes treatment decisions. In addition, CMS has viewed the nondurable sensors that measure the patient's glucose level as performing the medically necessary function of the system, and therefore, the system as a whole has not been regarded as durable equipment. This Ruling applies to certain CGMs furnished on or after the effective date of the Ruling.

> The FDA recently approved expanding the indications of one CGM product to include replacement of blood glucose monitors for diabetes treatment decisions. This Ruling addresses whether 'therapeutic' CGMs, which provide information that can be used to make diabetes treatment decisions meet the definition of DME. For the purpose of this Ruling, all CGMs that are approved by the FDA for use as adjunctive devices to complement, not replace, information obtained from blood glucose monitors in making diabetes treatment decisions are referred to as 'non-therapeutic' CGMs.

CMS Ruling 1682-R at 7. The CMS Ruling is binding on ALJs and the Council. 42 C.F.R. §§ 401.108, 405.1063.

The Ruling further states that such "therapeutic" CGM systems will be considered DME if the CGM system is "approved by the FDA for use in place of a blood monitor for making diabetes treatment decisions[;]" generally is not useful to the individual in the absence of an illness or injury; is appropriate for use in the home; and includes a durable component. CMS Ruling 1682-R at 13-14.

Here, the FDA has not approved the beneficiary's Medtronic Minimed CGM system as a replacement for a blood glucose monitor. Thus, we agree with the ALJ that the CGM at issue is not DME. As the ALJ, like the Council, was bound by CMS Ruling 1682-R, the ALJ did not err, as asserted by the appointed representative, by not considering the opinions of specialists or medical societies, the peer-reviewed literature, or standards of medical care.

We note the appointed representative's contention that CMS has paid for the same CGM as the beneficiary used for medically indistinguishable Medicare beneficiaries. However, any prior favorable coverage determinations received by other similarly situated beneficiaries do not have any bearing on whether the CGM system sensors furnished to the beneficiary on November 15, 2017, are covered in this particular case. *See* 42 C.F.R. §§ 405.1108(a), 405.1128(a). Each claim is considered individually, based on the record developed for that individual claim.

Finally, as is the case here, where the items at issue are supplies to be used with equipment that is not classified as DME, there is no Medicare benefit. Policy Article A52464. Thus, we agree with the ALJ that Medicare does not cover the sensors at issue for use with the beneficiary's CGM.

*Financial Responsibility*

The ALJ concluded that the beneficiary was financially responsible for the non-covered charges because the service at issue was denied as not a Medicare benefit. Dec. at 5. The beneficiary's appointed representative has not presented the Council with any basis for changing this conclusion. Specifically, the appointed representative has not identified the parts of the ALJ's conclusion with which she disagrees or raised any exceptions to this conclusion. *See* Exh. MAC-1. The Council limits its review to the exceptions presented by an appointed representative. *See* 42 C.F.R. §§ 405.1112(b), (c). Accordingly, absent any exceptions, the Council summarily affirms the ALJ's conclusion regarding financial responsibility without further discussion.

## DECISION

Medicare will not cover the sensors furnished to the beneficiary on November 15, 2017. The beneficiary is financially responsible for the non-covered charges. The ALJ's decision is adopted.

MEDICARE APPEALS COUNCIL

Debbie K. Nobleman
Administrative Appeals Judge

Date: MAY 10 2019