## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————

CAROL A. LEWIS and DOUGLAS B.
SARGENT, on behalf of themselves and
all others similarly situated,

        Plaintiffs,

    v.

NORRIS COCHRAN, in his official
capacity as Acting Secretary of the
United States Department of Health
and Human Services,[1]

        Defendant.

———————————————————

        Civil Action No. 18-2929 (RBW)

## <u>MEMORANDUM OPINION</u>

The plaintiffs, Carol A. Lewis and Douglas B. Sargent, bring this putative class action against the defendant, Norris Cochran (the "Secretary"), in his official capacity as the Acting Secretary of the United States Department of Health and Human Services (the "Department"), pursuant to Title XVIII of the Social Security Act, 42 U.S.C. § 1395ff(b); the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, as modified by 42 U.S.C. § 405(g); and the Declaratory Judgment Act, 28 U.S.C. §§ 2201. <u>See</u> Class Action Complaint ("Compl.") ¶¶ 146–66. Currently pending before the Court is the Secretary's Partial Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim ("Def.'s Mot." or the "Secretary's motion to dismiss"), and Carol Lewis and Douglas B. Sargent's Motion for Class Certification and Appointment of Class Counsel ("Pls.' Mot." or "the plaintiff's class certification motion"). Upon careful

---

[1] Norris Cochran is the current Acting Secretary of the United States Department of Health and Human Services, and he is therefore substituted for Alex M. Azar, II as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

consideration of the parties' submissions,[2] the Court concludes for the following reasons that it must grant in part and deny in part the Secretary's motion to dismiss, and deny without prejudice the plaintiffs' class certification motion.[3]

## I.     BACKGROUND

The plaintiffs in this putative class action are Medicare beneficiaries who suffer from "brittle diabetes," a disease that can cause "blood glucose levels" to "wild[ly] and rapid[ly] swing[] either up or down." Compl. ¶ 28; see id. ¶¶ 19, 28, 97, 109.[4] The plaintiffs seek judicial review of the Secretary's denial of their claims for Medicare coverage of continuous glucose monitors. See id. ¶¶ 2–7, 101–04, 112–25.

## A.     Continuous Glucose Monitors

Until recently, diabetic patients most commonly monitored their blood glucose levels by "pricking a finger to draw blood" and then "plac[ing the blood] on a test strip coated with glucose oxidase" (the "finger prick test"). Id. ¶ 31. Continuous glucose monitors ("CGMs") now permit diabetic patients to measure glucose levels in the "interstitial space" between body tissues using "a disposable sensor [that] is placed below the skin[.]" Id. ¶ 33 (footnote omitted).

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum in Support of the Secretary's Partial Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim ("Def.'s Mem."); (2) the Plaintiffs' Memorandum of Points and Authorities in Opposition to the Secretary's Partial Motion to Dismiss ("Pls.' Opp'n"); (3) the Reply Memorandum in Support of the Secretary's Partial Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim ("Def.'s Reply"); (4) the Plaintiffs' Surreply to Motion to Dismiss ("Pls.' Surreply"); and (5) Carol Lewis and Douglas Sargent's Notice of Subsequent Authority ("Pls.' Notice").

[3] The Court appreciates that its rulings regarding the Secretary's motion to dismiss may affect the parties' briefing on the plaintiffs' pending class certification motion, and, in particular, the parties' analysis of whether the plaintiffs have satisfied the typicality requirement of Federal Rule of Civil Procedure 23(a)(3). See Fed. R. Civ. P. 23(a)(3) ("One or more members of a class may sue . . . as representative parties on behalf of all members only if . . . the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]"). The Court will therefore deny without prejudice the plaintiffs' class certification motion, to afford the parties an opportunity to refile their submissions in light of the Court's rulings regarding the Secretary's motion to dismiss.

[4] The following facts are taken from the plaintiffs' Complaint, unless otherwise specified.

"Current CGM sensors last for a week and measure glucose levels every five to seven minutes . . . without requiring patient interaction, including when the patient is sleeping." Id. CGM sensors transmit data to a "receiver" or "monitor" that can "report the results to the patient []or a healthcare provider and[] trigger an alert." Id. at 34. Additionally, when "connected to an insulin pump[,]" the CGM receiver can "automatically control[]" "the amount of insulin delivered [to a patient] . . . based on the sensed glucose levels." Id.

According to the plaintiffs, "CGMs offer many advantages over finger prick/test strips." Id. ¶ 36. First, CGMs "monitor [blood] glucose levels much more frequently—more than [two hundred] times a day, rather than [ten] to [twelve,]" reducing the risk of health complications or death due to diabetes. Id. This is particularly true for patients with brittle diabetes because CGMs "decrease[] [the] risk of death from a rapid onset of symptoms." Id. Second, "even for non-brittle diabetes patients, the increased monitoring frequency leads to much finer glucose[-]level control, thereby reducing diabetes[-]related health complications." Id. Third, "the monitoring occurs without patient interaction, meaning that patients can sleep through the night and/or not interrupt their regular activities." Id. Fourth, "patients are not pricking themselves as frequently, meaning that they do not suffer from near continuous injuries and sources of infection and discomfort." Id. Fifth and finally, "because of the large number [of] samples and [the] short interval between them, [] CGM[s] provide[] granular trend information regarding how quickly glucose levels are dropping or rising[,]" id. ¶ 37, which "enables patients to exercise immediate short[-]term management of their diabetes . . . and [is] used by clinicians for the long-term management of diabetes[,]" id.

**B.**     **Statutory Background**

      **1.**     **Medicare Part B and Durable Medical Equipment**

The Medicare program extends health insurance coverage to elderly Americans and to

Americans suffering from significant medical issues.  See Azar v. Allina Health Servs., 139 S.

Ct. 1804, 1808 (2019); Compl. ¶ 77.  Medicare Part B "is an optional supplemental insurance

program that pays for medical items and services . . . , including . . . durable medical equipment."

Ne. Hosp. Corp. v. Sebelius, 657 F.3d 1, 2 (D.C. Cir. 2011).  The statute defines "durable

medical equipment" to include "blood-testing strips and blood glucose monitors for individuals

with diabetes[.]"  42 U.S.C. § 1395x(n).  However, the statute excludes from coverage items and

services "not reasonable and necessary for the diagnosis or treatment of illness or injury[.]"  Id.

§ 1395y(a)(1)(A) (2018).

The Secretary has issued regulations clarifying the definition of "[d]urable medical

equipment."  See 42 C.F.R. § 414.202.  The Secretary specified that "[d]urable medical

equipment" is "equipment[] furnished by a supplier or a home health agency" that "[c]an

withstand repeated use[,]" "has an expected life of at least [three] years[,]" "[i]s primarily and

customarily used to serve a medical purpose[,]" "[g]enerally is not useful to an individual in the

absence of an illness or injury[,]" and "[i]s appropriate for use in the home."  Id.

      **2.**     **Medicare Administrative Coverage Determination and Appeals**
                  **Process**

 "Medicare beneficiaries submit claims for coverage of durable medical equipment to

administrative contractors," who make the initial coverage determination.  Memorandum in

Support of the Secretary's Partial Motion to Dismiss for Lack of Jurisdiction and Failure to State

a Claim ("Def.'s Mem.") at 2; see also 42 C.F.R. § 405.920 (2005) (noting that "[a]fter a claim is

filed with the appropriate contractor . . . , the contractor must[:] (a) [d]etermine if the items and

4

services furnished are covered or otherwise reimbursable . . . [;] (b) [d]etermine any amounts payable and make payment accordingly; and (c) [n]otify the parties to the initial determination"). The administrative contractors may review each claim individually or deny a claim automatically by relying on a "'local coverage determination,' which is a decision promulgated by the contractor 'to provide guidance to the public and the medical community within their jurisdictions' as to the clinical circumstances under which a 'service is considered to be reasonable and necessary.'" Porzecanski v. Azar, 316 F. Supp. 3d 11, 15 (D.D.C. 2018) (quoting Medicare Program Integrity Manual, Chapter 13, § 13.1.3). "A local coverage determination binds only the contractor that issued it, and only at the initial stages of the Medicare claim review process." Id. (citing 42 U.S.C. § 1395ff(c)(3)(B)(ii)(II)).

