IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROL A. LEWIS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Case No. 18-cv-2929 (RBW) |
| | ) |
| v. | ) |
| | ) |
| ALEX M. AZAR II, in his official capacity as Secretary of Health and Human Services, | ) |
| | ) |
| Defendant. | ) |

**CAROL LEWIS AND DOUGLAS SARGENT'S
RE-NOTICE OF CLASS CERTIFICATION MOTION**

Pursuant to this Court's Order of January 29, 2021 (*see* Dkt. #78), and in the interest of minimizing paperwork for the Court and to minimize the potential for additional delay, Plaintiffs Carol Lewis and Douglas Sargent re-notice the Class Certification motion previously filed on March 23, 2020. *See* Dkt. #53. While Plaintiffs disagree with aspects of the Court's ruling on Defendant's motion to dismiss (*see* Dkt. #s 76 and 77), the remaining Causes of Action have the same class members as previously identified and that were the subject of the Motion to Certify and all the arguments are the same.

**A.      Cause of Action V**

With regard to Cause of Action V, every person who has a claim under that Cause (such as Mr. Sargent) also has a claim under Causes of Action III, IV, VI, and VII. Thus, the Class of people with a claim specifically under Cause of Action V is a subset of the larger Class estimated at 88,392 people through July 31, 2019 (the last period for which any discovery has been provided with regard to Part B, and an estimate of Part C because no discovery was provided).

With regard to Cause of Action V specifically, as previously indicated, the Secretary's limited production shows that 166,997 Part B claims with service dates on or after January 12, 2017 (which were subject to CMS 1682-R) were denied on the grounds that a CGM is not "durable medical equipment." *See* Dkt. #67 at 6.  These claims correspond to an estimated 53,306 people under Part B.[1]  Applying the same estimates previously used for Part C cases (for which no discovery was provided) results in ~83,049 claims by ~26,518 people.  Combined (Part B and Part C) this results in ~250,046 claims by ~79,824 people.  Given the overlap with the other Causes of Action, Plaintiffs do not believe that a separate sub-class comprised of people with claims under Cause of Action V is necessary.  Nevertheless, Plaintiffs provide the information here in case the Court chooses to examine this issue separately.  In the interests of consolidating all the numerical information previously presented into a single document, attached hereto is a declaration doing that.

Of course, all of the above numbers are based on the limited production of Part B data covering December 13, 2012-July 31, 2019 disclosed by the Secretary.  Given the Secretary's continued rejection of claims on the same grounds, it is to be expected that the number of people in the Class will have increased by tens of thousands in the subsequent 19 months (or even the 11 months since the Class Certification Motion was filed in March 2020).

Plaintiffs have clearly shown that all the requirements are present and the proposed class should be certified.

---

[1] As previously noted, the Secretary's production precludes a precise determination of how many unique people there are because the same person may have submitted claims under more than one HICN.  Further, the production includes indications that as many as 7,276 HICNs may be for someone other than the beneficiary.  Thus, the actual number of people may be as low as ~46,000.

**B.      The Secretary's "Answer" Concedes All Class Certification Issues**

The Complaint filed in December 2018 (*i.e.*, more than 26 months ago) contained a number of allegations related to class certification issues. In particular, ¶¶ 137-145 alleged that:

   a) The commonality requirement of FED.R.CIV.P. 23(a)(2) was met;

   b) The typicality requirement of FED.R.CIV.P. 23(a)(3) was met;

   c) The adequacy requirement of FED.R.CIV.P. 23(a)(4) was met;

   d) The requirements of FED.R.CIV.P. 23(b)(2) were met; and

   e) The requirements of FED.R.CIV.P. 23(b)(3) were met.

*See* Dkt #1 at 27-28. In February 2021, the Secretary filed a pleading styled an "Answer." *See* Dkt. #80. Rather than admit or deny these allegations (as required by FED.R.CIV.P. 8(b)), to each, the Secretary responded: "This paragraph consists of plaintiffs legal conclusions, to which no response is required." *See* Dkt. #80 at 33-34.

Federal Rule of Civil Procedure 8(b)(6) provides in relevant part:

> **Effect of Failing to Deny**. An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.

Clearly, a pleading responsive to the Complaint is required. FED.R.CIV.P. 8 allows for only three responses to an allegation 1) an admission; 2) a denial; or 3) a statement that the responding party lacks enough information to respond, which is treated as a denial.[2] There is no option to refuse to

---

[2] *See, e.g.*, 1 FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY RULE 8 (citing cases); *Gulf Restoration Network v. U.S.E.P.A.*, 2018 WL 5297743 (E.D. La. Oct. 25, 2018) at *4 ("Moreover, defendants' argument that they are exempt from the requirements of Rule 8(b) because this is a record review case, is not accepted.").

respond to an allegation on the grounds that it is a legal conclusion.[3]  Thus, because the Secretary neither admitted nor denied the allegations of ¶¶ 137-145 of the Complaint, those allegations are deemed admitted under the Rules.  *See, e.g., U.S. v. Vehicle 2007 Mack 600 Dump Truck*, 680 F.Supp.2d 816, 827-829 (E.D. Mich. 2010) (allegations deemed admitted); *King Vision Pay Per View, Ltd. v. J.C. Dimitri's Restaurant, Inc.*, 180 F.R.D. 332, 334 N.D. Ill. June 17, 1998) ("Accordingly all of the allegations of Complaint ¶¶ 6-12, 17, 25-26, and 33-34 are held to have been admitted … and this action will proceed on that basis.").

