IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROL A. LEWIS, *et al.*, ) | |
| ) | Case No. 18-cv-2929 (RBW) |
| Plaintiffs, ) | |
| ) | DECLARATION OF JAMES |
| v. ) | PISTORINO IN SUPPORT OF |
| ) | CLASS CERTIFICATION MOTION AND |
| NANCY COCHRAN, in her official ) | APPOINTMENT OF CLASS |
| capacity as acting Secretary of Health and ) | COUNSEL |
| Human Services, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

I, James Pistorino, declare:

1. I am over the age of 18, have never been convicted of a felony, and I make the following statements of my own free will.

**Background**

2. I am a graduate of Duke University (B.S.C.S) and the Duke University School of Law (J.D.), and a partner at Parrish Law Offices. I am a member of the State Bars of Texas and California as well as the Patent Bar and am admitted in numerous district and appellate federal courts across the country. I have been practicing law (primarily federal litigation) for more than 20 years. A copy of my resume is attached hereto.

**Defendants' Document Production**

3. To date, the Secretary has made seven document productions Bates numbered Lewis00001-Lewis035889. I have reviewed each of them and submit this declaration as a summary of this voluminous data and the analysis of the documents I have performed.

4. Plaintiffs' document requests were limited to initial denials based on the allegation that a CGM was not "durable medical equipment", including seeking documents identifying and explaining the codes used to classify and reject claims on that grounds.

5. In response, the Secretary produced documents such as Lewis002819 and Lewis004948 that indicate the codes used to classify, and reject, CGM claims as not durable medical equipment include: A9276; A9277; A9278; K0553; and K0554.

6. In addition, for initial denial information for Part B claims, the Secretary produced a series of spreadsheets (in PDF form that hampered review) of claim denials using these codes during the class period for the various Medicare Administration Contractors (JA, JB, JC, and JD) within the United States.

7. Each row in the spreadsheets contains data corresponding to an individual claim number. Such data includes: a) the code used to reject the claim; b) the HICN of the claimant; c) the claim number; d) the date of service; e) the amount of coverage sought; f) the date the claim was paid or denied; and g) the associated denial code (e.g., A9276; A9277; A9278; K0553; and K0554) indicating that the claim was denied on the grounds that a CGM is not "durable medical equipment."

8. I combined the various spreadsheets into a single Excel sheet that facilitated analysis. That spreadsheet shows:

|  | Total Denied Claims December 13, 2012-July 31, 2019 | Claims denied December 13, 2013 and no longer pending on August 15, 2018 | Claims denied August 15, 2018-July 31, 2019 |
|---|---|---|---|
| People[1] | 58,928 | 34,564 | 34,828 |
| Claims | 252,337 | 163,271 | 89,066 |

---

[1] This number is complicated by the fact that 7,276 HICNs include indications that the HICN reported may be for a person other than the beneficiary. Thus, the actual number of unique people may be as low as 51,652 or some number in-between. Because the information necessary to uniquely identify a beneficiary has not been produced by the Secretary, each unique HICN having a CGM claim is used in this analysis. The subcolumns do not add up to the total because a single person could have had expired claims as well as claims that were pending when suit was filed or filed after.

9. For Part C (*i.e.*, "Medicare Advantage Plan") initial denials, the Secretary's production included no information. In order to estimate the number of such claims, I reviewed the Kaiser Family Foundation Data Note dated June 2019. Copy attached hereto. As reflected there, during the class period, Part C cases constituted approximately 1/3 of all Medicare beneficiaries.

10. Based on that and the data disclosed regarding Part B cases, I estimate the Part C cases as follows:

|  | Total Denied Claims December 13, 2012-July 31, 2019 | Claims denied December 13, 2013 and no longer pending on August 15, 2018 | Claims denied August 15, 2018-July 31, 2019 |
|---|---|---|---|
| People | 29,464 | 17,282 | 17,414 |
| Claims | 126,168 | 81,635 | 44,533 |

11. With regard to appeals, the production from the Secretary did not include redetermination appeals for Part B claims for the period December 13, 2012-July 2016 for at least one of the jurisdictions. The Secretary also failed to produce any reconsideration data (i.e., the first level of appeal in Part C cases) for Part C claims.

12. Reviewing the appeal level data that was produced for Part B and Part C cases shows:

|  | Part B | Part C |
|---|---|---|
| People/Claims | 58,928/252,337 | 29,464/126,168 (estimated) |
| Redeterminations | 2,809 | No data[2] |
| Reconsiderations | 543 | 661[3] |

---

[2] In Part C cases, this level of appeal is referred to as "reconsideration."

