**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CAROL A. LEWIS, *et al.*,      )
                                )
          Plaintiffs,      )
                                )
      v.                     )
                                )     Case No. 18-cv-2929 (RBW)
NORRIS COCHRAN, in his official  )
capacity as Acting Secretary of Health  )
and Human Services,       )
                                )
         Defendant.    )
_____)

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 1

    A.    Medicare Part B and its Claim Appeal Process ........................................ 1

    B.    Medicare Part C and its Coverage Appeal Process................................... 3

    C.    Plaintiffs' Claims for Part B Coverage .................................................... 4

    D.    Procedural History .................................................................................. 5

ARGUMENT .................................................................................................................... 6

I.    The proposed class overwhelmingly consists of individuals without any viable claim to judicial review.................................................................................... 7

    A.    To be eligible for judicial review, Medicare beneficiaries must ordinarily exhaust administrative remedies, comply with a statute of limitations, and meet a minimum amount in controversy. ............................................... 8

    B.    Almost all putative class members failed to exhaust their administrative remedies, and waiver of exhaustion is not justified here. .................................... 11

    C.    Any claim that accrued before October 9, 2018 is time-barred, and tolling of the limitations period is not justified here. ........................................ 24

    D.    Any beneficiary with claims totaling less than $1,600 falls below the minimum amount in controversy, and supplemental jurisdiction is not available. .............................................................................................. 26

II.    In defining the potential class, the Court must consider the statute of limitations and the limits of its own jurisdiction.................................................................... 27

III.    The proposed class does not satisfy the requirements of Rule 23. ............................. 33

    A.    The proposed class does not satisfy the requirements of Rule 23(a). .................. 34

        1.    Because the proposed class has at most fifteen members with live claims, plaintiffs have not established numerosity. .................................. 34

        2.    Plaintiffs have not affirmatively demonstrated that absent class members would receive adequate representation. .................................... 37

    B.    The proposed class does not satisfy the requirements of Rule 23(b)................... 39

1.      The Medicare statute does not authorize the injunctive or
        declaratory relief described in Rule 23(b)(2)............................................. 39

2.      The proposed class does not satisfy Rule 23(b)(3). .................................. 41

CONCLUSION .................................................................................................................... 43

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Price,*
   275 F. Supp. 3d 313 (D. Conn. 2017) .................................................................. 27

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ............................................................................. 34, 41

*American Chiropractic Ass'n v. Leavitt,*
   431 F.3d 812 (D.C. Cir. 2005) ....................................................................... 10, 35

*American Hosp. Ass'n v. Azar,*
   895 F.3d 822 (D.C. Cir. 2018) ................................................................... *passim*

*American Pipe & Constr. Co. v. Utah,*
   414 U.S. 538 (1974) .................................................................................. 25

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds,*
   568 U.S. 455 (2013) .................................................................................. 32

*Bowen v. Massachusetts,*
   487 U.S. 879 (1988) .................................................................................. 40

*Bowen v. Michigan Academy of Family Physicians,*
   476 U.S. 667 (1986) .................................................................................. 10

*Bowen v. City of New York,*
   476 U.S. 467 (1986) ........................................................................... *passim*

*Califano v. Yamasaki,*
   442 U.S. 682 (1979) .................................................................................. 33

*Clark v. Astrue,*
   274 F.R.D. 462 (S.D.N.Y. 2011) ..................................................................... 27

*Coleman v. District of Columbia,*
   306 F.R.D. 68 (D.D.C. 2015) ......................................................................... 37

*Comcast Corp. v. Behrend,*
   569 U.S. 27 (2013) ............................................................................. *passim*

*Council for Urological Interests v. Sebelius,*
   668 F.3d 704 (D.C. Cir. 2011) ....................................................................... 24

*Day v. Bowen,*
   1990 WL 357274 (S.D. Ohio Jan. 22, 1990) ........................................................ 28

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980) .................................................................................................... 8

*Doran v. Mo. Dep't of Social Servs.*,
  251 F.R.D. 401 (W.D. Mo. 2008) .............................................................................. 32

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
  545 U.S. 546 (2005) .................................................................................................. 26

*Goodnight v. Shalala*,
  837 F. Supp. 1564 (D. Utah 1993) ..................................................................... *passim*

*Grant v. Sullivan*,
  720 F. Supp. 462 (M.D. Pa. 1989) ............................................................................ 28

*Harris v. comScore, Inc.*,
  2012 WL 686709 (N.D. Ill. Mar. 2, 2012) ............................................................... 31

*Heckler v. Ringer*,
  466 U.S. 602 (1984) .............................................................................................. 9, 40

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018) ......................................................................................... 8

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  725 F.3d 244 (D.C. Cir. 2013) .................................................................................. 34

*International Woodworkers of America v. Chesapeake Bay Plywood Corporation*,
  659 F.2d 1259 (4th Cir. 1981) .................................................................................. 31

*Johnson v. Shalala*,
  2 F.3d 918 (9th Cir. 1993) ...................................................................... 7, 28, 30, 33

*Kendrick v. Sullivan*,
  784 F. Supp. 94 (S.D.N.Y. 1992) .............................................................................. 27

*Kennedy v. Sullivan*,
  138 F.R.D. 484 (N.D. W. Va. 1991) .......................................................................... 27

*Landers v. Leavitt*,
  232 F.R.D. 42 (D. Conn. 2005) ................................................................................. 27

*Lewis v. Azar*,
  308 F. Supp. 3d 574 (D. Mass. 2018) .................................................................... 4, 5

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) .............................................................................. 14, 23, 25, 39

*Medellin v. Shalala,*
   23 F.3d 199 (8th Cir. 1994) ............................................................. *passim*

*Menominee Indian Tribe of Wisconsin v. United States,*
   614 F.3d 519 (D.C. Cir. 2010) ................................................................ 35

*Nat'l Athletic Trainers Ass'n v. HHS,*
   455 F.3d 500 (5th Cir. 2006) ................................................................. 19

*Nat'l Kidney Patients Ass'n v. Sullivan,*
   958 F.2d 1127 (D.C. Cir. 1992) .......................................................... 9, 10

*Ne. Hosp. Corp. v. Sebelius,*
   657 F.3d 1 (D.C. Cir. 2011) ................................................................. 1, 2

*Pavano v. Shalala,*
   95 F.3d 147 (2d Cir. 1996) .............................................. 7, 28, 29, 33

*Porzecanski v. Azar,*
   943 F.3d 472 (D.C. Cir. 2019) .......................................................... *passim*

*Richards v. Delta Air Lines, Inc.,*
   453 F.3d 525 (D.C. Cir. 2006) .............................................................. 34

*Ryan v. Bentsen,*
   12 F.3d 245 (D.C. Cir. 1993) .......................................... 21, 22, 23, 24

*Shalala v. Ill. Council on Long Term Care, Inc.,*
   529 U.S. 1 (2000) ........................................................................ 9, 12, 40

*Tataranowicz v. Sullivan,*
   959 F.2d 268 (D.C. Cir. 1992) ......................................... 23, 24, 28

*Twelve John Does v. District of Columbia,*
   117 F.3d 571 (D.C. Cir. 1997) .............................................................. 38

*United Mine Workers of Am. v. Gibbs,*
   383 U.S. 715 (1966) .................................................................................. 26

*United States v. Adebimpe,*
   819 F.3d 1212 (9th Cir. 2016) ............................................................. 18

*Wal–Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ......................................................................... 34, 37

*Weinberger v. Salfi,*
   422 U.S. 749 (1975) .................................................................................. 35

*White v. Sullivan*,
   1991 WL 315124 (D. Vt. Oct. 15, 1991) ............................................................. 27

**STATUTES**

5 U.S.C. § 702 ..................................................................................................... 40

28 U.S.C. § 1367 .................................................................................................. 26

28 U.S.C. § 2072 .................................................................................................... 8

42 U.S.C. § 405 ............................................................................................ *passim*

42 U.S.C. §§ 1395 *et seq.* .................................................................................... 1

42 U.S.C. § 1395w-22 ................................................................................ 4, 10, 42

42 U.S.C. § 1395x ............................................................................................ 2, 19

42 U.S.C. §§ 1395c to 1395i-5 ............................................................................. 1

42 U.S.C. §§ 1395j to 1395w-4 ............................................................................ 2

42 U.S.C. §§ 1395w-21 to 1395w-28 .................................................................... 3

42 U.S.C. § 1395ff ....................................................................................... *passim*

42 U.S.C. § 1395ii .................................................................................................. 9

Medicare Prescription Drug, Improvement, and Modernization Act of 2003,
   Pub. L. 108-173, 117 Stat. 2066 (Dec. 8, 2003) ........................................... 24

**RULES**

Fed. R. Civ. P. 23 ........................................................................................ *passim*

Fed. R. Civ. P. 82 ............................................................................................ 8, 35

**REGULATIONS**

42 C.F.R. § 401.108 ......................................................................................... 2, 23

42 C.F.R. § 405.920 .............................................................................................. 2

42 C.F.R. § 405.940 .............................................................................................. 3

42 C.F.R. § 405.960 .............................................................................................. 3

42 C.F.R. § 405.990 ............................................................................... 3, 22, 23, 24

42 C.F.R. § 405.1000 ................................................................................................. 3

42 C.F.R. § 405.1063 ............................................................................................... 23

42 C.F.R. § 405.1100 ........................................................................................... 3, 35

42 C.F.R. § 405.1130 ........................................................................................... 3, 35

42 C.F.R. § 405.1132 ...................................................................................... 3, 5, 36

42 C.F.R. § 405.1136 ............................................................................................... 25

42 C.F.R. § 414.202 .............................................................................................. 2, 17

42 C.F.R. § 422.566 ................................................................................................... 4

42 C.F.R. § 422.578 ................................................................................................... 4

42 C.F.R. § 422.592 ................................................................................................... 4

42 C.F.R. § 422.600 ................................................................................................... 4

42 C.F.R. § 422.608 ................................................................................................... 4

Medicare Program; Medicare Appeals; Adjustment to the Amount in Controversy
    Threshold Amounts for Calendar Year 2019,
    83 Fed. Reg. 47,619-02 (2018) ......................................................................... 26

Medicare Program; Durable Medical Equipment, Prosthetics, Orthotics, & Supplies (DMEPOS)
    Policy Issues & Level II of the Healthcare Common Procedure Coding System (HCPCS),
    85 Fed. Reg. 70,358 (Nov. 4, 2020) ................................................................... 2

## OTHER AUTHORITIES

CMS Ruling 1682-R. .................................................................................................. 2

CMS HCPCS Modifier Dictionary ........................................................................... 19

William B. Rubenstein, 1 Newberg on Class Actions § 1:1 (5th ed.) ......................... 8

William B. Rubenstein, 1 Newberg on Class Actions § 3:12 (5th ed.) ..................... 37

William B. Rubenstein, 1 Newberg on Class Actions § 3:50 (5th ed.) ..................... 37

William B. Rubenstein, 1 Newberg on Class Actions § 3:57 (5th ed.) ..................... 38

William B. Rubenstein, 1 Newberg on Class Actions § 4:70 (5th ed.) ..................... 41

## INTRODUCTION

Plaintiffs ask this Court to adjudicate tens of thousands of unexhausted, mostly time-barred claims on behalf of absent parties.  The Court should deny class certification, principally on grounds of numerosity.  At most, the claims of fifteen potential class members are eligible for judicial review.  All other putative class claims are either outside of this Court's subject matter jurisdiction, or barred by the statute of limitations—and often both.  They must therefore be excluded when assessing the numerosity of the potential class.  This is not the rare case where judicial waiver of administrative exhaustion or equitable tolling of the limitations period would be appropriate, and class actions are not a vehicle for claims that would be dismissed if brought separately.  Although plaintiffs insist that this Court may not consider these impediments on a motion for class certification, district courts do so routinely and several circuits have made it clear that to do otherwise is an abuse of discretion.  Plaintiffs have not satisfied the requirements of Federal Rule of Civil Procedure 23, and their motion for class certification should therefore be denied.

