**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CAROL A. LEWIS, *et al.*, | ) | |
| | ) | Case No. 18-cv-2929 (RBW) |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | PLAINTIFFS' REPLY RE: MOTION TO |
| | ) | CERTIFY CLASS AND APPOINT |
| NANCY COCHRAN, in her official | ) | COUNSEL |
| capacity as acting Secretary of Health and | ) | |
| Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

# TABLE OF CONTENTS

I.     **DISCUSSION** ............................................................................................ 1

  A.    RESPONSE TO BACKGROUND SECTION ............................................. 1

  B.    EFFECT OF THE SECRETARY'S "ANSWER" AND "AMENDED ANSWER" ........................ 3

  C.    THE SECRETARY'S CLAIMS REGARDING EXHAUSTION AND
      STATUTE OF LIMITATIONS ............................................................... 4

     1.   *The Court May Not Make Merits Determinations*
       *As Part of the Class Certification Process* ..................................... 4

     2.   *The Absent Class Members Have Not Been*
       *Provided Notice or Appointed Champions* ...................................... 7

  D.    THE SECRETARY'S SUPPLEMENTAL JURISDICTION ARGUMENT ................................. 7

  E.    PLAINTIFFS HAVE DEMONSTRATED THAT THE REQUIREMENTS FOR
      CLASS CERTIFICATION ARE MET ....................................................... 9

     1.   *The Numerosity Requirement is Satisfied* ................................... 10

     2.   *The Representative Parties Will Fairly and*
       *Adequately Protect the Interests of the Class* ............................... 10

  F.    THE PROPOSED CLASS MEETS THE REQUIREMENTS OF FED.R.CIV.P. 23(B) ............ 13

     1.   *FED.R.CIV.P. 23(b)(2)* ........................................................... 13

     2.   *FED.R.CIV.P. 23(b)(3)* ........................................................... 15

       a)  Alleged Interest in Individually Controlling Litigation/
          Extent of Ongoing Litigation ............................................. 16
       b)  Alleged Difficulty in Managing Class Action ......................... 19

  G.    RESPONSE TO THE MECHANICS OF CLASS NOTICE ................................. 20

II.    **CONCLUSION** .................................................................................. 21

# TABLE OF AUTHORITIES

## Cases

*Afghan & Iraqi Allies v. Pompeo*,
   2020 WL 590121 (D.D.C. Feb. 5, 2020) ........................................................................ 6

*Amchem Prods., Inc. v. Windsors*,
   521 U.S. 591 (1997) ................................................................................................... 16

*American Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974) ................................................................................................... 10

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*,
   568 U.S. 455 (2013) ..................................................................................................... 5

*Bloom v. Azar*,
   2018 WL 583111 (D. Vt. Jan. 29, 2018) ....................................................................... 15

*Bowen v. City of New York*,
   476 U.S. 467 (1986) ................................................................................................. 4, 12

*Bowen v. Massachusetts*,
   487 U.S. 879 (1988) ............................................................................................... 13, 14

*Califano v. Yamaski*,
   442 U.S. 682 (1979) ................................................................................................... 13

*Devlin v. Scardelletti*,
   536 U.S. 1 (2002) ........................................................................................................ 8

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ..................................................................................................... 5

*Exxon Mobil Corp. v. Allapattah Services, Inc.*,
   545 U.S. 546 (2005) ..................................................................................................... 9

*In re: McCormick & Co.*,
   422 F.Supp.3d 194 (D.D.C. 2019) ................................................................................. 6

*In re: Veneman*,
   309 F.3d 789 (D.D.C. 2002) ......................................................................................... 6

*Interstate Circuit v. U.S.*,
   306 U.S. 208 (1939) ..................................................................................................... 9

*Kennedy v. Sullivan*,
   138 F.R.D. 484 (N.D. W. Va. 1991) ............................................................................. 6

*Lewis v. Burwell*,
   Case No. 15-cv-13530 (D. Mass) ................................................................................. 11

*Martinez v. Puerto Rico Federal Affairs Admin.*,
   813 F.Supp.2d 84 (D.D.C. 2011) ................................................................................... 4

*Molock v. Whole Foods Market Group, Inc.*,
   952 F.3d 293 (D.C. Cir. 2020) ...................................................................................... 8

*Olsen v. Cochran*,
   2021 WL 711469 (E.D. Wa. Feb. 23, 2021) ................................................................. 15

*Porzecanski v. Azar*,
   943 F.3d 472 (D.C. Cir. 2019) ..................................................................................... 14

*State of N.Y. v. Sullivan*,
   906 F.2d 910 (2nd Cir. 1990) ....................................................................................... 5

*Suarez v. Colvin,*
   140 F.Supp.3d 94 (D.D.C. 2015) ........................................................................... 4
*Swinomish Indian Tribal Community v. Azar,*
   406 F.Supp.3d 18 (D.D.C. 2019) ........................................................................... 4
*Twelve John Does v. District of Columbia,*
   117 F.3d 571 (D.C. Cir. 1997) ............................................................................. 11
*U.A.W. v. N.L.R.B.,*
   459 F.2d 1329 (D.C. Cir. 1972) ............................................................................. 9
*United Mine Workers v. Gibbs,*
   383 U.S. 715 (1966) ............................................................................................... 8
*Wal-Mart Stores, Inc. v. Dukes,*
   54 U.S. 338 (2011) ............................................................................................... 11
*Whitcomb v. Hargan,*
   Case No. 17-cv-14 (E.D. Wisc.) ........................................................................ 15
*Zieroth v. Azar,*
   2020 WL 5642614 (N.D. Cal. Sept. 22, 2020) .................................................. 15

