IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROL A. LEWIS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Case No. 18-cv-2929 (RBW) |
| XAVIER BECERRA, in his official ) | |
| capacity as Secretary of Health and ) | |
| Human Services, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs are two individual Medicare beneficiaries challenging the denial of several coverage claims. They have filed a motion for class certification, but the Court has not certified any class. Almost three years after filing their complaint, plaintiffs now move for nationwide preliminary injunctive relief to "prevent tens of thousands of persons" who are not parties to this case from having future Medicare claims denied on certain specified grounds. ECF No. 97 at 2. Their motion should be denied.

To begin with, such prospective relief is clearly barred by the Medicare statute. As the D.C. Circuit explained in *Porzecanski v. Azar*, equitable relief "precluding the Secretary—and any HHS adjudicators and contractors—from denying future claims" is prohibited in Medicare coverage cases. 943 F.3d 472, 480 (D.C. Cir. 2019); *id.* at 486 (explaining that "attempts to stretch the outcome of a single claim dispute to foreclose a contrary decision in any future determination" are "at odds with the Medicare regime"). And even if such relief were not jurisdictionally barred, a *nationwide* injunction would be plainly inappropriate: injunctive relief may not be "more burdensome to the defendant than necessary to provide complete relief to the plaintiffs" before the

1

Court. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Unless and until the Court certifies a class—which it should not do, for the reasons explained in the Secretary's opposition to class certification—the only parties before the Court are the two individual plaintiffs.

Those plaintiffs are not entitled to a preliminary injunction under the traditional four-part test. Their likelihood of success on the merits turns on their odds of obtaining a permanent injunction, which are extremely low—because a permanent injunction is barred for the same reasons that a preliminary injunction would be. Plaintiffs argue that the denial of coverage inflicts an irreparable harm, but their extraordinary delay in seeking this relief belies that claim. And to accept their argument would revolutionize judicial review of Medicare coverage claims, where a beneficiary's health is often implicated. Nor do the balance of the equities favor injunctive relief. For all of these reasons, plaintiffs' motion must be denied.

## BACKGROUND

**A.  Medicare Part B and its Claim Appeal Process**

Medicare is a federal health insurance program for the elderly and disabled, *see* 42 U.S.C. § 1395 *et seq.*, which is administered on behalf of the Secretary of Health and Human Services by the Centers for Medicare & Medicaid Services (CMS). Part A of the Medicare statute "covers medical services furnished by hospitals and other institutional care providers." *Ne. Hosp. Corp. v. Sebelius*, 657 F.3d 1, 2 (D.C. Cir. 2011) (citing 42 U.S.C. §§ 1395c to 1395i-5). Medicare Part B "is an optional supplemental insurance program that pays for medical items and services not covered by Part A, including outpatient physician services" and "durable medical equipment," among other things. *Id.* (citing 42 U.S.C. §§ 1395j to 1395w-4).

The statutory definition of durable medical equipment (DME), codified at 42 U.S.C. § 1395x(n), "includes iron lungs, oxygen tents, hospital beds, and wheelchairs . . . used in the

patient's home," as well as "blood-testing strips and blood glucose monitors for individuals with diabetes," among other specified items. The Secretary's regulation, 42 C.F.R. § 414.202, provides a more general definition. In 2017, the Secretary issued a CMS Ruling—a "statement of policy or interpretation" that is "binding on all CMS components," 42 C.F.R. § 401.108; *see id.* § 405.1063(b)—on the subject of continuous glucose monitors. CGMs are not blood glucose monitors within the meaning of the statute; they measure glucose levels in the interstitial fluid between patients' cells, not in their blood. CMS Ruling 1682-R at 6 (Jan 12, 2017), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Rulings/Downloads/CMS1682R.pdf. The CMS Ruling said that continuous glucose monitors accurate enough "to replace a blood glucose monitor" were covered as durable medical equipment, *id.* at 8, but that less accurate devices were not covered, *id.* at 15. The Secretary has published a notice of proposed rulemaking which would, if finalized, "classify CGM systems . . . as DME" whether or not they can be used to make treatment decisions on the basis of their readings alone. 85 Fed. Reg. 70,358, 70,403–04 (Nov. 4, 2020).

