IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAROL A. LEWIS, and DOUGLAS B.
SARGENT, on behalf of themselves and all
others similarly situated,

    *Plaintiffs,*

    v.

Xavier Becerra, in his capacity as Secretary
of the United States Department of Health
and Human Services,

    *Defendant.*

Case No. 1:18-cv-02929 (RBW)

# CAROL LEWIS' AND DOUGLAS SARGENT'S
# REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs' motion should be granted and Plaintiffs will not tarry long in addressing the specious arguments offered by the Secretary.

## DISCUSSION

Before addressing the Secretary's arguments, Plaintiffs address the continuing issue of the Secretary's "bad faith mischaracterization" of the bases for denial in cases involving CMS 1682-R. The applicable statutes provide coverage for "durable medical equipment," but that phrase is only defined by way of examples of what would qualify. *See* 42 U.S.C. § 1395x(n). The Secretary has issued regulations further defining "durable medical equipment" as items that meet a five-part test - one element of which is that the item must be "primarily and customarily used for a medical purpose." *See* 42 C.F.R. § 414.202. Multiple courts have held that this phrase is not ambiguous and, therefore, it is improper to further construe it. Nevertheless, in CMS 1682-R, the Secretary sought to construe the phrase to exclude CGMs that did not replace finger-sticks. Thus, each time a CGM claim is denied referencing CMS 1682-R, the claim is being denied because the CGM is allegedly not "primarily and customarily used to serve a medical purpose" and, therefore, not "durable medical equipment."

In the present case, one of Mr. Sargent's claims for CGM coverage was denied on the grounds that his CGM was not "primarily and customarily used to serve a medical purpose" (as construed in CMS 1682-R) and was, therefore, not "durable medical equipment." *See* AR972-74.

In litigation, the Secretary's representative has alleged that CGM claims where CMS 1682-R is referenced were rejected on the basis of "accuracy." *See, e.g.*, Opp. at 5. Of course, "accuracy" is not a statutory or regulatory basis for granting or denying coverage. The only basis for coverage is "durable medical equipment" or, more specifically, "primarily and customarily used to serve a medical purpose." One court has already determined that the Secretary's effort to

2

recharacterize the bases for denial is a "bad faith …. mischaracterization of the justification of the denial of coverage." *Olsen v. Becerra*, No. 2:20-CV-00374-SMJ, 2021 WL 3683360 at *2. (E.D. Wash. April 20, 2021).

**A.     This Court Has the Power to Enjoin Illegal/Bad Faith Conduct**

The foundation of the Secretary's opposition is the idea that this Court lacks the power to enjoin the Secretary from engaging in illegal activity (*i.e.*, enforcing illegally issued regulations) and that, more generally, the Secretary's illegal and bad faith actions are immune from judicial review. There is no good faith basis for such an argument.

The Secretary's assertion that this Court lacks the power to vacate Rulings (*i.e.*, purported regulations) issued illegally by the Secretary is foreclosed by, at least, the Supreme Court's decision in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986). There, a group of physicians challenged the validity of a regulation used in determining the amount of benefits. Just like the Plaintiffs in this case, the physician's suit was brought under 42 U.S.C. § 1395ff(b) through 42 U.S.C. § 405(g). The Supreme Court affirmed the district court's invalidation of the challenged regulation and rejected the Secretary's argument that the court lacked the power/jurisdiction to take that step. *Id*. at 680 ("Challenges to the validity of the Secretary's instructions and regulations are cognizable in courts of law. … We ordinarily presume that Congress intends the executive to obey its statutory commands and, accordingly, that it expects the courts to grant relief when an executive agency violates such a command.") (cleaned up). Indeed, pursuant to 5 U.S.C. § 706(2), this Court may "hold unlawful and set aside agency action." Here, the "agency action" being challenged is both the illegal issuance of CMS 1682-R and the denial of Plaintiffs' claims. Thus, the result of this litigation will, in addition to providing coverage for the denied claims, be the invalidation and vacatur of CMS 1682-R.

With the power to declare invalid and vacate also comes the power to enjoin on both a preliminary and a permanent basis. Indeed, "courts frequently enjoin agencies from enforcing regulations that have been found to be invalid." *See, e.g., Blue Cross and Blue Shield Ass's v. Shalala*, No. 90-1356 (RCL), 1996 WL 636131 at *3 (D.D.C. Aug. 27, 1996) (Lamberth, J.) (collecting cases and enjoining the Secretary from enforcing invalid regulation).

The decision in *Porzecanski v. Azar*, 943 F.3d 472, 480 (D.C. Cir. 2019), on which the Secretary relies, says nothing different. In *Porzecanski*, the plaintiff first sought an injunction requiring the Secretary to approve future claims the plaintiff might submit, which he later narrowed to a requested injunction barring the Secretary from denying claims on the same grounds as he previously won on. *Id.* at 477 and 480. In effect, the plaintiff sought an injunction enforcing offensive collateral estoppel even before claims were submitted. That request was rejected by the Circuit Court.

By contrast, Plaintiffs in this case challenge illegal/bad faith conduct in violation of statutes, particularly the "notice and comment" provisions of 42 U.S.C. § 1395hh(a)(2) – "No rule, requirement or other statement of policy …. shall take effect unless it is promulgated by the Secretary by regulation."

Moreover, when a regulation is determined to be invalid, the result is the invalidation of the regulation for everyone – not just the parties before the Court. *Blue Cross*, 1996 WL 636131 at *2-3 ("Moreover, the government has failed to explain how it could have the authority to enforce an invalid regulation against a similar entity simply because the entity was not part of the litigation."). *See also National Mining Assoc. v. U.S. Army Corps of Engineers*, 145 F.3d 1399 D.C. Cir. 1998):

> The Administrative Procedure Act permits suit to be brought by any person "adversely affect or aggrieved by agency action." In some cases, the "agency

4

> action" will consist of a rule of broad applicability; and if the plaintiff prevails, the result is that the rule is invalidated, not simply that the court forbids its application to a particular individual. Under these circumstances a single plaintiff, so long as he is injured by the rule, may obtain "programmatic relief that affects the rights of parties not before the court.

*Id*. at 1439 (*citing Lujan v. National Wildlife Federation*, 497 U.S. 871, 913 (1990)). Thus, whether there is one party to this case or more than 100,000, an order invalidating CMS 1682-R for everyone and enjoining the Secretary from enforcing it through denials is appropriate and within this Court's power.

While the Secretary relies heavily on *American Hospital Ass'n v. Azar*, 895 F.3d 822 (D.C. Cir. 2018), that case addresses whether regulations can be challenged in the absence of even submitting a claim. In the present case, there could be no good faith basis for asserting that Mrs. Lewis and Mr. Sargent did not submit claims and go through the administrative process. Thus, the *AHA* case simply has no bearing here. Likewise irrelevant are the Secretary's assertions regarding "presentment," "channeling," and *Porzecanski*. The proposed injunction would not require the Secretary to approve any claims (either before their submission or after). Instead, the injunction would only preclude the Secretary from denying claims on illegal grounds and violating 42 U.S.C. § 1395hh(a)(2).

This Court has the power to declare invalid, vacate, and enjoin the enforcement of an illegally issued regulation on both a preliminary and permanent basis and the Secretary's contention otherwise is without basis.

**B.    The Requirements for a Preliminary Injunction Have Been Met**

Turning to the actual requirements for a preliminary injunction, the showing of Plaintiffs' motion has not been rebutted.

**1.    Plaintiffs Are Likely to Succeed on the Merits**

The Secretary's opposition does not even attempt to defend the illegal issuance of CMS 1682-R. Thus, Plaintiffs' showing is unrebutted.

Indeed, the only basis for the Secretary's opposition in this regard is his contention that this Court lacks the power to enjoin illegal conduct. Opp. at 14. That baseless position was addressed above.

### 2. Balance of Equities

The Secretary did not challenge Plaintiffs' showing that: 1) Plaintiffs have an interest in having the laws of Congress followed and in not having claims denied on illegal grounds; and that the Secretary can have no legitimate interest in behaving illegally.

Instead, the Secretary asserts that the balance of equities favors the Secretary because of the potential effects on the litigation itself. Opp. at 15-16. That is, the Secretary contends that if potential class members come to learn that Plaintiffs are likely to succeed on the merits then it will potentially effect their participation in the litigation.

Respectfully, the effect on the litigation itself is not a proper inquiry for the balance of equities and the concern expressed by the Secretary is always present when a preliminary injunction is considered. That is, how the parties approach a litigation and consider settlement, *e.g.*, is always subject to some impact from a ruling either granting or denying a preliminary injunction. Such concerns are not a reason not to grant an injunction. Further, such a rule would preclude preliminary injunctions in class actions entirely and, of course, there is no basis for such a claim.

Rather than effects on the litigation, balance of equities is focused on whether it is equitable to allow the defendant to continue to operate in the complained of manner (and the plaintiff suffer the alleged harms) until the litigation completes. As shown, the Secretary can have no legitimate

6

interest in illegal conduct while Plaintiffs' showing of an interest in having Congress' laws complied with and irreparable harm (including death) is unrebutted. The balance favors Plaintiffs.

### 3. Plaintiffs Are Likely to Suffer Irreparable Harm

As with "likelihood of success on the merits", the Secretary did not even attempt to rebut Plaintiffs' showing that persons unable to obtain a CGM as a result of the Secretary's illegal conduct are likely to suffer irreparable harm. Indeed, Plaintiffs showed that (whatever has happened up to this date) each month going forward ~13,000 claims will be denied on the illegal grounds and that many of those people will not be able to get a CGM from another source. The Secretary disputed none of this, so, again, that showing is unrebutted.

Rather than the actual showing of irreparable harm, the Secretary faults Plaintiffs for not seeking the "extraordinary" remedy of a preliminary injunction sooner.

As to why Plaintiffs did not seek the "extraordinary" remedy of a preliminary injunction sooner, Plaintiffs have two responses: First, exactly as stated, a preliminary injunction is an "extraordinary" remedy and, therefore, if at all tolerable, it would be better to get a ruling on the merits rather than seeking such a remedy and creating more paperwork and issues for a Court to deal with. Thus, Plaintiffs would have preferred not to seek such a remedy and instead get a ruling on the merits – if it could be done in a remotely reasonable time. Simultaneously, it was hoped that the Secretary would come to his senses and cease the unreasonable conduct.

Neither of those hopes has come to fruition. Rather than the "just, speedy, and inexpensive determination" contemplated by FED.R.CIV.P. 1, "delay" has been the primary feature of this case. Essentially, the first year of this case was expended attempting to get basic discovery. That was occasioned by a series of false statements/promises by the Secretary. For example, a five-month delay in dealing with the Protective Order resulted from the Secretary demanding one, failing to

propose one, promising responses to a proposed Protective Order by a date certain - then failing to honor his promises – before fighting a Protective Order through motion practice.  Likewise, the Secretary committed to producing Part C information (in order to avoid motion practice) and this Court ordered its production, then the Secretary failed to produce such information, then the Secretary reneged on his commitment to do so, and that culminated in this Court's withdrawal of its order of production.

In December 2019, this Court issued an Order for class certification briefing and various delays have impacted that process.

Second, of course, as time has gone by, Plaintiffs' likelihood of success on the merits has increased, while the Secretary's potential arguments have weakened.  Since the filing of this case in December 2018, multiple other courts have ruled against the Secretary on the core issue of whether a CGM is "durable medical equipment."  In addition, those courts have become increasingly intolerant of the Secretary's contumacious behavior.  Thus, those courts have been awarding attorneys' fees under the Equal Access to Justice Act consistent with the statutory purpose of discouraging improper behavior by the Secretary.  That process culminated most recently, in April 2021, in the decision of the *Olsen* court that the Secretary was engaging in "bad faith" both in his underlying denials and in the conduct of the litigation itself.  Thus, other courts have addressed the identical issues the likelihood of success has increased.

With respect to the illegality of CMS 1682-R specifically, suits addressing that most directly were filed in December 2019 (*Olsen v. Azar*, Case No. 19-cv-3814, (D.D.C.)) and January 2020 (*Zieroth v. Azar*, Case No. 20-cv-172 (N.D. Ca.)).  Resolution of the *Olsen* case was delayed by the Secretary's motion to dismiss/transfer venue from his home district.  Upon transfer, the Court in Washington State resolved the merits within five months but did so in a manner that

avoided addressing the illegal issuance of CMS 1682-R.  Likewise, the *Zieroth* case sought the same ruling but the court resolved the matter without addressing the merits of the illegality of CMS 1682-R.  Indeed, yet another suit was filed in April 2021 in Utah seeking to address the illegal issuance of CMS 1682-R.  *See Smith v. Becerra*, Case No. 21-cv-47 (D. Utah).  Merits briefing there on CMS 1682-R is nearly complete.

Further, in November 2020, the Secretary published information indicating his intention to withdraw CMS 1682-R and even obtained a delay in the *Zieroth* litigation on the grounds that withdrawal was imminent.  Indeed, in August 2021, the Secretary repeated his request for delay in the *Smith* case on the grounds that CMS 1682-R was going to be withdrawn/revised – which the Court there rejected.

Finally, of course, Plaintiffs' sought to be understanding of difficulties and burdens likely resulting from the pandemic starting in March 2020.

In any event, the factors to consider on a preliminary injunction are evaluated on a sliding scale, such that "if the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor."  *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291-2 (D.C. Cir. 2009).  Here, given the very strong showing of likelihood of success on the merits and that Plaintiffs are suffering irreparable harm, a preliminary injunction is appropriate.

## C.   No Bond Should Be Required

The Secretary did not oppose or object to Plaintiffs' request that no bond be required in the event an injunction is entered.  Accordingly, no bond should be required.

## CONCLUSION

For the reasons set forth above, this Court should enter an injunction barring the Secretary from: 1) rejecting CGM claims on the grounds that a CGM is not "primarily and customarily used to serve a medical purpose"; and 2) enforcing or otherwise giving effect to CMS 1682-R.  Further, no bond should be required.

Dated:  October 6, 2021                                             Respectfully submitted,

/s/Jeffrey Blumenfeld
D.C. Bar No. 181768
LOWENSTEIN SANDLER LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 753-3800
Facsimile:  (202) 753-3838
jblumenfeld@lowenstein.com

            and

PARRISH LAW OFFICES
James C. Pistorino
788 Washington Road
Pittsburgh, PA 15228
Telephone: (412) 561-6250
Facsimile:  (412) 561-6253
james@dparrishlaw.com

*Attorneys for Plaintiffs*