IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROL A. LEWIS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Case No. 18-cv-2929 (RBW) |
| XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services, | ) ) ) |
| | ) |
| Defendant. | ) |
| | ) |

**SURREPLY IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

In his memorandum opposing plaintiffs' motion for preliminary injunctive relief, the Secretary explained that such prospective relief was barred by the channeling requirement that applies to all claims arising under the Medicare statute. *See* ECF No. 99 at 7–11. "[W]hen prospective relief would functionally determine future claims," courts "cannot ignore the restrictive mandate of the Medicare Act's channeling requirement." *Porzecanski v. Azar*, 943 F.3d 472, 484 (D.C. Cir. 2019). Because "attempts," such as this one, "to stretch the outcome of a single claim dispute to foreclose a contrary decision in any future determination" are "at odds with the Medicare regime," they cannot be permitted. *Id.* at 486.

On reply, plaintiffs contended that the Secretary's position was "foreclosed by . . . the Supreme Court's decision in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986)," which they said "was brought under 42 U.S.C. § 1395ff(b)," "[j]ust like . . . this case." ECF No. 100 at 3. But that is not true: *Michigan Academy* was not brought under 42 U.S.C. § 1395ff(b), which did not provide for prospective relief then and does not provide for it now. The

1

Secretary submits this surreply to briefly explain the evolution of § 1395ff(b) and the place of *Michigan Academy* in the Supreme Court's Medicare jurisprudence.

When the Medicare statute was first enacted in 1965, it "provided for only limited review of Part B decisions." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 16 (2000). Individuals could seek judicial review under § 1395ff(b) after a final determination of "entitlement under part A or part B," but the statute limited claims concerning the "amount of benefits" to Medicare Part A. Pub. L. No. 89-97, tit. 1, § 102(a), 79 Stat. 330, *codified at* 42 U.S.C. § 1395ff(b) (1970). A 1972 amendment maintained that differential treatment, albeit in different words. *See* Pub. L. No. 92-603, tit. II, § 290o(a), 86 Stat 1464, *codified at* 42 U.S.C. § 1395ff(b)(1) (1976). "Section 1395ff thus distinguishe[d] between two types of administrative decisions: eligibility determinations (that decide whether an individual is 65 or over or 'disabled' within the meaning of the Medicare program) and amount determinations (that decide the amount of the Medicare payment to be made on a particular claim)." *United States v. Erika, Inc.*, 456 U.S. 201, 208 (1982). "Conspicuously, the statute fail[ed] to authorize further review for determinations of the amount of Part B awards." *Id.* "In the context of the statute's precisely drawn provisions," the Supreme Court concluded that "this omission provides persuasive evidence that Congress deliberately intended to foreclose further review of such claims." *Id.*

In *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986), however, the Supreme Court held "that Congress intended to bar judicial review *only* of determinations of the amount of benefits to be awarded under Part B," *id.* at 678 (emphasis added), and did not mean to bar "challenges mounted against the *method* by which such amounts are to be determined rather than the *determinations* themselves," *id.* at 675 (emphasis in original). The *Michigan Academy* Court therefore concluded that "an attack on the validity of a regulation is not the kind of

2

administrative action that we described in *Erika* as an 'amount determination' which decides 'the amount of the Medicare payment to be made on a particular claim' and with respect to which the Act impliedly denies judicial review." *Id.* at 676 (quoting *Erika*, 456 U.S. at 208).  The Court also held that 42 U.S.C. § 405(h), as applied to the Medicare program by § 1395ii, did not bar federal question jurisdiction over such challenges, because the contrary holding would have meant "no review at all of substantial statutory and constitutional challenges to the Secretary's administration of Part B of the Medicare program." *Id.* at 680.

After *Michigan Academy*, then, there were three approaches to judicial review of the Medicare Part B program.  First, *eligibility* determinations could be challenged in federal court under 42 U.S.C. § 1395ff(b), after complying with the "rigorous scheme" of administrative presentment and exhaustion borrowed from § 405(g) and (h).  *Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1130 (D.C. Cir. 1992).  Second, "disputes over 'amounts' were (per statute) completely removed from judicial review." *Id.* (citing *Erika*).  And third, "disputes over 'methodology' could be brought under 28 U.S.C. § 1331's provision for general federal question jurisdiction, subject only to conventional exhaustion requirements," and not the channeling requirements of § 405(g) and (h), as applied to the Medicare program by §§ 1395ff(b) and 1395ii.  *Id.* (citing *Michigan Academy*).  The third category—the *Michigan Academy* exception allowing for general federal question jurisdiction—consisted of claims that were neither *authorized* by § 1395ff(b) (*i.e.*, eligibility challenges) nor *barred* by the statute as it then existed (*i.e.*, amount disputes).

But § 1395ff(b) was amended several months after *Michigan Academy*, to eliminate the distinction between judicial review of Part A and Part B claims.  Pub. L. No. 99–509, § 9341(a)(1)(B), *codified at* 42 U.S.C. § 1395ff(b)(1)(C) (1988); *see Nat'l Kidney*, 958 F.2d at

3

1132 (explaining that "the special treatment of part B, based on the pre-October 1986 statutory differences, cannot survive the elimination of those differences"). Because § 1395ff(b) now authorizes judicial review of many more Part B claims than it once did, the application of the *Michigan Academy* exception to Part B claims has been drastically restricted.

The Supreme Court synthesized its jurisprudence on judicial review of Medicare claims in *Illinois Council*. That case was brought under 28 U.S.C. § 1331, and claimed "that certain Medicare-related regulations violated various statutes and the Constitution." 529 U.S. at 5. The Court held that general federal question jurisdiction was unavailable, because the Medicare statute required those claims to be channeled through the administrative process. *Illinois Council* read *Michigan Academy* to hold that the Medicare statute applies the bar on general federal question jurisdiction set out in § 405(h) unless "application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Id.* at 19. Because review of the claims in *Illinois Council* was available through the administrative process, the Medicare statute required them to be properly channeled through that process. *Id.* at 25.

To summarize: *Michigan Academy* allowed general federal question jurisdiction for challenges to Medicare Part B regulations, because review through the administrative process was unavailable under § 1395ff(b) as it then stood. *Illinois Council* required the channeling of challenges to Medicare regulations whenever the administrative process allows for review. The very regulatory challenge brought in *Michigan Academy* would, therefore, now be subject to the Medicare statute's requirement of channeling, because § 1395ff(b) now allows such Part B claims to be presented through the administrative process.

The D.C. Circuit's most recent and complete discussions of the scope of judicial review in Medicare cases can be found in *American Hospital Association v. Azar*, 895 F.3d 822 (D.C. Cir.

4

2018), and *Porzecanski v. Azar*, 943 F.3d 472 (D.C. Cir. 2019), which are discussed on pages 7 through 11 of the Secretary's opposition brief. Those cases make clear that where the channeling requirement applies—as it does here—then prospective relief is barred. Challenges to Medicare Part B coverage determinations have been subject to administrative channeling since § 1395ff(b) was amended (shortly after the decision in *Michigan Academy*), and so they no longer come within the exception described by *Michigan Academy*.

Because "'all aspects' of any future [Medicare] claim 'must be channeled through the administrative process'" where such channeling is available, *Porzecanski*, 943 F.3d at 483 (quoting *Ill. Council*, 529 U.S. at 12), plaintiffs cannot obtain an injunction to prevent the Secretary from "denying future claims on [certain] grounds," *id.* at 480. For that reason and others set out in the Secretary's opposition brief, their motion for preliminary injunctive relief should be denied.

Dated:  October 20, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

MICHELLE BENNETT
Assistant Director, Federal Programs Branch

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendant*