## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROL A. LEWIS, <u>et al.</u>,         ) | |
|                      ) | |
|           Plaintiffs,       ) | |
|                      ) | |
|       v.                     ) | Civil Action No. 18-2929 (RBW) |
|                      ) | |
| XAVIER BECERRA,[1] in his official    ) | |
| capacity as Secretary of the Department of    ) | |
| Health and Human Services,       ) | |
|                      ) | |
|                      ) | |
|           Defendant.       ) | |
|                      ) | |

## <u>MEMORANDUM OPINION</u>

The plaintiffs, Carol Lewis and Douglas Sargent, bring this civil action on their own behalf, but also seek to bring it on behalf of all other similarly situated individuals, against the defendant, Xavier Becerra, in his official capacity as the Secretary (the "Secretary") of the United States Department of Health and Human Services (the "Department"), pursuant to Title XVIII of the Social Security Act, 42 U.S.C. § 1395ff(b), <u>see</u> Class Action Complaint ("Compl.") ¶ 8, ECF No. 1; the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, as modified by 42 U.S.C. § 405(g), <u>see</u> <u>id.</u> ¶¶ 146–63; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, <u>see</u> <u>id.</u> ¶¶ 164–66.[2]  Currently pending before the Court is the plaintiffs' class certification motion. <u>See</u> Plaintiffs' Re-Notice of Class Certification Motion ("Pls.' Re-Notice"), ECF No. 81.  Upon

---

[1] Xavier Becerra is the current Secretary of the United States Department of Health and Human Services, and he is therefore substituted for Alex M. Azar II as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] On May 30, 2019, the defendant filed a partial motion to dismiss for lack of jurisdiction, <u>see</u> Partial Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim at 1, ECF No. 22, which the Court granted in part and denied in part on January 29, 2021, <u>see</u> Order at 1 (Jan. 29, 2021), ECF No. 78.  The Court granted the motion to dismiss to the extent that it sought to dismiss Counts I and II of the Complaint, which alleged violations of 42 U.S.C. § 405(g), and 5 U.S.C. § 706(1).  <u>Id.</u>  The Court denied the motion in all other respects.  <u>Id.</u>

careful consideration of the parties' submissions,[3] the Court concludes for the following reasons that it must deny the plaintiffs' motion for class certification.

## I.    BACKGROUND

The Court previously discussed much of the relevant background of this case in detail, see Memorandum Opinion at 2–11 (Jan. 29, 2021), ECF No. 77, and therefore will not reiterate that information again here.  The Court will, however, briefly discuss the background of this case as it relates to the issues the Court must now consider in deciding the plaintiffs' class certification motion.

### A.    Statutory and Regulatory Background Relating to CGMs

Medicare "Part B is an optional supplemental insurance program that pays for medical items and services . . . , including . . . durable medical equipment." Ne. Hosp. Corp. v. Sebelius, 657 F.3d 1, 2 (D.C. Cir. 2011) (citing 42 U.S.C. §§ 1395j–1395w-4).  However, 42 U.S.C. § 1395y excludes from coverage items and services "not reasonable and necessary for the diagnosis or treatment of illness or injury[.]"  42 U.S.C. § 1395y(a)(1)(A).  The Secretary has issued regulations clarifying the definition of "[d]urable medical equipment[,]" see 42 C.F.R. § 414.202, which states:

> Durable medical equipment means equipment, furnished by a supplier or a home health agency that meets the following conditions:
>
> (1) Can withstand repeated use.

[3] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) plaintiffs Carol Lewis and Douglas B. Sargent's Motion for Class Certification and Appointment of Class Counsel ("Pls.' Mot."), ECF No. 63; (2) the defendant's Memorandum in Opposition to Class Certification ("Def.'s Opp'n"), ECF No. 65; (3) plaintiffs Carol Lewis's and Douglas Sargent's Reply Re: Motion for Class Certification and Appointment of Class Counsel ("Pls.' Reply"), ECF No. 67; (4) the defendant's Surreply in Opposition to Class Certification ("Def.'s Surreply"), ECF No. 69; (5) plaintiffs Carol Lewis's and Douglas Sargent's Surreply Re: Motion for Class Certification and Appointment of Class Counsel ("Pls.' Surreply"), ECF No. 71; (6) the defendant's Memorandum in Opposition to Plaintiffs' Renewed Motion for Class Certification ("Def.'s 2d Opp'n"), ECF No. 84; and (7) plaintiffs Carol Lewis's and Douglas Sargent's Reply Re: Motion to Certify Class and Appoint Counsel ("Pls.' 2d Reply"), ECF No. 86.

(2) Effective with respect to items classified as [durable medical equipment] after January 1, 2012, has an expected life of at least 3 years.
(3) Is primarily and customarily used to serve a medical purpose.
(4) Generally is not useful to an individual in the absence of an illness or injury.
(5) Is appropriate for use in the home.

Id.  The Medicare statute expressly designates "blood-testing strips and blood glucose monitors for individuals with diabetes" as "durable medical equipment" and, therefore, covered under 42 U.S.C. § 1395x(n).  However, the Secretary does not consider continuous glucose monitors ("CGMs") as "durable medical equipment."

On January 12, 2017, the Centers for Medicare & Medicaid Services ("CMS") issued CMS 1682-R, a ruling which concluded that "in all [] cases in which a CGM does not replace a blood glucose monitor for making diabetes treatment decisions, a CGM is not considered [durable medical equipment]."  Centers for Medicare & Medicaid Services Ruling 1682-R (Jan. 12, 2017) at 15.  CMS made this determination primarily because these so-called "non-therapeutic" CGMs serve as "adjunctive devices" to blood glucose monitors and are therefore "not considered to serve the medical purpose of making diabetes treatment decisions[.]"  Id. at 6–7.  This ruling has applied to all claims for CGMs submitted on or after January 12, 2017, and "[t]hus, after January 12, 2017, all levels of Medicare . . . were required to deny CGM cla[i]ms . . . whenever the presented CGM did not replace [a blood glucose monitor]."  Id. at 7; Pls.' Mot. at 5.

**B.      Judicial Review of Medicare Coverage Denial**

In order to obtain judicial review, a Medicare beneficiary whose claim has been denied must first exhaust multiple levels of administrative review.  Specifically, the beneficiary must first request a "redetermination" by the administrative contractor that issued the initial denial and may subsequently request a "reconsideration" by a "qualified independent contractor," see

Porzecanski v. Azar, 316 F. Supp. 3d 11, 15 (D.D.C. 2018) (citing 42 C.F.R. § 405.940, § 405.960), then request a hearing with an administrative law judge ("ALJ"), see id. (citing 42 C.F.R. § 405.1000(a)), and finally appeal any adverse ruling by the ALJ to the Medicare Appeals Council (the "Appeals Council"), see 42 C.F.R. § 405.1102.  The Appeals Council may then "decide on its own motion to review a decision or dismissal issued by an [ALJ]," id. § 405.1110(a), and the Appeals Council's decision serves as the Secretary's "final" decision regarding the beneficiary's claim, see id. § 405.1130.  If the Appeals Council—the final arbiter within the Medicare appeals process—"does not issue a decision, dismissal, or remand within [ninety] days of the beneficiary's request for review, the beneficiary may escalate the appeal to a federal district court."  Porzecanski, 316 F. Supp. 3d at 15 (citing 42 C.F.R. §§ 405.1132(a), 405.1100(c)).  Only beneficiaries who have exhausted this Medicare administrative coverage determination and appeals process may seek "judicial review of the Secretary's final decision[.]" 42 U.S.C. § 1395ff(b)(1)(A).

Additionally, "judicial review shall not be available to [an] individual if the amount in controversy is less than [$1,000]."  42 U.S.C. § 1395ff(b)(1)(E)(i).  Because this amount is indexed to inflation, a beneficiary seeking judicial review in 2018 was required to satisfy an amount-in-controversy requirement of $1,600.  See Adjustment to the Amount in Controversy Threshold Amounts for Calendar Year 2019, 83 Fed. Reg. at 47,620 (Sept. 20, 2018).

## C.   Factual Background

### 1.   The Named Plaintiffs

The two named plaintiffs in this case, Carol Lewis and Douglas Sargent, are individuals who are Medicare eligible, see Compl. ¶¶ 20–21, have Type I brittle diabetes, see id. ¶¶ 97, 109, and have been denied coverage for CGMs based on the refusal to classify CGMs as "durable medical equipment" under CMS 1682-R, see id. ¶¶ 101–04, 113–25.  It is undisputed that the

two named plaintiffs have also fully exhausted their administrative remedies.  See id. ¶ 8 ("Lewis is filing suit after a final decision of the Medicare Appeals Council . . . denying coverage of her Medicare claim (and, therefore, has exhausted her administrative remedies) . . . . Likewise, [ ] Sargent is filing suit after final decisions of the Medicare Appeals Council . . . denying coverage of his Medicare claim (and, therefore, has exhausted his administrative remedies)[.]"); Def.'s 2d Opp'n at 38 (arguing that the named plaintiffs are not representative of the proposed class in part "because the requirement to exhaust and timely file is no bar to recovery by the named plaintiffs").[4]

### 2. The Putative Class

The plaintiffs seek to certify a class consisting of "[a]ll persons whose claims for Medicare CGM coverage (whether Part B or Part C) were denied on the grounds that a CGMs are not durable medical equipment, and [were] not subsequently reversed on appeal, from

---

[4] Lewis submitted a claim for a CGM that was denied on March 31, 2016.  See Compl. ¶ 101.  She requested a redetermination by the administrative contractor who issued that decision, but that redetermination was also denied.  Id. ¶ 102.  She then requested reconsideration by the administrative contractor, but the contractor upheld the initial denial "on the grounds that a CGM is 'precautionary' and, therefore, not durable medical equipment."  Id. ¶ 103.  After appealing to an ALJ, the denial of her claim was again upheld for the same reason, and Lewis appealed to the Appeals Council.  Id. ¶ 104.  "When no decision [by the Appeals Council] was received by November 2018 (i.e., more than two years later), [ ] Lewis filed a request for escalation on November 26, 2018[,]" id. ¶ 106 (underline added), after which "no response from the Secretary [was] received[,]" id. ¶ 107, making the ALJ's decision "the Secretary's final decision[,]" id.

Sargent seeks judicial review of two final decisions by the Appeals Council upholding the denial of his CGM claims.  Id. ¶ 111.  First, Sargent submitted a claim for the sensors used by his CGM, but the claim was denied on September 9, 2016, "on the grounds that the items were 'statutorily excluded' and that 'Medicare does not pay for this item or service.'"  Id. ¶ 113.  Sargent made a request for redetermination by the deciding administrative contractor on February 27, 2017, which was denied.  Id. ¶ 114.  Thereafter, he sought redetermination, which was also denied "on the grounds that the sensors did 'not meet Medicare's meaning of medical equipment.'"  Id. ¶ 115.  Sargent appealed to an ALJ, id., who upheld the denial of his claim, id. ¶ 116.  Sargent then appealed to the Appeals Council, which rendered a final decision denying his appeal on October 15, 2018, on the grounds "that a CGM is not 'primarily and customarily used to serve a medical purpose.'"  Id. ¶ 118.  Second, Sargent filed another claim for CGM sensors, which was denied on April 21, 2017, on the same grounds as his earlier claim.  Id. ¶ 121.  Sargent again sought redetermination by the administrative contractor, which was denied, id. ¶ 122, and subsequent reconsideration, which was also denied, id. ¶ 123.  Sargent then appealed to an ALJ, who "issued a decision approving [his] claim."  Id. ¶ 124.  The Appeals Council reviewed the ALJ's decision under a process called "own motion review[,]" id., and issued a final decision overturning the ALJ's decision, on the grounds that "a CGM is not 'primarily and customarily used to serve a medical purpose,' unless it replaces finger sticks and is, therefore, 'therapeutic[,]'" id. ¶ 125.

December 13, 2012[,] through the conclusion of this case."  Pls.' Mot. at 13–14.  Thus, the

putative class "consists of only those persons/claims that were/are rejected on the grounds that a

CGM is not 'durable medical equipment[,]'" i.e., the grounds articulated in CMS 1682-R.  Id.

at 14.  The plaintiffs state that "the class of persons whose claims for Medicare CGM coverage

has been rejected on the grounds that a CGM is not 'durable medical equipment' is readily

ascertainable" because "each claim so rejected was coded by the Secretary using" five specific

codes.  Id.  According to the plaintiffs, this class would consist "of some 90,000 people whose

claims for CGM coverage were improperly denied."  Id. at 15.

## D.    Procedural Background

On March 23, 2020, the plaintiffs filed their class certification motion.  See id. at 1.  The

Secretary filed his opposition on April 21, 2020, see Def.'s Opp'n at 1, the plaintiffs filed their

reply on May 12, 2020, see Pls.' Reply at 1, the Secretary was permitted to file a surreply on

May 22, 2020, see Def.'s Surreply at 1, and the plaintiffs were also permitted to file a surreply on

May 29, 2020, see Pls.' Surreply at 1.  On January 29, 2021, the Court granted in part and denied

in part the Secretary's motion to dismiss, which had been filed a year before the plaintiffs filed

their class certification motion on May 30, 2019.  See Memorandum Opinion at 32 (Jan. 29,

2021), ECF No. 77.  The Court dismissed Count I of the Complaint for failure to state a claim for

which the plaintiffs would be entitled to relief under § 405(g) of the Medicare statute, finding

that, while the plaintiffs had properly alleged violations of the APA later in their Complaint,

there was no basis for them to receive relief under § 405(g) itself.  See id. at 22 ("[B]ecause

Count I fails to allege the violation of any federal substantive law, the plaintiffs have failed to

demonstrate entitlement to the relief requested.").  The Court also dismissed Count II of the

Complaint also for failure to state a claim, finding that there was no viable entitlement to relief

under § 706(1), "because this is not a case of agency inaction; it is instead a case of an agency's denial of coverage[,]" and "[d]enials are final agency actions that may be challenged under § 706(2)[,]" not § 706(1), which concerns challenges to agency inaction.  Id. at 24.

The Court also denied without prejudice the plaintiffs' class certification motion, "with the understanding that the parties can refile their submissions taking into consideration the Court's rulings on the Secretary's motion to dismiss."  Order at 2 (Jan. 29, 2021), ECF No. 78. The Court took this approach based on the recognition that its dismissal of certain claims might "affect the parties' briefing on the plaintiffs' [then-]pending class certification motion, and in particular, the parties' analysis of whether the plaintiffs have satisfied the typicality requirement of Federal Rule of Civil Procedure 23(a)(3)."  Memorandum Opinion at 2 n.3 (Jan. 29, 2021). The Court then set a briefing schedule for the plaintiffs to renew their class certification motion. See Order at 2 (Jan. 29, 2021), ECF No. 78.  The plaintiffs subsequently filed their Re-Notice of Class Certification Motion on February 26, 2021,[5] see Pls.' Re-Notice at 1, the Secretary filed his renewed opposition on March 12, 2021, see Def.'s 2d Opp'n at 1, and the plaintiffs filed their reply on March 19, 2021, see Pls.' 2d Reply at 1.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 23 sets forth (1) prerequisites to class certification, see Fed. R. Civ. P. 23(a), and (2) three potential categories, under one of which the proposed class

---

[5] The Court intended for the plaintiffs' renewal of their class certification motion to provide a complete analysis of the class certification requirements, taking into account any impact of the Court's ruling on the Secretary's motion to dismiss—particularly pertaining to the typicality requirement of Rule 23(a)(3).  See Memorandum Opinion at 2 n.3 (Jan. 29, 2021), ECF No. 77.  However, instead of filing a complete motion for class certification, the plaintiffs filed a "re-notice" of their original class certification motion, which discussed only "Cause of Action V," see Pls.' Re-Notice at 1–2, the Secretary's concessions of class certification issues, see id. at 3–5, and the mechanics of class notification, see id. at 5–6.  Therefore, based on the plaintiffs' language in their Re-Notice that "[f]or all the reasons set forth [in the Re-Notice], and in the motion for class certification previously filed and re-noticed here, the class should be certified[,]" id. at 6, the Court must also refer to the arguments presented in the plaintiffs' original class certification motion, although it is no longer actually pending resolution.

action must fall, see Fed. R. Civ. P. 23(b).  A proposed class must satisfy both sub-sections of

Rule 23 to be certified.  See Richards v. Delta Air Lines, Inc., 453 F.3d 525, 529 (D.C. Cir.

2006) ("[A] class plaintiff has the burden of showing that the requirements of Rule 23(a) are met

and that the class is maintainable pursuant to one of Rule 23(b)'s subdivisions.").  Rule 23(a)

states that "one or more members of a class may sue or be sued as representative parties on

behalf of all members only if" the following requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b) further states that "[a] class action may be maintained if Rule

23(a) is satisfied and if" one of the following situations applies:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b).  Thus, "[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 398 (2010) (quoting Fed. R. Civ. P. 23(b)).  To satisfy this dual burden, "a party seeking class certification must affirmatively demonstrate his [or her] compliance with the Rule—that is, he [or she] must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard.").  And, "[i]n deciding whether class certification is appropriate, a district court must [ ] undertake a 'rigorous analysis' to see that the requirements of the Rule have been satisfied." R.I.L-R v. Johnson, 80 F. Supp. 3d 164, 179 (D.D.C. 2015) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982)).

## III.    ANALYSIS

The plaintiffs argue that they are entitled to class certification because their proposed class satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), and their class allegations fall within the requirements of either Rule 23(b)(2) or 23(b)(3).  See Pls.' Mot. at 15–23.  In response, the Secretary argues that the "overwhelming" majority of the putative class members have not satisfied the procedural requirements for obtaining judicial review under the Medicare statute—namely, the obligations to (1) exhaust their administrative remedies, (2) file their claims within the limitations period prescribed by the Medicare statute, and (3) satisfy the jurisdictional amount in controversy.  See Def.'s 2d Opp'n at 6.  The Secretary contends that, after accounting for these alleged deficiencies, the putative class is reduced to an insufficiently numerous pool of viable claims under Rule 23(a).  See id. at 6–7.  In response, the

plaintiffs argue that the Secretary's arguments are merits-based considerations, see Pls.' 2d Reply at 4, which "the Court may not reach . . . at this stage" of the litigation, id. at 5.  Because the questions regarding these procedural requirements affect the Court's analysis of whether the plaintiffs have met their burden under Rule 23, the Court will proceed with its analysis by: (1) determining whether the Court may consider the procedural issues raised by the Secretary as part of the class certification analysis; (2) if it can, addressing the Secretary's procedural arguments; and (3) considering whether the requirements of Rule 23 have been satisfied.

A.    **Whether the Court May Consider the Administrative Exhaustion, Statute of Limitations, and Amount-In-Controversy Requirements in Determining Class Certification**

The plaintiffs argue that "[t]he Secretary's request for a merits ruling on exhaustion and statute of limitations as part of or prior to class certification is improper[,]" id. at 4, because "in Rule 23 practice, the [C]ourt may not decide the merits in considering whether to grant class certification[,]" id. at 5.  Generally, the Court agrees with the plaintiffs that it may not "conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." Eisen v. Carlisle & Jacqueline, 417 U.S. 157, 177 (1974).  However, the Supreme Court's express approval of limited merits considerations for the purpose of determining satisfaction of Rule 23, as well as courts' repeated evaluation of the specific procedural issues raised by the Secretary in determining class certification, make apparent that administrative exhaustion, the statute of limitations, and the amount in controversy are proper inquiries in this context.

Although "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage[,]" In re McCormick & Co., 422 F. Supp. 3d 194, 223 (D.D.C. 2019), "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant in determining whether Rule 23 prerequisites for class certification are satisfied[,]"

<u>Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds</u>, 568 U.S. 455, 466 (2013).  In fact, "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff[s'] cause of action."  <u>Gen. Tel. Co. of Sw.</u>, 457 U.S. at 160. Additionally, as part of class certification decisions, courts have analyzed administrative exhaustion, <u>see, e.g.</u>, <u>Menominee Indian Tribe of Wis. v. United States</u>, 614 F.3d 519, 526 (D.C. Cir. 2010) (considering whether the limitations period for administrative claims should be tolled for putative class members who did not exhaust administrative remedies); <u>James v. England</u>, 226 F.R.D. 2, 6 (D.D.C. 2004) (Walton, J.) ("Here, the Court does not have before it any administratively exhausted class claims, which if it did would permit it to entertain a motion for class certification."); the statute of limitations, <u>see, e.g.</u>, <u>Bowen v. City of New York</u>, 476 U.S. 467, 476 (1986) (affirming the district court's consideration of the statute of limitations prescribed by 42 U.S.C. § 405(g) in determining the composition of the class); and the amount in controversy, <u>see, e.g.</u>, <u>Lindsay v. Gov't Emps. Ins. Co.</u>, 448 F.3d 416, 423 (D.C. Cir. 2006) (discussing the district court's authority to consider amount in controversy for putative class members as part of its supplemental jurisdiction determination).

The Court's chief task in determining the certifiability of a putative class is to assess whether the requirements of Rule 23 have been met and "merits questions" or analysis of "factual and legal issues comprising the plaintiff[s'] cause of action[,]" <u>Gen. Tel. Co. of Sw.</u>, 457 U.S. at 160, are permissible "to the extent . . . that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied[,]" <u>Amgen, Inc.</u>, 568 U.S. at 466.  A general understanding of the composition of the putative class is necessary for an analysis of Rule 23(a) requirements, particularly the numerosity requirement.  <u>See</u> <u>Bowen</u>, 476 U.S. at 476–77 (affirming the certification of a class where the district court "decided that the class properly

included claimants who had not exhausted administrative remedies" in its determination of the

"composition of the class"). And in this case, in order to conduct the "rigorous [Rule 23(a)]

analysis[,]" R.IL-R, 80 F. Supp 3d at 179, required to determine class certification, a

preliminary consideration of the procedural issues raised by the Secretary, which affect the

composition of the putative class, is necessary.[6] Therefore, the Court will consider the

procedural issues raised by the Secretary.

## B.    The Secretary's Procedural Arguments

The Secretary argues that the majority of the putative class members cannot be included

as part of a class because of procedural deficiencies, therefore rendering the total number of

proposed class members with viable claims insufficient to meet the numerosity requirement of

Rule 23(a). See Def.'s 2d Opp'n at 6–7. Specifically, the Secretary argues that most of the

putative class "consists of individuals without any viable claim to judicial review[,]" id. at 7,

because the putative class "is overwhelmingly composed of individuals" (1) "who did not

exhaust their administrative remedies," (2) "whose limitations periods have run[,]" and (3)

---

[6] In addition to their arguments regarding the impermissibility of considering these procedural issues at this stage of the litigation, the plaintiffs also rely heavily on Bowen v. City of New York, 476 U.S. 467 (1986), in asserting that "exhaustion of administrative remedies and statute of limitations are affirmative defenses of the Secretary and neither are jurisdictional." Pls.' Reply at 3; see id. at 3 n.2. In Bowen, although the Supreme Court opined that the sixty-day statute-of-limitations requirement, which also applies in this case, "is not jurisdictional[,]" Bowen, 476 U.S. at 467, it nevertheless affirmed the district court's considerations of administrative exhaustion and the statute of limitations as part of its class certification determination, see id. at 468 (affirming the district court's waiver of the administrative exhaustion requirement and use of equitable tolling with respect to the statute of limitations). The additional cases cited by the plaintiffs, see Pls.' Reply at 3 n.2, all address administrative exhaustion and statute of limitations as non-jurisdictional affirmative defenses outside of the class certification context. See Swinomish Indian Tribal Cmty. v. Azar, 406 F. Supp. 3d 18, 20 (D.D.C. 2019), aff'd sub nom., Swinomish Indian Tribal Cmty. v. Becerra, 993 F.3d 917 (D.C. Cir. 2021) (ruling on cross-motions for summary judgment); Suarez v. Colvin, 140 F. Supp. 3d 94, 95 (D.D.C. 2015) (ruling on a motion to dismiss); Martinez v. P.R. Fed. Affs. Admin., 813 F. Supp. 2d 84, 87 (D.D.C. 2011) (Walton, J.) (ruling on a motion for summary judgment). Thus, these cases do not speak to the permissibility of considering these issues in determining the certifiability of a class. Furthermore, although Federal Rule of Civil Procedure 8(c)(1) states that "a party must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations" when "responding to a pleading[,]" Fed. R. Civ. P. 8(c)(1), the plaintiffs do not identify and the Court has been unable to find any authority that supports the proposition that this rule forecloses a party's ability to raise a statute-of-limitations argument at other stages of litigation. See generally Pls.' Reply at 3.

"[who] also have claims below the minimum amount in controversy for judicial review[,]" id. at 10. The plaintiffs do not contest the Secretary's underlying argument that many of the proposed class do not satisfy these procedural prerequisites. See generally Pls.' Reply; Pls.' 2d Reply. Instead, as noted earlier, they argue that administrative exhaustion and statute-of-limitations requirements constitute merits determinations, see Pls.' 2d Reply at 4, "that the Court may not reach . . . at this stage" of litigation, id. at 5.[7]  Accordingly, because the allegations concerning the proposed class members' failure to meet these procedural requirements is uncontested, the Court will evaluate (1) whether waiver of administrative exhaustion or equitable tolling of the statute of limitations are warranted in this case; and (2) whether the Court may exercise supplemental jurisdiction over claims of proposed class members that do not meet the amount-in-controversy requirement.

### 1. Whether Waiver of the Administrative Exhaustion Requirement or Equitable Tolling Is Appropriate

The Court now turns to the question of whether waiver of the administrative exhaustion requirement or equitable tolling of the statute of limitations requirement are appropriate to employ in this case. The Secretary argues that "[a]lmost all [of the] putative class members failed to exhaust their administrative remedies," Def.'s 2d Opp'n at 11, and "[a]ny claim that accrued before October 9, 2018, is time-barred," id. at 24, and therefore, "[b]ecause the proposed

---

[7] In their first class certification motion and reply, the plaintiffs argued that judicial waiver of the exhaustion requirement and equitable tolling of the statute of limitations would be appropriate in this case due to the alleged "hidden" or "falsely represented" basis for the denial of the plaintiffs' and putative class members' claims. See Pls.' Mot. at 14–15 (citing Goodnight v. Shalala, 837 F. Supp. 1564 (D. Utah 1993)); Pls.' Reply at 5–6 ("Not one of the denials informed the beneficiary that their claim was rejected because the Secretary was taking a position that a CGM was not 'primarily and customarily used to serve a medical purpose.'  Instead, various obfuscatory statements were used by the Secretary which prevented the beneficiaries from understanding that their rights were being violated."). The plaintiffs now deny that this was their argument regarding these threshold issues. See Pls.' 2d Reply at 4–5 ("The Secretary contends that: '[The p]laintiffs have suggested that this Court should waive exhaustion of administrative remedies and equitabl[y] toll the limitations period, because the Secretary has employed a secret policy[.]'  That is not correct.  Instead, what [the p]laintiffs have said is that the Court may not reach issues such as that at this stage.").

class has at most fifteen members with live claims, [the] plaintiffs have not established numerosity[,]" id. at 34.  The plaintiffs do not explicitly contest the Secretary's factual representations regarding how many putative class members have not obtained a final administrative decision—and thus failed to exhaust their administrative remedies—or did not file within the statute of limitations window.  See generally Pls.' Reply; Pls.' 2d Reply.  Instead, the plaintiffs respond that the Secretary's argument "is based on the misguided assumption that the filing of the class action Complaint did not suspend the statute of limitations . . . for any class member[s'] claims pending when the Complaint was filed[.]"[8]  Pls.' Reply at 9; see also Pls.' 2d Reply at 4 (stating that "[w]hile the Secretary . . . present[s] theories regarding exhaustion and [the] statute of limitations (the factual and legal bases of which are mistaken), [the p]laintiffs will not tarry long addressing them[,]" and proceeding to their argument that the Court may not consider these issues at the class certification stage).  For the following reasons, the Court concludes that neither waiver of the administrative exhaustion requirement nor tolling of the statute of limitations is warranted.

---

[8] The Court notes that the plaintiffs' position regarding waiver of the exhaustion requirement and/or equitable tolling of the statute of limitations is unclear.  In their first reply, the plaintiffs argued that "the class certification issues in this case are extremely similar to the issues in Goodnight v. Shalala," Pls.' Mot. at 14, a case in which, "[i]n light of [a] secret policy [of claims denials], the court waived the exhaustion/[sixty]-day requirement and certified a class of an estimated 30,000 members, some of whom had failed to exhaust their administrative remedies and file suit within [sixty] days[,]" id. at 15 (citing Goodnight, 837 F. Supp. at 1573).  The plaintiffs argued that "[l]ikewise, in the present case, [the p]laintiff[s] allege a class of some 90,000 people whose claims for CGM coverage were improperly denied[,]" id., and that "for virtually all of those people, the basis for the denial was either hidden from them or the Secretary falsely represented that coverage was 'statutorily excluded[,]'" id.  However, in their second reply, the plaintiffs state that the Secretary's articulation of their argument that exhaustion should be waived and the limitations period should be equitably tolled because the Secretary has employed a secret policy is "not correct." Pls.' 2d Reply at 4.  Instead, the plaintiffs argue that "the Court may not reach issues such as that at this stage." Id. at 5.  Thus, although it is unclear whether the plaintiffs believe that waiver of administrative exhaustion and/or equitable tolling of the statute of limitations are appropriate, the Court will analyze these equitable considerations in turn.

a.      Waiver of the Administrative Exhaustion Requirement

Regarding the appropriateness of waiving the administrative exhaustion requirement,

under the Medicare statute, a beneficiary may "file a civil action, 'after any final decision of the

Commissioner of Social Security made after a hearing to which he [or she] was a party,' to

'obtain review of such decision in federal district court.'" Am. Hosp. Ass'n v. Azar, 895 F.3d

822, 825 (D.C. Cir. 2018) (quoting 42 U.S.C. § 405(g)); see supra Section I.B (explaining which

administrative decisions constitute "final decisions" for purposes of § 405(g)).  However, the

Court has discretion to waive the requirement of administrative exhaustion in two circumstances.

"First, waiver can occur when the Secretary determines that the only issue before him is one of

the constitutionality of a provision of the Act and that he cannot allow or disallow benefits on

any ground other than the constitutional ground."  Ryan v. Bentsen, 12 F.3d 245, 247 (D.C. Cir.

1993) (citing Weinberger v. Salfi, 422 U.S. 749, 765–66 (1975)).  "Second, the Supreme Court

has sanctioned waiver when the claimant's constitutional challenge is collateral to his [or her]

claim of entitlement and he [or she] stands to suffer irreparable harm if forced to exhaust his [or

her] administrative remedies."  Id. at 248 (citing Mathews v. Eldridge, 424 U.S. 319, 328

(1976)).  Here, however, the plaintiffs do not lodge any constitutional arguments regarding the

Medicare statute that would warrant waiver under either of the circumstances identified in Ryan.

See generally Pls.' Mot.; Pls.' Reply; Pls.' Re-Notice; Pls.' 2d Reply.  Cf. Pls.' 2d Reply at 12

n.6 (noting that, although the plaintiffs "seriously doubt the constitutionality of . . . provisions" in

the Medicare regulations governing compensation of attorneys in the administrative adjudication

process, "that is a fight for another day").  Therefore, the Court concludes that waiver of the

administrative exhaustion requirement is inappropriate for those members of the proposed class

who failed to exhaust their claims.

b.      **Equitable Tolling of the Statute of Limitations**

Second, with respect to the appropriateness of invoking equitable tolling to preclude application of the sixty-day statute of limitations requirement of 42 U.S.C. § 405(g), which provides that a beneficiary "may obtain a review of [a final] decision by a civil action commenced within sixty days after the mailing to him of notice of such decision," 42 U.S.C. § 405(g), "the date of receipt of notice of the [final] decision" is "presumed to be [five] calendar days after the date of notice, unless there is a reasonable showing to the contrary[,]" 42 C.F.R. § 405.1136(c)(2).   This limitations period is suspended for all class members when a class action complaint is filed.   See Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 553–54 (1974) ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the requirement of Rule 23(a)(1) been met[.]").   The Court may also equitably toll a statute of limitations "in extraordinary and carefully circumscribed instances[,]" Mondy v. Sec'y of the Army, 845 F.2d 1051, 1057 (D.C. Cir. 1988), such as where there is secretive conduct on the part of the defendant that would affect a plaintiff's knowledge of wrongdoing and corresponding ability to appreciate the existence of a claim, see Bowen, 476 U.S. at 481 ("Where the Government's secretive conduct prevents plaintiffs from knowing a violation of rights, statutes of limitations have been tolled until such time as plaintiffs had a reasonable opportunity to learn the facts concerning the cause of action."); Chung v. U.S. Dep't of Just., 333 F.3d 273, 279 (D.C. Cir. 2003) ("One situation in which equitable tolling may apply [is] when a plaintiff knows he has been injured, but is unaware that his injury may be the result of possible misconduct by the defendant[.]").   Conversely, another member of this Court has declined to apply equitable tolling where the plaintiffs alleged that the defendant agency's "administrative process '[was] defective and

16

meaningless,' and the agency failed to follow its own regulations for the processing of administrative complaints[.]"  Chennareddy v. Dodaro, 698 F. Supp. 2d 1, 24 (D.D.C. 2009).

Given that the Complaint was filed on December 13, 2018, the Secretary contends that any claim that accrued prior to October 9, 2018—that is, any claim for which notice of a final administrative decision was received prior to October 9, 2018—is time-barred because claims that accrued prior to that date would necessarily fall outside of the sixty-day limitations period. See Def.'s 2d Opp'n at 24.  The plaintiffs, however, argue by implication that the statute of limitations should be equitably tolled.[9]  Pls.' Mot. at 15 (citing Goodnight v. Shalala, 837 F. Supp. 1564, 1573 (D. Utah 1993)).  The plaintiffs state that "the beneficiaries were affirmatively misled when they were told that their claims for CGM coverage were 'statutorily excluded'— when no such statute exists."  Pls.' Reply at 6.  Thus, the plaintiffs' sole argument for equitable tolling rests on the manner in which the reasons for the denial of claims were communicated.

The Secretary states that "[w]hen a supplier appends a modifier to a billing code, a short description of that modifier appears on the initial coverage determination, after the description of the item or service that is the subject of the claim."  Def.'s 2d Opp'n at 18–19.  The Secretary points out that "[a] dictionary of the modifiers is publicly available[,]" id. at 19 n.6, and it identifies the modifier to which the plaintiffs refer in their argument for equitable tolling as the "GY modifier," id. at 19.  The Secretary further notes that

> the GY modifier . . . indicates that the supplier believes the item not to be covered
> by Medicare.  The modifier dictionary glosses GY as 'Item or service statutorily
> excluded, does not meet the definition of any [M]edicare benefit or, for non-

---

[9] The plaintiffs also use this argument as a justification for why waiver of administrative exhaustion should apply in this case.  See Pls.' Mot. at 15 ("In light of the secret policy, the court [in Goodnight v. Shalala, 873 F. Supp. 1564 (D. Utah 1993)] waived the exhaustion/[sixty]-day requirement and certified a class[.]").  However, the plaintiffs' presentation of this argument is cursory and identical to their arguments regarding the tolling of the statute of limitations.  See generally id. at 14–15.  Thus, in addition to the reasoning already articulated regarding waiver of administrative exhaustion, see supra Section III.B.1.a, the Court's analysis with respect to the impact of Goodnight on its decision whether to equitably toll the statute of limitations also applies to waiver of administrative exhaustion.

> [M]edicare insurers, is not a contract benefit,' which is shortened to 'Statutorily excluded' on initial denial forms.  [The p]laintiffs contend that the shortened description of the GY modifier misleads beneficiaries whose item or service  is not literally excluded from coverage by the plain text of the Medicare statute.

Id. (internal citation omitted).  The Court agrees with the Secretary that a lack of specificity in initial denial codes does not amount to the pervasive "secretive conduct," Goodnight, 837 F. Supp. at 1573, or "clandestine policies and practices," id. at 1583, that existed on the part of the government in Goodnight.  Compare Pls.' Reply at 6 ("[T]he beneficiaries were affirmatively misled when they were told that their claims for CGM coverage were 'statutorily excluded'— when no such statute exists."), with Goodnight, 837 F. Supp. at 1583 ("[A]ll class members have had their applications for disability benefits denied, allegedly due to [the d]efendants' maintenance of a system of clandestine policies and practices in numerous areas of the disability determination process, which violate the Social Security Act, federal regulations, federal case law, and the United States Constitution.").

While the court in Goodnight justified exercising equitable remedies because "it would be unfair to penalize [that] group of claimants . . . when they could not have known of the alleged secretive conduct and therefore did not know that their rights had been violated[,]" 837 F. Supp. at 1573, the denial of claims in that case were the result of "system[ic]" and "clandestine" practices on the part of the agency, id. at 1583.  Here, the practice of using initial denial codes condemned by the plaintiffs is not deceptive or opaque, such that the plaintiffs could not have "know[n] that their rights were being violated[,]" id., a situation that, if it were present here, might compel the exercise of an equitable remedy.  Specifically, the putative class members in this case were not the recipients of misinformation such that the Secretary's conduct prevented them from having a "reasonable opportunity to learn the facts concerning the cause of action." Bowen, 476 U.S. at 481.  Given the readily available explanations of the initial denial

codes in the Medicare coding dictionary,[10] Medicare beneficiaries are adequately provided notice

of the reason for the denial of their claims.  See Def.'s 2d Opp'n at 19 n.6 (highlighting the

positioning of the GY modifier definition within the Medicare coding dictionary).  It may be

more convenient for Medicare beneficiaries to have the full explanation of the claims denial

listed in an unabbreviated fashion, along with the denial itself.  However, there is a short

description listed on the denial, the Medicare coding dictionary is publicly available on the CMS

website, see supra n.10, and the specific coding section on the website is navigable in one click

from the CMS Medicare page.[11]  Thus, the process for beneficiaries to obtain this information is

not so arduous that it affects their ability to reasonably identify a cause of action, and equitable

tolling of the statute of limitations is therefore not appropriate.

Accordingly, the Court concludes that neither waiver of administrative exhaustion nor

equitable tolling of the statute of limitations is warranted here.

**2.  Amount in Controversy**

Finally, the Court considers whether it has supplemental jurisdiction over the claims that

do not meet the amount-in-controversy requirement for district court jurisdiction, as the parties

agree that certain members of the proposed class do not meet the required amount of $1,600.

See Def.'s 2d Opp'n at 26–27; Pls.' 2d Reply at 7.  The plaintiffs admit that "at least some of the

class members (including [ ] Sargent) have claims that, [when] considered individually, do not

reach the $1,600 amount required at the time the Complaint was filed[,]" Pls.' 2d Reply at 7, but

---

[10] The Court notes that the Medicare coding dictionary is publicly available on the Internet.  See Centers for
Medicare & Medicaid Services, HCPCS Quarterly Update,
https://www.cms.gov/Medicare/Coding/HCPCSReleaseCodeSets/HCPCS-Quarterly-Update (last visited Jan. 31,
2022) (listing links to all coding dictionaries from July 1, 2012, to present).

[11] The Court notes that the coding section of the CMS website is navigable from the Medicare page.  See Centers for
Medicare & Medicaid Services, Medicare, https://www.cms.gov/Medicare/Medicare (last visited Jan. 31, 2022)
(showing a "Coding" section, with the link to the coding dictionary page referenced supra n.10, on the CMS
Medicare page).

argue that the Court has supplemental jurisdiction over these claims because "[i]n this case, all of the claims arise out of a common nucleus of operative fact because every denied claim was denied on the frivolous basis that a CGM is not 'primarily and customarily used to serve a medical purpose[,]'" id. at 9.  In response, the Secretary argues that the Court does not have supplemental jurisdiction because "[t]he claims of beneficiaries who cannot satisfy the amount-in-controversy requirement are not 'such that [they] would ordinarily be expected to try them all in one judicial proceeding' together with the claims of beneficiaries who can satisfy the requirement."  Def.'s 2d Opp'n at 26.  For the following reasons, the Court concludes that it does have supplemental jurisdiction over the claims that do not meet the statutory amount-in-controversy requirement because they arise from the same "nucleus of operative fact," United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966), as the claims that do satisfy the required amount in controversy.  Thus, the Court may exercise supplemental jurisdiction over putative class members who have exhausted their administrative remedies and filed their claims within the statute of limitations, but whose claims do not meet the amount-in-controversy requirement, which totals to seventeen putative class members.  See infra III.C.

When the plaintiffs filed their Complaint, the Medicare statute dictated that "judicial review shall not be available to the individual if the amount in controversy is less than [$1,600]." 42 U.S.C. § 1395ff(b)(1)(E)(i); see 83 Fed. Reg. at 47,620 (showing an adjustment in the amount-in-controversy threshold for judicial review from the $1,000 originally listed in the statute to $1,600 for calendar year 2018).  The Supreme Court has stated that to exercise supplemental jurisdiction, "the claims must derive from a common nucleus of operative fact . . . such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding[.]"

20

<u>United Mine Workers of Am.</u>, 383 U.S. at 725.  This standard was later clarified in 42 U.S.C.

§ 1367, which states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve joinder or intervention of additional parties.

42 U.S.C. § 1367(a).  In the class certification context, the Circuit, as well as other courts, have

found a "common nucleus of operative fact" where the claims arose from the same system of

claims or compensation denials.  <u>Cf.</u> <u>Lindsay</u>, 448 F.3d at 424 (stating that the district court

could properly exercise supplemental jurisdiction over putative class members because "both

classes performed the same type of work for the same employer and were deprived of overtime

compensation as a result of the same action taken by their employer"); <u>Shahriar v. Smith &</u>

<u>Wollensky Rest. Grp., Inc.</u>, 659 F.3d 234, 245 (2d Cir. 2011) (finding that a common nucleus of

operative fact existed for claims "aris[ing] out of the same compensation policies and practices

of [the defendant]"); <u>Pueblo Int'l, Inc. v. De Cardona</u>, 725 F.2d 823, 826 (1st Cir. 1984) (finding

supplemental jurisdiction was properly exercised where "[t]he facts necessary to prove a

violation of one are practically the same as those needed to prove a violation of the other").

      Here, because all putative class members' claims involve the same basic factual

circumstances as the named plaintiffs—namely, that they are Medicare beneficiaries who

submitted and were denied claims for CGMs based on CMS 1682-R—the Court concludes that

they arise from the same "common nucleus of operative fact," <u>United Mine Workers of Am.</u>, 383

U.S. at 725, such that they are "so related to the claims [that meet the amount in controversy] . . .

that they form part of the same case or controversy[,]" 42 U.S.C. § 1367(a).  Thus, the Court may

exercise supplemental jurisdiction over the claims of putative class members who individually do not satisfy the $1,600 minimum amount in controversy required by the Medicare statute.

Accordingly, in assessing whether a class can be certified, the Court concludes that (1) it may consider the procedural issues raised by the Secretary at the class certification stage; (2) neither waiver of administrative exhaustion nor equitable tolling of the statute of limitations are warranted here; and (3) it may exercise supplemental jurisdiction over those putative class members who have exhausted their administrative remedies and filed their claims within the statute of limitations window, but whose claims do not satisfy the amount-in-controversy requirement.  With these parameters, the Court will now turn to consider whether this proposed class, as narrowed, meets the requirements of Rule 23.

## C.      Federal Rule of Civil Procedure 23(a)

Under Federal Rule of Civil Procedure 23(a), the party seeking class certification must satisfy "four requirements—numerosity, commonality, typicality, and adequate representation[,]" Wal-Mart Stores, Inc., 564 U.S. at 349, which "effectively limit the class claims to those fairly encompassed by the named plaintiff[s'] claims[,]" Gen. Tel. Co. v. Equal Emp. Opportunity Comm'n, 446 U.S. 318, 330 (1980) (internal quotations omitted).  See Fed. R. Civ. P. 23(a)(1)–(4).  "A party seeking class certification must affirmatively demonstrate his [or her] compliance with the Rule[,]" Wal-Mart Stores, Inc., 564 U.S. at 350, and "[f]ailure to adequately demonstrate any of the four [Rule 23(a) requirements] is fatal to class certification[,]" Garcia v. Johanns, 444 F.3d 625, 631 (D.C. Cir. 2006).  The first requirement, Rule 23(a)(1) or "numerosity," authorizes class certification where joinder would be impracticable.  See Coleman v. District of Columbia, 306 F.R.D. 68, 76 (D.D.C. 2015).  Although there are no "hard rules for when joinder will be found impracticable[,] . . . courts have developed helpful rules of thumb for

assessing the approximate thresholds at which joinder becomes presumptively impracticable." Id.  For example, courts in this District have concluded that "[a]bsent unique circumstances, 'numerosity is satisfied when a proposed class has at least forty members.'"  Id. (quoting Richardson v. L'Oreal USA, Inc., 991 F. Supp. 2d 181, 196 (D.D.C. 2013)); see Vista Healthplan v. Warner Holdings Co. III Ltd., 246 F.R.D. 349, 357 (D.D.C. 2007) (stating that a proposed class of at least forty members will presumptively satisfy the numerosity requirement). On the other hand, "a class that encompasses fewer than [twenty] members will likely not be certified absent other indications of impracticability of joinder."  Coleman, 306 F.R.D. at 76 (citation omitted).  However, ultimately, the determination of impracticability "requires examination of the specific facts of each case and imposes no absolute limitations."  Gen. Tel. Co., 446 U.S. at 330.

Having already concluded that the number of putative class members in this case should be reduced to account for those individuals who have not exhausted their administrative remedies and those individuals who did not file their claims within the applicable statute of limitations window, see supra Sections III.B.i.a–b, the plaintiffs' proposed class has been reduced to seventeen.  The plaintiffs do not contest this number.  See Pls.' Reply at 7–9; Pls.' 2d Reply at 10.  This group of seventeen remaining proposed class members consists of members for whom a final decision was issued by the Appeals Council on or after October 9, 2018, thus exhausting their administrative remedies, see 42 C.F.R. § 405.1130 ("The [Appeals] Council's decision is final and binding all parties unless a [f]ederal district court issues a decision modifying the [Appeals Council's] decision[.]"), and who filed their claims for judicial review within the sixty-day statute of limitations from the time notice of the final decision is presumed to have been received, see 42 U.S.C. § 405(g) (stating that a beneficiary "may obtain a review of

[a final] decision by a civil action commenced within sixty days after the mailing to him [or her] of notice of such decision[.]"); 42 C.F.R. § 405.1136(c)(2) ("[T]he date of receipt of notice of the [final] decision . . . shall be presumed to be [five] calendar days after the date of notice, unless there is a reasonable showing to the contrary.").  This number of potential class members is gleaned from the Secretary's representation that

> [t]he Secretary has identified only twenty-three merits decisions of the [Appeals Council] issued to putative class members on or after [October 9, 2018].  Two of those decisions have been reviewed elsewhere, in cases where the plaintiffs opted out of any class that could be certified here.  That leaves twenty-one decisions issued to eighteen beneficiaries, including [ ] Sargent.[12]

Def.'s 2d Opp'n at 35–36 (internal citations omitted).  The Secretary states that he "arrived at this number by reviewing the decisions of the [Appeals Council] that were originally produced in discovery, and the six that have been provided in supplemental productions."  Id. at 35 n.13.

The remaining number of putative class members is well-below the guiding threshold of forty members and is also below twenty, the number that courts have remarked may qualify at the lower limit for class certification.  See Coleman, 306 F.R.D. at 76 ("At the lower end, 'a class that encompasses fewer than [twenty] members will likely not be certified[.]'") (citation omitted).  Furthermore, the plaintiffs make no argument regarding "other indications of impracticability of joinder," id.; see generally Pls.' Mot.; Pls.' Reply; Pls.' Re-Notice; Pls.' 2d Reply, and the Court perceives of no "non-numerical factors affecting the impracticability of joinder [that] would militate in favor of [class] certification[,]" Hinton v. District of Columbia, No. 21-1295, 2021 WL 4476775, at *16 (D.D.C. Sept. 30, 2021).  Accordingly, because the

---

[12] The Court arrives at the number seventeen, as opposed to the Secretary's eighteen, because Sargent is a named plaintiff and not a putative class member.  See Coleman v. District of Columbia, 306 F.R.D. 68, 77 (D.D.C. 2015) (using "thirty-four potential class members (not including the two named plaintiffs)" as the operative number for the court's numerosity analysis (emphasis added)).

plaintiffs have not "affirmatively demonstrate[d] [ ] compliance with" the numerosity

requirement of Rule 23(a), <u>Wal-Mart Stores, Inc.</u>, 564 U.S. at 350, and "[f]ailure to adequately

demonstrate any of the four [Rule 23(a) requirements] is fatal to class certification[,]" <u>Garcia</u>,

444 F.3d at 631, the Court must deny the plaintiffs' motion.[13]

#### IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must deny the plaintiffs' class

certification motion.

**SO ORDERED** this 28th day of April, 2022.[14]

REGGIE B. WALTON
United States District Judge

---

[13] The plaintiffs advance two arguments in their Re-Notice, in addition to their arguments regarding the Rule 23 requirements made in their class certification motion.  First, the plaintiffs state that they "do not believe that a separate sub-class comprised of people with claims under Cause of Action V is necessary[,]" Pls.' Re-Notice at 2, because "every person who has a claim under that Cause . . . also has a claim under Causes of Action III, IV, VI, and VII.  Thus, the [c]lass of people with a claim specifically under Cause of Action V is a subset of the larger [c]lass[,]" <u>id.</u> at 1.  The plaintiffs appear to use the term "Cause of Action V" to refer to Count V of the Complaint.  <u>See</u> Compl. §§ 158–60 (reciting the plaintiffs' requests for relief as to Count V).  Because numerosity is the ultimate dispositive issue in this case, the Court has calculated the number of proposed class members with viable claims. <u>See supra</u> Section III.C.  Furthermore, because putative class size is calculated according to the number of members and not the number of claims, <u>see</u> Fed. R. Civ. P. 23(a)(1) (requiring that "the class [be] so numerous that joinder of all members is impracticable"), and because, as the plaintiffs state, the proposed class members who have claims under "Cause of Action V" also all have claims based on the other causes of action, <u>see</u> Pls.' Re-Notice at 1, these individuals have been accounted for in the Court's analysis.

Second, the plaintiffs argue that the Secretary effectively conceded that each requirement of Rule 23 was satisfied by failing to explicitly deny these allegations in his Answer.  <u>See id.</u> at 3–5.  However, in response to the plaintiffs' Motion to Deem Allegations Admitted, ECF No. 82, filed shortly after the plaintiffs' Re-Notice, the Secretary filed an Amended Answer on March 9, 2021.  <u>See</u> Am. Answer (Mar. 9, 2021), ECF No. 83.  In his Amended Answer, the Secretary remedies what the plaintiffs characterize as admissions by denying all allegations concerning the plaintiffs' satisfaction of Rule 23's requirements.  <u>See id.</u> ¶¶ 137–45.  The Court held a motion hearing on May 21, 2021, after which, in light of the Secretary's Amended Answer, the Court denied the plaintiffs' Motion to Deem Allegations Admitted on May 24, 2021.  <u>See</u> Order at 1 (May 24, 2021), ECF No. 92.  Thus, the question of the Secretary's alleged admissions is rendered moot.

[14] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.