**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CAROL A. LEWIS, *et al.*,                    )
                                             )
              Plaintiffs;                    )
                                             )
       v.                                    )         Case No. 18-cv-2929 (RBW)
                                             )
XAVIER BECERRA, in his official capacity     )
as Secretary of Health and Human Services,   )
                                             )
              Defendant.                     )
_____      )

**Defendant's Motion for Partial Entry of Judgment in Plaintiffs' Favor,**
**and to Dismiss Remaining Causes of Action and Claims for Relief on Mootness Grounds**

## **TABLE OF CONTENTS**

Index of Exhibits.................................................................................................................. ii

Table of Acronyms ............................................................................................................... ii

Table of Authorities............................................................................................................. iii

Introduction.......................................................................................................................... 1

Background ........................................................................................................................... 2

    A.   The Three Claims for Medicare Reimbursement at Issue................................. 2

    B.   The Secretary's Policy Changes...................................................................... 5

    C.   Claims and Procedural History ....................................................................... 8

Discussion ............................................................................................................................ 8

    A.   The Secretary Concedes Count III of Plaintiffs' Complaint, Which Alleges a
Violation of the Administrative Procedure Act; the Court Should Enter
Judgment for Plaintiffs on this Count, and Vacate the Final Agency Decisions
from Which Plaintiffs Appealed, But Since the Three Disputed Reimbursement
Claims Have Already Been Paid in Full, Remand is Not Necessary............................. 8

    B.   The Court Need Not Reach the Plaintiffs' Alternative Administrative
Procedure Act Claims ..................................................................................... 10

    C.   Plaintiffs' Remaining Claims for Relief and Declaratory Judgment Act Claim
Are Moot.......................................................................................................... 11

Conclusion ........................................................................................................................... 17

## INDEX OF EXHIBITS

| Exhibit | ECF No. | Description of Exhibit |
|---------|---------|------------------------|
| A | 120-1 | Declaration of Karen Grasso, Deputy Project Manager, Noridian Healthcare Solutions, LLC, with attachments: |
| | | Ex. A-1:  Claim specific remittance records showing payment of Douglas Sargent's claims |
| | | Ex. A-2:  Copy of check sent to Carol Lewis |
| | | Ex. A-3:  Record showing check to Ms. Lewis was sent |
| B | 120-2 | *Medicare Program; Durable Medical Equipment, Prosthetics, Orthotics, and Supplies (DMEPOS) Policy Issues*, 85 Fed. Reg. 70,358, 70,398–70,404 (Nov. 4, 2020) (proposed rule) (excerpt) |
| C | 120-3 | *Medicare Program; Durable Medical Equipment, Prosthetics, and Supplies (DMEPOS) Policy Issues*, 86 Fed. Reg. 73,860, 73,896–73,902 (Dec. 28, 2021) (final rule) (the "December 2021 final rule") (excerpt) |
| D | 120-4 | Centers for Medicare & Medicaid Services technical direction letter, TDL-220257 (Feb. 25, 2022) |
| E | 120-5 | Centers for Medicare & Medicaid Services Ruling CMS-1738-R (May 13, 2022) (the "May 2022 CMS Ruling") |

## TABLE OF ACRONYMS

| Acronym | Description |
|---------|-------------|
| ALJ | Administrative Law Judge |
| APA | Administrative Procedure Act |
| CGM | Continuous glucose monitor |
| CMS | Centers for Medicare & Medicaid Services |
| DME MACs | Durable Medical Equipment Medicare Administrative Contractors |
| FDA | United States Food and Drug Administration |

## TABLE OF AUTHORITIES

**Cases**

*Air Line Pilots Ass'n, Int'l v. UAL Corp.*,
   897 F.2d 1394 (7th Cir. 1990) ........................................................................... 10, 12

*Akiachak Native Cmty. v. U.S. Dep't of Interior*,
   827 F.3d 100 (D.C. Cir. 2016) .............................................................................. 13

*Alaska v. United States Dep't of Agric.*,
   17 F.4th 1224 (D.C. Cir. 2021) ......................................................................... 15, 16

*Am. Cargo Transp., Inc. v. United States*,
   625 F.3d 1176 (9th Cir. 2010) .............................................................................. 15

*Brown v. Buhman*,
   822 F.3d 1151 (10th Cir. 2016) ............................................................................ 15

*Carpenter v. Colvin*,
   No. 13cv1637, 2016 WL 953216 (D.D.C. Mar. 14, 2016) ..................................... 10

*Cause of Action Inst. v. U.S. Dep't of Justice*,
   282 F. Supp. 3d 66 (D.D.C. 2017) ........................................................................ 12

*Childs v. Saul*,
   No. 18cv1006, 2020 WL 2410499 (D.D.C. May 12, 2020) .................................. 10

*Cierco v. Mnuchin*,
   857 F.3d 407 (D.C. Cir. 2017) .............................................................................. 13

*Converdyn v. Moniz*,
   185 F. Supp. 3d 148 (D.D.C. 2016) ...................................................................... 15

*Conyers v. Reagan*,
   765 F.2d 1124 (D.C. Cir. 1985) ....................................................................... 12, 13

*Coral Springs St. Sys., Inc. v. City of Sunrise*,
   371 F.3d 1320 (11th Cir. 2004) ............................................................................ 15

*Cox v. Kijakazi*,
   No. 18cv2389, 2022 WL 178953 (D.D.C. Jan. 19, 2022) .................................... 10

*Dist. Hosp. Partners, L.P. v. Sebelius*,
   932 F. Supp. 2d 194 (D.D.C. 2013) ...................................................................... 11

*Foothill Hosp.—Morris L. Johnston Mem'l v. Leavitt*,
   558 F. Supp. 2d 1 (D.D.C. 2008) .......................................................................... 11

*Hewitt v. Helms,*
    482 U.S. 755 (1987)................................................................................. 12, 13

*Honeywell Int'l, Inc. v. Nuclear Regul. Comm'n,*
    628 F.3d 568 (D.C. Cir. 2010) ................................................................ 12

*Jordan v. Sullivan,*
    785 F. Supp. 47 (S.D.N.Y. 1992) ............................................................ 10

*Lewis v. Azar,*
    308 F. Supp. 3d 574 (D. Mass. 2018) ............................................. 9, 10, 14

*Mitchell v. Colvin,*
    No. 12cv1573, 2016 WL 509281 (D.D.C. Feb. 8, 2016)........................... 10

*Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau,*
    785 F.3d 684 (D.C. Cir. 2015) ................................................................ 12

*Motor & Equip. Mfrs. Ass'n v. Nichols,*
    142 F.3d 449 (D.C. Cir. 1998) .......................................................... 15, 17

*Murphy v. Hunt,*
    455 U.S. 478 (1982)................................................................................. 13

*Nat. Res. Def. Council, Inc. v. U. S. Nuclear Regul. Comm'n,*
    680 F.2d 810 (D.C. Cir. 1982) .......................................................... 13, 15

*Novella v. Westchester Cnty.,*
    661 F.3d 128 (2d Cir. 2011) .................................................................. 10

*Olsen v. Cochran,*
    No. 20cv374, 2021 WL 711469 (E.D. Wash. Feb. 23, 2021) .................. 14

*People for Ethical Treatment of Animals, Inc. v. Gittens,*
    396 F.3d 416 (D.C. Cir. 2005) ................................................................ 14

*Southwest Airlines Co. v. FERC,*
    926 F.3d 851 (D.C. Cir. 2019) ................................................................ 11

*Spencer v. Kemna,*
    523 U.S. 1 (1998)............................................................................... 14, 17

*Spivey v. Barry,*
    665 F.2d 1222 (D.C. Cir. 1981) ............................................................. 13

*United States v. W. T. Grant Co.,*
    345 U.S. 629 (1953)................................................................................ 15

*Washington v. U.S. S.E.C.*,
   858 F. Supp. 2d 51 (D.D.C. 2012) ................................................................. 14, 15

*Wheeler v. Heckler*,
   719 F.2d 595 (2d Cir. 1983) ............................................................................. 14

*Williams v. Colvin*,
   134 F. Supp. 3d 358 (D.D.C. 2015) ................................................................. 10

*Zieroth v. Azar*,
   No. 20cv172, 2020 WL 5642614 (N.D. Cal. Sept. 22, 2020).............................. 14

*Zukerman v. United States Postal Serv.*,
   961 F.3d 431 (D.C. Cir. 2020) ......................................................................... 13

**Statutes**

5 U.S.C § 706(2) ........................................................................................... 1, 8

28 U.S.C. § 2201 ............................................................................................... 8

42 U.S.C. § 405(g) ................................................................................... 3, 10, 14

42 U.S.C. § 1395ff(b)(1)(A) ............................................................................... 3

42 U.S.C. § 1395y(a)(1)(A) ................................................................................ 4

**Regulations**

42 C.F.R. § 401.108 ........................................................................................... 7

42 C.F.R. § 405.1132(a)(2) ................................................................................. 3

42 C.F.R. § 414.402 ........................................................................................... 7

**Other Authorities**

Centers for Medicare & Medicaid Services Ruling CMS-1682-R (Jan. 12, 2017) ............... *passim*

Centers for Medicare & Medicaid Services Ruling CMS-1738-R (May 13, 2022) ....... 7, 9, 13, 17

Centers for Medicare & Medicaid Services technical direction letter, TDL-220257
   (Feb. 25, 2022)................................................................................ 4, 6, 7, 9

*Medicare Program; Durable Medical Equipment, Prosthetics, Orthotics, and Supplies (DMEPOS) Policy Issues*, 85 Fed. Reg. 70,358, 70,398–70,404 (Nov. 4, 2020) (proposed rule) ................................................................................................ 5–6

*Medicare Program; Durable Medical Equipment, Prosthetics, Orthotics, and Supplies (DMEPOS) Policy Issues*, 86 Fed. Reg. 73,860, 73,896–73,902 (Dec. 28, 2021) (final rule) ........................................................................................... *passim*

## **INTRODUCTION**

Plaintiffs Carol Lewis and Douglas Sargent seek judicial review of the Secretary of Health and Human Services' denial of their claims for Medicare coverage of continuous glucose monitors ("CGMs").  Compl. ¶¶ 2–7, 101–04, 112–25; *see also* Mem. Op. at 2 (Jan. 29, 2021), ECF No. 77.  Except, the Secretary is no longer denying their claims.  The Secretary has paid all three claims for Medicare reimbursement at issue in this case.

The Secretary has also changed his policies.  Through notice and comment rulemaking and complementary sub-regulatory guidance, the Secretary has done away with the policies under which the plaintiffs' claims were denied.  The Secretary now provides Medicare coverage for all CGM devices, and has applied that coverage to pending and properly appealed reimbursement claims regardless of date of service, including plaintiffs' claims, as well as future claims.

As a result of the policy changes, there is no longer a live dispute regarding whether plaintiffs' CGM devices qualify as "durable medical equipment."  They do.  Nor is there any need for an order directing the Secretary to make appropriate payment for the reimbursement claims that are the subject of this case.  He has.

The most that plaintiffs could obtain through this lawsuit at this point would be vacatur of the final agency decisions from which they appealed.  Those decisions have been functionally superseded by the agency's payment of the reimbursement claims at issue—payment that the Secretary directed consistent with his recent policy changes.  To the extent that the written decisions may still have some nominal significance, however, the Secretary agrees that they should be vacated.  The agency decisions on review should be vacated because they are no longer consistent with the governing law, in light of the Secretary's new policy.  Accordingly, the Secretary asks the Court to enter judgment in plaintiffs' favor on Count III of their Complaint— which alleges a violation of the Administrative Procedure Act ("APA"), 5 U.S.C § 706(2)(A)— and to vacate the three Administrative Law Judge (ALJ) and Medicare Appeals Council

decisions from which plaintiffs appealed.

The Court should dismiss the remaining claims for relief and causes of action.  The Secretary's suggested resolution with respect to Count III provides all the relief that plaintiffs could obtain at this point on their other APA claims (Counts IV, V, and VI) as well, and therefore the Court need not reach those other claims.  Plaintiffs' claims for further relief beyond vacatur are moot.  Their requested order—finding that a CGM and its related supplies are covered durable medical equipment, and directing the Secretary to make appropriate payment for their reimbursement claims—seeks relief that the Secretary has now provided.  Their request to set aside the January 2017 policy is moot because that policy has been rescinded and replaced. Likewise, plaintiffs' claim under the Declaratory Judgment Act (Count VII) is moot because there is no longer a sufficient controversy between the parties that would warrant declaratory relief.

## **BACKGROUND**

The Court is already generally familiar with the background of this case.  *See* Mem. Op. at 2–11 (Jan. 29, 2021), ECF No. 77 (granting in part and denying in part the Secretary's partial motion to dismiss); Mem. Op. at 2–6 (Jan. 13, 2022), ECF No. 106 (denying plaintiffs' motion for preliminary injunction); Mem. Op. at 2–7 (Apr. 28, 2022), ECF No. 114 (denying plaintiffs' motion for class certification).  The Secretary briefly discusses below those facts most relevant to the instant motion.

### A.    The Three Claims for Medicare Reimbursement at Issue

Plaintiffs Carol Lewis and Douglas Sargent each have Type I diabetes, and their physicians have prescribed them CGMs to assist in managing their diabetes.  AR 76, 969–70, 1996–97.[1]  At issue in this case are three claims for Medicare reimbursement of CGM devices and supplies:

---

[1] Consistent with Local Civil Rule 7(n), within 14 days of filing his reply brief, the Secretary will submit an appendix containing copies of those portions of the administrative record that are cited or otherwise relied upon in the parties' memoranda in support of and in opposition to this motion.

- Ms. Lewis's claim for date of service October 26, 2015 (the "October 2015 claim"), for reimbursement of a Dexcom G5 CGM device, transmitter, and sensors, Compl. ¶ 99;

- Mr. Sargent's claim for date of service August 9, 2016 (the "August 2016 claim"), for reimbursement of a 90-day supply of sensors for use with his Medtronic MiniMed Paradigm Revel CGM system, Compl. ¶ 112, AR 1996; and

- Mr. Sargent's claim for date of service April 12, 2017 (the "April 2017 claim"), for reimbursement of a 90-day supply of sensors for use with his Medtronic MiniMed Paradigm Revel CGM system, Compl. ¶ 120, AR 969.

After a Medicare contractor denied coverage for each of the above claims, plaintiffs pursued administrative appeals. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), which incorporates the judicial review provisions of 42 U.S.C. § 405(g), plaintiffs appealed to this Court from the final agency decisions related to each claim. The final agency decision for Ms. Lewis's October 2015 claim was the November 18, 2016, decision issued by an ALJ, denying her request for coverage. AR 108–15.[2] The final agency decisions for Mr. Sargent's August 2016 and April 2017 claims were two decisions by the Medicare Appeals Council, issued on the same day, October 15, 2018, denying his requests for coverage. AR 1991–2003 (Council decision for the August 2016 claim); AR 964–975 (Council decision for the April 2017 claim).

As detailed further below, the Centers for Medicare & Medicaid Services ("CMS")[3] has issued a series of policy changes expanding Medicare coverage of CGM devices and supplies. All CGM devices are now classified as durable medical equipment and covered—along with

---

[2] On December 7, 2016, Ms. Lewis filed an appeal with the Medicare Appeals Council, but no decision was rendered before the statutory deadline. *See* Mem. Op. at 9 (Jan. 29, 2021), ECF No. 77 (citing Compl. ¶¶ 104–06). On November 26, 2018, Ms. Lewis filed a request with the Medicare Appeals Council for escalation to this Court, *see id.* (citing Compl. ¶ 106), but the Council was unable to timely issue a decision, dismissal, or remand order, and thus Ms. Lewis bypassed Council review and appealed directly to this Court from the ALJ decision. *See* AR 1–2 (Medicare Appeals Counsel Acknowledgement of Escalation Request); 42 C.F.R. § 405.1132(a)(2).

[3] CMS administers the Medicare program on behalf of the Secretary of Health and Human Services. References in this brief to "CMS" also refer to the Secretary, and vice versa.

their necessary supplies—by Medicare.[4]  After CMS issued the below-described February 2022 "technical direction letter," TDL 220557, and consistent with that document, CMS directed its Medicare contractor Noridian Healthcare Solutions, LLC ("Noridian") to pay the three Medicare reimbursement claims at issue in this case.  *See* Declaration of Karen Grasso ("Grasso Decl.") ¶ 5, attached as Exhibit A.  On March 28, 2022, Noridian paid Mr. Sargent's August 2016 claim and April 2017 claim.  *Id.* ¶ 6.  On June 3, 2022, Noridian sent Ms. Lewis payment for her October 2015 claim.[5]  *Id.* ¶ 8.

At the June 30, 2022, status conference in this case, plaintiffs' counsel confirmed that payment for Mr. Sargent's claims had been made, and that Ms. Lewis had received the check sent to her by Noridian.  Status Conf. Tr. 6:15–23; 8:15–21 (June 30, 2022).  He further acknowledged that these payments cover the entirety of the monetary amounts to which plaintiffs believe they are entitled:

> THE COURT:  Well, I mean has [Ms. Lewis] been paid what she believes she's entitled to receive?
>
> MR. PISTORINO:  She has been sent a check …
>
> THE COURT:  Is she of the view that she's entitled to more money than what the check, the amount of the check?
>
> MR. PISTORINO:  No. …
>
> …
>
> THE COURT:  Well, in reference to [Mr. Sargent,] is he also being given the funds he says he should have received if the policy had been []properly interpreted?

---

[4] Every CGM provided must be reasonable and necessary for the treatment or diagnosis of the beneficiary's illness or injury.  42 U.S.C. § 1395y(a)(1)(A).

[5] Medicare Part B items and services like CGMs are furnished by suppliers.  Typically, the suppliers—not the beneficiaries themselves—submit claims to Medicare administrative contractors, and the contractors pay the suppliers.  *See* Grasso Decl. ¶ 9.  In Ms. Lewis's case, the supplier that had originally provided her the CGM device, transmitters, and sensors in October 2015, and billed Medicare, has gone out of business, or at least is no longer an enrolled Medicare supplier.  *Id.*  Noridian did not have a mechanism for paying the now-defunct supplier, but because Ms. Lewis had previously paid the supplier, Noridian issued a reimbursement check directly to Ms. Lewis. *See id.*

> MR. PISTORINO:  So I think with regard to both of [Mr. Sargent's claims] I don't think it's disputed from my understanding.  I think the Secretary has paid the supplier, so in effect, yes, the Secretary's paid the supplier.

*Id.*  Plaintiffs' counsel conveyed that notwithstanding these payments, plaintiffs still seek a judgment from this Court regarding their claims.  *Id.* 6:17–23; 8:06–14.

## B.   The Secretary's Policy Changes

Mr. Sargent challenges the denial of his April 2017 claim at least in part on the grounds that the Medicare Appeals Council's denial was based on CMS Ruling 1682-R (January 12, 2017) and a related Local Coverage Determination (that has itself since been amended to reflect the Secretary's current policies[6]), which Mr. Sargent contends were issued illegally.[7]  That Ruling distinguished between "non-adjunctive" (or "therapeutic") CGM devices that were approved by the United States Food and Drug Administration ("FDA") to be relied upon in making treatment decisions for managing diabetes, and "adjunctive" (or "non-therapeutic") CGM devices that were not, and held that Medicare would cover the former but not the latter.  *See* Mem. Op. at 3 (Apr. 28, 2022), ECF No. 114.  At that time there was only one FDA-approved non-adjunctive CGM device, the Dexcom G5 CGM system—the device that Ms. Lewis received in October 2015.  *Id.* CMS Ruling 1682-R provided that the Dexcom G5 CGM (and other devices after they received FDA approval for non-adjunctive use) would be covered as durable medical equipment for dates of service after January 12, 2017.  *Id.*

CMS has now rescinded and replaced CMS Ruling 1682-R, and extended Medicare coverage to all CGM devices.  CMS has accomplished this goal in stages.  On November 4, 2020, CMS published a proposed rule, proposing to replace CMS Ruling 1682-R with a new rule

---

[6] *See* https://www.cms.gov/medicare-coverage-database/view/lcd.aspx?lcdid=33822 (showing current version of Local Coverage Determination L33822 as well as revision history information).

[7] Mr. Sargent's August 2016 claim and Ms. Lewis's October 2015 claim both pre-dated CMS Ruling 1682-R and their denials were not based on that Ruling.  *See* AR 108–15; AR 1991–2003.  The Medicare Appeals Council decision denying Mr. Sargent's August 2016 claim stated that CMS Ruling 1682-R did not directly apply to the August 2016 claim but that it "bolster[ed]" the Council's decision.  AR 2001.  The ALJ decision denying Ms. Lewis's October 2015 claim—the final agency decision for that claim—was itself issued prior to CMS Ruling 1682-R and did not mention that ruling.  AR 108–115.

that would classify all CGM devices as durable medical equipment under Medicare Part B, regardless of whether the CGM was "non-adjunctive" or "adjunctive."  85 Fed. Reg. 70,358, 70,398–70,404 (Nov. 4, 2020), attached as Exhibit B.  After receiving and considering public comment on the proposed rule, CMS issued its final rule on December 28, 2021.  86 Fed. Reg. 73,860, 73,896–73,902 (Dec. 28, 2021) (the "December 2021 final rule"), attached as Exhibit C.  The December 2021 final rule replaced CMS Ruling 1682-R and expanded classification of durable medical equipment to both adjunctive and non-adjunctive CGMs.  *Id.* at 73,902.  Under the final rule, all CGM devices (except those that use a smartphone as the sole monitor) are considered to be "primarily and customarily used to serve a medical purpose" and "durable medical equipment."  *See id.* at 73,899.  The final rule also clarified that CMS Ruling 1682-R "only addressed whether CGMs meet the Medicare definition of [durable medical equipment] and did not address whether insulin pumps that can also perform the function of a CGM are [durable medical equipment] since insulin pumps are already classified as [durable medical equipment]."  *Id.* at 73,898.  The agency recognized, however, that claims for continuous-glucose-monitor sensors and transmitters used with insulin pumps "are being denied inappropriately based on CMS-1682-R."  *Id.*  The December 2021 final rule became effective February 28, 2022.  *See id.* at 73,860.

The agency has taken additional steps to make this policy change apply to earlier dates of service.  On February 25, 2022, CMS issued a technical direction letter, TDL-220257, to its Durable Medical Equipment Medicare Administrative Contractors ("DME MACs"), instructing them to apply the policy of the December 2021 final rule to reimbursement claims with dates of service that predate the February 28, 2022 effective date of the December 2021 final rule.  *See* TDL-220257 (Feb. 25, 2022), attached as Exhibit C.  TDL-220257 states:

> The [December 2021 final rule] replaced a 2017 CMS Ruling, CMS-1682-R ("2017 Ruling"), regarding CGMs.  Pursuant to this [technical direction letter], the DME MACs shall apply the coverage and payment provisions of the [December 2021 final rule] to valid reimbursement claims and appeals for CGM monitors or receivers and/or necessary supplies and accessories supplied prior to February 28, 2022.  The [December 2021

final rule] obviates the need for further application of the 2017 Ruling on
CGMs, as CMS has determined that, in addition to therapeutic or non-
adjunctive CGMs, non-therapeutic or adjunctive CGMs can also meet the
Medicare definition of durable medical equipment (DME) at 42 C.F.R.
§ 414.402.

*Id.* at 1–2.

Finally, on May 13, 2022, the agency issued CMS Ruling CMS-1738-R (the "May 2022
CMS Ruling"), formally rescinding the 2017 CMS Ruling, CMS-1682-R, that Mr. Sargent
challenges, and instructing contractors and Department of Health and Human Services
employees at all levels of the Medicare claims-review process—including administrative law
judges and the Medicare Appeals Council—to apply the terms of the December 2021 final rule to
valid pending or future claims and appeals, regardless of the date of service.  MS-1738-R at 9–
10, 11 (May 13, 2022), attached as Exhibit D.[8]  The May 2022 CMS Ruling explains that,
"[t]aken together, the December 2021 final rule and this Ruling prohibit further application of
[CMS Ruling 1682-R] on CGMs," *id.* at 6, and require application of CMS's determination that
"the following types of CGMs shall be classified as [durable medical equipment]:  therapeutic or
non-adjunctive CGMs; non-therapeutic or adjunctive CGMs; and insulin pumps that also
function as a CGM or receiver," *id.* at 11.

Both TDL-220257 and the May 2022 CMS Ruling apply to Medicare reimbursement
claims that have been "valid[ly] appeal[ed]," including plaintiffs' reimbursement claims.  TDL-
220257 at 2–3 (Ex. D); May 2022 CMS Ruling at 9–10 (Ex. E).[9]

---

[8] CMS Rulings are decisions of the CMS Administrator that serve as precedent final opinions or orders or statements
of policy or interpretation.  *See* 42 C.F.R. § 401.108.

[9] The May 2022 CMS Ruling states in relevant part, "If a CGM monitor or receiver and/or its necessary supplies and
accessories has been furnished to a Medicare beneficiary before the February 28, 2022 effective date of the
December 2021 final rule and payment for the CGM is claimed under Part B… then the substantive CGM
classification, coverage, and payment policies established by the December 2021 final rule … shall be applied to
claims for a CGM monitor or receiver and/or its necessary supplies and accessories where … [a] valid CGM appeal
was pending as of February 28, 2022."  May 2022 CMS Ruling at 9 (Ex. E).  TDL-220257 contains similar
language.  *See* TDL-220257 at 2–3 (Ex. D).

C.   **Claims and Procedural History**

Following this Court's January 2021 decision granting in part the Secretary's partial

motion to dismiss, plaintiffs' remaining causes of action include four claims under the APA, 5

U.S.C. § 706(2) (Count III, Count IV, Count V as to Mr. Sargent, and Count VI), and one claim

for declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 (Count

VII).[10]  *See* Mem. Op. at 32 (Jan. 29, 2021), ECF No. 77; Compl. ¶¶ 152–166.  With respect to

each of the APA claims, plaintiffs "ask the Court to reverse the Secretary's [final agency

decisions] and issue an order finding that a CGM and its related supplies are covered durable

medical equipment and direct the Secretary to make appropriate payment for the claims that are

the subject of this case."  Compl. ¶¶ 153, 156, 159, 162.  Additionally, Mr. Sargent seeks an order

"setting aside CMS-1682-R."  Compl. at 32.  With respect to their claim for declaratory

judgment, plaintiffs "seek a declaration from this Court that CGMs generally (whether they

completely replace finger sticks or not) and, in particular, the Medtronic MiniMed and Dexcom

devices are covered durable medical equipment under the statutes and regulations."  *Id.* ¶ 166.

In January 2022, the Court denied plaintiffs' motion for preliminary injunction.  *See*

Mem. Op. (Jan. 13, 2022), ECF No. 106.  In April 2022, the Court denied plaintiffs' motion for

class certification.  *See* Mem. Op. (Apr. 28, 2022), ECF No. 114.

<u>**DISCUSSION**</u>

A.   **The Secretary Concedes Count III of Plaintiffs' Complaint, Which Alleges a Violation
     of the Administrative Procedure Act; the Court Should Enter Judgment for Plaintiffs
     on this Count, and Vacate the Final Agency Decisions from Which Plaintiffs Appealed,
     But Since the Three Disputed Reimbursement Claims Have Already Been Paid in
     Full, Remand is Not Necessary**

Count III of plaintiffs' Complaint alleges that the denials of coverage for plaintiffs'

CGMs violate the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), because the denials are

"not in accordance with law."  *See* Compl. ¶¶ 152–54.  The Secretary concedes that the final

---

[10] The Court dismissed Counts I and II of the Complaint, and Count V as to Ms. Lewis, but allowed Count V to
proceed with respect to Mr. Sargent.  Mem. Op. at 32 (Jan. 29, 2021), ECF No. 77.

agency decisions from which the plaintiffs appealed are not in accordance with the agency's current policy regarding CGMs.  The December 2021 final rule expanded Medicare coverage of CGM devices as "durable medical equipment."  Under the policy of the final rule, CMS now covers all three categories of CGM devices:  non-adjunctive, adjunctive, and insulin pumps with CGM capabilities.  TDL-220257 and the May 2022 CMS Ruling made the policy of the December 2021 final rule applicable to any pending or properly appealed claim for reimbursement of a CGM device or supplies, regardless of date of service, including plaintiffs' three reimbursement claims at issue in this case.  TDL-220257 at 2–3 (Ex. D); May 2022 CMS Ruling at 9–10 (Ex. E).  Because the new policy applies to plaintiffs' reimbursement claims, the Secretary concedes that the appealed ALJ and Medicare Appeals Council decisions are not in accordance with law in light of the Secretary's new policy,[11] and the Court should enter judgment in plaintiffs' favor on Count III accordingly.[12]

Although the final agency decisions from which plaintiffs appealed to this Court have

[11] The Secretary further notes that the Medicare Appeals Council decisions denying Mr. Sargent's August 2016 claim and April 2017 claim were in error to the extent that those decisions relied on CMS Ruling 1682-R.  The Medtronic MiniMed Paradigm Revel CGM system that Mr. Sargent used at that time, see AR 969 and 1996, was an insulin pump with CGM capability, see, e.g., https://www.medtronicdiabetes.com/paradigm-discontinuation (describing the now-discontinued MiniMed Revel insulin pump), and CMS Ruling 1682-R did not extend to insulin pumps with CGM capability.  As the December 2021 final rule recognized, "[c]laims submitted for CGM sensors and transmitters used with insulin pumps [were] being denied inappropriately based on CMS–1682–R even though this Ruling only addressed the classification of CGM receivers as [durable medical equipment] and did not address coverage of CGM sensors and transmitters used with insulin pumps."  86 Fed. Reg. at 73,898.  Insulin pumps have been "classified and covered as [durable medical equipment] since the mid-1990s."  86 Fed. Reg. at 73,899; see also CMS National Coverage Determination NCD 280.14 regarding infusion pumps, available at https://www.cms.gov/medicare-coverage-database/view/ncd.aspx?NCDId=223&ncdver=2.

[12] Earlier in this case, the Secretary noted that Ms. Lewis had already litigated to final judgment against the Secretary the issue of whether her continuous glucose monitor is durable medical equipment under the Medicare statute and regulations. See Def. Mem. in Opp. to Pls.' Renewed Mot. for Class Cert. 38 n.16 (Mar. 12, 2021), ECF No. 84; see also Def. Mem. in Opp. to [Pls.' 1st Mot. for] Class Cert. 7–12 (Apr. 21, 2020), ECF No. 65; Lewis v. Azar, 308 F. Supp. 3d 574 (D. Mass. 2018).  At that time, the Secretary took the position that the "Court should enter judgment in [Ms. Lewis'] favor on the grounds of res judicata and remand her case to the Secretary, so that he can pay her claim."  Def. Mem. in Opp. to Pls' Renewed Mot. for Class Cert. 38 n.16 (Mar. 12, 2021), ECF No. 84.  The Secretary has since recognized Ms. Lewis's CGM device as durable medical equipment, and paid her reimbursement claim, and thus it is not necessary to apply res judicata at this point; nonetheless, the Secretary continues to believe that judgment should be entered in Ms. Lewis's favor.  He now also believes that judgment should be entered in Mr. Sargent's favor as well.  As discussed herein, the Secretary believes the Court should enter judgment in their favor on Count III of their Complaint.

been superseded by the Secretary's payment of the Medicare reimbursement claims at issue, the
Secretary acknowledges that vacatur of the (prior) final agency decisions may provide plaintiffs
with some, nominal relief.  The Court may order vacatur even though plaintiffs' Complaint did
not explicitly demand it.  *See* Fed. R. Civ. 54(c).  Vacatur of the ALJ and Medicare Appeals
Council decisions is the relief to which plaintiffs are entitled.[13]  *See id.*  Thus, the Secretary
proposes that the Court enter judgment for plaintiffs on Count III and vacate the final agency
actions from which they appealed.  *See Jordan v. Sullivan*, 785 F. Supp. 47, 48–49 (S.D.N.Y.
1992) (vacatur of the administrative decision below based on admitted legal error "falls squarely
under the language of [42 U.S.C. § 405(g)] in that [the Court is] 'affirming, modifying, or
reversing the decision of the Secretary'"); *see also, e.g.*, *Cox v. Kijakazi*, No. 18cv2389, 2022
WL 178953, at *12 (D.D.C. Jan. 19, 2022) (vacating administrative decision that had been
appealed to district court pursuant to 42 U.S.C. § 405(g)).; *Childs v. Saul*, No. 18cv1006, 2020
WL 2410499, at *4 (D.D.C. May 12, 2020) (same); *Mitchell v. Colvin*, No. 12cv1573, 2016 WL
509281, at *4 (D.D.C. Feb. 8, 2016) (same); *Carpenter v. Colvin*, No. 13cv1637, 2016 WL
953216, at *1 (D.D.C. Mar. 14, 2016) (same); *Williams v. Colvin*, 134 F. Supp. 3d 358, 363
(D.D.C. 2015) (same).

## B.   The Court Need Not Reach the Plaintiffs' Alternative Administrative Procedure Act Claims

Where a litigant asserts multiple arguments in support of the same relief, and the court
grants relief based upon one contention, the court need not reach the alternative grounds for
granting such relief.  *See Novella v. Westchester Cnty.*, 661 F.3d 128, 149 (2d Cir. 2011)
(describing issues that need not be decided by a court in light of the resolution by the court in the
same opinion of another issue); *see also Air Line Pilots Ass'n, Int'l v. UAL Corp.*, 897 F.2d 1394,
1397 (7th Cir. 1990) ("Although the word 'moot' is sometimes used to refer to an issue that need
not be decided in light of the resolution in the same opinion of another issue," the word 'moot' in

---

[13] Plaintiffs' other requests for relief are moot, as discussed below.

this usage does not implicate Article III mootness because "it is cases rather than reasons that become moot"). Indeed, when a court rules in plaintiffs' favor on one ground, it will often decline to reach alternative grounds that would lead to the same outcome. *See, e.g.*, *Southwest Airlines Co. v. FERC*, 926 F.3d 851, 859 (D.C. Cir. 2019) (given the court's vacatur of decision that had been appealed, the court need not reach an alternative ground for challenging that decision); *Dist. Hosp. Partners, L.P. v. Sebelius*, 932 F. Supp. 2d 194, 199 (D.D.C. 2013) (because court ruled in plaintiffs' favor on one APA argument, it declined to reach other APA claims); *Foothill Hosp.—Morris L. Johnston Mem'l v. Leavitt*, 558 F. Supp. 2d 1, 11 (D.D.C. 2008) (having found that a Medicare reimbursement decision violated a statutory moratorium provision, the court declined to reach plaintiff's "alternative argument[s] that the decision is arbitrary, capricious, and inconsistent with the governing statute and regulations"). Here, where the Secretary proposes that the Court should enter judgment in plaintiffs' favor on Count III, there is no need for the Court to reach the plaintiffs' other Administrative Procedure Act causes of action. Entering judgment for plaintiffs based on the government's concession with respect to Count III, and vacating the final agency decisions, provides plaintiffs with complete relief on their Administrative Procedure Act claims. It is well within the Court's discretion to decline to reach the remaining Administrative Procedure Act claims, and doing so serves judicial economy. *See, e.g.*, *Southwest Airlines*, 926 F.3d at 859; *Dist. Hosp. Partners*, 932 F. Supp. 2d at 199; *Foothill Hosp.*, 558 F. Supp. 2d at 11.

## C.   Plaintiffs' Remaining Claims for Relief and Declaratory Judgment Act Claim Are Moot

Plaintiffs have already received much of the relief that they sought through this action—including the Secretary's acknowledgment that their CGM devices are durable medical equipment, and payment of their Medicare reimbursement claims. The above-proposed partial judgment in their favor, and vacatur of the final agency decisions from which they appealed, provides them with all the judicial relief to which they are entitled. Their requests for further relief and a declaratory judgment are moot.

"The test for mootness is simple to state but sometimes difficult to apply.  It is whether the relief sought would, if granted, make a difference to the legal interests of the parties (as distinct from their psyches, which might remain deeply engaged with the merits of the litigation)."  *Air Line Pilots Ass'n,* 897 F.2d at 1396.  Article III considerations require "an actual controversy be extant at all stages of review, not merely at the time the complaint is filed." *Cause of Action Inst. v. U.S. Dep't of Justice*, 282 F. Supp. 3d 66, 77 (D.D.C. 2017) (Walton, J.) (quotation and citation omitted).  As the Supreme Court has cautioned:

> In all civil litigation, the judicial decree is not the end but the means.  At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces—the payment of damages, or some specific performance, or the termination of some conduct.  Redress is sought *through* the court, but *from* the defendant.... The real value of the judicial pronouncement—what makes it a proper judicial resolution of a "case or controversy" rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*.

*Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis in original).  "In determining whether a request for declaratory relief has become moot, the question is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Conyers v. Reagan*, 765 F.2d 1124, 1128 (D.C. Cir. 1985) (quotation and citation omitted).[14]  The Secretary bears the "heavy burden" of establishing mootness. *Honeywell Int'l, Inc. v. Nuclear Regul. Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010).

Here, in light of the Secretary's payment of plaintiffs' reimbursement claims and the Secretary's policy changes, plaintiffs' remaining claims for relief beyond vacatur of the ALJ and Medicare Appeals Council decisions are moot.  The additional relief requested by plaintiffs— including a Court order directing the Secretary to provide coverage for their CGM claims, the

---

[14] The Declaratory Judgment Act confers on courts "substantial discretion" in deciding whether to declare the rights of litigants; even where a case is not moot, a court may decline to grant declaratory relief.  *See Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 696–97 (D.C. Cir. 2015).

invalidation of the now-rescinded policy CMS-1682-R, and a declaration that plaintiffs' CGM devices are durable medical equipment—would have no practical effect, and thus the remainder of plaintiffs' case is moot.  The Secretary has already provided coverage for plaintiffs' CGM claims; thus there is no need for a Court order directing the same.  *See, e.g.*, *Nat. Res. Def. Council, Inc. v. U. S. Nuclear Regul. Comm'n*, 680 F.2d 810, 814 n.8 (D.C. Cir. 1982) (recognizing that corrective action by an agency can moot a claim).  Likewise, the Secretary has already recognized that plaintiffs' CGM devices are durable medical equipment, and there is no controversy for the Court to resolve by declaring the same.  *See Conyers*, 765 F.2d 1128 (for request for declaratory relief to survive mootness, parties must have adverse legal interests that are immediate and real).  Further adjudication would not be proper because it would not result in "action" or "cessation of action."  *Hewitt*, 482 U.S. at 761.  Nor would the grant of declaratory relief achieve a useful objective.  *See Spivey v. Barry*, 665 F.2d 1222, 1235 (D.C. Cir. 1981).

Mr. Sargent's challenge to CMS-1682-R is also moot, as that Ruling has been rescinded by CMS Ruling CMS-1738-R and replaced by the December 2021 final rule.  *See, e.g.*, *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 113 (D.C. Cir. 2016) (noting the "perfectly uncontroversial and well-settled principle of law" that "when an agency has rescinded and replaced a challenged regulation, litigation over the legality of the original regulation becomes moot"); *Zukerman v. United States Postal Serv.*, 961 F.3d 431, 443 (D.C. Cir. 2020) ("[A] court can no longer provide [a plaintiff] effectual relief by prohibiting the [government] from enforcing a policy that is no longer on the books.").

There are two principal exceptions to mootness: (1) the "capable of repetition, yet evading review" exception, and (2) the "voluntary cessation" exception.  *See, e.g.*, *Cierco v. Mnuchin*, 857 F.3d 407, 414–15 (D.C. Cir. 2017).  Neither applies here.

The "capable of repetition, yet evading review" exception pertains to situations in which "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration," yet there is a "demonstrated probability that the same controversy will recur involving the same complaining party."  *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam).

Plaintiffs' challenges do not present such a situation.  First, the challenged actions are not of a type that are too short in duration to be fully litigated.  Indeed, prior to the Secretary's policy changes regarding CGMs, there had been multiple fully-litigated district court cases challenging denials of CGM coverage.  *See, e.g.*, *Olsen v. Cochran*, No. 20cv374, 2021 WL 711469 (E.D. Wash. Feb. 23, 2021); *Zieroth v. Azar*, No. 20cv172, 2020 WL 5642614 (N.D. Cal. Sept. 22, 2020); *Lewis v. Azar*, No. 15cv13530, 2018 WL 1639687 (D. Mass. Apr. 5, 2018); *Whitcomb v. Azar*, No. 17cv14, ECF No. 19 (E.D. Wisc. Oct. 26, 2017) (decision and order).  Second, given the December 2021 final rule, which applies to claims with date of service February 28, 2022 or later, there is no reasonable expectation that plaintiffs will in the future have CGM reimbursement claims denied on the same grounds that led to the denials below.  And if that were to happen, review would not be evaded, but instead would be provided through the Medicare statute's administrative and judicial review mechanisms.  *See, e.g.*, *Wheeler v. Heckler*, 719 F.2d 595, 600 (2d Cir. 1983) (observing that "[i]f … the … benefits of any plaintiff … are again terminated pursuant to an allegedly unlawful … standard, administrative and judicial review of that decision will be available" pursuant to 42 U.S.C. § 405(g)).  Moreover, given that CMS has now changed its policies, any hypothetical future denial affecting plaintiffs would need to be pursuant to a *new* CMS policy or regulation, and thus that hypothetical future denial still would not involve the same legal wrong that plaintiffs complain of here—*i.e.*, the alleged illegality of CMS's *past* policies.  *See, e.g.*, *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (mootness exception requires "a reasonable expectation that the same complaining party will be subject to the same action again"); *People for Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 422 (D.C. Cir. 2005) ("The 'wrong' that is, or is not, 'capable of repetition' must be defined in terms of the precise controversy it spawns.").

Nor does the "voluntary cessation" exception to mootness apply.  Under the voluntary cessation doctrine, a case will not be moot "where a defendant has voluntarily stopped the" challenged behavior, "but may 'return to [its] old ways.'"  *Citizens for Resp. & Ethics in Washington v. U.S. S.E.C.*, 858 F. Supp. 2d 51, 61 (D.D.C. 2012) (alteration in original) (quoting

*United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)).  A case can be mooted by virtue of the defendant's cessation of its allegedly illegal conduct only if "(1) there is no reasonable expectation that the conduct will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 459 (D.C. Cir. 1998).  Courts recognize, however, that the government is entitled to a presumption of good faith that its corrective action is not mere litigation posturing. *See, e.g.*, *Brown v. Buhman*, 822 F.3d 1151, 1167 (10th Cir. 2016); *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010); *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328–1329 (11th Cir. 2004); *Converdyn v. Moniz*, 185 F. Supp. 3d 148, 161 (D.D.C. 2016) (Walton, J.) ("[W]here, as here, 'the defendant is a government actor—and not a private litigant—there is less concern about the recurrence of objectionable behavior.'"); *Citizens for Responsibility and Ethics in Washington*, 858 F. Supp. 2d at 61 (collecting cases).

There is no non-speculative threat that the Secretary would revert to a policy of not recognizing CGMs as durable medical equipment now that he has done so through formal notice-and-comment rulemaking, and has completely rescinded the 2017 Ruling that Mr. Sargent challenges, and has paid plaintiffs' reimbursement claims.  The Secretary has taken corrective action, not temporarily ceased his prior activities.  *See Nat. Res. Def. Council*, 680 F.2d at 814 ("Corrective action by an agency is … more accurately characterized as the provision of appropriate relief to petitioner than as the 'cessation of illegal conduct.'").  Since 2020, the Secretary has consistently taken actions to move away from the 2017 Ruling, CMS-1682-R, toward a policy of recognizing that all CGMs—including therapeutic and adjunctive CGMs and insulin pumps that can perform the functions of a CGM—are properly classified as durable medical equipment that may be covered by Medicare.  The Secretary has formally rescinded and replaced CMS-1682-R.  There is no indication that the Secretary intends to rescind the recission of CMS-1682-R, and no reasonable expectation that he would do so.  *See Alaska v. United States Dep't of Agric.*, 17 F.4th 1224, 1229 (D.C. Cir. 2021) ("Courts have noted that structural obstacles to reimposing a challenged law—such as a full repeal and the need to undertake new

lawmaking—generally moot a case.").

Additionally, it appears that plaintiffs are no longer using the CGM devices that they were using at the time the reimbursement claims at issue in this case were submitted.  *See* Grasso Decl. ¶ 10.  This fact makes it even more speculative that some hypothetical future policy would be used to deny their reimbursement claims.  The most recent device that Medicare has on file for Ms. Lewis is an insulin infusion pump that she has had since July 2019, and a Medicare supplier has been submitting claims for her for the monthly supply allowance for an adjunctive CGM integrated into an external insulin infusion pump.  *Id.*  The most recent device that Medicare has on file for Mr. Sargent is a therapeutic CGM device that he has had since October 2019.  Both of these types of CGMs—an insulin pump with CGM function, and a therapeutic CGM device—were eligible for Medicare coverage even under the Secretary's former policies. It is wholly speculative that some hypothetical, future policy would be applied to deny coverage for supplies for these devices, or any other CGM device that plaintiffs may obtain in the future.

Nor is there any reasonable expectation that the Secretary would try to recoup the payments he has made on plaintiffs' reimbursement claims.  Doing so would be inconsistent both with his revised policies and with the actions he has taken recently in other district court matters concerning coverage of CGMs.  In *Smith v. Becerra*, the Secretary confessed error and asked the Court to enter judgment for plaintiff and remand to the Secretary for payment, which the Court did.  *See* Def.'s Resp. to Pl.'s Mot for Status Conf. 2–4, ECF No. 51, *Smith v. Becerra*, No. 21cv47 (D. Utah Jan. 7, 2021); Docket Text Order, ECF No. 52, *Smith v. Becerra*, No. 21cv47 (D. Utah Jan. 19, 2022); Judgment, ECF No. 53, *Smith v. Becerra*, No. 21cv47 (D. Utah Jan. 19, 2022); Docket Text Order, ECF No. 55, *Smith v. Becerra*, No. 21cv47 (D. Utah Feb. 8, 2022) (denying plaintiff's motion to alter judgment), *appeal pending*, No. 22-4018 (10th Cir.).  And in *Olsen v. Becerra*, the government's answer admitted that the Secretary erred in denying coverage, and explained that the claims had already been paid before the plaintiff even filed suit. *See* Second Amended Answer 2, ECF No. 41, *Olsen v. Becerra*, No. 21-cv-326 (E.D. Wash. May 11, 2022) ("There are two claims for Medicare reimbursement at issue in this case…. Defendant

concedes that the Secretary erred in denying coverage for both claims."); *id.* at 3 (both claims "were paid by the [Medicare administrative contractor] … on July 15, 2021" (emphasis omitted)).  The government's current litigating position in all proceedings is consistent with the policy set forth in the December 2021 final rule and the May 2022 CMS Ruling.  The government has made payment on the three Medicare reimbursement claims at issue in this case, and thus has "completely eradicated" the effects of his prior denials of those claims.  *See Motor & Equip. Mfrs. Ass'n*, 142 F.3d at 459.  Accordingly, plaintiffs' remaining claims for relief are moot.

## **CONCLUSION**

For the reasons stated above, the Court should enter judgment in plaintiffs' favor on Count III and vacate the final agency decisions from which they appealed, and dismiss the remaining causes of action.  Plaintiffs' claims for additional relief are moot.

Dated: July 14, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE R. BENNETT
Assistant Director, Federal Programs Branch

  */s/ Lisa Zeidner Marcus*
LISA ZEIDNER MARCUS
Senior Counsel (N.Y. Bar # 4461679)
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L St., NW, Twelfth Floor
Washington, DC 20530
Tel: (202) 514-3336
Fax: (202) 616-8470
Email: lisa.marcus@usdoj.gov

*Counsel for Defendant*