If the beneficiary is dissatisfied with the contractor's initial determination, the beneficiary may request a coverage "redetermination," which is conducted by the same contractor. See id. (citing C.F.R. § 405.940). If the beneficiary disagrees with the coverage redetermination, the beneficiary may then request "reconsideration" of the claim by a separate "qualified independent contractor." See id. (citing 42 C.F.R. § 405.960).

Beneficiaries still dissatisfied with the coverage determination may request a hearing before a Department administrative law judge. See id. (citing 42 C.F.R. § 405.1000(a)). However, review by an administrative law judge "shall not be available to an individual . . . if the amount in controversy is less than $1,000[.]" 42 U.S.C. § 1395ff(b)(1)(E)(i). This amount-in-controversy requirement "has been indexed to inflation since 2005[,]" and when this suit was filed in 2018, the amount-in-controversy requirement had increased to $1,600. Def.'s Mem. at 2 (internal citations omitted); see also Adjustment to the Amount in Controversy Threshold Amounts for Calendar Year 2019, 83 Fed. Reg. 47,619, 47,619–20 (Sept. 20, 2018). However, a

beneficiary seeking review may "aggregate two or more claims to meet the amount in controversy for an [administrative law judge] hearing if . . . the claims . . . involve the delivery of similar or related services[.]"  42 C.F.R. § 405.1006(e); see also 42 U.S.C. § 1395ff(b)(1)(E)(ii) (empowering the Secretary to issue regulations setting the conditions for aggregation of appeals regarding "the delivery of similar or related services to the same individual").

Beneficiaries may appeal an adverse ruling by an administrative law judge to the Medicare Appeals Council within sixty days of the decision.  See 42 C.F.R. § 405.1102. Alternatively, the Medicare Appeals Council may "decide on its own motion to review a decision or dismissal issued by an" administrative law judge, a process called motion review.  Id. § 405.1110(a).  The Medicare Appeals Council's decision serves as the Secretary's "final" decision.  See id. § 405.1130.

### 3.      Judicial Review of Medicare Coverage Denial

Beneficiaries aggrieved by the decision of the Medicare Appeals Council may seek "judicial review of the Secretary's final decision[.]"  42 U.S.C. § 1395ff(b)(1)(A).   Additionally, "[i]f the Medicare Appeals Council does not issue a decision, dismissal, or remand within [ninety] days of the beneficiary's request for review, the beneficiary may escalate the appeal to a federal district court."  Porzecanski, 316 F. Supp. 3d at 15 (citing 42 C.F.R. §§ 405.1132(a), 405.1100(c)).  However, "judicial review shall not be available to the individual if the amount in controversy is less than [$1,000]."  42 U.S.C. § 1395ff(b)(1)(E)(i).  This amount is also indexed to inflation, so a beneficiary seeking judicial review in 2018 was required to satisfy an amount-in-controversy requirement of $1,600.  See Def.'s Mem. at 3; Adjustment to the Amount in Controversy Threshold Amounts for Calendar Year 2019, 83 Fed. Reg. at 47,620.

C.      **Medicare Coverage of Continuous Glucose Monitors**

The plaintiffs allege that "the Secretary has refused coverage of CGM devices . . . on the grounds that they are not 'primarily and customarily used to serve a medical purpose.'" Compl. ¶ 62.  On January 12, 2017, the Centers for Medicare and Medicaid Services (the "CMS"), a subdivision of the Department, issued a ruling stating that "Medicare does not cover CGMs approved by the [United States Food and Drug Administration] for use as adjunctive devices to complement, not replace, information obtained from blood glucose monitors." Centers for Medicare and Medicaid Services, CMS-1682-R 1, 6–7 (Jan. 12, 2017) ("CMS Ruling 1682-R"); see Compl. ¶¶ 58–61.  CMS has stated that "[i]n [their] view, such devices are not used for making diabetes treatment decisions . . . and[,] therefore, have not been covered under Medicare because they are not considered to serve the medical purpose of making diabetes treatment decisions."  CMS Ruling 1682-R at 7; see Compl. ¶ 60.  However, CMS Ruling 1682-R "determine[d] that one CGM that has been approved [by the United States Food and Drug Administration] to completely replace finger pricks/test strips"—the Dexcom G5— qualifies as "[durable medical equipment] within the meaning of 42 U.S.C. § 1395x(n) and 42 CFR § 414.202." [5]  Compl. ¶ 61 (citing CMS Ruling 1682-R at 7–10).  CMS-1682-R is "binding on all CMS components, on all [Department] components that adjudicate matters under the jurisdiction of [the] CMS, and on the Social Security Administration[.]"  CMS Ruling 1682-R at 1; see Compl. ¶ 58.

_____

[5] Although CMS Ruling 1682-R determined that Dexcom G5 CGMs are covered by Medicare because they "completely replace finger pricks/test strips[,]" Compl. ¶ 61 (citing CMS Ruling 1682-R at 7–10), the plaintiffs allege that the Secretary has "[denied] claims for coverage of Dexcom G5 [CGMs] supplied weeks before [the] issuance of [CMS Ruling 1682-R]" on January 12, 2017.  Id. ¶ 63.  Additionally, the plaintiffs assert that "[b]oth before and after [the] issuance of [CMS Ruling 1682-R], the Secretary has refused coverage of CGM devices made by Medtronic and Dexcom (other than the Dexcom G5)[.]"  Id. ¶ 62.

According to the plaintiffs, the CMS's ruling was "subsequently incorporated into [Local Coverage Determination] L33822" without notice and comment. Compl. ¶ 65. Local Coverage Determination L33822 ("LCD L33822") is a local coverage determination that binds two Medicare contractors: CGS Administrators, LLC and Noridian Healthcare Solutions, LLC. See id.; Centers for Medicare and Medicaid Services, Local Coverage Determination (LCD): Glucose Monitors (L33822) at 1–2 (Oct. 1, 2015). LCD L33822 explicitly imports the requirements of CMS Ruling 1682-R into the definition of "therapeutic CGMs" that may be covered by Medicare. See LCD L33822 at 5 ("CGM devices covered by Medicare under the [durable medical equipment] benefit are defined in CMS Ruling 1682[-]R as therapeutic CGMs."). Accordingly, the plaintiffs contend that LCD L33822 "generally exclud[es] CGMs" from coverage. Compl. ¶ 65; see id. ¶ 64 ("[A]s result of [CMS Ruilng 1682-R], it is futile to submit claims for non-Dexcom G5 [CGM] devices with dates of service after January 12, 2017").

## D.  The Plaintiffs' Claims

### 1.  Plaintiff Carol Lewis

The first named plaintiff, Carol Lewis ("Lewis"), is a 72-year-old Medicare beneficiary who suffers from brittle diabetes. See id. ¶¶ 19, 97. On October 26, 2015, "Lewis received a Dexcom G5 CGM system comprising a receiver, transmitter, and sensors." Id. ¶ 99. "The total cost of these materials was $3,594." Id. ¶ 100.

Lewis subsequently submitted a Medicare claim for coverage, but coverage "was [denied] on March 31, 2016[,] on the grounds that the items were 'statutorily excluded' and that 'Medicare does not pay for this item or service.'" Id. ¶ 101. Lewis sought redetermination, which was denied. Id. ¶ 102. Lewis's request for reconsideration was also denied. See id. ¶ 103. Lewis then filed an appeal that was reviewed by an administrative law judge, and on

August 18, 2016, the administrative law judge issued a decision also denying her request for coverage "on the grounds that a CGM is 'precautionary' and, therefore, not durable medical equipment." Id. ¶ 104. On December 7, 2016, Lewis filed an appeal with the Medicare Appeals Council, but no decision was rendered before the statutory deadline. See id. ¶¶ 104–06. Accordingly, on November 26, 2018, Lewis filed a request with the Medicare Appeals Council for escalation to this Court. See id. ¶ 106.

### 2. Plaintiff Douglas Sargent

The second named plaintiff, Douglas Sargent ("Sargent"), is a 73-year-old Medicare beneficiary who suffers from brittle diabetes with hypoglycemic unawareness. See id. ¶¶ 19, 108–09. After multiple life-threatening hypoglycemic episodes, Sargent purchased a Medtronic MiniMed CGM system. See id. ¶¶ 109, 112.

On August 9, 2016, Sargent "received a '[ninety-]day supply of sensors for use with his Medtronic MiniMed CGM system." Id. ¶ 112. "The total cost for these sensors was $1,419." Id. Sargent submitted a claim for coverage pursuant to the Medicare statute, but his claim "was [denied] on September 9, 2016, on the grounds that the items were 'statutorily excluded' and that 'Medicare does not pay for this item or service.'" Id. ¶ 113. "Sargent's request for redetermination was [denied] on the grounds that the sensors were 'precautionary' and excluded by [LCD L33822] as a result." Id. ¶ 114. Sargent then sought reconsideration, which was also denied. See id. ¶ 114–15. Sargent subsequently filed an appeal that was reviewed by an administrative law judge, who denied his claim "on the grounds that [the sensors] w[ere] excluded by LCD L33822 as not 'therapeutic' based on [CMS Ruling 1682-R.]" Id. ¶ 117; see id. ¶¶ 115–17. Finally, Sargent appealed to the Medicare Appeals Council, which also denied coverage. See id. ¶¶ 117–18.

On April 12, 2017, Sargent received another ninety-day supply of sensors for his CGM system, at the same cost of $1,419.  See id. ¶ 120.  Sargent's claim for coverage was denied on the same grounds as his previous claim for coverage.  See id. ¶ 121.  Sargent's requests for redetermination and reconsideration were also denied.  See id. ¶¶ 121–23.  Sargent appealed the denials to an administrative law judge, who approved Sargent's claim, finding that the CGM sensors "met the definition of durable medical equipment."  Id. ¶¶ 123–24.  However, the Medicare Appeals Council reviewed the administrative law judge's decision under its motion review authority, as provided by 42 C.F.R. § 405.1110, and reversed the administrative law judge's ruling and denied Sargent's claim for coverage.  See id. ¶¶ 124–25.

### 3.  Class Members

The plaintiffs seek to bring this action on behalf of "[a]ll persons who submitted claims for coverage of CGM equipment or supplies whose claims were denied (and not later reversed on appeal) since December 13, 2012."  Id. ¶ 127.  The plaintiffs delineate two putative subclasses: (1) "[a]ll persons who submitted claims for coverage of Medtronic CGM equipment or supplies whose claims were denied (and not later reversed on appeal)[,]" and (2) "[a]ll persons who submitted claims for coverage of Dexcom CGM equipment or supplies whose claims were denied (and not later reversed on appeal)[.]"  Id.

### E.  This Case

On December 13, 2018, the plaintiffs filed their Complaint in this case.  See id. at 1.  In their Complaint, the plaintiffs seek judicial review of the Secretary's denial of their claims for Medicare coverage of CGMs.  See id. ¶¶ 146–66.  Specifically, the plaintiffs allege that the Secretary's coverage denials are "contrary to law, [] arbitrary and capricious, an abuse of discretion, and unsupported by the evidence" in violation of 42 U.S.C. § 405(g) ("Count I").  Id. ¶ 148.  Additionally, the plaintiffs assert that the Secretary has violated the APA by:

(1) "unlawfully with[holding] or unreasonably delay[ing]" agency action in violation of 5 U.S.C. § 706(1) ("Count II"), id. ¶ 151; (2) taking agency action that is "arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with the law" in violation of 5 U.S.C. § 706(2)(A) ("Count III"), id. ¶ 154; (3) taking agency actions "in excess of the Secretary's authority and limitations and short of [the p]laintiffs' statutory rights" in violation of 5 U.S.C. § 706(2)(C) ("Count IV"), id. ¶ 157; (4) taking agency actions "without observance of the procedure required by law" in violation of 5 U.S.C. § 706(2)(D) ("Count V"), id. ¶ 160; and (5) by taking agency action "not supported by substantial evidence" in violation of 5 U.S.C. § 706(2)(E) ("Count VI"), id. ¶ 163.  The plaintiffs also seek a declaratory judgment pursuant to 28 U.S.C. § 2201, specifically a declaration that "CGMs generally . . . and, in particular, the Medtronic MiniMed and Dexcom devices[,] are [ ] [']durable medical equipment[']" and therefore covered by Medicare ("Count VII").  Id. ¶ 166; see also id. ¶¶ 164–66.

On May 30, 2019, the Secretary filed a motion "to dismiss all claims brought by [ ] Sargent for lack of subject matter jurisdiction[,]" as well as "to dismiss Counts I, II, and V [in the plaintiffs' Complaint] for failure to state a claim" upon which relief can be granted.  Def.'s Mot. at 1.  This motion is the subject of this Memorandum Opinion.

## II.    STANDARDS OF REVIEW

### A.    Rule 12(b)(1) Motion to Dismiss

"Federal courts are courts of limited jurisdiction . . . [and] possess only that power authorized by [the] Constitution and [by] statute."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Therefore, a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the court's jurisdiction[.]"  Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987).  "Thus, the Court

is obligated to dismiss a claim if it 'lack[s] . . . subject-matter jurisdiction.'" <u>Cause of Action</u> <u>Inst. v. White House Off. of Mgmt. & Budget</u>, No. 18-1508, 2019 WL 6052369, at *2 (D.D.C. Nov. 15, 2019) (Walton, J.) (quoting Fed. R. Civ. P. 12(b)(1)).  "Under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction[,]" <u>Grand Lodge of the</u> <u>Fraternal Order of Police v. Ashcroft</u>, 185 F. Supp. 2d 9, 13 (D.D.C. 2001), because "[i]t is to be presumed that a cause lies outside [of a federal court's] limited jurisdiction," <u>Kokkonen</u>, 511 U.S. at 377.

In deciding a motion to dismiss for lack of subject matter jurisdiction, the Court "need not limit itself to the allegations of the complaint." <u>Grand Lodge</u>, 185 F. Supp. 2d at 14.  Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction [over] the case." <u>Scolaro v. D.C. Bd. of Elections &</u> <u>Ethics</u>, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); <u>see</u> <u>Jerome Stevens Pharms., Inc. v. Food & Drug</u> <u>Admin.</u>, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (noting that "[a] district court may consider materials outside [of] the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction").  Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" <u>Am. Nat'l Ins. Co. v. Fed. Deposit Ins.</u> <u>Corp.</u>, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting <u>Thomas v. Principi</u>, 394 F.3d 970, 972 (D.C. Cir. 2005)).  However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a [ ] motion [pursuant to Federal Rule of Civil Procedure 12(b)(6)] for failure to state a claim." <u>Grand Lodge</u>, 185 F. Supp. 2d at 13–14 (first and second alterations in original) (internal quotation marks omitted).

**B.      Rule 12(b)(6) Motion to Dismiss**

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  To survive a 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 US. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A complaint is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  However, a complaint alleging "facts that are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief."  Id. (internal quotation marks omitted) (citing Twombly, 550 U.S. at 557).

In evaluating a Rule 12(b)(6) motion, "the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'"  Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)).  The Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice."  Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).  "However, conclusory allegations are not entitled to an assumption of truth, and even those allegations pleaded with factual support need only be accepted insofar as 'they plausibly give rise to an entitlement to relief.'"  West v. Huvelle, No. 18-2443, 2019 WL 6498818, at *4 (D.D.C., Dec. 3, 2019) (Walton, J.) (quoting Iqbal, 556 U.S. at 679).

13

### III.    ANALYSIS

The Secretary moves to dismiss all claims asserted by Sargent in the Complaint for lack of subject-matter jurisdiction, in addition to dismissing Counts I, II, and V as to both plaintiffs for failure to state a claim.  See Def.'s Mem. at 1.  The Court will address each of the Secretary's arguments in turn.

**A.    The Secretary's Motion to Dismiss Sargent's Claims for Lack of Subject Matter Jurisdiction**

The Secretary first asserts that "[t]his Court lacks jurisdiction over the claims brought by [ ] Sargent[,]" id. at 5, because "Sargent's two appeals each fall below the jurisdictional amount[-]in[-]controversy" for judicial review under the Medicare Act, id. at 1.  Specifically, the Secretary contends that Sargent's appeals of two Medicare Appeals Council rulings, each denying coverage of CGM sensors worth $1,419, individually "fall[] short of the $1,600 threshold for a Medicare beneficiary to obtain judicial review in a case filed in 2018."  Id. at 6. In response, the plaintiffs argue that Sargent has satisfied the amount-in-controversy requirement because the Medicare Act provides that judicial review is available to an "individual[,]" see Pls.' Opp'n at 2–3 (citing § 1395ff(b)(1)(A)), provided that an "individual['s]" claims, "taken together," meet the $1,600 amount-in-controversy requirement, id. at 1.  Therefore, the plaintiffs assert, the Medicare Act "demonstrates Congress' intent to provide judicial review based on the total amount[-]in[-]controversy for each Medicare beneficiary, not based on the amount of each of the discrete claims."  Id. at 3.

The issue of whether a plaintiff may aggregate the values of multiple Medicare claims to meet the Medicare Act's amount-in-controversy requirement appears to be a question of first impression in this jurisdiction.  This issue has, however, been considered in substantially similar circumstances by the Second Circuit in Bloom v. Azar, 976 F.3d 157 (2d Cir. 2020).  In Bloom,

the Second Circuit held that the district court "erred in refusing to let [the plaintiff] aggregate his claims to satisfy the [Medicare] Act's amount-in-controversy requirement[,]" where "two of the [plaintiff's] three challenged decisions" denying requests for CGM sensors and transmitters individually "failed to meet the [ ] amount-in-controversy threshold for federal court jurisdiction under the Medicare Act." Id. at 158. As explained in more detail below, this Court finds the Second Circuit's reasoning in Bloom persuasive, and therefore joins the Second Circuit in concluding that "'aggregation of claims to meet the [Medicare] Act's amount-in-controversy requirement for judicial review is permitted." Id. at 165 (alterations and internal quotation marks omitted).

In following the Second Circuit in Bloom, this Court begins its analysis with "the language of the Medicare Act, which contains two provisions that are directly relevant" to the motion currently pending before this Court. Id. at 160.

The first provision states that "[a] hearing . . . shall not be available to an individual . . . if the amount in controversy is less than $100, and judicial review shall not be available to the individual if the amount in controversy is less than $1,000." 42 U.S.C. § 1395ff(b)(1)(E)(i); see also Bloom, 976 F.3d at 160. "The $1,000 amount in controversy is annually adjusted for inflation[,]" Bloom, 976 F.3d at 160 (citing 42 U.S.C. § 1395ff(b)(1)(E)(iii)), and was set at $1,600 in 2018, when Sargent sought judicial review, see 83 Fed. Reg. at 47,620; Compl. ¶ 1.

The second provision states that "[i]n determining the amount in controversy, the Secretary, under regulations, shall allow two or more appeals to be aggregated if the appeals involve . . . the delivery of similar or related services to the same individual by one or more providers of services or suppliers[.]" 42 U.S.C. § 1395ff(b)(1)(E)(ii); see also Bloom, 976 F.3d at 160. As the Second Circuit held in Bloom, "Medicare beneficiaries may thus aggregate their

claims for benefits, but only upon satisfying the following conditions: the claimant's
unaggregated claims must (1) involve 'related services' . . . that (2) are rendered 'to the same
individual' [ ] (3) by 'one or more providers.'"  Bloom, 976 F.3d at 160 (quoting 42 U.S.C.
§ 1395ff(b)(1)(E)(ii)).

Here, "each [of Sargent's] Medicare claim[s] before [this Court] satisfies these
conditions" and therefore "the text of § 1395ff(b)(1)(E) permits [Sargent] to aggregate the
amount of [his] claims against [the Secretary] to meet the amount-in-controversy requirement for
judicial review."  Id.  The two claims Sargent seeks to aggregate are ninety-day supplies of CGM
sensors, each costing $1,419, see Compl. ¶¶ 112–13, 120–21, which the Court concludes is
permissible for the following reasons.  First, Sargent's two claims for CGM sensors qualify as
"related services."  Bloom, 976 F.3d at 160 (quoting 42 U.S.C. § 1395ff(b)(1)(E)(ii)).  Because
the CGM sensors are "disposable" and only "last for [one] week[,]" Compl. ¶ 33, Sargent
required both sets of ninety-day supplies of CGM sensors as part of his "treatment for [his]
diabetic condition[,]" id. ¶ 46.  Second, because Sargent was the recipient of both supplies of the
CGM sensors, id. ¶¶ 112, 120, his two claims involve services that "are rendered to the same
individual[.]"  Bloom, 976 F.3d at 160 (internal quotation marks omitted).  Third and finally, the
CGM sensors were provided by a "provider[]," id., as they were prescribed in conjunction with
Sargent's treatment plan, see Compl. ¶ 46 (noting that "CGMs are available only upon a
prescription from a doctor who has determined that a CGM is medically reasonable and
necessary for the treatment of a patient's diabetic condition").

The Secretary's arguments to the contrary are unpersuasive.  According to the Secretary,
his "appeal regulations permit a beneficiary to 'aggregate two or more claims to meet the amount
in controversy for an [administrative law judge] hearing' when certain criteria are met[,]" Def.'s

Mem. at 6 (quoting 42 C.F.R. § 405.1006(e)(1)), and therefore because "Sargent did not aggregate his claims before an administrative law judge, [ ] he cannot do so for the first time here[,]" id.  The Secretary also cites to the district court's decision in Bloom v. Azar, which was vacated on appeal, in support of its interpretation "that the Medicare regulations require that claims be aggregated during the administrative process."  Id. (quoting Bloom v. Azar, 2018 WL 583111, at *6 (D. Vt. Jan 29, 2018), rev'd 976 F.3d 157 (2d Cir. 2020)).[6]  This Court disagrees. As the Second Circuit noted in Bloom, "[t]he statutory text [of § 1395ff(b)(1)(E)] directs the Secretary to make regulations that allow two or more appeals to be aggregated (under stated conditions) in determining the amount in controversy without suggesting that those regulations should apply only to agency review and not to judicial review[,]" and therefore "[t]he statute [] expresses congressional intent that, as to both agency and judicial review, aggregation is permitted when the claims conform to the conditions specified."  967 F.3d at 160 (noting that "[t]his reading of the text reflects a basic reality: federal courts have long permitted the aggregation of a single plaintiff's claims against a single defendant to satisfy the jurisdictional amount in other contexts[,]" such as diversity jurisdiction).  Accordingly, "[t]here is no textual basis to conclude that the Medicare Act . . . prevents the aggregation of all claims against [the Secretary] in the district court over which the court would independently have jurisdiction but for the jurisdictional amount requirement."  Id. at 161 (noting that the Medicare Act "by its terms mandates regulations that allow aggregation of claims by a single plaintiff against a single defendant involving "related services").

---

[6] Although the Second Circuit's decision in Bloom postdated the close of briefing regarding the defendant's motion, the plaintiffs filed a notice of supplemental authority, to which the defendant did not respond.  See generally Pls.' Notice.

The Secretary also contends that "[his] reading is consistent with the Medicare statute, which instructs the Secretary to develop regulations permitting 'two or more [administrative] appeals to be aggregated' as a means for determining the amount in controversy[,]" Def.'s Mem. at 6 (citing 42 U.S.C. § 1395ff(b)(1)(E)(ii)), because "[a]s used throughout 42 U.S.C. § 1395ff, the term 'appeals' refers to proceedings occurring at the administrative level[,]" id. at 6–7. The Court also finds this argument unpersuasive. But as the Second Circuit noted in Bloom, "[w]hile it[ i]s true that [§ 1395ff(b)(1)(E)(ii)] is directed to 'the Secretary,' it instructs the Secretary to promulgate regulations providing for aggregation in the enumerated circumstances[,]" and "[t]hat in no way implies that the provision addresses only aggregation before the agency." 976 F.3d at 160. Rather, "[t]he more natural reading [of § 1395ff(b)(1)(E)(ii)] is that the regulations to be promulgated by the Secretary must allow aggregation regardless of whether in agency review or judicial review." Id. at 161. Moreover, it would be illogical to find that aggregation for the purpose of seeking administrative review is permitted, but not when judicial review of the administrative review is pursued.

The Secretary's interpretation of Section 1395ff(b)(1)(E) is also at odds with the legislative and regulatory history of the Medicare Act. As the Second Circuit explained in Bloom, the Department "has long had the view that district courts enjoy an independent ability to aggregate claims under the Medicare Act, while Congress . . . has said nothing that would disturb that view." Id. at 164. For example, the Court in Bloom observed that in 1991, the Department proposed a rule "recogniz[ing] that 'reviewing court[s]' could aggregate similar Medicare claims to determine the amount in controversy in Medicare cases." Id. at 162 (second alteration in original) (quoting Medicare Program; Aggregation of Medicare Claims and Administrative Appeals and Judicial Review, 56 Fed. Reg. 28,353, 28,359 (June 20, 1991)); see also 56 Fed.

Reg. at 28,359 (noting that "[t]he determination as to whether the amount in controversy is . . . $1,000 or more is made by the reviewing court")).  Additionally, the Second Circuit noted that in 1994, the Department "again acknowledged that the Medicare Act permitted district courts to aggregate similar Medicare claims" when it promulgated a rule "providing that agency aggregation provisions may govern in court[.]"  Bloom, 976 F.3d at 162–63; see Medicare Program; Aggregation of Medicare Claims for Administrative Appeals, 59 Fed. Reg. 12,172, 12,182 (Mar. 16, 1994) ("[W]hen a civil action is filed . . . , the [Department] may assert that [its regulatory] aggregation principles . . . may be applied to determine the amount in controversy for judicial review.").  This Court agrees that this regulatory history demonstrates that the Department has "repeatedly acknowledge[d] that the [Medicare] Act vests district courts with the authority to aggregate qualifying Medicare claims to satisfy the amount-in-controversy requirement in Medicare cases."  Bloom, 976 F.3d at 163.

Indeed, "Congress was [presumably] aware of [the Department's] position on this central issue of judicial authority to aggregate Medicare claims when, in 2000, it last amended the aggregation and amount-in-controversy language of § 1395ff[,]" Bloom, 976 F.3d at 163 (citing Consolidated Appropriations—FY 2001, Pub. L. No. 106-554, § 1869, 114 Stat. 2763, 2763A-536 (2000)).  Yet there is "no evidence at all that this amendment was intended to upend [the Department's] longstanding acceptance of judicial aggregation of Medicare claims, or to limit aggregation to administrative proceedings."  Id.  Rather, "[t]he only relevant congressional report in the legislative history of the amendment [suggests] that Congress intended to permit aggregation to satisfy the amount-in-controversy threshold for district court proceedings."  Id.  Specifically, the House Conference Report for the 2000 amendment states that

> [if] contested amounts are greater than $100, an individual would be able to appeal an adverse reconsideration decision by requesting a hearing by the

> Secretary . . . . <u>If the dispute is not satisfactorily resolved through this administrative process, and if contested amounts are greater than $1,000, the individual would be able to request judicial review . . . . Aggregation of claims to meet these thresholds would be permitted.</u>

H.R. Rep. No. 106-1033, at 895 (2000) (Conf. Rep.) (emphasis added).  As the Second Circuit observed, because the "use of the plural 'these thresholds' when referencing aggregation can only refer to the separate amount[-]in[-]controversy 'thresholds' for administrative and judicial review mentioned in the prior sentences[,]" this language "strongly suggests that the amendment's drafters sought to permit aggregation in both the administrative and the judicial contexts." <u>Bloom</u>, 976 F.3d at 163.  Therefore, this Court agrees with the Second Circuit's conclusion that "[t]his backdrop of legislative and regulatory history confirms what the Medicare Act's text itself makes clear enough[,]" <u>id.</u> at 164, namely, that "plaintiffs may aggregate their Medicare claims in court to meet § 1395ff's jurisdictional amount[,]" <u>id.</u> at 163.

Accordingly, this Court finds persuasive the Second Circuit's analysis in <u>Bloom</u> and concludes that Sargent may aggregate his Medicare claims to meet the Medicare Act's amount-in-controversy requirement for judicial review.  <u>See id.</u> at 164.  The Court therefore concludes that it has jurisdiction over Sargent's claims, and that the Secretary's motion to dismiss must be denied to the extent that it seeks to dismiss these claims.[7]

**B.    The Secretary's Motion to Dismiss Counts I, II, and V for Failure to State a Claim**

The Secretary also moves to dismiss Counts I, II, and V of the Complaint on several grounds for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  <u>See</u>

---

[7] Because the Court concludes that the Medicare Act permits Sargent to aggregate his claims before this Court, it need not address Sargent's alternative argument that, if this Court concluded that it lacked federal jurisdiction, it should nonetheless "exercise [] supplemental jurisdiction" over his claims.  Pls.' Opp'n at 5; <u>see id.</u> at 3–5.

Def.'s Mem. at 8–9.  First, the Secretary argues that Count I must be dismissed because

42 U.S.C. § 405(g) "does not establish any substantive law for this Court to apply."  Id. at 8.

Second, the Secretary contends that Count II must be dismissed because the plaintiffs have not

"identif[ied] a legally required, discrete act that the [agency] has failed to perform."  Id. (second

alteration in original) (citing Montanans for Multiple Uses v. Barbouletos, 568 F.3d 225, 227

(D.C. Cir. 2009).  Third, the Secretary asserts that Count V must be dismissed because the

"Complaint does not adequately allege procedural error" that would constitute a violation of the

APA, 5 U.S.C. § 706(2)(D).  Id. at 9.  The Court will address the Secretary's arguments in turn.

### 1.  Count I

Count I of the Complaint alleges a violation of 42 U.S.C. § 405(g) and "ask[s] the Court

to reverse the Secretary's [d]ecisions and issue an order finding that a CGM and its related

supplies are covered durable medical equipment[.]"  Compl. ¶ 147.  Count I also "ask[s] the

Court to reverse the Secretary's [d]ecisions as contrary to law, [ ] arbitrary and capricious, an

abuse of discretion, and unsupported by the evidence[.]"  Id. ¶ 148.  The Secretary argues in

response that Count I should be dismissed because although § 405(g) "authorizes judicial review

of [the Secretary's] final decisions[,]" it "does not establish any substantive law for this Court to

apply."  Def.'s Mem. at 8; see also Def.'s Reply at 6.  The Secretary also argues that while the

remaining allegations of Count I "may allege violations of [the APA], [ ] those [allegations] are

duplicated in Counts III and VI[.]"  Def.'s Reply at 6.  Accordingly, the Secretary claims that

because Count I "do[es] not state a claim for a violation of 42 U.S.C. § 405(g), or any other

provisions of law not duplicated elsewhere in the Complaint[,] Count I must be dismissed."  Id.

The Court agrees with the Secretary, and will therefore for the following reasons grant his

motion to the extent it seeks to dismiss Count I of the plaintiffs' Complaint pursuant to

Rule 12(b)(6) for failure to state a claim.

Section 405(g), in conjunction with § 1395ff(b), allows individuals to seek judicial review of their claims and sets out the standard of review for questions of fact and questions of law.  See 42 U.S.C. § 405(g); see also id. § 1395ff(b).  Therefore, the plaintiffs have properly employed § 405(g) as the procedural basis for seeking judicial review of their Medicare coverage denials.  However, this section, as the plaintiffs admit, "does not establish, by itself, a duty[ or ]violation." [8]  Pls.' Opp'n at 9.  Thus, although the plaintiffs could properly bring an action under § 405(g) seeking reversal of the Secretary's coverage denials, they have failed to show that § 405(g) accords them "entitlement to [the] relief" sought in Count I to survive a Rule 12(b)(6) challenge.  West, 2019 WL 6498818, at *4 (Walton, J.).  Accordingly, because Count I fails to allege the violation of any federal substantive law, the plaintiffs have failed to demonstrate entitlement to the relief requested.

In their opposition, the plaintiffs agree that Count I "could have been more artfully stated," but nevertheless contend that "[paragraphs] 146[ to ]148 of the Complaint do set forth the claimed violations."  Pls.' Opp'n at 9.  The Court disagrees.  Although all of the paragraphs of the Complaint preceding Count I are incorporated in Count I, see Compl. ¶ 146, paragraphs 146 to 148 of the Complaint only ask the Court "to reverse the Secretary's [d]ecisions and issue an order finding that a CGM and its related supplies are covered durable medical equipment and direct the Secretary to make appropriate payment for the claims that are the subject of this case[,]" id. ¶ 147, and "to reverse the Secretary's [d]ecisions as contrary to law, as arbitrary and capricious, an abuse of discretion, and unsupported by the evidence[,]" id.

---

[8] The Seventh Circuit Court of Appeals has suggested that § 405(g) sets out certain procedural rights that can be violated by a faulty administrative process.  See Americana Healthcare Corp. v. Schweiker, 688 F.2d 1072, 1079 (7th Cir. 1982) ("[T]he court [below] concluded that both the federal and state defendants failed to provide the plaintiff with a hearing in violation [of] 42 U.S.C. § 405(g)[.]").  For instance, if the plaintiffs alleged that the Secretary had failed to provide them with an opportunity for hearings before an administrative law judge or the Medicare Appeals Council, they conceivably could state a claim for a violation of § 405(g).  However, no procedural error that would violate § 405(g) in this manner is alleged in this case.

¶ 148.  Because these are the same allegations set out later in the Complaint as violations of the

APA, rather than allegations based on any other independent substantive authority, see Compl.

¶¶ 152–54, 161–63, the remaining paragraphs of Count I do not set forth any potential

"entitlement to relief," West, 2019 WL 6498818, at *4 (Walton, J.).  Therefore, the Court

concludes that the plaintiffs' allegations in Count I fail to adequately state a claim and must be

dismissed under Rule 12(b)(6).

### 2.  Count II

In Count II of the Complaint, the plaintiffs ask the Court to "reverse the Secretary's

[d]ecisions as [having] unlawfully withheld or unreasonably delayed" determining that "a CGM

and its related supplies [are] [ ] durable medical equipment[,]" in violation of the APA.  Compl.

¶ 151; see also 5 U.S.C. § 706(1).  The plaintiffs contend that the agency action "unlawfully

withheld" is the "approval and subsequent payment of [the p]laintiffs' claims for CGM

coverage."  Pls.' Opp'n at 9.  The Secretary moves to dismiss Count II, however, arguing that the

"[p]laintiffs do not allege that the Secretary has failed to perform any discrete act[,]" rather "they

[ ] allege that the act [the Secretary] performed (denying coverage) was unlawful."  Def.'s Reply

at 7.  The Court agrees and will therefore grant the Secretary's motion to the extent it seeks to

dismiss Count II of the plaintiffs' Complaint pursuant to Rule 12(b)(6) for failure to state a

claim.

"It is well established that 'a claim under § 706(1) can proceed only where a plaintiff

asserts that an agency failed to take a discrete agency action that it is required to take.'"  Ctr. for

Biological Diversity v. Zinke, 260 F. Supp. 3d 11, 20 (D.D.C. 2017) (emphasis in original)

(quoting Norton v. So. Utah Wilderness All., 542 U.S. 55, 64 (2004)); see also Montanans for

Multiple Uses, 568 F.3d at 227 ("[The] plaintiffs' complaint does not identify a legally required,

discrete act that the [agency] has failed to perform—a threshold requirement for a § 706

failure-to-act claim."); All. to Save the Mattaponi v. U.S. Army Corps of Eng'rs, 515 F. Supp. 2d

1, 9 (D.D.C. 2007) (noting that § 706(1) permits "federal courts [to] review . . . claims . . .

seeking to compel certain required actions not yet taken"). However, "[a] 'failure to act' is not

the same thing as a 'denial.'"  Norton, 542 U.S. at 63.  "The latter is the agency's act of saying

no to a request; the former is simply the omission of an action without formally rejecting a

request[.]"  Id.

It may be true, as the plaintiffs contend, "that they have a right to coverage of their CGM

claims."  Pls.' Opp'n at 9.  However, this right cannot be vindicated by a challenge under

§ 706(1) because this is not a case of agency inaction; it is instead a case of an agency's denial of

coverage.  Denials are final agency actions that may be challenged under § 706(2).  See, e.g.,

Doe v. U.S. Citizenship & Immigr. Servs., 410 F. Supp. 3d 86, 96–108 (D.D.C. 2019)

(examining denial of visa petition under 5 U.S.C. § 706(2)).  On the other hand, agency denials

may not be challenged under § 706(1), which applies only when there has been no agency action.

See Norton, 542 U.S. 55 at 62–63 (discussing the definition of a "failure to act" for purposes of

§ 706(1)).

The plaintiffs argue that the Secretary was "required" to approve their coverage claims

and, therefore, his failure to so act constitutes a "discrete agency action" reviewable under

§ 706(1).  See Pls.' Opp'n at 9.  However, as the Court explained above, the relevant "agency

action" here is the Secretary's denial of coverage, and not what is alleged in Count II.  See

Compl. ¶ 151 ("[The p]laintiffs ask the Court to reverse the Secretary's [d]ecisions as [having]

unlawfully withheld or unreasonably delayed" determining that "a CGM and its related supplies

[are] [ ] durable medical equipment").  Accordingly, the Court concludes that the plaintiffs'

claims are more properly brought under § 706(2), and that the Secretary's motion must be granted to the extent that it seeks the dismissal of Count II for failure to state a claim.

**3. Count V**

In Count V of the Complaint, the plaintiffs allege that the Secretary's denials constitute a violation of the APA because they were "done without observance of the procedure required by law"—namely, the "notice and comment required for modification of [local coverage determinations.]" Id. ¶ 160; see 5 U.S.C. § 706(2)(D).  In response, the Secretary argues that the Complaint "identifies no such procedural violation."  Def.'s Mem. at 9.  Moreover, the Secretary contends that even if LCD L33822 was "improperly issued[,]" the "[p]laintiffs do not anywhere allege that [LCD L33822] had anything to do with any denial of coverage complained of in this case."  Def.'s Reply at 7.  The plaintiffs respond that the Complaint adequately alleges that "the Secretary failed to comply with his notice[-]and[-]comment obligations . . . before changing the scope of benefits with respect to CGMs by issuing [CMS Ruling 1682-R] and incorporating it into LCD L33[]82[,]" Pls.' Opp'n at 10, and that "[r]elying on both [CMS Ruling 1682-R] and [LCD L33822], the Secretary [ ] rejected a large number of claims for CGM coverage, including those of [ ] Sargent[,]" id. at 9–10.  The Court will address the parties' arguments in turn.

**a. Whether the Plaintiffs Have Adequately Alleged Procedural Error**

The Court will first address whether the plaintiffs have adequately alleged that the Secretary committed procedural error when modifying LCD L33822.  The plaintiffs contend that "the Secretary failed to comply with his notice and comment obligations (i.e., 'without observance of procedure required by law') before changing the scope of benefits with respect to CGMs by issuing [CMS Ruling 1682-R] and incorporating it into LCD L338[]22."  Id. at 10.  As a preliminary matter, the Court notes that the defendant does not dispute the plaintiffs' assertion that LCD L33822 was modified without notice and comment.  See id. at 9; Def.'s Mem. at 9.

25

Therefore, the Court turns to the issue of whether the Secretary was required by law to proceed through a notice-and-comment process before modifying LCD L33822.

"A court may [ ] set aside agency action taken 'without observance of procedure required by law.'" Penobscot Indian Nation v. U.S. Dep't of Hous. & Urban Dev., 539 F. Supp. 2d 40, 47 (D.D.C. 2008) (quoting 5 U.S.C. § 706(2)(D)).  Adopting a rule in "violat[ion of] the notice-and-comment requirements of the APA" constitutes a procedural error.  Id. at 48; see also id. at 49–51 (concluding that the agency violated notice-and-comment requirements of the APA where the plaintiffs were "deprived of any meaningful opportunity to comment on what became the centerpiece of the rationale underlying [a f]inal [r]ule").  As this Circuit has explained:

> Section 553 of the APA requires that an agency give notice of a proposed rule setting forth "either the terms or substance of the proposed rule or a description of the subjects and issues involved," 5 U.S.C. § 553(b), and "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation," id. § 553(c).  Among the information that must be revealed for public evaluation are the "technical studies and data" upon which the agency relies.

Chamber of Com. of the U.S. v. Sec. & Exch. Comm'n, 443 F.3d 890, 899 (D.C. Cir. 2006) (citing Solite Corp. v. Envtl. Prot. Agency, 952 F.2d 473, 484 (D.C. Cir. 1991)).  Although an agency generally need not engage in the notice-and-comment process for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice[.]" 5 U.S.C. § 553(b)(A), if the Medicare Act or other relevant regulations confer "certain procedural rights above and beyond those contemplated by the APA, then those rights must be honored[,]" New Life Evangelistic Ctr., Inc. v. Sebelius, 753 F. Supp. 2d 103, 117 (D.D.C. 2010).

Here, as the plaintiffs correctly note, the Medicare Act imposes an independent notice-and-comment obligation that the Secretary must follow to comply with the notice-and-

comment requirement of the APA.  See Pls.' Opp'n at 10; Azar v. Allina Health Services

("Allina II"), 139 S. Ct. 1804 (2019).  Pursuant to Subsection (a)(2) of § 1395hh,

> [n]o rule, requirement, or other statement of policy (other than a national coverage
> determination) that establishes or changes a substantive legal standard governing
> the scope of benefits, the payment for services, or the eligibility of individuals,
> entities, or organizations to furnish or receive services or benefits under this
> subchapter shall take effect unless it is promulgated by the Secretary by regulation
> under paragraph (1).

42 U.S.C. § 1395hh(a)(2).  Subsection (a)(1), in turn, requires the Secretary to "prescribe such

regulations as may be necessary to carry out the administration of the insurance programs" under

the Medicare Act, id. § 1395hh(a)(1), and, Subsection (b)(1), subject to certain exceptions not

relevant here, mandates that "the Secretary shall provide for notice of the proposed regulation" to

allow "for public comment thereon[,]" id. § 1395hh(b)(1).  See also Allina Health Servs. v. Price

("Allina I"), 863 F.3d 937, 942–43 (D.C. Cir. 2017), aff'd sub nom. Allina II, 139 S. Ct. 1804

(2019).

The plaintiffs cite Alliana II, 139 S. Ct. 1804 (2019), for the proposition that local

coverage determinations are subject to these notice-and-comment requirements, arguing that the

Supreme Court has held that the notice-and-comment requirements of the Medicare Act are

"even broader" than the notice and comment requirements of the APA and "lack[] the

'substantive'/'interpretative' rule exception found in the APA."  Pls.' Opp'n at 10.  Allina II does

not discuss local coverage determinations directly; instead, the case discusses whether the

Department "must first afford the public notice and a chance to comment" before adopting a

policy "reduc[ing] payments to hospitals serving low-income patients."  139 S. Ct. at 1808.

There, the Supreme Court held that the Department was obligated to follow § 1395hh(b)'s notice

and comment requirements when altering its hospital payment policy because, pursuant to

§ 1395hh(a)(2), its policy change "establish[ed] or change[d] a substantive legal standard

governing . . . the payment for services" for healthcare providers.  Id. at 1810 (quoting 42 U.S.C. § 1395hh(a)(2)).

At least one court has concluded, based on Allina II, that local coverage determinations alter "substantive legal standards" and therefore are subject to the notice-and-comment requirements of § 1395hh(b).  See Agendia, Inc. v. Azar, 420 F. Supp. 3d 985, 997–98 (C.D. Cal. 2019), appeal filed, Agendia, Inc. v. Azar, No. 20-55041 (9th Cir. Jan. 13, 2020).  The Agendia Court held that because local coverage determinations are "binding on [ ] private contractors and are entitled to substantial deference in the administrative process[,] . . . [they] establish[] a standard that defines [a beneficiary's] right to payment throughout the administrative process." Id. at 997.  Therefore, the Agendia court concluded that local coverage determinations alter "substantive" legal standards and are subject to the Medicare Act's notice-and-comment requirements.  See id. at 998–98.

The Court finds this analysis persuasive.  As the District of Columbia Circuit has held, "[a] 'substantive legal standard' at a minimum includes a standard that 'creates, defines, and regulates the rights, duties, and powers of parties.'" Allina I, 863 F.3d at 943 (quoting Substantive Law, Black's Law Dictionary (10th ed. 2014)).  Here, the plaintiffs allege that CMS Ruling 1682-R, which was incorporated into LCD L33822, "is binding on the private contractors" and "defines [the plaintiffs'] right to payment throughout the administrative process." Agendia, 420 F. Supp. 3d at 997; see Compl. ¶ 58 (alleging that "[b]y its own terms, [CMS Ruling 1682-R] is 'binding on all CMS components, on all [Department] components that adjudicate matters under the jurisdiction of CMS, and on the Social Security Administration[]'" (quoting CMS Ruling 1682-R)); id. ¶ 64 (alleging that "as a result of [CMS Ruling 1682-R], the discretion [that] [administrative law judges] previously had to award coverage . . . was

eliminated"). Accordingly, the Court finds that LCD L33822 "creates, defines, and regulates the rights, duties, and powers of parties[,]" Allina I, 863 F.3d at 943 (quoting Substantive Law, Black's Law Dictionary (10th ed. 2014)), that therefore constitutes a "substantive legal standard[,]" id., that is subject to the Medicare Act's notice-and-comment requirements. Accordingly, the Court concludes that the plaintiffs have adequately alleged that the Secretary was required by law to proceed through a notice-and-comment process before modifying LCD L33822.

The Secretary does not appear to challenge the proposition that local coverage determinations are subject to notice-and-comment requirements. See Def.'s Mem. at 9 (noting that "[a]lthough paragraph 160 of the . . . Complaint suggests, in a parenthetical, that 'notice and comment [are] required for modification of [local coverage determinations]," it does not discuss any local coverage determination except in a passing reference in paragraphs 64 and 65"). Contrary to the Secretary's assertion that the Complaint only discusses the alleged procedural violations "in a passing reference," id., the Court concludes that the Complaint adequately alleges procedural error to survive a motion to dismiss. See Compl. ¶ 64 (alleging that "as a result of [CMS Ruling 1682-R], the discretion [that administrative law judges] previously had to award coverage (even in the face of an alleged [local coverage determination]) was eliminated" and that "[a]s a result, it is futile to submit claims for non-Dexcom G5 devices with dates of service after January 12, 2017" because "those claims must be denied"); id. ¶ 65 (alleging that "[w]ithout notice and comment, [CMS Ruling 1682-R] was subsequently incorporated into LCD L33822 and Police Article A52463, generally excluding CGMs").

**b.  Whether the Plaintiffs Have Adequately Alleged that LCD L33822 Impacted
their Denial of Medicare Coverage**

Next, the Court considers whether the plaintiffs have adequately pleaded that they were

injured by the allegedly unlawful modification of LCD L33822 without notice and comment.

Judicial review under the APA is only available to "person[s] suffering legal wrong because of

agency action, or adversely affected or aggrieved by agency action within the meaning of a

relevant statute[.]"  5 U.S.C. § 702.  The Secretary contends that although "[the p]laintiffs are

attempting to argue that [LCD L33822] . . . [was] improperly issued[,] . . . . [the p]laintiffs do not

anywhere allege that this coverage determination . . . had anything to do with any denial of

coverage complained of in this case."  Def.'s Reply at 7.  The Court will address the specific

allegations made by Sargent and Lewis in turn.

As to Sargent, the plaintiffs clearly allege that he was injured by the allegedly unlawful

modification of LCD L33822.  In the Complaint, the plaintiffs contend that Sargent's coverage

was denied because of this specific local coverage determination at several stages of the

Medicare claim review process.  See Compl. ¶ 114 ("Sargent's request for redetermination was

[denied] on the grounds that the sensors were 'precautionary' and thus excluded by [LCD

L33822] as a result."); id. ¶ 117 (noting that an administrative law judge denied Sargent's claim

"on the grounds that it was excluded by LCD L33822 as not 'therapeutic' based on [CMS Ruling

1682-R]"); see also Pls.' Opp'n at 9–10 ("Relying on both [CMS Ruling 1682-R] and [LCD

L33822], the Secretary has rejected a large number of claims for CGM coverage, including those

of [ ] Sargent.").  Accordingly, "constru[ing] the [C]omplaint in favor of the plaintiff[s],"

Hettinga, 677 F.3d at 476, and "assum[ing the] veracity" of the factual allegations in the

Complaint, Iqbal, 556 U.S. at 679, the Court concludes that Sargent adequately alleges that LCD

L33822 affected the denial of his CGM claims.

The Court therefore concludes that Sargent adequately pleads a plausible claim that LCD 33822 was modified without observance of procedure required by law and thus violates the APA. See 5 U.S.C. § 706(2)(D). Accordingly, the Court will deny the Secretary's motion to the extent that it seeks to dismiss Count V of the plaintiffs' Complaint for failure to state a claim pursuant to Rule 12(b)(6), and to the extent that Count V applies to Sargent.

As to Lewis, however, the plaintiffs fail to allege that she was injured by the allegedly unlawful modification of LCD L33822. As the Secretary correctly notes, "Lewis does not plausibly allege that she has been injured by any failure to engage in such rulemaking." Def's Mem. at 9; see Compl. ¶¶ 97–107; see also Pls.' Opp'n at 9–10 ("Relying on both [CMS Ruling 1682-R] and [LCD L33822], the Secretary has rejected a large number of claims for CGM coverage, including those of [ ] Sargent."). Additionally, the Court notes that Lewis's Medicare claim for coverage was denied on March 31, 2016, see id. ¶ 101, several months prior to the issuance of CMS Ruling 1682-R on January 12, 2017, and its incorporation into LCD L33822, see id. ¶ 58. Therefore, because the Secretary's denial predates the allegedly unlawful modification of LCD L33822, this alleged procedural error could not plausibly have affected the denial of Lewis's claim at issue in this case. See also id. 7 n.1 ("[CMS Ruling 1682-R] is effective as to claims submitted for dates of service after January 12, 2017[,]"); id. ¶ 99 (noting that Lewis received her Dexcom G5 CGM system on October 26, 2015). Moreover, as the plaintiffs correctly note, "[CMS Ruling 1682-R] determine[d] that one CGM that has been approved [by the United States Food and Drug Administration] to completely replace finger pricks/test strips"—the Dexcom G5—qualifies as durable medical equipment and is therefore covered under Medicare Part B. Id. ¶ 61. Because the Dexcom G5 is the precise type of CGM that Lewis received in connection with "the specific denial forming the basis for this litigation,"

Case 1:18-cv-02929-RBW   Document 77   Filed 01/29/21   Page 32 of 33

id. ¶ 99 ("With regard to the specific denial forming the basis for this litigation, on October 26, 2015, Ms. Lewis received a Dexcom G5 CGM system comprising a receiver, transmitter, and sensors."), the allegedly unlawful modification of LCD L33822 could not plausibly have affected the denial of Lewis's claim for this reason, as well.  Accordingly, even "constru[ing] the [C]omplaint in favor of the plaintiff[s]," Hettinga, 677 F.3d at 476, and "assum[ing the] veracity" of the factual allegations in the Complaint, Iqbal, 556 U.S. at 679, the Court cannot "draw [a] reasonable inference" that LCD L33822 affected the denial of Lewis's claim that forms the basis of this litigation, id.

Therefore, the Court concludes that Lewis has failed to adequately plead a plausible claim that LCD L33822 was modified without observance of procedure required by law and thus violates the APA.  See 5 U.S.C. § 706(2)(D).  Accordingly, the Court will grant the Secretary's motion to the extent that it seeks to dismiss Count V of the plaintiffs' Complaint for failure to state a claim pursuant to Rule 12(b)(6), and to the extent that Count V applies to Lewis.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny in part the Secretary's partial motion to dismiss.  Specifically, the Court concludes that it must grant the Secretary's motion to dismiss to the extent that it seeks to dismiss the following counts of the plaintiff's Complaint for failure to state a claim pursuant to Rule 12(b)(6): (1) Count I; (2) Count II; and (3) Count V, to the extent that Count V applies to Lewis.  However, the Court concludes that it must deny the Secretary's motion in all other respects—namely, to the extent that the Secretary's motion seeks to dismiss: (1) Sargent's claims for a lack of subject-matter jurisdiction pursuant to Rule 12(b)(1); and (2) Count V of the plaintiffs' Complaint, to the extent that Count V applies to Sargent, for failure to state a claim pursuant to Rule 12(b)(6).

32

**SO ORDERED** this 29th day of January, 2021.[9]

REGGIE B. WALTON
United States District Judge

---

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.