With regard to numerosity, ¶ 129 of the Complaint alleged, in part: "The Members of the Class are so numerous that joinder of all Member is impracticable."  *See* Dkt. #63 at 25.  Rather than admit or deny the allegation, the Secretary responded with the variant: "This paragraph consists of plaintiffs' legal conclusions, to which no response is required.  To the extent that a response is required, the allegations are denied."  *See* Dkt. #80 at 31.

---

[3] *See, e.g., Thompson v. Retirement Plan for Employees of S.C. Johnson & Sons, Inc.*, 2008 WL 5377712 at *1-2 (E.D. Wisc. Dec. 22, 2008) ("Rule 8 does not permit a defendant to respond only by stating that the plaintiff's allegations 'constitute conclusions of law'"); *Sharifi v. Stellar Recovery, Inc.*, 2016 WL 246134 at *1 (N.D. Ill. Jan. 20, 2016) ("fundamental error"); *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc.*, 2009 WL679651 at *2 (E.D. Wisc. Mar. 16, 2009) ("GSUSA claims that a response is not required because the allegation is a legal conclusion.  Because these two responses are not proper denials under Rule 8(b), the allegations to which they respond are deemed admitted."); *State Farm Mutual Automobile Ins. Co. v. Riley*, 199 F.R.D. 276 (2001) ("Another regular offender is the lawyer who takes it on himself or herself to decline to respond to an allegation because it 'states a legal conclusion.'  That of course violates the express Rule 8(b) requirement that *all* allegations must be responded to.  But perhaps more importantly, it disregards established law from the highest authority on down that legal conclusions are an integral part of the federal notice pleading regime[.]") (emphasis in original, cleaned up); *Gomez v. U.S.*, 2010 WL 3834211 at *2 (S.D. Fla. Sept. 28, 2010) ("Instead the Plaintiff responded to these paragraphs with the impermissible "states a legal conclusion" retort.  Pursuant to Rule 8(b)(6), since these allegations required a responsive pleading and were not denied, they are deemed admitted.").

Likewise, the variant employed by the Secretary (*i.e.*, "to the extent") in response to ¶ 129, has been deemed an improper qualified denial and, again, fails to admit or deny the allegations.[4] *See, e.g., Baumann v. Bayer, A.G.*, 2002 WL 1263987 at *1 (N.D. Ill. June 5, 2006) ("[I]t is of course obvious that any purported response that begins with 'to the extent that' is wholly uninformative.").

Though advised of these consequences, the Secretary has failed and refused to amend the Answer. Thus, either because the Secretary has intentionally chosen this route or through simple operation of the Rule, all the allegations relating to the requirements of class certification are deemed admitted.

C.   **The Mechanics of Class Notification**

While there is no change in Plaintiffs' contentions regarding the mechanics of class notification (*see* Dkt. #63 at 24-25), given the long delay in advancing this case, many of those notices will be posthumous. That is, a not insignificant number of the proposed class members would be expected to have died waiting for relief, especially to the extent that those persons were not able to secure/pay for a CGM in some other way. Among its other benefits, a CGM reduces the risk of "dead-in-bed" syndrome (see Complaint at ¶ 29) and of hyper/hypoglycemic events that lead to/require emergency medical treatment, hospital admissions, diabetic comas, and death. Thus, persons lacking a CGM would be expected to die at a higher rate than those able to get the CGM coverage the Secretary has denied.

---

[4] *See, e.g., Valley Forge Ins. Co. v. Hartford Iron and Metal, Inc.*, 2015 WL 5730662 at *3 (N.D. Ind. Sept. 30, 2015) ("akin to an impermissible qualified denial", striking paragraphs from Answer); *Trustees of the Auto. Mechanics Local No. 701 v. Union Bank of Cal., N.A.*, 2009 WL 4668580 (N.D. Ill. Dec. 2, 2009) ("Even apart from the fact that legal conclusions are entirely proper components of a complaint, thus calling for a response under Rule 8(b)(1)(B), 'to the extent' is a telltale tipoff that [a party] has failed to comply with the notice pleading requirements that the federal system imposes[.]", cleaned up).

Sadly, this will not be the first case in which the Secretary improperly denied CGM coverage for someone throughout their life leading to litigation during the pendency of which the beneficiary passed away. Thereafter, the Secretary's contention that a CGM is not "primarily and customarily used to serve a medical purpose" has been rejected and the Secretary ordered to pay the attorney's fees resulting from litigating a position that is not "substantially justified." See *Zieroth v. Azar*, 2020 WL 5642614 (N.D. Cal. Sept. 22, 2020) (Secretary's position "is not reasonable", ordering posthumous coverage); *Zieroth v. Azar*, 2020 WL 7075629 (N.D. Cal. December 3, 2020) (finding position not "substantially justified" and awarding fees to plaintiff).

For all the reasons set forth above, and in the motion for class certification previously filed and re-noticed here, the class should be certified.

Dated: February 26, 2021

Respectfully submitted,

/s/Jeffrey Blumenfeld
D.C. Bar No. 181768
LOWENSTEIN SANDLER LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 753-3800
Facsimile: (202) 753-3838
jblumenfeld@lowenstein.com

and

PARRISH LAW OFFICES
James C. Pistorino
788 Washington Road
Pittsburgh, PA 15228
Telephone: (412) 561-6250
Facsimile: (412) 561-6253
james@dparrishlaw.com

*Attorneys for Plaintiffs*