[3] In Part C cases, this level of appeal is referred to as "reconsidered determination."

| ALJ Decisions | 196 | 91 |
|---|---|---|
| MAC Decisions | 145 | (included in the 145) |

13. Reviewing the Part B data and the total number of persons therein, I calculated that the average claimant had $4,624 in denied claims.

14. Further, the spreadsheet summarizing the Secretary's production shows that out of 252,337 Part B CGM claims, 76,062 were denied using the "GY" code during the period December 13, 2012-July 31, 2019.

15. In addition, during the period December 13, 2012-July 31, 2019, the spreadsheet shows that 166,097 claims corresponding to 53,306 unique HICNs/people were submitted with dates of service on or after January 12, 2017. Assuming that Part C claim constitute 1/3 of all Medicare claims, this implies ~83,048 Part C claims submitted by ~26,518 people. Combined (Part B and Part C) this results in ~250,046 claims submitted by ~79,824 people.

16. In addition, I reviewed the spreadsheet to determine how many claims/persons received denials on or after October 14, 2018. The spreadsheet shows that, during the period, October 14, 2018-July 31, 2019, some 78,408 claims by some 22,747 persons received initial denials. Again, this implies a corresponding 39,204 claims and 11,373 people for Part C during the same period.

17. In addition, I reviewed the spreadsheet to determine how many persons would have claims in excess of $1,600 if all their claims were added together. The production reflect that, during the period December 13, 2012-July31, 2019, some 20,429 Part B beneficiaries (corresponding to 183,662 claims) would have such claims. Further, if each denied claim by a beneficiary is considered separately (i.e., whether denied on the same day as other claims or not), some 51,129 claims by some 10,856 people are in excess of $1,600. If all the claims denied on the same dat are considered, some 79,463 claims by some 14,174 people are in excess of $1,600.

**Parrish Law Offices Medicare/CGM Litigation Experience**

18. Parrish Law Offices has been in existence since 2000 with its main office in Pittsburgh, Pennsylvania. Since then, specializing in Medicare coverage litigation, Parrish Law Offices has handled literally thousands of appeals of denials of Medicare coverage claims.

19. Parrish Law Offices took on its first Medicare CGM client in August 2013 and, to date, has represented more than 35 Medicare beneficiaries in administrative appeals of the denials of their Medicare claims, including at least 63 ALJ hearings.

20. The firm has been involved in six District Court actions attempting to force the Secretary of Health to comply with Congressional mandates that provide coverage of continuous glucose monitoring. The firm was successful in all six actions securing Medicare coverage of a continuous glucose monitor for each of the Medicare beneficiaries at issue. *See Smith v. Azar*, Case No. 18-cv-181-MOC (W.D. N.C.); *Whitcomb v. Azar*, Case No. 17-cv-14-DEJ (E.D. Wisc.); *Lewis v. Burwell*, Case No. 15-cv-13530-NMG (D. Mass.); *Bloom v. Burwell*, Case No. 16-cv-121-GWC (D. Vermont); *Zieroth v. Azar*, Case No. 20-cv-172-MMC (N.D. Cal.); and *Olsen v. Azar*, Case No. 20-cv-00374-SMJ (E.D. Wash).

21. The firm has filed multiple challenges against various Medicare contractors who have issued Medicare non-coverage policies relative to continuous glucose monitoring.

22. Based on the firm's pro bono representation of numerous Medicare beneficiaries who have diabetes and need a continuous glucose monitor, Ms. Parrish was awarded the American Bar Association's *Pro Bono Publico* Award in 2017.

23. Based on its effective advocacy, the firm has been invited to present at various professional meetings of clinicians and advocacy groups regarding Medicare administrative appeals and civil litigation.

24. Parrish Law Offices has assisted various legal aid offices and clinics representing Medicare beneficiaries seeking Medicare coverage of CGMs.

25. In investigating and identifying potential claims, Parrish Law Offices has left no stone unturned. In addition to multiple rounds of written discovery in this case, Parrish Law Offices has served at least two FOIA requests seeking denial information from the Secretary.

26. Currently, Parrish Law Office has staffed this case with attorneys James Pistorino, Debra Parrish, and Bridget Noonan - assisted by paralegal Tanya Tarza.

27. Copies of the cirriculum vitae/resumes of James Pistorino, Debra Parrish, and Bridget Noonan are attached hereto.

28. Parrish Law Offices is committed to investing whatever resources are necessary to properly represent the class in this matter.

I declare under penalty of perjury, except for statements made upon information and belief, that the statements made herein are true and correct and if called upon as a witness I would testify thereto. Executed this 25th day of February, 2021 at Menlo Park, California.

_____
James Pistorino