## BACKGROUND

### A.      Medicare Part B and its Claim Appeal Process

Medicare is a federal health insurance program for the elderly and disabled, *see* 42 U.S.C. § 1395 *et seq.*, which is administered on behalf of the Secretary of Health and Human Services by the Centers for Medicare & Medicaid Services (CMS).  Part A of the Medicare statute "covers medical services furnished by hospitals and other institutional care providers."  *Ne. Hosp. Corp. v. Sebelius*, 657 F.3d 1, 2 (D.C. Cir. 2011) (citing 42 U.S.C. §§ 1395c to 1395i-5).  Medicare Part B "is an optional supplemental insurance program that pays for medical items and services not

covered by Part A, including outpatient physician services" and "durable medical equipment," among other things.  *Id.* (citing 42 U.S.C. §§ 1395j to 1395w-4).

The statutory definition of durable medical equipment (DME), codified at 42 U.S.C. § 1395x(n), "includes iron lungs, oxygen tents, hospital beds, and wheelchairs . . . used in the patient's home," as well as "blood-testing strips and blood glucose monitors for individuals with diabetes," among other specified items.  The Secretary's regulation, 42 C.F.R. § 414.202, provides a more general definition.  In 2017, the Secretary issued a CMS Ruling—a "statement of policy or interpretation" that is "binding on all CMS components," 42 C.F.R. § 401.108; *see id.* § 405.1063(b)—on the subject of continuous glucose monitors.  CGMs are not blood glucose monitors within the meaning of the statute; they measure glucose levels in the interstitial fluid between patients' cells, not in their blood.  CMS Ruling 1682-R at 6 (Jan 12, 2017), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Rulings/Downloads/CMS1682R.pdf. The CMS Ruling said that continuous glucose monitors accurate enough "to replace a blood glucose monitor" were covered as durable medical equipment, *id.* at 8, but that less accurate devices were not covered, *id.* at 15.[1]

To seek reimbursement for the cost of a continuous glucose monitor or anything else, "a Medicare Part B beneficiary must submit a claim for an 'initial determination' of whether 'the items and services are covered or otherwise reimbursable.'"  *Porzecanski v. Azar*, 943 F.3d 472, 475–76 (D.C. Cir. 2019) (quoting 42 C.F.R. § 405.920); *see* 42 U.S.C. § 1395ff(a)(1).  "Initial coverage determinations are made by" Medicare administrative contractors hired by the agency "to manage the preliminary claims administration process."  *Porzecanski*, 943 F.3d at 476.  "If the

---

[1] The Secretary recently published a notice of proposed rulemaking which would, if finalized, "classify CGM systems . . . as DME" whether or not they can be used to make treatment decisions on the basis of their readings alone.  85 Fed. Reg. 70,358, 70,403–04 (Nov. 4, 2020).

contractor denies the beneficiary's claim," he may "obtain a 'redetermination' from the same contractor." *Id.* (citing 42 U.S.C. § 1395ff(a)(3)(A); 42 C.F.R. § 405.940). "If unsuccessful, the beneficiary can seek 'reconsideration' by a 'qualified independent contractor' who is wholly independent of the initial determination contractor." *Id.* (citing 42 U.S.C. § 1395ff(c)(1)–(2); 42 C.F.R. § 405.960).

If the beneficiary remains unsatisfied, he has a choice of two avenues along which to pursue his claim.  First, subject to a minimum amount-in-controversy requirement, "he can request a hearing before an administrative law judge (ALJ)." *Id.* (citing 42 C.F.R. § 405.1000); *see* 42 U.S.C. § 1395ff(b)(1)(E).  After that, he can seek review by the Medicare Appeals Council, *see* 42 C.F.R. § 405.1100, which makes the final decision for the Secretary, *id.* § 405.1130.  If the beneficiary is not satisfied with the decision of the Appeals Council (or if it has not acted in a timely fashion, *see id.* § 405.1132), he may then seek judicial review within 60 days, 42 U.S.C. § 405(g), subject to another amount-in-controversy requirement, *id.* § 1395ff(b)(1)(E).

Alternatively, if his case presents a "question of law or regulation" that the Medicare Appeals "Council does not have the authority to decide," 42 C.F.R. § 405.990(a)(2), such as the validity of a statute, regulation, or CMS Ruling, *id.* § 405.990(c)(2), then the beneficiary can request expedited access to judicial review of the reconsideration decision, bypassing the ALJ and Appeals Council.  *See* 42 U.S.C. § 1395ff(b)(2); 42 C.F.R. § 405.990.  This expedited process is subject to the same amount-in-controversy requirement as ordinary access to judicial review.  42 C.F.R. § 405.990(b)(3).

## B.    Medicare Part C and its Coverage Appeal Process

Part C of the Medicare statute, 42 U.S.C. §§ 1395w-21 to 1395w-28, establishes the program now known as Medicare Advantage, which provides benefits through private health

insurance plans.  With exceptions not relevant here, a Medicare Advantage insurer must cover every item or service that would be covered under Medicare Parts A and B, including durable medical equipment.  *Id.* § 1395w-22(a)(1)(B).

Each participating insurer must "have a procedure for making determinations regarding whether an individual . . . is entitled to receive a health service."  42 U.S.C. § 1395w-22(g)(1)(A); 42 C.F.R. § 422.566(a)–(b).  The insurer must also "provide for reconsideration" of its coverage decision "upon request by the enrollee."  42 U.S.C. § 1395w-22(g)(2)(A); *see* 42 C.F.R. § 422.578 *et seq.*  If the beneficiary requests reconsideration by his insurer, and if the insurer "affirm[s] denial of coverage, in whole or in part," that decision is automatically reviewed by "an independent, outside entity" hired by the Secretary.  42 U.S.C. § 1395w-22(g)(4); 42 C.F.R. § 422.592(a).  From that point, if the beneficiary remains unsatisfied, he is entitled to review by an ALJ and then the Medicare Appeals Council, subject to a minimum amount in controversy.  42 U.S.C. § 1395w-22(g)(5); 42 C.F.R. §§ 422.600 (ALJ), 422.608 (Appeals Council).  The Secretary must "make the [insurer] a party" to any such proceedings.  42 U.S.C. § 1395w-22(g)(5).  Finally, "upon notifying the [insurer]," and subject to a separate amount-in-controversy requirement and a 60-day limitations period, a dissatisfied beneficiary is "entitled to judicial review of the Secretary's final decision."  *Id.*; *see id.* § 405(g).  By statute, "both the individual and the [insurer]" are "entitled to be parties to that judicial review."  *Id.* § 1395w-22(g)(5).

## C.    Plaintiffs' Claims for Part B Coverage

In 2015, Carol Lewis filed suit in the United States District Court for the District of Massachusetts, seeking judicial review of a decision by the Medicare Appeals Council that her continuous glucose monitor was not durable medical equipment within the meaning of the Medicare statute and regulations.  *Lewis v. Azar*, 308 F. Supp. 3d 574, 576 (D. Mass. 2018).  The

district court ultimately ruled in her favor, holding that "[t]he Council's decision . . . constituted legal error." *Id.* at 579.  At the time of the Court's ruling, Ms. Lewis had another case pending before the Appeals Council, for review of an indistinguishable ALJ decision.  AR 65.  Before the Council could rule on her appeal, and without presenting the final judgment in her favor,[2] Ms. Lewis requested escalation to district court pursuant to 42 C.F.R. § 405.1132, which was granted, *see* AR 1–4, and timely filed this complaint.  Ms. Lewis seeks judicial review of the denial of a claim for $3,594 in parts and supplies for a continuous glucose monitor, on the grounds that the monitor was not durable medical equipment within the meaning of the Medicare statute and regulations.  AR 89–98.

Douglas Sargent seeks judicial review of the denial of two claims, each for $1,419, which were separately adjudicated through the administrative process.  The Medicare Appeals Council denied both.  AR 963–75, 1991–2003.  Mr. Sargent's continuous glucose monitor did not come within the terms of coverage set out in CMS Ruling 1682-R, at 8, because it was not accurate enough "to replace a blood glucose monitor."  *See* AR 974, 2001–02.

D.     **Procedural History**

Plaintiffs filed suit on December 13, 2018.  ECF No. 1.  The Secretary moved to dismiss Mr. Sargent from the case for failure to meet the statutory amount in controversy, arguing that the value of his claims could not be added together.  The Secretary also moved to dismiss certain counts from the complaint.  ECF No. 22.  While that motion was pending, the parties engaged in discovery.  At the close of discovery, plaintiffs moved for class certification, ECF No. 63, which

---

[2]  In her one-paragraph letter requesting escalation, Ms. Lewis included the District of Massachusetts decision in a string citation following the sentence "Relevant district court decisions have issued."  AR 3.  But she never asked the Medicare Appeals Council to pay her claim in light of the district court judgment in her favor.

the Secretary opposed, ECF No. 65.  The parties filed a total of five briefs on that motion.  *See* ECF Nos. 67 (Reply), 69 (Surreply), & 71 (Reply to Surreply).

The Court denied the motion to dismiss Mr. Sargent from the case, concluding that a Medicare beneficiary could in fact add the value of his claims to satisfy the statutory amount in controversy, as the Second Circuit had recently held.  Mem. Op. at 20, ECF No. 77.  The Court dismissed two counts from the complaint, and dismissed a third as to Ms. Lewis only.  *Id.* at 23, 25, & 32.  The Court denied the pending motion for class certification without prejudice, and set a schedule for that motion to be refiled.  Order at 2, ECF No. 78.

The Secretary answered the complaint.  ECF No. 80.  Plaintiffs then filed a brief motion incorporating by reference their original motion for class certification, and adding several new arguments—one of which was that the Secretary had made a series of inadvertent admissions in his answer.  ECF No. 81.  Plaintiffs then filed a motion making that same argument, ECF No. 82, which became moot when the Secretary filed an amended answer, ECF No. 83.  The Secretary now opposes plaintiffs' renewed motion for class certification.

## ARGUMENT

Judicial review of Medicare claims is "extremely limited."  *Porzecanski v. Azar*, 943 F.3d 472, 480 (D.C. Cir. 2019).  Three limitations will define the scope of any class that could be certified here: 1) the obligation to fully exhaust administrative remedies, which follows from the requirement to obtain a "final decision" of the Secretary, 42 U.S.C. §§ 405(g), 1395ff(b)(1)(A); 2) a limitations period for seeking judicial review that expires sixty days after a beneficiary receives notice of that final decision, *id.* § 405(g); and 3) a provision denying judicial review of any claim below the jurisdictional amount in controversy, *id.* § 1395ff(b)(1)(E).  Applying those

three limits to plaintiffs' proposed class reduces its size from tens of thousands of beneficiaries to fifteen, at the most.

Throughout this litigation, Plaintiffs have suggested that this Court should waive exhaustion of administrative remedies and equitably toll the limitations period, because the Secretary has employed a secret policy that deceives Medicare beneficiaries.  An examination of the law and the Secretary's conduct reveals that he has done no such thing, and that neither waiver nor tolling is appropriate here.  Plaintiffs' primary argument, however, is not that the Court should resolve these issues in their favor, but rather that it may not consider them at all on a motion for class certification.  That is simply wrong, as several circuits have held.  *Pavano v. Shalala*, 95 F.3d 147, 152 (2d Cir. 1996); *Medellin v. Shalala*, 23 F.3d 199, 201 (8th Cir. 1994); *Johnson v. Shalala*, 2 F.3d 918, 921–24 (9th Cir. 1993).  A district court has discretion in defining a potential class of Medicare beneficiaries for purposes of deciding a motion for certification—but it abuses that discretion when it includes time-barred claimants or those who have failed to exhaust their administrative remedies, without first concluding that waiver or tolling are merited.

To prevail on a motion for class certification, plaintiffs must "affirmatively demonstrate" their compliance with Rule 23.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  They have not done so here, principally because a class of fifteen does not satisfy the numerosity requirement of Rule 23(a)(1).  For that reason, and others discussed below, class certification should be denied.

I.     **The proposed class overwhelmingly consists of individuals without any viable claim to judicial review.**

Although Medicare beneficiaries must ordinarily exhaust their administrative remedies and file suit within sixty days of the Secretary's final decision, 42 U.S.C. § 405(g), almost none of the putative class members have done so.  Because class actions do not extend the jurisdiction of the district courts, or enlarge any substantive right, those individuals cannot join a class unless they

could bring a separate action—which they could only do if this Court waived exhaustion of administrative remedies (and, for most of the proposed class, tolled the statute of limitations as well).  Before addressing the class certification requirements set out in Rule 23, the Secretary therefore discusses the limits on judicial review of Medicare claims, explains why waiver and tolling are not appropriate here, and notes the application of the amount-in-controversy requirement to any class claims.

A.   **To be eligible for judicial review, Medicare beneficiaries must ordinarily exhaust administrative remedies, comply with a statute of limitations, and meet a minimum amount in controversy.**

The putative class members' claims all arise under the Medicare statute.  As the D.C. Circuit has explained, "[f]ederal jurisdiction is extremely limited" for such claims.  *Porzecanski v. Azar*, 943 F.3d 472, 480 (D.C. Cir. 2019).  And those jurisdictional limits apply with equal force whether the claims are litigated separately or as a class, because a class action is merely a mechanism for "the aggregation of individual claims."  *In re Asacol Antitrust Litig.*, 907 F.3d 42, 56 (1st Cir. 2018); *see Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) (discussing "[t]he aggregation of individual claims in the context of a classwide suit").  Rule 23, like all the Federal Rules, is a "general rule[] of practice and procedure," 28 U.S.C. § 2072(a), which does "not abridge, enlarge or modify any substantive right," *id.* § 2072(b), nor "extend or limit the jurisdiction of the district courts," Fed. R. Civ. P. 82; William B. Rubenstein, 1 Newberg on Class Actions § 1:1 (5th ed.) ("Rule 23 is . . . fundamentally a *procedural* device," which does not "extend . . . the jurisdiction . . . of federal courts or . . . enlarge any substantive right."  (emphasis in original)).  To be counted as a member of this putative class, therefore, each beneficiary must individually have access to the "extremely limited" federal jurisdiction "for claims arising under the Medicare Act."  *Porzecanski*, 943 F.3d at 480.

The named plaintiffs are beneficiaries seeking "judicial review of the Secretary's final decision" denying coverage under Medicare Part B.  42 U.S.C. § 1395ff(b)(1)(A).  Several interrelated statutory provisions "create the scheme for obtaining judicial review of Medicare claims" such as these.  *American Hosp. Ass'n v. Azar*, 895 F.3d 822, 825 (D.C. Cir. 2018); *see Porzecanski*, 943 F.3d at 480–81.  "First, 42 U.S.C. § 405(h) divests the district courts of federal-question jurisdiction 'on any claim arising under' Title II of the Social Security Act, and it bars any 'decision of the Commissioner of Social Security' from being judicially reviewed, 'except as herein provided' in other Title II provisions."  *American Hosp. Ass'n*, 895 F.3d at 825.  "Second, 42 U.S.C. § 405(g) provides for judicial review of Social Security Act claims, thus creating the exception 'herein provided.'"  *Id.*  "In pertinent part, it permits any person to file a civil action, 'after any final decision of the Commissioner of Social Security made after a hearing to which he was a party,' to 'obtain a review of such decision' in federal district court."  *Id.*  "Third, 42 U.S.C. § 1395ii states that certain provisions in § 405 and elsewhere in Title II 'shall also apply with respect to' Title XVIII of the Social Security Act—*i.e.*, the Medicare Act—'to the same extent as they are applicable with respect to' Title II, with any reference to the 'Commissioner of Social Security' considered as one to the Secretary of HHS."  *Id.* (citing *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 7–9 (2000); *Heckler v. Ringer*, 466 U.S. 602, 614–15 (1984); *Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1130–31 (D.C. Cir. 1992)).  "Although § 1395ii does not specifically enumerate § 405(g) as one of the incorporated Title II provisions," *id.*, § 405(g) is incorporated by 42 U.S.C. § 1395ff(b)(1)(A), which establishes the mechanism for

judicial review of Medicare Part B coverage determinations.[3]   *Porzecanski*, 943 F.3d at 481; *see also Nat'l Kidney*, 958 F.2d at 1130 (discussing earlier version of § 1395ff(b)).

Three limitations on judicial review of a Medicare claim are embedded within that statutory scheme.[4]   First are the paired requirements of presentment and exhaustion: "[j]udicial review may be had only after the claim has been presented to the Secretary and administrative remedies have been exhausted." *American Chiropractic Ass'n v. Leavitt*, 431 F.3d 812, 816 (D.C. Cir. 2005).   A statute of limitations is second: judicial review is only available "by a civil action commenced within sixty days after the mailing . . . of notice" of the Secretary's decision.   42 U.S.C. § 405(g). And the third requirement is a minimum amount in controversy: "judicial review shall not be available to the individual if the amount in controversy is less than" the jurisdictional sum.   *Id.* § 1395ff(b)(1)(E)(i).

Plaintiffs' proposed class is overwhelmingly composed of individuals who did not exhaust their administrative remedies, and whose limitations periods have run.   Many of these putative class members also have claims below the minimum amount in controversy for judicial review. By the Secretary's calculation, at most fifteen individuals have timely claims over which this Court can exercise jurisdiction.   Plaintiffs do not explain in any detail why they believe that other individuals have viable claims (without which they cannot become members of any class).   There is a very brief discussion of exhaustion and the statute of limitations in plaintiffs' class certification motion, where they cite a single case: *Goodnight v. Shalala*, 837 F. Supp. 1564 (D. Utah 1993).

---

[3] Section 405(g) is similarly incorporated by 42 U.S.C. § 1395w-22(g)(5), which establishes the mechanism for judicial review of Medicare Part C coverage determinations.

[4] Because §§ 405(g) and 405(h) are "incorporated *mutatis mutandis*" from the Social Security Act into the Medicare statute, *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 679 (1986), cases interpreting the scope of judicial review under the Social Security Act are directly relevant to the question of federal jurisdiction over Medicare claims.

Mot. at 14–15; ECF No. 63 at 19–20.  The statutory amount in controversy for judicial review of putative class claims is not discussed at all.  Plaintiffs have suggested that "many issues . . . . remain to be addressed," but have declined to present the "detailed analysis" that they suggest is required to resolve the issues of waiver and tolling in their favor.  ECF No. 67 at 5.  Instead, plaintiffs insist that their potential class members' failure to exhaust or to comply with the statute of limitations should not be considered on a motion for class certification, Mot. at 18–19; ECF No. 63 at 23–24.  That simply is not the law.  *See infra* at 27–33.

Exhaustion of administrative remedies and (to a lesser extent) the statute of limitations are the central legal issues for class certification in this case.  The Court's resolution of those issues will determine whether plaintiffs' proposed class would contain tens of thousands of beneficiaries, or only a few.  Yet plaintiffs have almost completely failed to brief these central issues on a motion where they carry the burden of persuasion.  *See, e.g.*, *Comcast*, 569 U.S. at 33.  This all but total failure to carry their burden is, by itself, enough to merit denial.  Despite these inexplicable lacunae in plaintiffs' motion, however, the Secretary will address plaintiffs' position as he understands it.

**B.      Almost all putative class members failed to exhaust their administrative remedies, and waiver of exhaustion is not justified here.**

In their class certification brief, plaintiffs suggest that 145 potential class members have exhausted their administrative remedies by receiving a decision from the Medicare Appeals Council.  Mot. at 10, ECF No. 63 at 15.  (Most of those claims are time-barred, however, as discussed below.)  Yet plaintiffs seek certification of a class with tens of thousands of members who have not exhausted their administrative remedies.  To obtain certification of such a class, they must therefore persuade the Court that this is the rare Medicare case in which the full exhaustion of "all available administrative remedies" should be waived.  *Porzecanski*, 943 F.3d at 481; *American Hosp. Ass'n*, 895 F.3d at 826.

- 11 -

*Judicial waiver of exhaustion is possible "in certain circumstances."* Full exhaustion of the "many . . . procedural steps set forth in § 405(g)" is ordinarily mandatory, but "a court can deem [it] waived in certain circumstances, even though the agency technically holds no 'hearing' on the claim." *Ill. Council*, 529 U.S. at 24 (citations omitted). Plaintiffs suggest that the circumstances here are "extremely similar" to those in *Goodnight v. Shalala*, 837 F. Supp. 1564 (D. Utah 1993), which they describe as involving a "secret, illegal policy" whose existence led the district court to waive the full exhaustion of administrative remedies. Mot. at 14; ECF No. 63 at 19. As it seems to be the main source of plaintiffs' argument for waiver—and, as will be seen below, for equitable tolling as well—the Secretary will examine the case in some detail, and then compare it to the agency conduct at issue here.

*Goodnight v. Shalala* was a class action brought by residents of Utah who had applied for benefits under the Social Security Disability Insurance (SSDI) or Supplemental Security Income (SSI) programs. Eligibility for either program requires a finding of disability. As the *Goodnight* court described it, "[w]hether an individual is disabled is initially determined by a state agency, pursuant to regulations, guidelines, and standards established by the Secretary." 837 F. Supp. at 1568. The regulations required a "five-step 'sequential evaluation' process" involving an individualized assessment of each applicant's impairments and abilities. *Id.* An unsatisfied applicant was then entitled to "a three-stage administrative review process," beginning with reconsideration by the state agency, and followed by two levels of federal review, one conducted by an ALJ and the next by an Appeals Council. *Id.* at 1568–69.

Plaintiffs' allegations were, in essence, that Utah's state agency was not conducting the first two steps of this process in good faith. Plaintiffs contended that Utah "den[ied] applications for SSDI and SSI benefits without an individual assessment of the applicant's ability." *Id.* at 1569.

Plaintiffs did not "challenge specific disability determinations, but, rather, [sought] relief" from what they alleged was Utah's systematically unlawful conduct of the first two steps of the administrative process, *id.*—the "clandestine and illegal policies and practices" by which the state ignored the federal requirement of individualized assessment, *id.* at 1583. Their "only challenge to the Secretary [wa]s that she ha[d] failed to assure compliance with federal disability law by the State" of Utah. *Id.* at 1569.

All of the putative class members had presented their claims to the Secretary, but many had not fully exhausted their administrative remedies. Plaintiffs argued that Utah's "secret policy" of refusing to apply federal law in good faith justified waiver. *Id.* at 1572. The *Goodnight* court found that this question, and hence its own jurisdiction under 42 U.S.C. § 405(g), "depend[ed] entirely on whether Plaintiffs satisf[ied] the test for waiver established by [*Bowen v.*] *City of New York*," 476 U.S. 467 (1986). 837 F. Supp. at 1572.

That case bore a strong resemblance to *Goodnight*, except that the Secretary's own conduct of the five-step evaluation process was at issue. *City of New York*, 476 U.S. at 470. Plaintiffs there alleged, on behalf of a class, that the Secretary employed a "fixed clandestine policy against those with mental illness," *id.* at 475, which "had the effect of eliminating steps four and five from the sequential evaluation process," *id.* at 473. For mentally ill applicants whose impairments did not appear on a certain list, the Secretary would apply a "presumption . . . of ability to do at least unskilled work," instead of conducting an individualized assessment. *Id.* This presumption led to the denial of disability benefits. *Id.* The district court found that the Secretary had in fact "followed the covert policy alleged by respondents and that the policy was illegal." *Id.* at 474.

Before the Supreme Court, the Secretary challenged the inclusion in the *City of New York* class of individuals who had failed to fully exhaust their administrative remedies. After discussing

the government's "secretive conduct" and "clandestine," "illegal," "unrevealed policy," *id.* at 481, 485, the Court concluded that "it would be unfair to penalize . . . claimants for not exhausting under these circumstances," where they "could not attack a policy they could not be aware existed," *id.* at 482 (quotation omitted).  The Court therefore waived exhaustion for those claimants whose time to exhaust had expired.  *Id.*  As for claimants who still had the opportunity to exhaust, the Court looked to *Mathews v. Eldridge*, where it had waived exhaustion for a constitutional challenge "entirely collateral to [a] substantive claim of entitlement," on which "full relief" would not be assured "at a postdeprivation hearing," because irreparable harm could well occur in the interim.  *Id.* at 483 (quoting *Mathews*, 424 U.S. 319, 330–31 (1976)).  The circumstances were comparable in *City of New York*: the class members "challenged the Secretary's failure to follow the applicable regulations," not the denial of particular benefits, and the district court had found that they were at risk of an irreparable harm.  *Id.*  The Court therefore waived exhaustion in *City of New York* for claimants who still had the opportunity to exhaust, as well, emphasizing that the "application of the exhaustion doctrine is 'intensely practical.'"  *Id.* at 484 (quoting *Mathews*, 424 U.S. at 331 n.11).

After reviewing the facts and holding of *Bowen v. City of New York*, the *Goodnight* court returned to the case before it.  It concluded that "[w]hether the secret policy is applied at the first two levels of administrative review, as Plaintiffs allege, or throughout the entire appeals process, as in *City of New York*, is a meaningless distinction," 837 F. Supp. at 1572, and that "[t]he same reasoning used by the *City of New York* Court applies equally well to the facts alleged . . . in the instant case" by plaintiffs who "could not have known that their adverse decisions allegedly were made on the basis of systematic procedural irregularities," *id.* at 1573.  The *Goodnight* court therefore waived full exhaustion for putative class members whose time to exhaust had expired.

*Id.*  Turning to the class members who still had time to exhaust, the *Goodnight* court found that "Plaintiffs' challenge to the procedural irregularities at the Utah [state agency] and to the Secretary's failure to ensure that uniform standards are applied at all levels of review is collateral to their claims for disability benefits," *id.* at 1574, and that the prospect of "several months without food, shelter, or other necessities" while they pursued their administrative remedies would constitute an irreparable harm, *id.* at 1575.  Finally, the *Goodnight* court concluded that "the policies underlying exhaustion of remedies would not be undermined" by waiver because "[t]he administrative process available to disability claimants does not provide an adequate means of developing the facts concerning the alleged unfairness of the claimants' application process at the Utah" state agency, *id.* at 1576, and so requiring exhaustion "would leave claimants with no possible means [of] challeng[ing] alleged clandestine policies and procedures applied at the state level," *id.* at 1577.

    ***Grounds for waiver asserted here.***  To the extent that plaintiffs have presented any argument on the subject of exhaustion, they have suggested that *Goodnight v. Shalala*—and, by reference, *Bowen v. City of New York*—should govern this Court's analysis.  As we have seen, those cases involved 1) plaintiffs bringing a collateral challenge (not directly seeking benefits), 476 U.S. at 483; 837 F. Supp. at 1573; 2) against a secret policy of refusing to conduct individualized assessments, 476 U.S. at 484–85; 837 F. Supp. at 1572; in circumstances where 3) requiring exhaustion would raise a serious risk of irreparable harm, 476 U.S. at 483–84; 837 F. Supp. at 1577; and 4) the purposes of exhaustion would not be undermined by waiver, 476 U.S. at 484–86; 837 F. Supp. at 1576–77.  None of those things is true here.

    In this case, plaintiffs appear to suggest that the Court should waive exhaustion for putative class members who did not pursue "all available administrative remedies," *Porzecanski*, 943 F.3d

at 481; *American Hosp. Ass'n*, 895 F.3d at 826, because when those beneficiaries received their initial denials, the true "basis for the denial was either hidden from them or the Secretary falsely represented that coverage was 'statutorily excluded.'"  Mot. at 15; ECF No. 63 at 20.   To understand this argument—which, again, plaintiffs do not develop at all in their motion for class certification—will require a review of the format in which initial denials are issued to Medicare beneficiaries.

The named plaintiffs received three initial denials of claims for coverage of continuous glucose monitors, which will serve as representative examples here.  Their claims were initially denied on the grounds that "Medicare does not pay for this item or service." AR 309–10, 1935, 2187.  That explanation appeared in a note at the bottom of each page on which a CGM claim was listed.  The full discussion of one of Mr. Sargent's initially denied claims appears below:

Douglas Sargent                                    **THIS IS NOT A BILL** | Page 5 of 6

August 9, 2016
Minimed Distribution Corp; (800)933-3322
18000 Devonshire St, Northridge, CA 91325-1219
Ordered by Christine M Signore

| Quantity, Item/Service Provided & Billing Code | Item/Service Approved? | Amount Supplier Charged | Medicare-Approved Amount | Amount Medicare Paid | Maximum You May Be Billed | See Notes Below |
|---|---|---|---|---|---|---|
| 90 Sensor; invasive (e.g., subcutaneous), disposable, for use with interstitial continuous glucose moni (A9276-GX) Voluntary liability notice | NO | $1,419.00 | $0.00 | $0.00 | $1,419.00 | G |
| **Total for Claim #16230744538000** | | $1,419.00 | $0.00 | $0.00 | $1,419.00 | H |

**Notes for Claims Above**

**G**  Medicare does not pay for this item or service.

**H**  We have sent your claim to ANTHEM BCBS NORTHEAST - PART B. Send any questions regarding your Medigap benefits to them.

AR 2187 (white space removed); *see* AR 309–10, 1935.[5]

Plaintiffs apparently allege that because (as they contend) continuous glucose monitors are durable medical equipment within the meaning of the Medicare statute and regulations, the message "Medicare does not pay for this item or service" evinced a federal policy of deceiving beneficiaries about whether their CGM was a covered device.  The nature of the alleged deception is either that a) the Secretary told beneficiaries that CGMs were non-covered when in fact (on plaintiffs' account) the law required coverage, or b) the Secretary's message was too vague, and failed to elaborate on the legal analysis by which he had concluded that "Medicare does not pay for this item or service."  On the latter theory, beneficiaries would have known to pursue further administrative review if they had been given a more detailed explanation, and the absence of such an explanation deprived them of a fair opportunity to seek review.  (It is far from clear why plaintiffs believe that a more detailed message such as "We have determined that this item is not durable medical equipment under 42 C.F.R. § 414.202" would have greatly increased the likelihood of administrative appeal.)

As to a subset of putative class members, plaintiffs evidently contend that the Secretary affirmatively misrepresented the reason for the denial of their claims by including the phrase "Statutorily excluded" on the initial denial form.  Ms. Lewis can serve as the example here:

---

[5] These administrative record pages are attached as Exhibit A to the Secretary's motion for protective orders, ECF 39-1.

October 26, 2015
Neighborhood Diabetes (800)937-3028
600 Technology Park Dr20 Billerica, MA01821-4127
Ordered by Richard S Beaser

| Quantity, Item/Service Provided & Billing Code | Item/Service Approved? | Amount Supplier Charged | Medicare-Approved Amount | Amount Medicare Paid | Maximum You May Be Billed | See Notes Below |
|---|---|---|---|---|---|---|
| 1 Transmitter; external, for use with interstitial continuous glucose monitoring system (A9277-GY) Statutorily excluded | NO | $999.00 | $0.00 | $0.00 | $999.00 | A |
| Total for Claim #15300737497000 | | $999.00 | $0.00 | $0.00 | $999.00 | |

**Notes for Claims Above**

**A**  Medicare does not pay for this item or service.

AR 310 (white space removed); *see* AR 309.

This claim, like all Medicare claims, was submitted by the supplier with a billing code: in this case, A9277, which is the code for the transmitter component of a CGM that is not covered as durable medical equipment.  Mr. Sargent's above claim was submitted by the supplier with the billing code A9276, which corresponds to sensors for a non-covered CGM device, AR 2187; Ms. Lewis also seeks reimbursement for such sensors and for a non-covered receiver, which is billing code A9278, *see* AR 309.  (CGM components covered under the terms of CMS Ruling 1682-R have separate codes, K0553 for the durable receiver and K0554 for the supplies.)

As with many such claims, the submitting suppliers appended modifiers to their billing codes.  "In Medicare's claim submission system, suppliers" can place "'modifiers' on the claim to communicate information to Medicare."  *United States v. Adebimpe*, 819 F.3d 1212, 1215 (9th Cir. 2016).  More than three hundred such modifiers are currently in use, conveying a wide range of information.  When a supplier appends a modifier to a billing code, a short description of that

- 18 -

modifier appears on the initial coverage determination, after the description of the item or service that is the subject of the claim.[6]

The GX modifier, which was used by the supplier for both of Mr. Sargent's claims, AR 1935, 2187, tells Medicare that the supplier issued a voluntary notice of liability to the beneficiary, informing him that the supplier did not expect Medicare to cover the item in question.  The dictionary of modifiers, *see supra* note 6, defines GX to mean "Notice of liability issued, voluntary under payer policy," which is shortened to "Voluntary liability notice" when it appears on initial denial forms.  (The notice is voluntary because a supplier is not required to issue it to a beneficiary in these circumstances.)  And the GY modifier, which was used for all three components of Ms. Lewis's claim, AR 309–10, similarly indicates that the supplier believes the item not to be covered by Medicare.  The modifier dictionary glosses GY as "Item or service statutorily excluded, does not meet the definition of any [M]edicare benefit or, for non-[M]edicare insurers, is not a contract benefit," which is shortened to "Statutorily excluded" on initial denial forms.  *See Nat'l Athletic Trainers Ass'n v. HHS*, 455 F.3d 500, 506 (5th Cir. 2006) (discussing GY modifier).

Plaintiffs contend that the shortened description of the GY modifier misleads beneficiaries whose item or service is not literally excluded from coverage by the plain text of the Medicare statute.  To be clear, the Secretary has never argued that the exclusion is expressly spelled out in the U.S. Code—it plainly is not, *see* 42 U.S.C. § 1395x(n)—but rather that, as the modifier dictionary puts it, certain continuous glucose monitors "do[] not meet the definition of any . . . benefit" under the Medicare regulations, which are a lawful implementation of the statutory

---

[6] A dictionary of the modifiers is publicly available at https://www.cms.gov/Medicare/ Coding/HCPCSReleaseCodeSets/HCPCS-Quarterly-Update.  In the ZIP file called "April 2021 Alpha-Numeric HCPCS File," there is an Excel document titled HCPC2021_APR_CONTR_ ANWEB.  The GX and GY modifiers are defined in rows 132 and 133.  These definitions have not changed in the period relevant to this case.

scheme.  Within the agency and the vast community of suppliers serving Medicare beneficiaries, "statutorily excluded" is the shorthand for this position.

The question for the Court is whether this piece of bureaucratic jargon, or the anodyne phrase "Medicare does not pay for this item or service"—which is the actual explanation for each initial denial in this case—is the equivalent of the "secretive conduct" and "clandestine," "illegal," "unrevealed" policies that justified waiver of exhaustion in *Bowen v. City of New York*, 476 U.S. at 481, 485 and *Goodnight v. Shalala*, 837 F. Supp. at 1571–72.  And to ask that question is to answer it.

***Waiver is not merited here.***  In *City of New York* and *Goodnight*, an agency held itself out as performing an individualized assessment of each disability applicant, in accordance with the governing regulations, when in fact (or at least as alleged) it was issuing blanket denials or otherwise egregiously departing from lawful procedures.  In this case, the Secretary has initially denied claims for coverage of continuous glucose monitors on the grounds that "Medicare does not pay for this item or service," which is an accurate reflection of the Secretary's legal interpretation, and a phrase that he commonly uses on initial denial forms.  Since 2017, the Secretary has published a full explanation of that position on his website as CMS Ruling 1682-R: quite the opposite of a "clandestine" or "unrevealed" policy.  Before that time, his ALJs and Appeals Council issued many opinions on the subject, and the Secretary defended the substance of the interpretation in open court.  Again, not "secretive" at all.  It is true that the Secretary did not include his full legal analysis on every initial denial, but he never does so for any item or service, and that has never been found to justify waiver.  And it is true that some initial denials also bore the phrase "statutorily excluded" as a shorthand for "does not meet the definition of any [M]edicare benefit" under the statute and regulations.  But that is hardly "illegal" behavior.  Nor

is it "secretive," as the reason for each initial denial was also explained in plain English: "Medicare does not pay for this item or service."  To hold otherwise would suggest that exhaustion should be waived in the broad range of Medicare cases where the GY modifier is used and the statute does not literally name the excluded item or service.  There is simply no reasonable comparison to be made between this case and *City of New York* or *Goodnight*.  There was no secretive conduct or clandestine policy here.  And so there are no grounds for waiver of exhaustion.

Moreover, *City of New York* and *Goodnight* involved collateral challenges to agency policy, not direct claims for benefits (as this case does).  They involved benefits programs where requiring exhaustion could raise a serious risk of irreparable harm, as an applicant might go "several months without food, shelter, or other necessities" while exhausting his remedies.  837 F. Supp. at 1575; *see* 476 U.S. at 483–84.  Here, the plaintiffs and putative class members allege that they are owed reimbursement for medical equipment that they used (in most cases) years ago.  And finally, *City of New York* and *Goodnight* rested partly on the determination that the exhaustion of "all available administrative remedies," *Porzecanski*, 943 F.3d at 481; *American Hosp. Ass'n*, 895 F.3d at 826, would not serve the purposes of the exhaustion doctrine.  Here, the D.C. Circuit has counseled the opposite, in *Ryan v. Bentsen*, 12 F.3d 245 (D.C. Cir. 1993).

***Expedited access to judicial review ensures that exhaustion would serve the purposes of the doctrine.***  In that case, an applicant for Social Security retirement benefits raised a constitutional challenge to the statutory grounds on which his claim was denied.  12 F.3d at 246. He sought reconsideration, but the denial was affirmed.  *Id.*  He "did not request a hearing before an administrative law judge or Appeals Council review as provided by the [Social Security] Act." *Id.*  "The district court dismissed Ryan's case for lack of subject matter jurisdiction because he had not exhausted his administrative remedies."  *Id.* at 247.  On appeal, the D.C. Circuit considered

"whether [it] should waive the exhaustion requirement and remand the case to district court" for consideration of the constitutional claim.  *Id.*  The Circuit noted that "the Supreme Court has sanctioned waiver when the claimant's . . . challenge is collateral to his claim of entitlement and he stands to suffer irreparable harm if forced to exhaust his administrative remedies," *id.* at 248, but explained that Ryan was directly pursuing a claim to entitlement rather than raising a collateral challenge.

The Circuit then considered whether waiver was justified on the grounds that "the constitutionality of a [statutory] provision is an issue beyond [the Secretary's] competence to decide," noting that "exhaustion would appear to be futile."  *Id.* at 247, 248.  To answer that question, the court turned to the expedited appeals process (EAP) established by the Secretary, which allowed claimants to bypass ALJ and Appeals Council review for constitutional claims of statutory invalidity, and proceed directly to district court.  (The Medicare statute and regulations contain an equivalent procedure for expedited access to judicial review of some purely legal claims.  42 U.S.C. § 1395ff(b)(2); 42 C.F.R. § 405.990.)

The *Ryan* court "decline[d] to waive the exhaustion requirement" given the availability of the expedited appeals process, which "benefits both the parties and the court."  12 F.3d at 248.  It benefits the claimant by allowing him "to circumvent full Department review," and benefits both parties because they "come to court in agreement as to the facts and the applicable law," apart from the "the statute's constitutionality."  *Id.*  Therefore, "when the case reaches the district court there will be no question regarding exhaustion of remedies or applicability of the futility doctrine," and no party will "be faced with novel legal or factual claims beyond the constitutional question," *id.*, which "will be isolated for thorough analysis," *id.* at 249.  Moreover, the D.C. Circuit went on, "the court will benefit from the parties' use" of the expedited appeals process.  *Id.*  "When the

- 22 -

procedure is used, a case will come before the court in a posture that facilitates review on the merits." *Id.* "Rather than expending judicial effort," *id.*, on an "intensely practical" analysis of exhaustion and waiver, *Mathews*, 424 U.S. at 331 n.11, "the court is able to pass on the validity of the allegedly unconstitutional statute." *Ryan*, 12 F.3d at 249. Given all of those considerations, the *Ryan* court determined that "resort to the EAP procedure would not have been futile," even for a constitutional claim that the Secretary lacked competence to decide. *Id.* at 248.

The Circuit's guidance in *Ryan* should control this Court's analysis of "the policies underlying the exhaustion requirement" here. *City of New York*, 476 U.S. at 484. Before the issuance of CMS Ruling 1682-R in early 2017, expedited access to judicial review was not available to beneficiaries because the Secretary had not spoken definitively on the issue of whether any or all continuous glucose monitors were durable medical equipment under the Medicare statute and regulations. *See* 42 C.F.R. § 405.990(c)(2) (defining grounds for expedited review). At that time, waiving exhaustion would have "thwart[ed] any effort at self-correction" as the agency adjudicated each claim, and "curtail[ed] development of a record useful for judicial review" by placing bare initial denials before the district court. *Tataranowicz v. Sullivan*, 959 F.2d 268, 275 (D.C. Cir. 1992). Requiring the full exhaustion of "all available administrative remedies" would therefore have served the purposes of the doctrine. *Porzecanski*, 943 F.3d at 481; *American Hosp. Ass'n*, 895 F.3d at 826.

After the issuance of CMS Ruling 1682-R, which binds the Medicare Appeals Council, *see* 42 C.F.R. §§ 401.108, 405.1063(b), requiring exhaustion might arguably have been futile if expedited access to judicial review of that Ruling were unavailable. *Ryan*, 12 F.3d at 248. But the Medicare statute and regulations authorize expedited review when "the only factor precluding a decision favorable to the requestor is . . . [a] CMS Ruling that the requester considers invalid."

42 C.F.R. § 405.990(c)(2), (ii); *see* 42 U.S.C. § 1395ff(b)(2).  And as *Ryan* teaches, when the legal question presented is beyond the agency's competence to decide, such expedited review procedures ensure that exhaustion still serves the policies underlying the doctrine.[7]  12 F.3d at 248–49; *see Council for Urological Interests v. Sebelius*, 668 F.3d 704, 711 (D.C. Cir. 2011) (noting that "the Medicare Act's provisions for expedited judicial review" afford "prompt access to the federal courts").

For the reasons discussed above, these are not the "rare circumstances," *Goodnight*, 837 F. Supp. at 1570, in which the jurisdictional requirement of exhausting "all available administrative remedies" should be waived.  *Porzecanski*, 943 F.3d at 481; *American Hosp. Ass'n*, 895 F.3d at 826.

>    **C.**     **Any claim that accrued before October 9, 2018 is time-barred, and tolling of the limitations period is not justified here.**

Under 42 U.S.C. § 405(g), a Medicare beneficiary may only obtain judicial review "by a civil action commenced within sixty days" after he receives notice of the Secretary's decision.

---

[7] To the best of the Secretary's knowledge, *Tataranowicz* and *Ryan* are the only cases in which the D.C. Circuit has addressed waiver of the exhaustion usually required by 42 U.S.C. § 405(g). Although the cases initially appear to be in some tension, they are easily harmonized.  In *Tataranowicz*, the D.C. Circuit waived exhaustion in a challenge to the Secretary's interpretation of the Medicare statute, as recently amended.  959 F.2d at 274–75.  But when that case was decided in 1992, Congress had not yet provided for expedited access to judicial review of Medicare claims. *See* Pub. L. 108-173, tit. IX, § 932(a), 117 Stat. at 2399 (Dec. 8, 2003) (enacting 42 U.S.C. § 1395ff(b)(2)).  (Moreover, the interpretation challenged in *Tataranowicz* may never have been eligible for expedited review, as it seems not to have been announced in a regulation, CMS Ruling, or other binding format.  42 C.F.R. § 405.990(c)(2); *see* 959 F.2d at 271.)  *Tataranowicz* and *Ryan* together suggest a rule that waiver of full exhaustion may sometimes be appropriate when plaintiffs bring certain purely legal challenges, 959 F.2d at 273–75, but not if Congress or the Secretary has provided a mechanism for expedited judicial review of such challenges, as is available here, 12 F.3d at 248–49.

This is a statute of limitations, not a jurisdictional requirement.  *Mathews v. Eldridge*, 424 U.S. 319, 328 n.9 (1976).

Regulations establish a rebuttable presumption that a beneficiary receives notice within five days of the mailing of the Secretary's decision.  42 C.F.R. § 405.1136(c)(2).  This suit was filed on December 13, 2018.  Any putative class member's challenge to a decision issued before October 9, 2018 is therefore time-barred, absent unusual circumstances with the mailing.[8]  The filing of the class complaint automatically suspended the limitations period for all members of the asserted class, so no claims have expired since that date.  *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553–54 (1974).  But claims that were barred when the complaint was filed remain so, unless the Court applies equitable tolling.

Plaintiffs seem to suggest equitable tolling for the same reason that they urge waiver of exhaustion: the Secretary's practice of explaining that Part B coverage was initially denied because "Medicare does not pay for this item or service," and sometimes employing the phrase "statutorily excluded" on those initial denial forms.  *See* Mot. at 14–15; ECF No. 63 at 19–20.  But as discussed above, *see supra* at 20–21, those practices come nowhere near the "secretive conduct" and "clandestine polic[ies]" that justified equitable tolling of the statute of limitations in *Goodnight*, 837 F. Supp. at 1573, and *City of New York*, 476 U.S. at 480–81.  Equitable tolling is not appropriate here.

---

[8] Plaintiffs suggest that, if the Court waived full exhaustion, challenges to any initial denial issued on or after August 15, 2018 would be timely.  But that confuses the longer deadline for pursuing administrative remedies, 42 U.S.C. § 1395ff(a)(3)(C)(1), with the shorter timeline for seeking judicial review.  Absent equitable tolling, a Medicare beneficiary may only obtain judicial review of a "decision of the [Secretary]" in "a civil action commenced within sixty days" after receiving notice of that decision.  *Id.* § 405(g).

**D.      Any beneficiary with claims totaling less than $1,600 falls below the minimum amount in controversy, and supplemental jurisdiction is not available.**

Jurisdiction to review Medicare claims is also restricted by an amount-in-controversy requirement, which stood at $1,600 when this suit was filed.  42 U.S.C. § 1395ff(b)(1)(A), (E)(i), (iii); *see* 83 Fed. Reg. at 47,620.  Unless potential class members have timely, exhausted claims for review that are cumulatively worth more than that sum, their claims are therefore barred.[9]

Although plaintiffs do not discuss it in their motion for class certification, the Secretary understands their position to be that the Court's original jurisdiction over any beneficiary's claim for CGM coverage justifies supplemental jurisdiction over every beneficiary's claim, even if those beneficiaries cannot themselves satisfy the amount-in-controversy requirement.  That argument is incorrect: two claims are only "so related . . . that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), if they "derive from a common nucleus of operative fact," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  If "*a plaintiff's claims* are such that he would ordinarily be expected to try them all in one judicial proceeding," then there is such a common nucleus.  *Id.* (emphasis added); *accord Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 580 (2005).  But there is no such common factual nucleus between the claims of separate plaintiffs whose only relationship is a common legal argument.  The claims of beneficiaries who cannot satisfy the amount-in-controversy requirement are not "such that [they] would ordinarily be expected to try them all in one judicial proceeding" together with the claims of beneficiaries who can satisfy that requirement.  To the contrary, each beneficiary would ordinarily be expected to bring his claims in a completely separate proceeding.

_____

[9] The Secretary accepts the Court's interpretation of the statutory amount-in-controversy requirement as the law of this case for the purposes of this motion.

This Court therefore lacks supplemental jurisdiction over those beneficiaries whose claims fall short of the jurisdictional amount in controversy.

In sum, this Court lacks subject matter jurisdiction over any class members the value of whose claims for review totals less than $1,600.

## II.   In defining the potential class, the Court must consider the statute of limitations and the limits of its own jurisdiction.

When defining the scope of a potential Medicare or Social Security class, and determining whether its members would be sufficiently numerous, district courts regularly and properly consider whether putative class members have exhausted their administrative remedies, and whether they could file a timely complaint.  If putative class members have not exhausted or could not timely file, then—*before ruling on class certification*—the district court considers whether exhaustion should be waived or the limitations period tolled, so that the court knows whether to include these individuals in its definition of a potential class, and whether to count them for purposes of assessing numerosity. [10]

---

[10] *See, e.g.*, *Alexander v. Price*, 275 F. Supp. 3d 313, 321 (D. Conn. 2017) (defining class of Medicare beneficiaries to exclude individuals as to whom the statute of limitations had run, because "plaintiffs have not met their burden to justify equitable tolling"); *Clark v. Astrue*, 274 F.R.D. 462, 467 (S.D.N.Y. 2011) (including "individuals who did not exhaust administrative remedies" in Social Security class because waiver was appropriate, and considering whether "the inclusion in the class of individuals who failed to seek judicial review of the agency's decision within the prescribed 60-day statute of limitations" could be justified by equitable tolling); *Landers v. Leavitt*, 232 F.R.D. 42, 45 (D. Conn. 2005) (deciding, on a motion for class certification, whether putative class members "who have not fully exhausted applicable administrative remedies and appeals" are within the court's jurisdiction in a Medicare coverage case); *Kendrick v. Sullivan*, 784 F. Supp. 94, 105 (S.D.N.Y. 1992) (resolving, on motion for class certification, the argument "that most if not all of the proposed class members fail to meet the requirements of [42 U.S.C.] § 405(g) and are therefore ineligible for federal court redress of their claims," and that "once these ineligible individuals are excluded from the proposed class, the remaining members are too few in number to satisfy the numerosity requirement"); *White v. Sullivan*, 1991 WL 315124, at *2–*7 (D. Vt. Oct. 15, 1991) (deciding issues of waiver and equitable tolling on motion for class certification); *Kennedy v. Sullivan*, 138 F.R.D. 484, 489 (N.D. W. Va. 1991) (Because "[t]he membership of the class must necessarily be limited to those over whom the Court has jurisdiction," a Social Security

Individuals who have not exhausted, or could not timely file, should not be included in a potential class definition nor counted for purposes of numerosity unless the Court determines that waiver of exhaustion or equitable tolling of the limitations period should be applied to their claims. A district court has discretion on a motion for class certification, but it abuses that discretion if it includes such individuals in a certified class without validly applying the doctrines of waiver or tolling. Three circuits have squarely held as much. *Pavano v. Shalala*, 95 F.3d 147, 152 (2d Cir. 1996); *Medellin v. Shalala*, 23 F.3d 199, 201 (8th Cir. 1994); *Johnson v. Shalala*, 2 F.3d 918, 921– 24 (9th Cir. 1993); *see also Tataranowicz v. Sullivan*, 959 F.2d 268, 272 (D.C. Cir. 1992) (In a Medicare class action, "to define the plaintiff class, . . . turns on the presentment and exhaustion issues."). Because plaintiffs evidently contend that these cases do not apply here, the Secretary will review them briefly.

Like this case, *Pavano* involved a claim for coverage under Medicare Part B. The district court certified a class, and determined "that January 21, 1994, was the proper cut-off date for including class members because that was when Plaintiffs filed their class action, which . . . tolls the statute of limitations." 95 F.3d at 152. On appeal, plaintiffs contended that "the district court certified the plaintiff class too narrowly," because "equitable tolling of the 60–day statute of limitations (for filing in the district court following a final agency decision) should have applied to all beneficiaries." *Id.* "The government," in turn, "argue[d] that the class certification was too broad in that it included claimants over whom the district court did not have jurisdiction because

---

plaintiff "must establish that the class definition satisfies [the 42 U.S.C.] § 405(g) requirements," including exhaustion and the 60-day statute of limitations.); *Day v. Bowen*, 1990 WL 357274, at *2 (S.D. Ohio Jan. 22, 1990) (deciding, in Social Security case, whether "individuals who have not yet exhausted their administrative remedies, and those who have failed to appeal the denial of their claims . . . within sixty days," can be included in "[t]he proposed class"); *Grant v. Sullivan*, 720 F. Supp. 462, 471–74 (M.D. Pa. 1989) (considering arguments for equitable tolling and waiver of full exhaustion on motion for class certification in Social Security case).

they had not exhausted their administrative remedies at the time the action was brought." *Id.* at 152 n.9. The Second Circuit concluded that "equitable tolling for all beneficiaries is not warranted," and that time-barred beneficiaries were therefore properly excluded from the class. *Id.* at 152. The *Pavano* court did not rule on the exhaustion issue, because "many class members [might] have exhausted their administrative remedies" "by the time the case return[ed] to the district court" on remand. *Id.* at 152 n.9.

*Medellin* involved the calculation of Supplemental Security Income benefits, which is subject to judicial review under 42 U.S.C. § 405(g). The district court certified a class including both "individuals who failed to exhaust fully the available administrative remedies and for whom exhaustion and judicial review were time-barred at the time the complaint was filed," and also "individuals who fully exhausted the available administrative remedies, but failed to pursue timely judicial review and for whom judicial review was time-barred at the time the complaint was filed." 23 F.3d at 202. "The Secretary appeal[ed] the district court's order including [these categories of individuals] in the certified class." *Id.*

The *Medellin* court referred to the first group (which neither exhausted nor timely filed) as "Category One," and the second group (which exhausted, but did not timely file) as "Category Two." The Eighth Circuit explained that "[e]quitable tolling principles . . . resolve whether the Categories One and Two putative class members may go forward with their claims because both sets of claimants are otherwise barred by a limitations period." *Id.* at 202–03; *see id.* at 204 ("The real issue to be decided is whether the applicable limitations periods of the Category One and Category Two claimants can be tolled pursuant to the doctrine of equitable tolling."). The *Medellin* court held "that equitable tolling cannot justify the certification of the Category One and Category Two claimants as members of the class, and thus . . . that the district court erred when it certified

these claimants as class members." *Id.* at 205.  The Eighth Circuit "reverse[d] the district court's order certifying as class members those claimants with final decisions that are now barred by a limitations period." *Id.*

*Johnson* also involved the Supplemental Security Income program.  On appeal, the Secretary challenged the district court's class certification order, which included "claims that had 'lapsed'—become final—more than 60 days before the filing of the claim in this case" (this is similar to *Medellin*'s "Category Two") and "claims that had not lapsed at the time this action was filed but subsequently failed to exhaust their administrative remedies" (similar to *Medellin*'s "Category One").  2 F.3d at 920.  "The district court waived the exhaustion requirement and tolled the sixty-day statute of limitations," and therefore included both groups in the certified class.  *Id.* The Ninth Circuit "review[ed] the district court's class definition order for an abuse of discretion." *Id.*  It "affirm[ed] the district court's waiver of the exhaustion requirement," but found that "[t]he district court . . . abused its discretion in tolling the sixty-day statute of limitations."  *Id.* at 923; *id.* at 925 ("We affirm the district court's decision to excuse the exhaustion requirement and reverse its decision to toll the sixty-day statute of limitations.").

Plaintiffs have contended that failure to exhaust or comply with the statute of limitations should not affect whether a Medicare beneficiary is counted for membership in the putative class. ECF No. 67 at 6–10.  But, as we have seen, the Second, Eighth, and Ninth Circuits all consider the certification of a class including such individuals to be an abuse of discretion, unless waiver or equitable tolling applies to their claims.  And district courts regularly consider these questions on motions for class certification.[11]

---

[11] *See supra* note 10.  The case of *Goodnight v. Shalala* is again representative.  "Before even addressing the requirements of Rule 23," the *Goodnight* court considered the argument "that members of the putative class have not exhausted their administrative remedies as required by [42

Plaintiffs rest their argument to the contrary on the general propositions that failure to exhaust or comply with the statute of limitations is an affirmative defense, and affirmative defenses cannot be considered on a motion for class certification.  That is sometimes true, but often not in the way that plaintiffs suggest—and in any event these general principles are no answer to *Pavano*, *Medellin*, and *Johnson*, in which three circuits addressed the specific question in the specific context presented by this motion.

Plaintiffs have pointed to *International Woodworkers of America v. Chesapeake Bay Plywood Corporation*, which noted that "[c]ourts passing upon motions for class certification have generally refused to consider the impact of such affirmative defenses as the statute of limitations on the potential representative's case."  659 F.2d 1259, 1270 (4th Cir. 1981) (emphasis added).  Although the potential representative's claim "was time-barred," that did not "destroy the viability of timely . . . claims of . . . the potential class members."  *Id.*  The Fourth Circuit therefore remanded to "permit a proper plaintiff or plaintiffs . . . to present themselves to the court to pursue the claim as class representatives" in lieu of the time-barred plaintiff.  *Id.*  In this case, by contrast, the Secretary is asking the Court to keep time-barred claims out of the class definition, not to exclude timely claims from the class because of a defect in representation.

Some of plaintiffs' other cases are even further afield.  They have cited a single sentence in *Harris v. comScore, Inc.*, 2012 WL 686709, at *6 (N.D. Ill. Mar. 2, 2012), which refused to

---

U.S.C.] § 405(g), and that many have failed to seek timely judicial review of final administrative denials of benefits."  837 F. Supp. at 1581.  The court concluded that most of these individuals should nonetheless be considered for class membership, because waiver of full exhaustion and equitable tolling of the limitations period were appropriate as to them.  Only after assuring itself that this portion "of the proposed class meets the jurisdictional requirements as set forth *supra* Pt. II.A.2," in which the court discussed exhaustion and the limitations period, did the *Goodnight* court proceed to "consider certifying a class defined" to include those individuals, who would have been excluded from the class definition absent waiver or tolling.  *Id.* at 1582.

enforce an interrogatory before discovery on the merits was open, because the interrogatory attempted to probe a defense to the merits of the claim.   Another case, like *International Woodworkers*, refused to consider an affirmative defense <u>that only applied against the class representative</u> in considering the adequacy of representation.  *Doran v. Mo. Dep't of Social Servs.*, 251 F.R.D. 401, 406 (W.D. Mo. 2008).  None of these cases stand for the proposition that plaintiffs would assert here: that the Court must define a class of Medicare beneficiaries without regard to whether those putative class members have exhausted their administrative remedies or could bring a timely claim.

Plaintiffs have also insisted that "the court may not decide the merits" on a class certification motion.  ECF No. 67 at 9.  That is not a completely accurate statement of the law.  "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).  As the cases discussed above demonstrate, the statute of limitations and the requirement of exhaustion are centrally relevant to the Court's putative class definition—and therefore to its determination of numerosity—in this case.  And, in any event, those are threshold issues that do not go to the merits of any claim.  Threshold issues may (and the Secretary argues here that they do) bar putative class members from litigating a claim to the merits, but that does not transform failure to exhaust or comply with the statute of limitations into a merits question.

Plaintiffs have suggested that by raising exhaustion and the statute of limitations, the Secretary is attempting to bring "an unnoticed and unbriefed motion for summary judgment on the Secretary's affirmative defenses against the absent class members."  ECF No. 67 at 7.  That is quite wrong.  The absent putative class members are not parties to this litigation, and will not

become parties unless a class is certified here. This Court cannot enter judgment against them, summary or otherwise. But as discussed above, the Court must define a proposed class in order to assess its numerosity. And the Court may not include in that proposed class definition individuals who have failed to exhaust, or could not timely file, unless it finds waiver of exhaustion or equitable tolling of the limitations period to be justified. Plaintiffs' approach, in which those issues would be addressed after class certification, would lead this Court to abuse its discretion, and would moreover prejudice the absent parties. If the Court first certified a class including time-barred claims, then dismissed those claims for failure to comply with the statute of limitations, its decision would result in a preclusive judgment on that issue as to those time-barred beneficiaries. Excluding them from the proposed class definition would have no such binding effect.

There is no legal or practical reason for the Court to avoid the statute of limitations or the requirement of exhaustion in deciding plaintiffs' motion for class certification. To the contrary, the Court *may not* include beneficiaries whose claims are time-barred or unexhausted in its class definition *unless* it determines that waiver or equitable tolling are justified here. *Pavano*, 95 F.3d at 152; *Medellin*, 23 F.3d at 201; *Johnson*, 2 F.3d at 921–24. As discussed at length above, they are not.

## III.   The proposed class does not satisfy the requirements of Rule 23.

We come to the question of class certification under Rule 23. "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Id.* (quoting *Wal–*

*Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).   "The Rule 'does not set forth a mere

pleading standard.'"   *Id.* (quoting *Wal-Mart*, 564 U.S. at 350).

"Class certification is far from automatic."  *In re Rail Freight Fuel Surcharge Antitrust*

*Litig.*, 725 F.3d 244, 249 (D.C. Cir. 2013).  To obtain it, "a class plaintiff has the burden of showing

that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to one of

Rule 23(b)'s subdivisions."  *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006).

Plaintiffs have done neither here.

### A.     The proposed class does not satisfy the requirements of Rule 23(a).

A party seeking class certification must "'prove that there are *in fact* sufficiently numerous

parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of

representation, as required by Rule 23(a)."  *Comcast*, 569 U.S. at 33 (quoting *Wal-Mart*, 564 U.S.

at 350); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  Plaintiffs have not proven

numerosity, and there are questions about the adequacy of the representation that they would

provide to absent class members.

### 1.     Because the proposed class has at most fifteen members with live claims, plaintiffs have not established numerosity.

Under Rule 23(a)(1), plaintiffs must show the existence of a sufficiently "numerous" class.

Plaintiffs suggest that their proposed class numbers in the thousands, which would certainly satisfy

this requirement.  Mot. at 15–16; ECF No. 63 at 20–21.  But, as discussed at length above, the

proposed class consists almost entirely of beneficiaries who have failed to exhaust "all available

administrative remedies" for their claims.  *Porzecanski*, 943 F.3d at 481; *American Hosp. Ass'n*,

895 F.3d at 826.  This Court would lack jurisdiction[12] over those putative class members'

---

[12] Plaintiffs wrongly assert that exhaustion of administrative remedies before bringing Medicare claims is "not jurisdictional."  Mot. at 18; ECF No. 63 at 23.  As the Supreme Court has explained,

individual claims unless it chose to waive exhaustion—which it should not do, for the reasons already discussed—and so it similarly lacks jurisdiction to aggregate those claims into a class action. Rule 23 does not "extend . . . the jurisdiction of the district courts." Fed. R. Civ. P. 82.

A claim for Medicare benefits is fully exhausted upon review by the Medicare Appeals Council. *See* 42 C.F.R. §§ 405.1100, 405.1130. Plaintiffs have identified 145 Appeals Council decisions issued to their putative class members. Mot. at 10, ECF No. 63 at 15. The Secretary is aware of, and has produced to plaintiffs, another six relevant Appeals Council decisions issued after the period covered by the original productions in this case. Absent waiver, the Court at most has subject matter jurisdiction over those 151 "final decision[s]" (plus one more, as discussed below). 42 U.S.C. § 405(g); *id.* § 1395ff(b)(1)(A) (providing for "judicial review of the Secretary's final decision").

As to most of those decisions, the limitations period has run. Unless the Court applies equitable tolling (which it should not) any claim for judicial review of an Appeals Council decision issued before October 9, 2018 is time-barred. *See supra* at 24–25. The Secretary has identified only twenty-three merits decisions of the Medicare Appeals Council issued to putative class members on or after that date.[13] Two of those decisions have been reviewed elsewhere, in cases

---

42 U.S.C. § 405(g) makes the receipt of "a 'final decision' [of the Secretary] . . . a statutorily specified jurisdictional prerequisite," "something more than simply a codification of the judicially developed doctrine of exhaustion." *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975); *see American Chiropractic Ass'n*, 431 F.3d at 816 (discussing the "jurisdictional question" raised by the Medicare statute's provision that "[j]udicial review may be had only after the claim has been presented to the Secretary *and administrative remedies have been exhausted*" (emphasis added)). "Where exhaustion is a jurisdictional requirement," as it is here (though subject to modification by the Court), "every class member must exhaust its administrative remedies." *Menominee Indian Tribe of Wisconsin v. United States*, 614 F.3d 519, 526 (D.C. Cir. 2010).

[13] Counsel for the Secretary arrived at this number by reviewing the decisions of the Medicare Appeals Council that were originally produced in discovery, and the six that have been provided in supplemental productions.

where the plaintiffs opted out of any class that could be certified here.  *See Zieroth v. Azar*, No. 20-cv-172 (N.D. Cal. filed Jan. 8, 2020); *Olsen v. Azar*, No. 19-cv-3814 (RBW) (D.D.C. filed Dec. 23, 2019).   That leaves twenty-one decisions issued to eighteen beneficiaries, including Mr. Sargent.

Of the eighteen beneficiaries with final decisions that are not time-barred and were not reviewed in another action, only nine appear to satisfy the statutory amount in controversy.[14]  The Secretary's regulations make an ALJ decision final when the beneficiary invokes the procedures in 42 C.F.R. § 405.1132, as Ms. Lewis did here.  Adding her claim makes a potential class of ten beneficiaries the value of whose final, non-time-barred decisions appears to exceed the minimum amount in controversy, including both of the named plaintiffs.  In addition, the Medicare Appeals Council has issued relevant decisions to five Part C beneficiaries since October 9, 2018.[15]  The

---

[14] The Appeals Council decisions for these nine beneficiaries are: 1) MAC Dkt. No. M-18-239 (reviewing ALJ Appeal No. 1-6274941714), Bates No. 8615 (AR 1991); MAC Dkt. No. M-18-6040 (reviewing ALJ Appeal No. 1-7414111088), Bates No. 8791 (AR 963); & MAC Dkt. No. M-19-685 (reviewing ALJ Appeal No. 1-7725439646), Bates No. 8863; 2) MAC Dkt. No. M-18-686 (reviewing ALJ Appeal No. 1-6530760780), Bates No. 8804; & MAC Dkt. No. M-19-703 (reviewing ALJ Appeal No. 1-6303395252R1), Bates No. 8875; 3) MAC Dkt. No. M-18-3232 (reviewing ALJ Appeal Nos. 1-6960804335 & 1-6960804485), Bates No. 8732; 4) MAC Dkt. No. M-18-6145 (reviewing ALJ Appeal No. 1-7157501924), Bates No. 8828; 5) MAC Dkt. No. M-19-1973 (reviewing ALJ Appeal Nos. 1-8048536100 & 1-8048583213), Bates No. 35955; 6) MAC Dkt. No. M-19-2666 (reviewing ALJ Appeal No. 1-8606020191), Bates No. 35966; 7) MAC Dkt. No. M-19-3090 (reviewing ALJ Appeal No. 1-8630803174), Bates No. 35907; 8) MAC Dkt. No. M-20-04 (reviewing ALJ Appeal No. 1-7245879052R1), Bates No. 35922; 9) MAC Dkt. No. M-20-30 (reviewing ALJ Appeal No. 1-8669045980), Bates No. 35940. *See* 2d Dorman Decl. ¶¶ 4.a–d & 5.a–d.

Four beneficiaries each have one relevant Appeals Council decision, each of which appears to be below the jurisdictional threshold.  These decisions are: MAC Dkt. No. M-16-8253 (reviewing ALJ Appeal No. 1-3817321143), Bates No. 8050; MAC Dkt. No. M-18-4797 (reviewing ALJ Appeal No. 1-7231991593); MAC Dkt. No. M-18-6087 (reviewing ALJ Appeal No. 1-7517373653), Bates No. 8817; MAC Dkt. No. M-19-604 (reviewing ALJ Appeal Nos. 1-7793043311 & 1-7793076659), Bates No. 8851. *See* 2d Dorman Decl. ¶¶ 4.e–f & 5.e–f.

[15] These five decisions are: MAC Dkt. No. M-16-11183 (reviewing ALJ Appeal No. 1-4190310041), Bates No. 8226; MAC Dkt. No. M-17-3549 (reviewing ALJ Appeal No. 1-

value of claims for Part C coverage is not readily ascertainable from the Secretary's database.  *See* 2d Dorman Decl. ¶ 3.  But including all of them—which would create "likely difficulties in managing a class action," Fed. R. Civ. P. 23(b)(3)(D), *see infra* at 42—would produce a class with fifteen members, including the two named plaintiffs.

"[A] class that encompasses fewer than 20 members" is not so numerous as to call for class certification "absent other indications of impracticability of joinder."  *Coleman v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015) (quoting Rubenstein, Newberg on Class Actions § 3:12 (cited as § 3:11)).  Plaintiffs have not even attempted to show that joining the (at most) thirteen additional members of their putative class under Rule 20 would be "impracticable."  Fed. Civ. P. 23(a)(1).  Plaintiffs have therefore failed to "affirmatively demonstrate" their compliance with Rule 23(a)(1), and for that reason alone class certification should be denied.  *Comcast*, 569 U.S. at 33; *Wal-Mart*, 564 U.S. at 350.

### 2. Plaintiffs have not affirmatively demonstrated that absent class members would receive adequate representation.

Rule 23(a)(4) requires proof that "the representative parties will fairly and adequately protect the interests of the class."  "Adequate representation is . . . the capstone of the Rule 23(a) requirements: it ensures that the class's champion will pursue its interests sufficiently well so as to produce a judgment that can fairly bind all members of a group who cannot appear before the court individually."  Rubenstein, 1 Newberg on Class Actions § 3:50.  The question of adequacy "tends to merge with" Rule 23(a)(3)'s "requirement that the class representative's claims be typical

---

4772406346), Bates No. 8287; MAC Dkt. No. M-17-6163 (reviewing ALJ Appeal No. 1-2302249522R1), Bates No. 8375; MAC Dkt. No. M-18-5688 (reviewing ALJ Appeal No. 1-7391947282), Bates No. 8777; MAC Dkt. No. M-19-1328 (reviewing ALJ Appeal No. 1-7991031931), Bates No. 8892.  *See* 2d Dorman Decl. ¶¶ 4.g & 5.g.

of the class," because a class representative with atypical claims "may not have the motivation or incentives to adequately pursue the claims of other class members." *Id.* § 3:57.

Plaintiffs urge the Court to defer decision of the issues regarding exhaustion of administrative remedies and the statute of limitations until after class certification. If the Court did so, on this motion it would need to analyze whether the named plaintiffs typify, and can fairly represent, a class of beneficiaries arguing for waiver and equitable tolling on the grounds that an allegedly secret policy prevented them from exhausting their remedies and filing a timely complaint. The facts of plaintiffs' cases would undercut the other class members' arguments that a reasonable beneficiary would have been deceived by the Secretary's conduct. And because the requirement to exhaust and timely file is no bar to recovery by the named plaintiffs, the Court could reasonably doubt whether the class representatives would have adequate incentives "to vigorously prosecute" the waiver and tolling arguments on behalf of the class. *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (internal quotations omitted).

Moreover, Ms. Lewis's interests here are at even greater variance with those of the class that she would represent. Ms. Lewis (unlike almost all of the putative class members) need not litigate the merits of this case in order to gain relief. She has a trump card in her back pocket: when it comes time to brief summary judgment, she need only argue issue preclusion to be assured of victory.[16] This interest is not antagonistic to the proposed class, which would not be harmed by the payment of Ms. Lewis's claim on alternate legal grounds, but it raises doubts about the extent

---

[16] As the Secretary explained in his first opposition to class certification, Ms. Lewis has already litigated to final judgment against the Secretary the issue of whether her continuous glucose monitor is durable medical equipment under the Medicare statute and regulations. This Court should enter judgment in her favor on the grounds of *res judicata* and remand her case to the Secretary, so that he can pay her claim. *See* ECF No. 65 at 7–12. But because the Court has denied the Secretary's motion to dismiss Mr. Sargent from this case, it would still need to resolve his motion for class certification.

to which the class interests are truly aligned with hers.  And Mr. Sargent, for his part, did not receive any initial denials that included the phrase "Statutorily excluded."  AR 1935, 2187.  He therefore cannot represent a class of individuals whose theory of waiver and tolling turns on the use of that language.

In sum, plaintiffs have not affirmatively demonstrated their compliance with Rule 23(a)(4).

### B.    The proposed class does not satisfy the requirements of Rule 23(b).

Plaintiffs seeking class certification must also "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."  *Comcast*, 569 U.S. at 33.  They have not done so.

### 1.    The Medicare statute does not authorize the injunctive or declaratory relief described in Rule 23(b)(2).

Plaintiffs first argue that their proposed class can be maintained under Rule 23(b)(2), because they are seeking "final injunctive relief or corresponding declaratory relief" on behalf of the entire class.  But neither injunctive nor declaratory relief is available for claims arising under the Medicare statute.

"Generally, a beneficiary must first channel his claim 'into the administrative process which Congress has provided for the determination of claims for benefits' before obtaining judicial review."  *Porzecanski*, 943 F.3d at 380 (quoting *Heckler v. Ringer*, 466 U.S. 602, 614 (1984)).  To satisfy this requirement, "the plaintiff must have 'presented' the claim to the Secretary; this requirement is not waivable, because without presentment 'there can be no "decision" of any type,' which § 405(g) clearly requires."  *American Hosp. Ass'n*, 895 F.3d at 825 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)).

If plaintiffs or putative class members believe that any of their claims are exempt from administrative channeling, they are mistaken.  The jurisdictional bar of 42 U.S.C. § 405(h) applies whenever "'the standing and the substantive basis for the presentation' of a claim is the Medicare

Act," as it clearly is here. *Ill. Council*, 529 U.S. at 12 (quoting *Ringer*, 466 U.S. at 615).  Moreover, "a 'claim for future benefits' is a § 405(h) 'claim,'" and so "'all aspects' of any such present or future claim must be 'channeled' through the administrative process."  *Id.* (quoting *Ringer*, 466 U.S. at 614, 621–22).   Medicare beneficiaries cannot avoid "the restrictive mandate of the Medicare Act's channeling requirement" by seeking "prospective relief [that] would functionally determine future claims."  *Porzecanski*, 943 F.3d at 484.  Federal courts therefore lack jurisdiction over any Declaratory Judgment Act suit that would determine future Medicare claims.  *Id.* at 485 n.11.  Plaintiffs have alleged such a jurisdictionally-barred claim in their complaint, ¶¶ 11, 164–66, but do not press it on this motion.

Plaintiffs do, however, suggest that their putative class is eligible for injunctive relief.  That is incorrect: the extent of this Court's authority is to conduct "judicial review of the Secretary's final decision." 42 U.S.C. § 1395ff(b)(1)(A); *see id.* § 405(g).  Federal question jurisdiction of the type ordinarily exercised by this Court is expressly barred.  *Id.* § 405(h).  And, for that reason, "prospective equitable relief" is unavailable on the claims presented here.  *Porzecanski*, 943 F.3d at 475, 482–85 & n.11 (affirming "the district court's conclusion that it was precluded . . . from issuing the requested declaratory and injunctive relief" when doing so would determine entitlement to Medicare benefits).

Plaintiffs cite *Bowen v. Massachusetts*, 487 U.S. 879 (1988), for the contrary view.  Mot. at 13, 22; ECF No. 63 at 18, 27.  But that was a case brought under the federal question jurisdiction that § 405(h) prohibits.  *See* 487 U.S. at 887.  *Bowen v. Massachusetts* discussed whether a certain injunction was the equivalent of money damages, and thus outside the scope of the Administrative Procedure Act's waiver of sovereign immunity, 5 U.S.C. § 702.  *Id.* at 891–901.  That question has nothing at all to do with this case, or with the scope of the "judicial review of the Secretary's

final decision" that has been authorized by Congress here.  42 U.S.C. § 1395ff(b)(1)(A); *see id.* § 405(g).  Plaintiffs have not carried their burden of showing that their proposed class action can be maintained under Rule 23(b)(2).

### 2.      The proposed class does not satisfy Rule 23(b)(3).

"To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual class members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'"  *Amchem*, 521 U.S. at 615.  Courts are "cautioned" to take a "close look at the case before it is accepted as a class action" under this provision.  *Id.* (quotation omitted).

"Rule 23(b)(3) includes a nonexhaustive list of factors pertinent to a court's 'close look' at the predominance and superiority criteria. . . . "  *Id.*  Two are especially pertinent here.  First, the Court must consider "the extent . . . of any litigation concerning the controversy already commenced by . . . members of the class," Fed. R. Civ. P. 23(b)(3)(B), because "other pending litigation is evidence that individuals have an interest in controlling their own litigation." Rubenstein, 1 Newberg on Class Actions § 4:70 ("If other individuals have filed suit, they must want individual litigation, suggesting that a class action may not be superior . . . .").

Two lawsuits were brought by potential class members after the filing of this complaint: *Zieroth v. Azar*, in the Northern District of California, No. 20-cv-172 (filed Jan. 8, 2020), and *Olsen v. Azar*, which was originally pending in this Court and then transferred to the Eastern District of Washington, *Olsen v. Azar*, No. 19-cv-3814 (RBW) (filed Dec. 23, 2019).  In both cases, plaintiffs were represented by the Parrish Law Firm, which suggests an especially strong

interest in controlling the course of their own litigation, since there would otherwise be no reason to proceed in separate matters handled by putative class counsel.

The second pertinent factor is "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D). Significant difficulties would be presented by the inclusion of Part C claims in any certified class. As the Court is aware, the Medicare Advantage program offers individuals the option of receiving their benefits through a private insurer, which makes the initial determinations "regarding whether an individual . . . is entitled to receive a health service" under the Medicare program or the insurer's particular contract. 42 U.S.C. § 1395w-22(g)(1)(A). The insurer's determination is ultimately subject to review by the Secretary, and the Secretary's final decision is then subject to judicial review. *Id.* § 1395w-22(g)(5). But access to judicial review is conditioned "upon notifying the [insurer]" of the individual's intention to proceed to federal court, where the insurer is also "entitled to be [a] party." *Id.* Thus the inclusion in any certified class of even a small group of Part C beneficiaries, such as the five potential class members discussed above, would raise thorny questions about whether their Medicare Advantage insurers' statutory rights to notice and participation could be honored without eliminating any efficiencies that justified class litigation in the first place. This would obviously be a larger difficulty in a larger class—though the Secretary notes that plaintiffs' arguments for waiver and equitable tolling, which would produce that larger class, are predicated on the Secretary's particular word choice in the initial denials issued through Medicare Part B. Plaintiffs have never alleged that the hundreds of Medicare Advantage insurers, who are each responsible for making initial coverage determinations for their own beneficiaries, use the same language that plaintiffs have identified as their justification for equitable tolling and waiver of exhaustion.

Plaintiffs have failed to affirmatively demonstrate the superiority of class litigation, as required by Rule 23(b)(3)—and that failure is especially acute as to the potential class members who participate in the Medicare Advantage program.[17]

## CONCLUSION

This Court should deny the class certification motion for the reasons set forth above, chief among them plaintiffs' failure to establish numerosity as required by Rule 23(a)(1).

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

MICHELLE BENNETT
Assistant Director, Federal Programs Branch

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

Date: March 12, 2021                    *Counsel for Defendant*

---

[17] In accordance with Local Civil Rule 23(c), the Secretary respectfully suggests that the Court should "postpone a determination of the matter" of "how, when, by whom, and to whom the notice required by Fed. R. Civ. P. 23(c)(2) shall be given" until after the motion for class certification is decided, as the appropriate method of notice is likely to depend on the size of any class that may be certified.  In addition, if the Court grants class certification, the Secretary suggests that it do so in general terms, and allow the parties to address the technical details of the class composition (which billing codes indicate class membership, for example) in any post-certification briefing.