## Statutes

28 U.S.C. § 1367 ....................................................................................................... 8
28 U.S.C. § 1367(a) ................................................................................................... 7
42 U.S.C. § 1395w-22(a)(1)(A) ................................................................................ 2
42 U.S.C. § 1395w-22(a)(3)(A) ................................................................................ 2
42 U.S.C. § 405(g) .................................................................................................. 13
5 U.S.C. § 702 ......................................................................................................... 14

## Other Authorities

Advisory Committee Comments to the 1966 Amendments ....................................... 17
Douglas Adams, THE HITCHHIKER'S GUIDE TO THE GALAXY, Harmony Books (1986) ............................ 5

## Rules

FED.R.CIV.P. 1 ......................................................................................................... 21
FED.R.CIV.P. 23(b)(2) ....................................................................................... 13, 15
FED.R.CIV.P. 23(b)(3) ............................................................................................. 15

## Treatises

2 W. Rubenstein, NEWBERG ON CLASS ACTIONS § 4:69 (Supp. 2020) ..................... 16
2 W. Rubenstein, NEWBERG ON CLASS ACTIONS § 4:70 (Supp. 2020) ..................... 18

## Regulations

42 C.F.R. § 405.910(f)(1) ........................................................................................ 12
42 C.F.R. § 422.101(a) .............................................................................................. 2

Plaintiffs Carol Lewis and Douglas Sargent file this Reply in support of their motion for class certification.  Plaintiffs' motion should be granted.  Of course, the base issue in this case is the Secretary's denial of CGM claims on the grounds that a CGM is not "primarily and customarily used to serve a medical purpose."  That position is frivolous and has been uniformly rejected by five district courts.

In his prior brief, the Secretary did not address the class certification issues until page 35 of a 45-page brief.  *See* Dkt. #65.  The Secretary's current brief improves that score by 2 pages. Opp. at 33 ("We come to the question of class certification under Rule 23.").  That is, the Secretary actually addresses the class certification issues beginning on page 33 of a 43-page brief.  As before, the first 33 pages are spent on other, misguided, pursuits related to, *inter alia*, the Secretary's contentions regarding exhaustion and statute of limitations.

Because the arguments are nearly identical, in the interests of brevity, Plaintiffs incorporate herein their prior reply (Dkt. #67) as well as their sur-reply (Dkt. #71) addressing the Secretary's demand for merits determinations against the absent class members as part of class certification. In light thereof, Plaintiffs will endeavor to limit their discussion here to matters warranting additional discussion.

## I.      DISCUSSION

### A.    Response to Background Section

While most of the Secretary's statements do not warrant a reply, the Secretary's statements regarding CMS 1682-R (Opp. at 2) are simply untrue.  CMS 1682-R purported to construe the phrase "primarily and customarily used to serve a medical purpose" and, in so doing, coined two new terms: "therapeutic" and "non-therapeutic" CGMs.  *Id.* at 6-8.  These terms were defined consistent with the Secretary's effort change the regulatory phrase of "primarily and customarily

used to serve a medical purpose" to "primary medical device" and/or to exclude CGMs using the coined term "precautionary", when those efforts had already been rejected by the Courts. Thus, every denial in this case which relied on CMS 1682-R rejected claims on the grounds that a CGM is not "primarily and customarily used to serve a medical purpose."

The Secretary's comments regarding the Medicare Advantage Program, *i.e.*, "Part C", (Opp. at 3-4) are incomplete. As Plaintiffs have previously noted, Medicare Advantage Plans are totally controlled by the Secretary and must follow the Secretary's command to not cover CGMs. *See* 42 U.S.C. § 1395w-22(a)(1)(A) ("shall provide … benefits under the original medicare fee-for-service program …"); 42 C.F.R. § 422.101(a) ("Provide coverage of … all services that are covered by Part A and Part B of Medicare[.]"). Part C plans can offer nothing beyond Original Medicare coverage without the Secretary's approval. *See* 42 U.S.C. § 1395w-22(a)(3)(A) ("Benefits included *subject to Secretary's approval*": "… each [Medicare Advantage Plan] may provide to individuals enrolled under this part … supplemental health care benefits that the Secretary may approve.") (emphasis added).

In his prior brief, the Secretary mischaracterized Ms. Lewis' proceedings before the Medicare Appeals Council and the current brief does so as well. As recounted by the Secretary, "[b]efore the Council could rule on her appeal, and without presenting the final judgment in her favor, Ms. Lewis requested escalation[.]" Opp. at 5. As shown in the administrative record in this case, though the statute requires the Secretary to issue a decision within 90 days, the Secretary did not do so. After more than 2 years had passed waiting for the Council to issue a decision, Ms. Lewis provided the Council with citations to the various district court decisions that had issued by that time (including the one in her favor) and requested escalation. Still, the Council did not issue

a decision and this suit followed.  The Council had ample time to rule and Ms. Lewis "presented" the decision in her favor to the Council.

With regard to Mr. Sargent, the Secretary contends that his claims were denied because his CGM was not "accurate enough."  Opp. at 5.  Again, that is not true.  Instead, Mr. Sargent's claims were denied on the grounds that his CGM was not "durable medical equipment" and, more specifically, because his CGM was not "primarily and customarily used to serve a medical purpose."   In one instance, that was because of the Secretary's construction of the phrase in CMS 1682-R.  *See* AR1052.  In another instance, that was because of the Secretary's non-statutory and non-regulatory addition of an exclusion of "precautionary" items to the phrase.  *See, e.g.,* AR1998-2001.

**B.      Effect of the Secretary's "Answer" and "Amended Answer"**

On February 16, 2021, the Secretary filed a document styled an "Answer."  *See* Dkt. #80. Because that document plainly failed to comply with the Rules, Plaintiffs brought that matter to the Secretary's attention and he failed and refused to amend it.  Thereafter, for the second time, Plaintiffs filed their motion for class certification without knowing which bases were disputed. *See* Dkt. 81.  After Plaintiffs filed their motion for class certification, the Secretary filed an "Amended Answer" on the evening of the last day he could do so as a matter of right.

In Plaintiffs' view, the "Amended Answer" still does not comply with the Rules as they will make clear in their reply on their motion to deem admitted.  With regard to the class certification allegations of the Complaint (*see* Dkt. #1 at ¶¶ 137-45), the "Amended Answer" denies them all or professes to lack information to admit or deny.  *See* Dkt. #83.  Within 3 days of that filing, the Secretary opposed Plaintiffs motion for class certification conceding, *e.g.,*

commonality and typicality (*see* Dkt. #1 at ¶¶ 137-139, Dkt. #83, Dkt. #84).  In Plaintiffs' view, this is part of a consistent pattern of evasion and delay.

**C.     The Secretary's Claims Regarding Exhaustion and Statute of Limitations**

While the Secretary spends ~27 pages (Opp. at 6-33) presenting theories regarding exhaustion and statute of limitations (the factual and legal bases of which are mistaken), Plaintiffs will not tarry long addressing them.  As Plaintiffs have previously pointed out, lack of exhaustion and statute of limitations are non-jurisdictional, affirmative defenses that the Secretary bears the burden of pleading and proving.[1]  The Secretary's request for a merits ruling on exhaustion and statute of limitations as part of or prior to class certification is improper.

**1.     The Court May Not Make Merits Determinations
As Part of the Class Certification Process**

The Secretary contends that: "Plaintiffs have suggested that this Court should waive exhaustion of administrative remedies and equitable toll the limitations period, because the

---

[1] *See, e.g.,Bowen v. City of New York*, 476 U.S. 467, 478 (1986) ("the 60-day requirement is not jurisdictional, but rather constitutes a period of limitations."); *Swinomish Indian Tribal Community v. Azar*, 406 F.Supp.3d 18, 24 (D.D.C. 2019) (appeal pending) ("[Statute of limitations] is an affirmative defense."); *Martinez v. Puerto Rico Federal Affairs Admin.*, 813 F.Supp.2d 84, 94 (D.D.C. 2011) (Walton, J.) ("because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it") (internal citations and quotations omitted); *Suarez v. Colvin*, 140 F.Supp.3d 94, 99 (D.D.C. 2015) ("the requirement that the plaintiff must complete the agency review process is non-jurisdictional and may be waived.").

Secretary has employed a secret policy[.]" Opp. at 7.[2]  That is not correct.  Instead, what Plaintiffs have said is that the Court may not reach issues such as that at this stage.

As Plaintiffs have previously explained (*see* Dkt. #67 at 2-5, Dkt. #71), in a class action litigation, the Court first must determine whether the class action form is the proper method of resolving the dispute before the Court and whether the proposed representatives (*i.e.*, the named/lead plaintiffs) will properly represent the interests of the absent class members.  *See, e.g., Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455, 460 (2013) ("But the office of a [class] certification ruling is not to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently.") (internal quotations omitted).  Thus, in Rule 23 practice, the court may not decide the merits in considering whether to grant class certification.[3]  *Id.* at 466.  For example, in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) the Supreme Court held:

---

[2] Plaintiffs note the Secretary's contention that his actions were not "clandestine", "secretive", or "unrevealed" because they were the subject of ALJ' and Council' decisions and CMS 1682-R was available on a website.  Opp. at 20.  As a base matter, ALJ decisions are not publicly available and only decisions selected by the Council are made public.  In any event, multiple courts have held that the failure to publish in the FEDERAL REGISTER is tantamount to a secret policy.  *See, e.g., State of N.Y. v. Sullivan*, 906 F.2d 910, 917 (2nd Cir. 1990).  Further, the Secretary's claim of transparency has a certain HITCHHIKER'S GUIDE TO THE GALAXY air about it.  *See* Douglas Adams, THE HITCHHIKER'S GUIDE TO THE GALAXY, Harmony Books (1986) at 10 ("But the plans were on display …"; "On display?  I eventually had to go down to the cellar to find them."; "That's the display department."; "With a flashlight."; "Ah, well, the lights had probably gone."; "So had the stairs."; "But look, you found the notice, didn't you?"; "Yes, … yes, I did.  It was on display in the bottom of a locked filing cabinet stuck in a disused lavatory with a sign on the door saying: 'Beware of the Leopard.'").

[3] By contrast, the Court can properly decide matters that relate to the named/lead plaintiffs before deciding class certification – even if those matters might also relate to the potential class members. The named/lead plaintiffs know of the litigation and are represented.  Thus, they need rely on no one else to protect their interests.  In recognition of this fact, before class certification, the Secretary moved to dismiss Mr. Sargent on alleged amount in controversy grounds and Plaintiffs did not oppose on grounds that such consideration was improper prior to class certification.  *See* Dkt. #22 and 30.  Ultimately, of course, this Court denied the Secretary's motion to dismiss Mr. Sargent. *See* Dkt. #76.

> We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.

*Id*. at 177.  See also *In re: McCormick & Co.*, 422 F.Supp.3d 194, 223 (D.D.C. 2019) ("While a court's class certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.") (internal citations and quotations omitted); *Afghan & Iraqi Allies v. Pompeo*, 2020 WL 590121 at *7 (D.D.C. Feb. 5, 2020) ("… in determining whether to certify a class, a court may not examine whether plaintiffs have stated a cause of action or will prevail on the merits.") (internal citations and quotations omitted); *In re: Veneman*, 309 F.3d 789, 795 (D.D.C. 2002) ("inappropriately mix the issue of class certification with the merits").

None of the cases cited by the Secretary say anything different.  As Plaintiffs previously demonstrated (to the extent it can be determined) (*see* Dkt. #71), all but one of the cases cited by the Secretary involve a class action Complaint where the Secretary responded to the Complaint with a motion to dismiss (or a variant thereof) the named representatives on the grounds that the named representatives (as well as absent class members) failed to exhaust/were barred by the statute of limitations.  Here, no such motion has been brought nor could it.

In the one case where a Court actually determined affirmative defenses not clearly asserted against the named plaintiffs (*Kennedy v. Sullivan*, 138 F.R.D. 484 (N.D. W. Va. 1991)), because of the age of the case, the docket is not available and there is no indication that the court considered whether, pre-certification, the named plaintiff could represent class members with unexhausted claims and whether this was the subject of briefing.  In any event, the court did not rule against the absent class member and *Kennedy* was decided some two decades before the Supreme Court's decision in *Amgen* affirming that class certification is not the time to adjudicate the merits.

As set forth in *Amgen*, *Eisen*, and all the other cases, this Court is simply barred from doing what the Secretary demands.

> **2.      The Absent Class Members Have Not Been Provided Notice or Appointed Champions**

As Plaintiffs have previously noted, any affirmative defenses regarding exhaustion and statute of limitations could not apply to Ms. Lewis or Mr. Sargent and the Secretary does not assert that they could.  Prior to class certification, the absent class members have neither been provided notice that their claims are being adjudicated nor appointed champions to represent their interests.  Thus, prior to class certification, the absent class members could not respond to any comments the Secretary may make in this regard (because they do not know of them) and Ms. Lewis and Mr. Sargent are not permitted to (because they have not been appointed representatives).  Indeed, while simultaneously demanding adjudication of affirmative defenses against the absent class members, the Secretary nonsensically contends that Ms. Lewis and Mr. Sargent will not adequately represent the absent class members.  Opp. at 37-39.  Proceeding as the Secretary suggests is a simple invitation to reversible error.

**D.      The Secretary's Supplemental Jurisdiction Argument**

As pled in the Complaint, at least some of the absent class members (including Mr. Sargent) have claims that, considered individually, do not reach the $1,600 amount required at the time the Complaint was filed.  As pled in the Complaint, this Court has jurisdiction to consider those claims either because: 1) the claims of any one individual (such as Mr. Sargent) can be aggregated pursuant to FED.R.CIV.P. 18 to meet the amount in controversy; and/or 2) this Court indisputably has jurisdiction to consider Ms. Lewis' claim, this Court can consider claims that do not reach the amount in controversy (such as Mr. Sargent's) using supplemental jurisdiction (28 U.S.C. § 1367(a)).  *See* Dkt. #1 at ¶9.

As to the first basis, the Secretary previously moved to dismiss Mr. Sargent on the grounds that his claims could not be aggregated at the District Court. *See* Dkt. #22. The Second Circuit rejected that position and this Court subsequently did in denying the Secretary's motion to dismiss Mr. Sargent's claims. *See* Dkt. #76.

As to the second basis, the Secretary seeks to litigate these substantive issues as part of class certification. This is simply wrong. Class certification is a process to decide whether the class action form is the proper way to resolve the claims of the class members and *not* a process to decide the merits (including the merits of jurisdiction). *Eisen*, 417 U.S. at 177. Further, of course, the absent class members have not been notified or appointed champions and proceeding with respect to the absent class members on anything other than class certification is improper.

Along these same lines, just last year, the D.C. Circuit denied an interlocutory appeal where the district court refused a motion to dismiss putative class members on the grounds that the court lacked personal jurisdiction. *See Molock v. Whole Foods Market Group, Inc.*, 952 F.3d 293 (D.C. Cir. 2020). There, the Circuit Court held: "[p]utative class members become parties to an action – and this subject to dismissal – only after class certification." *Id*. at 298. Thus, "[a]ny decision purporting to dismiss putative class members before that point would be purely advisory." *Id*.[4] Obviously, advisory opinions are barred.

Given its impropriety, Plaintiffs are reluctant to be drawn into a merits inquiry. That said, Plaintiffs note that the supplemental jurisdiction statute (28 U.S.C. § 1367) was enacted in 1990. Thus, the Secretary's citation to *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) is doubly

---

[4] To be clear, "[t]he label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context. Nonnamed class members are for instance, parties in the sense that the filing of a class action on behalf of the class tolls a statute of limitations against them." *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002).

inapposite both because it pre-dates the enactment of § 1367 and because it concerns whether state and federal claims can be tried together.  Opp. at 26.  The Secretary's citation to *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005) is affirmatively improper.  Opp. at 26. Without disclosing the fact, the Secretary cites the dissent which argued that there was no supplemental jurisdiction.  By contrast, the majority found that there was supplemental jurisdiction.  In doing so, the majority described § 1367(a) as a "broad grant of supplemental jurisdiction." *Id.* at 558.

In this case, all of the claims arise out of a common nucleus of operative fact because every denied claim was denied on the frivolous basis that a CGM is not "primarily and customarily used to serve a medical purpose."  Further, every Part B initial denial and denial on redetermination failed to disclose that fact and fully one third of the initial denials affirmatively misrepresented to the beneficiaries that CGM coverage was "statutorily excluded."[5]

Once the class members have been notified and appointed champions, Plaintiffs stand ready to oppose any motion to dismiss on supplemental jurisdiction grounds.

**E.    Plaintiffs Have Demonstrated That the Requirements for Class Certification Are Met**

---

[5] It is not known to Plaintiffs what Part C beneficiaries were told.  The Part C information is within the Secretary's exclusive control.  The Part C information could conclusively demonstrate that the Part C beneficiaries were told their claims were being denied on the grounds that a CGM is not "primarily and customarily used to serve a medical purpose" and the Secretary failed to produce it.  Accordingly, an adverse inference exists that the withheld evidence is unfavorable to the Secretary. *See, e.g., Interstate Circuit v. U.S.*, 306 U.S. 208, 226 (1939) ("The production of weak evidence when strong is available can lead only to conclusions that the strong would have been adverse.  Silence then becomes evidence of the most convincing character.", cleaned up); *U.A.W. v. N.L.R.B.*, 459 F.2d 1329, 1336-38 (D.C. Cir. 1972).  Thus, presuming that all the Part C beneficiaries were falsely told that CGM coverage was "statutorily excluded", then the Secretary misrepresented the basis for denial to more than 55% of the class members.

The Secretary did not contest Plaintiffs' showing as to commonality or typicality.  *See* Dkt. #63 at 16-19.  Instead, the Secretary's opposition was limited to numerosity and adequacy of representation.  Thus, the commonality and typicality requirements are conceded by the Secretary.

### 1. The Numerosity Requirement is Satisfied

As Plaintiffs showed in their brief, the class is composed of an estimated 88,392 members with more than 375,000 claims (through July 31, 2019) and presumably tens of thousands more members since then.  While Plaintiffs believe it to be improper to decide the merits as part of class certification, Plaintiffs also provided class numbers using various breakdowns – the smallest of which is 33,620 members with 117,612 claims (through July 31, 2019) for claims filed on or after October 14, 2018.  *See* Pistorino Decl. at ¶ 16.

Remarkably, the Secretary contends that there are "at most" fifteen class members.  Opp. at 34.  This is based on two assumptions by the Secretary: 1) that unnoticed motions to dismiss and for summary judgment of affirmative defenses have been granted against the absent class members without notice or being appointed champions; and 2) that the filing of the class action Complaint did not suspend the statute of limitations.

The idea that there are no/very few class members because the Secretary is sure that he will be victorious on the merits does not warrant further discussion.  Further, while the Court may not make a determination of the issue at this time, it is fundamental that the filing of a class action Complaint automatically suspends statutes of limitations for the putative class members.  *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553-54 (1974).

Plaintiffs have demonstrated that the numerosity requirement has been satisfied.

### 2. The Representative Parties Will Fairly and Adequately Protect the Interests of the Class

As Plaintiffs showed in their opening papers, as assessment of adequacy of representation requires: 1) that the named plaintiffs "must not have antagonistic or conflicting interests with the unnamed members of the class"; and 2) that the named representatives "must appear able to vigorously prosecute the interests of the class through qualified counsel." *See Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997).

As even the Secretary acknowledges, the test for adequacy of representation tends to merge with both the typicality and commonality requirements.  Opp. at 37.  *See also Wal-Mart Stores, Inc. v. Dukes*, 54 U.S. 338, 349 n. 5 (2011).  In his current opposition, the Secretary does not challenge either typicality or commonality.  Further, the Secretary does not challenge Plaintiffs' showing with respect to the ability to vigorously prosecute the interests of the class through qualified counsel.

With regard to "antagonistic or conflicting interests", the Secretary contends the fact that Ms. Lewis and Mr. Sargent were not deceived by either the Secretary's concealment of the true basis for denial or misrepresentation that CGMs were "statutorily excluded" would undercut potential absent class member' potential arguments regarding the concealment/misrepresentation. Opp. at 38.

This is simply not the case.  With respect to Ms. Lewis, the denial at issue in this case issued on March 31, 2016.  *See* AR308.  By that time, Ms. Lewis already had *pro bono* counsel (in the form of Parrish Law Offices) and had already filed suit in Massachusetts District Court contesting the Secretary's denial.  *See Lewis v. Burwell*, Case No. 15-cv-13530 (D. Mass) filed October 8, 2015.  That a person represented by counsel and actively involved in litigation of the identical issue was not deceived by the Secretary's misrepresentation does not conflict with the fact that a reasonable person would be.  In this regard, Plaintiffs note that the Secretary's own

regulations preclude attorneys from being compensated without permission of the Secretary and for work performed prior to the ALJ hearing stage of appeal.  *See* 42 C.F.R. § 405.910(f)(1).[6] Thus, Ms. Lewis' status of having *pro bono* counsel reflects nothing about the impact of the concealment/misrepresentation on a reasonable person lacking such counsel - as would be the case unless *pro bono* counsel was employed from the very moment a claim was submitted.

Indeed, the most reliable indicator of the Secretary's concealment/misrepresentation is denials themselves.  Those receiving denials concealing/misrepresenting the true basis for denial were "entitled to believe that their Government's determination of ineligibility was the considered judgment of an agency faithfully executing the laws of the United States." *Bowen v. City of New York*, 476 U.S. 467, 480 (1986).

The most reliable indicator of the impact of the concealment/misrepresentation is the number of appeals of initial denials.  As shown in Plaintiffs' opening papers, only approximately 1% of Part B initial denials were appealed for redetermination.  *See* Dkt. #63 at 10.  In light of the fact that 5 district courts have already determined that the Secretary's basis for denial was unreasonable, the nearly 99% effectiveness of the unreasonable concealed/misrepresented denials demonstrates that it was only those who did not rely on the Supreme Court's guidance and were unusually persistent (some would say cynical), knowledgeable, or positioned persons who were not deceived.  By definition, those in the 1% (such as Ms. Lewis and Mr. Sargent) are unusual and not reflective of the "ordinary person" and the reactions of the 1% are not antagonist to or conflicting with those in the 99%.[7]

---

[6] Plaintiffs seriously doubt the constitutionality of these provisions but that is a fight for another day.

[7] As members of the 1%, by definition, Ms. Lewis and Mr. Sargent are not typical people. Nevertheless, their claims are typical of the claims of the class members.

Ms. Lewis and Mr. Sargent's showing of adequate representation has not been rebutted.

**F.     The Proposed Class Meets the Requirements of FED.R.CIV.P. 23(b)**

As indicated, the proposed class should be certified under FED.R.CIV.P. 23(b)(2) and/or

(b)(3).  In Plaintiffs' view, certification under both provisions is the preferrable as it eliminates

any uncertainties in this regard and will facilitate appellate review, if necessary.

      **1.     FED.R.CIV.P. 23(b)(2)**

Pursuant to FED.R.CIV.P. 23(b), a class action may be maintained if:

> (2) the party opposing the class has acted or refused to act on grounds that apply
> generally to the class, so that final injunctive relief or corresponding declaratory
> relief is appropriate respecting the class as a whole[.]

As Plaintiffs demonstrated in their opening brief, and not denied by the Secretary, each of the

proposed class member' claims was denied on the grounds that a CGM is not "durable medical

equipment, and specifically on the grounds that a CGM is not "primarily and customarily used to

serve a medical purpose."  *See* Dkt. #63 at 10, 16-17, Pistorino Decl. at ¶¶ 4 and 5.

In opposition, the Secretary engages in discussion of "presentment", "future claims" and

prospective relief.  Opp. at 39.  This is all irrelevant.  By definition, the proposed class consists of

only those persons and claims that have been presented to, and denied by, the Secretary.  Further,

the only relief that is sought is retrospective – *e.g.,* an order that the denied claims be covered and

a declaration of the facts supporting the same.

The Secretary also contends that injunctive relief is not available under the Medicare Act.

Opp. at 40.  That directly contradicts the Supreme Court which addressed that very issue in both

*Califano v. Yamaski*, 442 U.S. 682 (1979) and *Bowen v. Massachusetts*, 487 U.S. 879 (1988).  In

*Califano*, the district court certified a nationwide class of persons challenging the then Secretary

of Health Education and Welfare's (now Health and Human Services) procedures for recouping

alleged overpayments.  This suit was brought under 42 U.S.C. § 405(g).  The district court

subsequently entered an injunction barring the Secretary from engaging in the disputed procedures. On appeal at the Supreme Court, the Secretary contended that under § 405(g) (§ 205(g) of the Social Security Act) the district court had no power to issue injunctions.  The Supreme Court rejected that assertion holding:

> Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction. Nothing in the legislative history of [§ 405(g)] indicates that Congress intended to preclude injunctive relief in [§ 405(g)] suits.  …  The conclusion that injunctive relief is available under [§ 405(g)] is supported by both our implicit holding that a three-judge court was properly convened in *Jimenez v. Weinberger* and by the opinions of four Courts of Appeals.

*Id.* at 704-5 (cleaned up).

In *Bowen*, the State of Massachusetts sued the Secretary of Health and Human Services contesting the Secretary's decision to deny Medicaid reimbursement for certain services and seeking the same.  On appeal at the Supreme Court, the Secretary argued that 5 U.S.C. § 702's preclusion of actions for "money damages" barred the relief sought.  In its decision, the Supreme Court explained the distinction between "money damages" and injunctive relief having the same effect.  Thus, the Supreme Court held that injunctive relief was available against the Secretary notwithstanding § 702's preclusion of actions for "money damages."

In the present case, Plaintiffs do not seek "money damages" or "damages" of any kind. Instead, Plaintiffs seek an order (*i.e.*, an "injunction") and a declaration.  Thus, pursuant to both *Califano* and *Bowen*, injunctive relief is available.  As the Supreme Court held in *Bowen* and Plaintiffs have previously noted, an "injunction" is merely an order that a party do, or refrain from doing, some act and injunctions can be retrospective or prospective in nature.  *Bowen*, 487 U.S. at 893 ("injunction either directing or restraining the defendant officer's actions").

While the Secretary relies on *Porzecanski v. Azar*, 943 F.3d 472 (D.C. Cir. 2019), that case actually supports Plaintiffs' position.  Opp. at 40.  There, the Court affirmed a lower court order

(*i.e.*, an "injunction") requiring the Secretary to provide coverage for claims previously submitted and denied (*i.e.*, a retrospective injunction).  *Id*. at 477-78 ("On May 30, 2018, the district court … 'directed HHS to take all steps necessary to reflect Medicare coverage for Porzecanski's IVIG treatment of December 16, 2014.'") (cleaned up).  At the same time, the Court denied the plaintiff's request for a prospective injunction related to "future claims."  *Id*. at 475, e.g.  Thus, a retrospective injunction exactly like the one sought in this case was approved.

Indeed, the multiple district courts to consider the same issue facing this Court (*i.e.*, whether a CGM is "primarily and customarily used to serve a medical purpose") have issued injunctions (*i.e.*, orders) requiring the Secretary to cover the denied claims.  *See, e.g., Whitcomb v. Hargan*, Case No. 17-cv-14 (E.D. Wisc.); Dkt. #19 (Oct. 26, 2017) at 16 ("with instruction to authorize" coverage); *Bloom v. Azar*, 2018 WL 583111 (D. Vt. Jan. 29, 2018) ("REMANDED to the Secretary under sentence four of 42 U.S.C. § 405(g), with instructions to authorize coverage for the CGM items at issue."); *Zieroth v. Azar*, 2020 WL 5642614 (N.D. Cal. Sept. 22, 2020) at *5 ("REMANDED, under sentence four of 42 U.S.C. § 405(g), with instructions to authorize coverage"), and *Olsen v. Cochran*, 2021 WL 711469 (E.D. Wa. Feb. 23, 2021) at *4 ("REMANDED with instructions to authorize coverage").

Thus, final injunctive or declaratory relief is appropriate respecting the class as a whole and FED.R.CIV.P. 23(b)(2) certification is appropriate.

### 2.    FED.R.CIV.P. 23(b)(3)

In addition/alternative to certification under FED.R.CIV.P. 23(b)(2), pursuant to FED.R.CIV.P. 23(b)(3), a class action may be maintained if questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

In making that determination, the Rule identifies four factors as pertinent: A) the class members' interests in individually controlling separate actions; B) the extent and nature of any litigation already begun by the class members; C) the desirability/undesirability of concentrating the litigation in this forum; and D) the likely difficulties in managing a class action.

The Secretary did not contest Plaintiffs' showing that questions of law or fact common to the class members predominate over any questions affecting only individual members. Thus, this prong is conceded.

As to superiority, the Secretary did not dispute that a class action would be more efficient than individual litigation and, again, that is conceded. In Plaintiffs opening papers they showed, to the extent it can be determined from the Secretary's production, that the average class member's claim would be for $4,624. *See* Dkt. #63 at 23. Thus, individual litigation of the claims would be uneconomic and the class action form was designed for precisely this situation. *See Amchem Prods., Inc. v. Windsors*, 521 U.S. 591, 617 (1997) ("A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) time."). *See also* 2 W. Rubenstein, NEWBERG ON CLASS ACTIONS § 4:69 (Supp. 2020) ("Many cases note the small size of each individual class member's claim in finding a class suit superior. Relatedly, in finding superiority, courts may emphasize that few individual suits have been filed.").

### a) Alleged Interest in Individually Controlling Litigation/Extent of Ongoing Litigation

Of the nearly 90,000 class members (through July 31, 2019), the Secretary notes that, after the filing of the Complaint, two potential class members (Zieroth and Olsen) chose to pursue individual litigation of their claims. In the Secretary's view, this "suggests an especially strong interest in controlling their own litigation" and that a class action is not superior. Opp. at 42. Thus,

the Secretary suggests that suits by 0.002% of the potential class members (2 out of 88,392 through July 31, 2019) demonstrate that the other 99.998% potential class members prefer individual litigation.  To state the Secretary's argument is to refute it.

As an initial matter, the comments to the Rule indicate that the focus in this regard is on *pending* litigation.  See Advisory Committee Comments to the 1966 Amendments ("In this connection the Court should inform itself of any litigation actually pending by or against the individuals.").  A final judgment issued in the *Zieroth* matter and the Secretary (represented by the Secretary's counsel in this case) did not appeal.  In the *Olsen* matter (where the Secretary was again represented by his counsel in this case), a judgment issued on February 23, 2021 and (absent appeal) will become final on April 26, 2021.  Thus, at most, a single case is pending.

Indeed, the very lack of individual litigation both demonstrates the effectiveness of the Secretary's concealment of the true basis for rejecting CGM claims and that a class action is superior to individual litigation.  Because beneficiaries do not know that their rights are being violated (indeed, in one third of the cases, the Secretary affirmatively misrepresented that coverage was "statutorily excluded"), they do not know to pursue appeal/litigation.  Further, even if a beneficiary was not misled by the Secretary's misrepresentation/concealment and desired district court litigation, such litigation would be uneconomic given the low potential recovery compared to the cost of litigation.

The complete absence of other litigation supports the conclusion that a class action is superior to individual litigation and a very small number of suits does not change that premise.  As one treatise put it:

> Focusing more on the quantity than nature of pending litigation, many courts have held that a complete lack of other litigation concerning the matter at hand supports the conclusion that a class action would be superior to individual litigation.  The presence of a few other suits does not undercut that conclusion as the filing of but

17

a few cases indicates that a minute percentage of the class has an interest in individual litigation.

2 W. Rubenstein, NEWBERG ON CLASS ACTIONS § 4:70 (Supp. 2020).

Moreover, the five suits that have previously been filed demonstrate the uneconomic nature of the litigation as each of those suits utilized *pro bono* counsel. Thus, rather than demonstrate a preference for individual litigation by the class members, those suits represent the nearly unique situation of a person who pursued appeal despite the Secretary's misrepresentations/concealment of the true basis for denial, whose claim met the amount-in-controversy sufficient for district court litigation, and who was able to secure *pro bono* counsel.

With regard to the two post-Complaint individual suits by persons having all those characteristics, there may be many reasons why those persons chose to pursue individual litigation rather than wait for the resolution of this class action. One reason might be the desire to litigate issues that are not generally available to the class. Another reason might be a desire to obtain relief while they are living. For example, in Mr. Olsen's case, Mr. Olsen needed a CGM to both control his diabetes and to protect his transplanted kidney. Thus, the Secretary's denial of CGM coverage on the frivolous grounds that a CGM is not "primarily and customarily used to serve a medical purpose" actually jeopardized Mr. Olsen's life. Seeking coverage while he was still alive, Mr. Olsen brought suit in this Court, only to have the Secretary object to venue in his home district and for more than 10 months to pass before the case was transferred to the Eastern District of Washington. Upon receiving the case, a new round of summary judgment briefing was completed and that court issued a final judgment reversing the Secretary's decision within four months. Thus, even from the moment he filed suit, it took Mr. Olsen more than a year to get relief. Had Mr. Olsen waited until the resolution of the class action, Mr. Olsen may have passed away waiting for relief.

Sadly, that is exactly what happened to Mrs. Zieroth.  While she was still living, Mrs. Zieroth sought to obtain relief from the Secretary's frivolous denial on the grounds that a CGM is not "primarily and customarily used to serve a medical purpose."  Though enduring 2 years of appeals before the Secretary and filing suit in district court, unfortunately, Mrs. Zieroth was unable to obtain coverage before she passed away and her grieving husband continued the litigation. Thereafter, the district court found that the Secretary's position was unreasonable, ordered coverage, and further ordered the Secretary's to pay the attorneys' fees incurred in litigating Mrs. Zieroth's claims because the Secretary's position was not substantially justified.  Because Mrs. Zieroth had already passed away, only Mrs. Zieroth's grieving husband was able to "enjoy" the vindication of Mrs. Zieroth's rights.

In this regard, Plaintiffs note that the claim Ms. Lewis is litigating in this case has been the subject of dispute/litigation for more than 5 years – so far.  Indeed, by the time of the currently scheduled class certification hearing, Ms. Lewis will have been litigating the issue of the Secretary's denial of CGM claims on the grounds that a CGM is not "primarily and customarily used to serve a medical purpose" for more almost exactly 10 years.  By the time of the currently scheduled class certification hearing, Ms. Lewis will be nearly 76 years old.[8]

A class action that results in timely relief to the class members is clearly superior to individual litigation, especially when individual litigation is uneconomic.

### b)      Alleged Difficulty in Managing Class Action

The Secretary contends that "significant difficulties would be presented by the inclusion of Part C claim in any certified class."  Opp. at 42.  This is so, the Secretary contends, because Medicare Advantage Plans (MAPs) may (but are not required to) participate as parties in judicial

---

[8] Ms. Lewis submitted her first appeal of a CGM denial on June 11, 2011.

review of denials involving Part C plans.   In this regard, the Secretary raises the spectre of "hundreds" of MAPs.  *Id.*

As this Court is aware, the Secretary failed to produce Part C claim information (despite his commitment to do so) and none has been produced in this case.   In their own papers, relying on publicly available information existing before the Complaint was even filed and the Part B information produced, Plaintiffs estimated Part C class members to number ~29,000 (through July 31, 2019).  *See* Dkt. #63 at 8.  Further, as shown, 81% of the Part C market is covered by just seven MAPs (UnitedHealthcare, Humana, BCBS, Aetna, Kaiser Permanente, Wellcare, and Cigna).  *See* Dkt. #63, Pistorino Decl., Exhibit 2 at 4.  That suggests that notice covering more than 23,000 Part C class members could be accomplished by sending just seven letters – one to each of those entities.  Given the lack of production, how many MAPs correspond to the other 6,000 Part C class members is unknown.

As with other areas where the Secretary failed to produce information within his sole control, an adverse inference exists that the withheld information would be unfavorable to the Secretary.  *See* footnote 5, *supra*.  Thus, an inference exists that the number of MAPs is so small that it undercuts the Secretary's arguments in this regard.

In any event, when providing notice to more than 90,000 people, sending additional notice to 10-100 MAPs is not material.  Further, at the end of the day, the issue is not whether there may be challenges in administering a class action.  The issue is whether a class action is superior to individual litigation.  Given all the factors, clearly, a class action is superior to individual litigation.

**G.**     **Response to the Mechanics of Class Notice**

Assuming that a class is certified, in a footnote, the Secretary requests an additional round of briefing on the mechanics of notice.  Opp. at 43, n. 17.  That is, literally, the Secretary requests yet more delay.

Plaintiffs oppose any delay.  By the time the *hearing* (but not decision) on the class certification motion is held (assuming that it occurs when currently scheduled), more than 30 months will have passed since the Complaint in this case was filed.  In light of the fact that, *inter alia*, Plaintiffs have exactly the same information regarding Part C claims that they had the day *before* the Complaint was filed, that is hardly the "speedy" determination of this action contemplated by the Rules.  *See* FED.R.CIV.P. 1 ("just, speedy, and inexpensive determination of every action and proceeding.").  Especially in a matter that concerns the preservation of human life, no further delay should be countenanced.

Indeed, in further detail to Plaintiffs' original proposal, Plaintiffs request that the names and mailing addresses of the class members (as well as any associated MAPs) be provided to Plaintiffs' counsel within 30 days of a decision on class certification.  By that point, the Secretary will have had at least 2 and a half years to gather that information and having a date certain will avoid further delay and mischief in this regard.

## II.      CONCLUSION

Plaintiffs' class certification motion should be granted.

21

Dated:  March 19, 2021

Respectfully submitted,

/s/Jeffrey Blumenfeld
D.C. Bar No. 181768
LOWENSTEIN SANDLER LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 753-3800
Facsimile:  (202) 753-3838
jblumenfeld@lowenstein.com

*and*

PARRISH LAW OFFICES
James C. Pistorino
788 Washington Road
Pittsburgh, PA 15228
Telephone: (412) 561-6250
Facsimile:  (412) 561-6253
james@dparrishlaw.com

*Attorneys for Plaintiffs*