To seek reimbursement for the cost of a continuous glucose monitor or anything else, "a Medicare Part B beneficiary must submit a claim for an 'initial determination' of whether 'the items and services are covered or otherwise reimbursable.'" *Porzecanski*, 943 F.3d at 475–76 (quoting 42 C.F.R. § 405.920); *see* 42 U.S.C. § 1395ff(a)(1). "Initial coverage determinations are made by" Medicare administrative contractors hired by the agency "to manage the preliminary claims administration process." *Porzecanski*, 943 F.3d at 476. "If the contractor denies the beneficiary's claim," he may "obtain a 'redetermination' from the same contractor." *Id.* (citing 42 U.S.C. § 1395ff(a)(3)(A); 42 C.F.R. § 405.940). "If unsuccessful, the beneficiary can seek

'reconsideration' by a 'qualified independent contractor' who is wholly independent of the initial determination contractor." *Id.* (citing 42 U.S.C. § 1395ff(c)(1)–(2); 42 C.F.R. § 405.960).

If the beneficiary remains unsatisfied, he has a choice of two avenues along which to pursue his claim. First, subject to a minimum amount-in-controversy requirement, "he can request a hearing before an administrative law judge (ALJ)." *Id.* (citing 42 C.F.R. § 405.1000); *see* 42 U.S.C. § 1395ff(b)(1)(E). After that, he can seek review by the Medicare Appeals Council, *see* 42 C.F.R. § 405.1100, which makes the final decision for the Secretary, *id.* § 405.1130. If the beneficiary is not satisfied with the decision of the Appeals Council (or if it has not acted in a timely fashion, *see id.* § 405.1132), he may then seek judicial review within 60 days, 42 U.S.C. § 405(g), subject to another amount-in-controversy requirement, *id.* § 1395ff(b)(1)(E).

Alternatively, if his case presents a "question of law or regulation" that the Medicare Appeals "Council does not have the authority to decide," 42 C.F.R. § 405.990(a)(2), such as the validity of a statute, regulation, or CMS Ruling, *id.* § 405.990(c)(2), then the beneficiary can request expedited access to judicial review of the reconsideration decision, bypassing the ALJ and Appeals Council. *See* 42 U.S.C. § 1395ff(b)(2); 42 C.F.R. § 405.990. This expedited process is subject to the same amount-in-controversy requirement as ordinary access to judicial review. 42 C.F.R. § 405.990(b)(3).

Finally, a beneficiary who "desires broader relief outside the case-by-case adjudicatory model . . . has a clear administrative path . . . to request an NCD," or national coverage determination, "subject . . . to judicial review after final agency action." *Porzecanski*, 943 F.3d at 482. A national coverage determination is "a determination by the Secretary with respect to whether or not a particular item or service is covered nationally." 42 U.S.C. § 1395ff(f)(1)(B). "When no NCD has been made for a particular item or service, an eligible beneficiary may request

4

that the Secretary issue one." *Porzecanski*, 943 F.3d at 478 n.4 (citing 42 U.S.C. § 1395ff(f)(4)(A)). The Secretary's response to that request is then subject to judicial review. 42 U.S.C. § 1395ff(f)(1)(A)(v), (f)(4)(A) & (B).

### B.    Plaintiffs' Claims and Procedural History

In 2015, Carol Lewis filed suit in the United States District Court for the District of Massachusetts, seeking judicial review of a decision by the Medicare Appeals Council that her continuous glucose monitor was not durable medical equipment within the meaning of the Medicare statute and regulations. *Lewis v. Azar*, 308 F. Supp. 3d 574, 576 (D. Mass. 2018). The district court ultimately ruled in her favor, holding that "[t]he Council's decision . . . constituted legal error." *Id.* at 579. At the time of the Court's ruling, Ms. Lewis had another case pending before the Appeals Council, for review of an indistinguishable ALJ decision. AR 65. Before the Council could rule on her appeal, Ms. Lewis requested escalation to district court pursuant to 42 C.F.R. § 405.1132, which was granted, *see* AR 1–4, and timely filed this complaint. Ms. Lewis seeks judicial review of the denial of a claim for $3,594 in parts and supplies for a continuous glucose monitor, on the grounds that the monitor was not durable medical equipment within the meaning of the Medicare statute and regulations. AR 89–98.

Douglas Sargent seeks judicial review of the denial of two claims, each for $1,419, which were separately adjudicated through the administrative process. The Medicare Appeals Council denied both. AR 963–75, 1991–2003. Mr. Sargent's continuous glucose monitor did not come within the terms of coverage set out in CMS Ruling 1682-R, at 8, because it was not accurate enough "to replace a blood glucose monitor." *See* AR 974, 2001–02.

Plaintiffs filed suit on December 13, 2018. ECF No. 1. Although Local Civil Rule 23.1(b) generally requires that "plaintiff shall move for a certification under Fed. R. Civ. P. 23(c)(1)" no

more than "90 days after the filing of a complaint in a case sought to be maintained as a class action," plaintiffs sought an extension of that deadline, ECF No. 11, which this Court granted, *see* ECF No. 28 at 2. Plaintiffs moved for class certification on March 23, 2020, after the close of discovery. ECF No. 63.

In the meantime, the Secretary moved to dismiss Mr. Sargent from the case for failure to meet the statutory amount in controversy, arguing that the value of his claims could not be added together. The Secretary also moved to dismiss certain counts from the complaint. ECF No. 22. The Court denied the motion to dismiss Mr. Sargent from the case, concluding that a Medicare beneficiary could in fact add the value of his claims to satisfy the statutory amount in controversy, as the Second Circuit had recently held. Mem. Op. at 20, ECF No. 77. The Court dismissed two counts from the complaint, and dismissed a third as to Ms. Lewis only. *Id.* at 23, 25, & 32. The Court denied the pending motion for class certification without prejudice, and set a schedule for that motion to be refiled. Order at 2, ECF No. 78. The Court also denied "plaintiffs' request to file a motion for summary judgment before the Court addresses class certification in this case." ECF No. 73.

Plaintiffs renewed their motion for class certification, ECF No. 81, which the Secretary again opposed, ECF No. 84. This Court held a class certification hearing on July 20, 2021. On September 22, nearly three years after filing their complaint, plaintiffs moved for preliminary injunctive relief. ECF No. 97.

**ARGUMENT**

**A.      The requested injunction is jurisdictionally barred.**

Plaintiffs are two beneficiaries seeking "judicial review of the Secretary's final decision" denying coverage under Medicare Part B. 42 U.S.C. § 1395ff(b)(1)(A). Several interrelated statutory provisions "create the scheme for obtaining judicial review of Medicare claims" such as these. *American Hosp. Ass'n v. Azar*, 895 F.3d 822, 825 (D.C. Cir. 2018); *see Porzecanski*, 943 F.3d at 480–81. "First, 42 U.S.C. § 405(h) divests the district courts of federal-question jurisdiction 'on any claim arising under' Title II of the Social Security Act, and it bars any 'decision of the Commissioner of Social Security' from being judicially reviewed, 'except as herein provided' in other Title II provisions." *American Hosp. Ass'n*, 895 F.3d at 825. "Second, 42 U.S.C. § 405(g) provides for judicial review of Social Security Act claims, thus creating the exception 'herein provided.'" *Id.* "In pertinent part, it permits any person to file a civil action, 'after any final decision of the Commissioner of Social Security made after a hearing to which he was a party,' to 'obtain a review of such decision' in federal district court." *Id.* "Third, 42 U.S.C. § 1395ii states that certain provisions in § 405 and elsewhere in Title II 'shall also apply with respect to' Title XVIII of the Social Security Act—*i.e.*, the Medicare Act—'to the same extent as they are applicable with respect to' Title II, with any reference to the 'Commissioner of Social Security' considered as one to the Secretary of HHS." *Id.* (citing *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 7–9 (2000); *Heckler v. Ringer*, 466 U.S. 602, 614–15 (1984); *Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1130–31 (D.C. Cir. 1992)). "Although § 1395ii does not specifically enumerate § 405(g) as one of the incorporated Title II provisions," *id.*, it does mention § 405(h)—and § 405(g) is incorporated by 42 U.S.C. § 1395ff(b)(1)(A), which establishes the mechanism for judicial review of Medicare Part B coverage determinations.

7

*Porzecanski*, 943 F.3d at 481; *see also Nat'l Kidney*, 958 F.2d at 1130 (discussing earlier version of § 1395ff(b)).

Because plaintiffs' claims arise under the Medicare statute, they are subject to this "carefully circumscribed" scheme for judicial review. *Porzecanski*, 943 F.3d at 475; *id.* at 480 ("Federal jurisdiction is extremely limited for claims arising under the Medicare Act."); *see American Hosp. Ass'n*, 895 F.3d at 825 (explaining that "42 U.S.C. § 405(h) divests the district courts of federal-question jurisdiction" in cases arising under the Medicare statute). Under that scheme, "[j]udicial review may be had only after the claim has been presented to the Secretary." *American Chiropractic Ass'n v. Leavitt*, 431 F.3d 812, 816 (D.C. Cir. 2005). Section "405(h)'s bar on judicial review, as modified by § 405(g), 'demands the "channeling" of virtually all legal attacks through the agency.'" *Porzecanski*, 943 F.3d at 481 (quoting *Ill. Council*, 529 U.S. at 13); *see Ringer*, 466 U.S. at 615. "A party may not circumvent the channeling requirement 'by showing merely that postponement of judicial review would mean added inconvenience or cost in an isolated, particular case.'" *Porzecanski*, 943 F.3d at 481–82 (quoting *Council for Urological Interests v. Sebelius*, 668 F.3d 704, 708 (D.C. Cir. 2011)). "Rather, the 'difficulties must be severe enough to render judicial review unavailable as a practical matter.'" *Id.* at 482 (quoting *American Chiropractic Ass'n*, 431 F.3d at 816). Moreover, "[p]roperly channeling one claim does not permit a plaintiff to resolve other claims or causes of action that have not been channeled." *Id.* at 484 (citing *S. Rehab. Grp., P.L.L.C. v. Sec'y of HHS*, 732 F.3d 670, 677–79 (6th Cir. 2013)). To the contrary, a Medicare beneficiary "must present and exhaust each of his future benefit claims," and "cannot satisfy § 405(g)'s presentment requirement with respect to future claims because those claims have not yet arisen." *Id.* at 482.

The D.C. Circuit applied these principles in *Porzecanski*, where it held that "after channeling a single claim for 'medical and other health services'" under Medicare Part B, "a Medicare beneficiary" cannot "obtain prospective equitable relief mandating that HHS recognize his treatment as a covered Medicare benefit in all future claim determinations." *Id.* at 475. Porzecanski argued that his "requested injunction would not in fact require HHS to approve his future claims," but "would merely effectuate the district court's ruling that [a particular] claim was a covered Medicare Part B benefit by precluding the Secretary—and any HHS adjudicators and contractors—from denying future claims on the same rejected grounds." *Id.* at 480. Although Porzecanksi "admit[ted] his requested relief would preclude the agency from applying its invalidated conclusions that treatments for his rare condition are not a Medicare-covered benefit and not medically necessary," he nonetheless maintained that he did "not in fact seek a declaration of entitlement to Medicare benefits on specific future claims." *Id.* at 482 (quotation and alteration marks from opinion omitted).

The D.C. Circuit concluded that this "strained position" was "at odds with Supreme Court precedent." *Id.* "In *Ringer*, the Court held that § 405(g) barred a patient from obtaining declaratory and injunctive relief compelling the Secretary to conclude that his future surgery was 'reasonable and necessary' under the Medicare Act." *Id.* (citing 466 U.S. at 620–21, 626–27). "[A]s the Court explained, '[a]lthough it is true that Ringer is not seeking the immediate payment of benefits, he is clearly seeking to establish a right to future payments' which 'must be construed as a "claim arising under" the Medicare Act because any other construction would allow claimants substantially to undercut Congress' carefully crafted scheme for administering the Medicare Act.'" *Id.* at 483 (quoting *Ringer*, 466 U.S. at 621 (second alteration in original)). And "[i]n *Illinois Council*, the Supreme Court again declared that a 'claim for future benefits is a § 405(h) claim'

9

and that 'all aspects' of any future claim 'must be channeled through the administrative process.'" *Id.* (quoting *Ill. Council*, 529 U.S. at 12).

The D.C. Circuit therefore held that "*Ringer* and *Illinois Council* directly foreclose Porzecanski's attempt to recast the requested relief as anything other than a claim for future benefits." *Id.* His legal theory ran "headlong into the Supreme Court's instruction that '*all* aspects' of a claim be first channeled through the agency." *Id.* (quoting *Ill. Council*, 529 U.S. at 12 (emphasis in *Porzecanski*)). "[W]hen prospective relief would functionally determine future claims, we cannot ignore the restrictive mandate of the Medicare Act's channeling requirement." *Id.* at 484. In sum, "attempts to stretch the outcome of a single claim dispute to foreclose a contrary decision in any future determination" are "at odds with the Medicare regime," and cannot be permitted. *Id.* at 486.

In this case, plaintiffs' motion for preliminary injunctive relief omits any discussion of how their request can be reconciled with the strict limitations on judicial review of Medicare coverage claims—despite extensive discussion of that subject in the Secretary's opposition to the pending motion for class certification. Perhaps plaintiffs' passing suggestion that "the sought after injunction will not require that claims are approved" but "merely preclude the Secretary from denying claims on [particular] grounds," ECF No. 97 at 10–11, is meant to address that issue. But if so, that was precisely the argument rejected in *Porzecanski*. In that case, at least, plaintiff sought an injunction to effectuate the final judgment of the district court. Here, by contrast, plaintiffs seek a preliminary injunction that would "functionally determine future claims," 943 F.3d at 484, on the basis of their alleged *likelihood* of success on the merits of the claims already channeled through the administrative process, and presented for judicial review here. Such relief is plainly

barred by 42 U.S.C. § 405(h), as incorporated by § 1395ii. For that reason alone, plaintiffs' motion must be denied.

**B.     Any injunctive relief must be limited to the parties before the Court.**

"Article III of the Constitution limits the exercise of the judicial power to 'Cases' and 'Controversies.'" *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (citation omitted). A federal court may entertain a suit only by a plaintiff who has suffered an "injury in fact," and the court may grant relief only to remedy "the inadequacy that produced [the plaintiff's] injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1929, 1930 (2018) (citations omitted). In short, neither standing nor remedies are "dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).

Principles of equity reinforce those constitutional limitations. A court's equitable authority is generally limited to relief "traditionally accorded by courts of equity" in 1789. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). Even if plaintiffs had a means by which to obtain preliminary injunctive relief (which they do not), that relief could "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Nationwide injunctions are irreconcilable with these constitutional and equitable limitations, because they extend relief to those who were not "plaintiff[s] in th[e] lawsuit, and hence were not the proper object of th[e court's] remediation." *Lewis*, 518 U.S. at 358.

Plaintiffs nonetheless seek nationwide relief against the Secretary. Their proposed injunction would "preclude the Secretary from denying claims on [certain] grounds," ECF No. 97 at 11, whether those claims were submitted by plaintiffs or by a non-party. Plaintiffs' theory appears to be that anyone submitting such a claim would be a member of their proposed class, and therefore effectively a party to this case. *See id.* at 2 (arguing that "a preliminary injunction" would

11

allow "at least some fraction of the class members [to] receive relief"). But the filing of a motion for class certification does not make parties of absent individuals; only the Court's actual certification of a class can do that. *See Molock v. Whole Foods Market Group, Inc.*, 952 F.3d 293, 298 (D.C. Cir. 2020) ("It is class certification that brings unnamed class members into the action . . . ."). Unless and until the Court grants plaintiffs' motion for class certification, plaintiffs are the only parties to this action and any injunctive relief must be limited to them.

C.  **Plaintiffs are not entitled to a preliminary injunction under the traditional test.**

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (cleaned up). It is "never awarded as of right," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted), and a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in" its absence, "that the balance of equities tips in his favor, and that an injunction is in the public interest," *id.* at 20, 24. *See Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011) (discussing the effect of *Winter* on the D.C. Circuit's prior sliding-scale approach to this four-factor test).

"A preliminary injunction grants 'intermediate relief of the same character as that which may be granted finally.'" *Sai v. TSA*, 54 F. Supp. 3d 5, 8 (D.D.C. 2014) (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)); *accord Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1134 (11th Cir. 2005) ("Preliminary injunctions are a tool appropriately used only to grant intermediate relief *of the same character as that which may be granted finally*.") (internal quotation omitted, emphasis in original). "[B]ut . . . preliminary relief may never be granted that addresses matters 'which in no circumstances can be dealt with in any final injunction that may be entered.'" *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003) (quoting *De*

12

*Beers*, 325 U.S. at 220), *abrogated on other grounds by eBay, Inc. v. MercExchange. LLC*, 547 U.S. 388 (2006); *accord Bird v. Barr*, 2020 WL 4219784, at *2 (D.D.C. July 23, 2020) (explaining that "where the requested injunctive relief could not be granted as final relief, it also could not be granted as intermediate relief"). For that reason, and as relevant here, Plaintiffs seeking a preliminary injunction must show that they are "likely to succeed in obtaining a permanent injunction on the merits." *Shields v. Gross*, 563 F. Supp. 1253, 1256 (S.D.N.Y. 1983); *accord Williford v. Ocwen Loan Servicing, LLC*, 2011 WL 13187265, at *2 (C.D. Cal. July 15, 2011) ("To establish a likelihood of success, a plaintiff must show not only that he is likely to succeed on a claim, but that he is likely to win *permanent injunctive relief* on that claim."); *cf. E.A. Renfroe & Company, Inc. v. Moran*, 2006 WL 8441172, at *5 (N.D. Ala. Dec. 8, 2006) ("[T]he court finds a very high degree of likelihood that Renfroe will succeed in obtaining a permanent injunction when the final judgment is entered. Therefore, there is a substantial likelihood of success.").

Plaintiffs argue that they are likely to succeed on the merits, by which they mean the merits of the coverage claims that they have channeled, exhausted, and timely presented for judicial review here. ECF No. 97 at 7–9. To be sure, Medicare beneficiaries (including Ms. Lewis) have succeeded on similar claims before other district courts. *See Olsen v. Cochran*, 2021 WL 711469 (E.D. Wash. Feb. 23, 2021); *Zieroth v. Azar*, 2020 WL 5642614 (N.D. Cal. Sept. 22, 2020); *Lewis v. Azar*, 308 F. Supp. 3d 574 (D. Mass. 2018); *Bloom v. Azar*, 2018 WL 583111 (D. Vt. Jan 29, 2018); Decision and Order at 10, ECF No. 19, *Whitcomb v. Hargan*, Case No. 17-cv-14 (E.D. Wis. Oct. 26, 2017).[1]

---

[1] The *Zieroth* court found that the Secretary's legal position was not frivolous, and had been consistently maintained. *Zieroth v. Azar*, 2020 WL 7075629, at *2–*3 (N.D. Cal. Dec. 3, 2020). The *Olsen* court disagreed on both points and noted a delay in the filing of the administrative record, which undersigned counsel regrets. *Olsen v. Becerra*, 2021 WL 3683360, at *2 (E.D. Wash. Apr. 20, 2021).

But plaintiffs' likelihood of success on those claims is not the relevant question on this motion.[2] Instead, to win a preliminary injunction here, plaintiffs must show that they are likely to obtain a permanent injunction on the merits. *Williford, LLC*, 2011 WL 13187265, at *2; *Shields*, 563 F. Supp. at 1256. And for the reasons discussed above, plaintiffs have no likelihood of winning a permanent injunction here because such an injunction is barred by 42 U.S.C. § 405(h), as incorporated by § 1395ii. They have not shown a likelihood of success on the merits of their claims for permanent injunctive relief, and therefore are not entitled to a preliminary injunction.

Nor have plaintiffs shown that they are likely to suffer irreparable harm. "Courts have found that '[a]n unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm.'" *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014) (quoting *Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005)); *see Davis v. Billington*, 76 F. Supp. 3d 59, 66 n.11 (D.D.C. 2014) (Walton, J.). And "[t]he D.C. Circuit has held that a delay of forty-four days before bringing action for injunctive relief was 'inexcusable,' and 'bolstered' the 'conclusion that an injunction should not issue . . . .'" *Dallas Safari Club v Bernhardt*, 453 F. Supp. 3d 391, 403 (D.D.C. 2020) (quoting *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975)); *see Mylan Pharm., Inc. v. Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000) (delay of two months "militates against a finding of irreparable harm"). Plaintiffs here filed their motion for extraordinary injunctive relief more than two years and nine months after their complaint, with no explanation at all for the delay. That alone is enough to warrant denial.

---

[2] Because it is not the relevant question on this motion, and because this Court has expressly reserved briefing on the subject until its ruling on class certification, *see infra* at 15–16, the Secretary does not present his full merits position here.

14

And more fundamentally, plaintiffs appear to argue that being forced to present and exhaust future Medicare claims before seeking judicial review would constitute an irreparable harm. That argument is irreconcilable with the D.C. Circuit's analysis in *Porzecanski*. Although the plaintiff in that case "understandably want[ed] to end the cycle of individual denials and agency appeals," the court held that such "'occasional individual, delay-related hardship' does not override 'the judgment of Congress' encapsulated in § 405(h)." *Porzecanski*, 943 F.3d at 482 (quoting *Illinois Council*, 529 U.S. at 13). And the court noted that a beneficiary who "desires broader relief outside the case-by-case adjudicatory model . . . has a clear administrative path . . . to request an NCD," or national coverage determination, "subject . . . to judicial review after final agency action." *Id.*; *see* 42 U.S.C. § 1395ff(f)(1) & (4). Otherwise, a beneficiary who "disputes a future adverse determination . . . has agency review—and, eventually, federal court—to vindicate his position." *Porzecanski*, 943 F.3d at 486.

The need to present and exhaust future claims cannot constitute irreparable injury in a Medicare coverage case. Nor can legitimate concerns over health issues and the coverage of potentially necessary treatments, which are the usual subjects of such cases. If a plaintiff who was likely to succeed on a future coverage claim could obtain a preliminary injunction based on the burden of channeling and health concerns, such injunctions would become commonplace.

Finally, the balance of the equities does not favor the issuance of the requested injunction. The parties previously briefed the question of whether this Court should address the merits of plaintiffs' claims before resolving their motion for class certification. The Secretary explained that doing so would allow putative class members to learn the Court's view of the merits "without any risk [that] their individual claims . . . would be precluded by an adverse ruling." *Hyman v. First Union Corp.*, 982 F. Supp. 8, 11 (D.D.C. 1997). *See* ECF No. 60. The Court opted against

this "abusive practice," *Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 311 n.5 (D.D.C. 2018), and denied "plaintiffs' request to file a motion for summary judgment before the Court addresses class certification in this case." ECF No. 73. Plaintiffs' belated motion for a preliminary injunction appears to be an effort to circumvent that ruling, by placing the likelihood of success on the merits before this Court with the motion for class certification still pending. That alone is sufficient grounds to deny their motion for extraordinary injunctive relief as contrary to the balance of the equities.

## CONCLUSION

Plaintiffs are "'clearly seeking to establish a right to future payments' outside the appropriate channels and [this Court] therefore must reject their request for prospective relief." *Porzecanski*, 943 F.3d at 483 (quoting *Ringer*, 466 U.S. at 621). For that reason and others set forth above, plaintiffs' motion for a preliminary injunction should be denied.

Dated: September 29, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

MICHELLE BENNETT
Assistant Director, Federal Programs Branch

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendant*